UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. LEO M. GORDON, *SENIOR JUDGE*

| | | |
|---|---|---|
| CYBER POWER SYSTEMS (USA) INC., | : | |
| | : | |
| Plaintiff, | : | Court No. 20-00124 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant, | : | |

## DEFENDANT'S REVISED REPLY MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN FURTHER <u>SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT</u>

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

JUSTIN R. MILLER
Attorney-in-Charge
International Trade Field Office

*Of Counsel*:
Yelena Slepak
Office of Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

BEVERLY A. FARRELL
Senior Trial Attorney
BRANDON A. KENNEDY
Trial Attorney
Civil Division, U.S. Dept. of Justice
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
Tel.: (212) 264-9230
Attorneys for Defendant

Dated: April 14, 2021

## TABLE OF CONTENTS

BACKGROUND ............................................................................................................. 2

SUMMARY OF ARGUMENT .................................................................................... 4

ARGUMENT ................................................................................................................ 5

    I.      DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT IS NOT
           ABANDONED ................................................................................................ 5

    II.     DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT SHOULD BE
           GRANTED BECAUSE THE SUBJECT GOODS ARE PRODUCTS OF CHINA,
           NOT THE PHILIPPINES ............................................................................ 6

          A.  The Legal Standard Governing Substantial Transformation For A Determination
             Of Country Of Origin ................................................................................ 7

              1.  The name factor ............................................................... 9

              2.  The character factor ......................................................... 9

                              a.   Model No. CBN50U48A-1……………………………10
                              b.   Model No. OR500LCDRM1U…………………………11
                              c.   Model No. SX650U …………………………………11
                              d.   Model No. CST135XLU………………………………12
                                e.   Model No. HT1206UC2RC1  …………………………13
                                f.   Model No. CP600LCDa  …………………………………14

               3.  The use factor ................................................................ 15

          B.  Import Specialist Linda Horacek's Declaration Is Accurate  …………………16

CONCLUSION .......................................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ........................................................................................ 6

*Belcrest Linens v. United States*,
  741 F.2d 1368 (Fed. Cir. 1984) ................................................... 8, 14, 15

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .................................................................................. 6, 7

*Cyber Power Systems (USA) Inc. v. United States*,
  471 F. Supp. 3d 1371 (Ct. Int'l Trade 2020) ...................................... 2, 3, 7

*Energizer Battery, Inc. v. United States*,
  190 F. Supp. 3d 1308 (Ct. Int'l Trade 2016) ................................. 8, 9-10, 15

*Ferrostal Metals v. United States*,
  11 C.I.T. 400 (1984) ................................................................................... 9

*Johnston v. IVAC Corp.*,
  885 F.2d 1574 (Fed. Cir. 1989) .............................................................. 6-7

*National Hand Tool Corp. v. United States*,
  16 C.I.T. 308 (1992), *aff'd per curiam*, 989 F.2d 1201 (Fed. Cir. 1993) ................. 8, 9, 10, 15

*Superior Wire v. United States*,
  867 F.2d 1409 (Fed. Cir. 1989) .................................................................. 9

*United States v. Gibson-Thomsen Co., Inc.*,
  27 C.C.P.A. 267 (1940) .......................................................................... 7, 8

## Statutes, Regulations, and Rules

19 U.S.C. § 1304(j) ............................................................................................ 7

19 U.S.C. § 1499(c)(5) ...................................................................................... 3

19 U.S.C. § 1499(c)(5)(A) ................................................................................. 2

19 C.F.R. § 134.1(b) ........................................................................................... 7

19 C.F.R. § 134.3(a) .............................................................................................................. 7

**<u>Other Materials</u>**

Webster's Third New Int'l Dictionary (1981) ............................................................... 9

Webster's Third New Int'l Dictionary of the English Language Unabridged (2002) ................... 9

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. LEO M. GORDON, *SENIOR JUDGE*

| | | |
|---|---|---|
| CYBER POWER SYSTEMS (USA) INC., | : | |
| | : | |
| Plaintiff, | : | Court No. 20-00124 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant, | : | |

**DEFENDANT'S REVISED REPLY MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN FURTHER
<u>SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT</u>[1]**

In accordance with the Court's April 8, 2021 Order, but without prejudice to the evidentiary and rules-based objections made in our papers, defendant, the United States (the Government), submits this revised reply memorandum in opposition to plaintiff's motion for summary judgment and in support of our cross-motion for summary judgment.  For the reasons set forth below, we respectfully request that the Court enter an order denying plaintiff's motion for summary judgment; granting our cross-motion for summary judgment; and dismissing this action in its entirety.

As shown in our cross-motion for summary judgment (XMSJ) and further demonstrated below, U.S. Customs and Border Protection (Customs or CBP) correctly determined that the subject merchandise should have been marked "Made in China" because it had not undergone a

---

[1] Although not directly referenced in the Court's April 8, 2021 Order, we attach to our revised reply a revised response to plaintiff's Rule 56.3 Statement.  The revised response maintains our prior responses but we have augmented those responses resting only on objections, given the Court's prior order denying our notion to strike.  The additional information included in the augmented responses is distinguished by bold font.

substantial transformation in the Philippines that would support marking the goods as products of the Philippines.  The deemed exclusion of the subject merchandise that resulted from this determination was, therefore, proper.

## BACKGROUND

This case arises from the denial of Protest No. 3501-20-101425 concerning the deemed exclusion[2] of merchandise covered by Entry No. 791-2578496-2 made at the Port of Minneapolis, Minnesota on April 3, 2020.  *Cyber Power Systems (USA) Inc. v. United States*, 471 F. Supp. 3d 1371, 1373 (Ct. Int'l Trade 2020); Plaintiff's Response to Defendant's Rule 56.3 Statement of Facts (Pl. Resp. to SOF) ¶¶ 13, 14.  The deemed exclusion occurred after the entry was detained based on CBP's determination that the importer failed to properly mark the country of origin of the merchandise.  Pl. Resp. to SOF ¶¶ 7-9.

Prior history between the parties includes a prior disclosure arising from consumer news reporting about an over-label on packaging of imported surge voltage protectors and uninterruptible power supplies.  *Cyber Power*, 471 F. Supp. 3d at 1373; Pl. Resp. to SOF ¶ 11. The over-label stated that the good was "Made in Philippines," but the printing on the packaging stated: "Made in China."  *Cyber Power*, 471 F. Supp. 3d at 1373; Pl. Resp. to SOF ¶ 12.  After requests for documents and information by CBP, and plaintiff's responses to these requests, at times with contradictory information, as to earlier entries, Customs determined in January 2020 that the country of origin of certain Cyber Power uninterruptible power supplies and surge voltage protectors was China, not the Philippines.  *Cyber Power*, 471 F. Supp. 3d at 1373-74.  In

---

[2] Pursuant to 19 U.S.C. § 1499(c)(5)(A), because CBP did not make a final determination within thirty days of presentation, the detained merchandise is "deemed" excluded by operation of section 1499(c)(5)(A).

March 2020, plaintiff advised its Customs broker that it intended to make only pen and ink changes to its Philippine invoices and that it would continue marking all items as "made in Philippines." *Id*.  On April 10, 2020, Customs detained the entry at issue here for inspection.  *Id*.  Customs sent plaintiff and its customs broker a notice of detention accompanied by a notice to mark and/or redeliver.  *Id*.

After plaintiff refused to change the marking on the goods and their packages, the merchandise was deemed excluded by operation of 19 U.S.C. § 1499(c)(5).  *Id*.  Plaintiff filed Protest No. 3501-20-101425 challenging CBP's deemed exclusion of the merchandise from entry, and argued that the processes performed in the Philippines resulted in the "substantial transformation" of such components into new and different articles of Philippine origin, having a name, character and use different than those constituent components.  Docket No. 20-1 at 4-19.

In connection with the protest, plaintiff did not provide information and documents specific to the five models of uninterruptible power supplies and one model of surge voltage protectors at issue but, instead, explained that, "[m]anufacturing operations for representative units are described.  Bills of materials and manufacturing processes for each model are available to Customs on request."  *Cyber Power*, 471 F. Supp. 3d at 1374; Docket No. 20-1 at 5.  Customs requested all of the records relating to the subject merchandise.  *Id.* at 1375.  The information that was provided by plaintiff revealed discrepancies, such as plaintiff's assertion that 118 of 188 discrete components needed to make model CP600LCDa are combined in Taiwan to manufacture the main printed circuit board assembly whereas the process flow chart stated that the circuit boards were being soldered in the Philippines.  Another discrepancy involved claims

3

that main boards in models CBN50048A-1, OR500LCDRM1U, and SX650U were soldered in the Philippines when documents indicated that they were soldered in China. *Id.*

After reviewing plaintiff's submissions in support of the protest, CBP denied the protest on June 19, 2020, concluding that: "Insufficient documentation was provided by the protestant in order to change the country of origin from China to the Philippines for marking and classification purposes. All information, both verbal and written, was considered by this office. The country of origin marking for this shipment should remain 'made in China'." *Id.* Docket No. 20-1 at p. 2. This action was commenced on June 22, 2020. Pl. Resp. to SOF ¶ 15. At issue is the correct country of origin of five uninterruptible power supplies (UPS) with model numbers OR500LCDRM1U, SX650U, CBN50U48A-1, CST135XLU, and CP600LCDa; and one surge voltage protector (SVP) with model number HT1206UC2RC1 covered by Entry No. 791-2578496-2. Pl. Resp. to SOF ¶¶ 1-4. Defendant submitted samples of these articles, taken from Entry No. 791-2578496-2, to the Court as Defendant's Exhibits 4-9, respectively.[3]

## SUMMARY OF ARGUMENT

The name, character and use test for substantial transformation shows that the subject imported merchandise is properly marked as goods of China, not the Philippines. The character of the merchandise is imparted by the PCBAs incorporated into them. For all of the articles except Model No. CP600LCDa, plaintiff concedes that the PCBAs are products of China. Further, there can be no dispute that the PCBAs are predetermined to be used for uninterruptible power supplies and surge voltage protectors and, after processing in the Philippines, the use of

---

[3] Plaintiff has submitted samples of printed circuit board assemblies (PCBAs) to the Court that come from the same models at issue in this action, but not from the same entry. Document 67-4. The Government submitted samples of the models at issue from the entry at issue, which contain the actual PCBAs, rather than parts of items that had been returned by plaintiff's customers.

the merchandise does not change.  As to CP600LCDa, plaintiff has not provided sufficient

evidence to establish that the PCBAs incorporated therein are manufactured in the Philippines,

not China.  Rather, a review of the documents concerning this article suggests that the materials

for the PCBA were shipped to China to be manufactured there.

As movant on summary judgment, plaintiff has the burden of establishing its claim based

on sufficient, admissible evidence.  Here, the most complex operations, *i.e.*, the manufacture of

the main PCBA and secondary PCBAs is done in China.  Plaintiff has not established that any of

the PCBAs incorporated in the subject merchandise is manufactured in the Philippines.  The only

operations plaintiff has shown to be conducted in the Philippines are the assembly of the parts of

the devices—the bulk of which are made in China— and the testing, packaging and shipping of

the devices to the United States.  These operations are not complex and do not constitute a

substantial transformation of the Chinese PCBAs.  Thus, plaintiff has failed to establish that the

six articles should be considered products of the Philippines, rather than products of China.

## ARGUMENT

## I.    DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT IS NOT ABANDONED

In arguing that our cross-motion for summary judgment should be deemed abandoned,

plaintiff contends that our cross-motion does not discuss why China, rather than the Philippines,

should be considered the country of origin of the subject merchandise.  Plaintiff's argument is

refuted by our cross-motion for summary judgment itself.  *See* Pl. Resp. to SOF; Def. Br. at 19-

31.  In our cross-motion, we show that the main board PCBA is of Chinese origin and provides

the principal function or essence of the finished device into which it is installed.  In other words,

the PCBAs impart the character of the imported merchandise.  The assembly and testing

occurring in the Philippines does not result in a new article of commerce distinct from the Chinese main board.  Although plaintiff may disagree with the substance of our position, it does not negate the fact that our cross-motion demonstrates that the subject merchandise is properly marked as a product of China, not the Philippines.

Finally, plaintiff's contention that it had no argument from defendant to which it could respond is refuted by its brief, wherein it responds to our arguments in detail.  *See, e.g.,* Pl. Resp. at 8-21.  For example, although ignoring the Declaration of Karl Moosbrugger, plaintiff addressed our position, supported by that declaration, that the PCBA imparts the character of the imported merchandise and that character does not change based on the operations in the Philippines.  Pl. Resp. at 12-15 to Def. XMSJ at 25-26.  Further, plaintiff responds to our position that the PCBA for Model No. CP600LCDa is of Chinese origin.  Pl. Resp. at 21-23 to Def. XMSJ at 27-30.

Accordingly, plaintiff's suggestion that our cross-motion be deemed abandoned should be denied.

## II.    DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE THE SUBJECT GOODS ARE PRODUCTS OF CHINA, NOT THE PHILIPPINES

Summary judgment should be entered "against a party who fails to make a showing sufficient to establish an essential element to that party's case" and for which the "party bears the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  However, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "Summary judgment may be granted in favor of a defendant on an ultimate issue of fact where

the defendant carries its burden of 'pointing out to the district court that there is an absence of evidence to support the nonmoving party's case.'" *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1577 (Fed. Cir. 1989) (quoting *Celotex*, 477 U.S. at 325). For the reasons explained in our cross-motion and this reply, we demonstrate that plaintiff has not met its burden of establishing that the imported merchandise is a product of the Philippines. Therefore, plaintiff's motion for summary judgment should be denied.

## A. The Legal Standard Governing Substantial Transformation For A Determination Of Country Of Origin

All merchandise imported into the United States must be marked permanently, legibly, indelibly, and in a conspicuous place, to indicate the English name of the product's country of origin. *Cyber Power*, 471 F. Supp. 3d at 1375. 19 C.F.R. § 134.1(b) defines the term "country of origin" as "the country of manufacture, production, or growth of any article of foreign origin entering the United States," and explains that "[f]urther work or material added to an article in another country must effect a substantial transformation in order to render such other country the 'country of origin' within the meaning of this part." *Id.* Where goods are not properly marked to show their country of origin, they are considered "restricted" merchandise, which CBP may exclude from entry into the United States. *Id.* (citing 19 U.S.C. § 1304(j) and 19 C.F.R. § 134.3(a)).

As plaintiff notes, the parties agree that *United States v. Gibson-Thomsen Co., Inc.*, 27 C.C.P.A. 267 (1940), announces the "name, character or use" test for substantial transformation. Pl. Resp. at 8. However, the parties diverge on how this test is to be properly construed. Plaintiff overlooks the breadth and complexity of this test. Plaintiff argues that a substantial transformation has occurred because "the combination of disparate components through the

manufacturing process by Cyber Power Philippines, and with regard to Model No. CL600LCDa, by Phisonic, results in the creation of a new and different article of commerce, having a name (conceded by defendant), character and use distinct from any of its components." *See* Pl. Resp. at 15-16. This narrow interpretation is contrary to binding appellate authority. "In determining whether the combining of parts or materials constitutes a substantial transformation, the issue has been the extent of the operations performed and whether the parts lose their identity and become an integral part of a new article." *Belcrest Linens v. United States*, 741 F.2d 1368, 1373 (Fed. Circ. 1984). Courts recognize that a substantial transformation analysis is fact-specific and turns on a totality of the evidence. *See Belcrest Linens*, 741 F.2d at 1372; *National Hand Tool Corp. v. United States*, 16 CIT 308, 312 (Ct. Int'l Trade 1992), *aff'd per curiam*, 989 F.2d 1201 (Fed. Cir. 1993).

Plaintiff takes umbrage at our focus on *Energizer Battery, Inc. v. United States*, 190 F. Supp. 3d 1308 (Ct. Int'l Trade 2016), a decision undertaking the arduous task of identifying and analyzing interpretations of the 'name, character or use" test for substantial transformation. Pl. Resp. at 8-12. Plaintiff criticizes the *Energizer* court and claims that it misstates the *Gibson-Thomsen* test by "saying '[t]o find a change of character, there often needs to be a substantial transformation in the character of the article or components.'" Pl. Resp. at 8.

The *Energizer* decision does no such thing. Rather, it accurately describes the analysis used in other cases in determining whether a substantial transformation has occurred. 190 F. Supp. 3d at 1318. Plaintiff's disagreement with the *Energizer* opinion is unjustified. Although this opinion may not itself constitute binding authority, its persuasive analysis is supported by binding authority, USCIT decisions affirmed by the Federal Circuit, other USCIT decisions, and

a dictionary meaning of the term "character."  As explained below, when viewing the totality of the evidence through the prism of substantial transformation, the imported articles are products of China, not the Philippines.

1. The name factor

The *Energizer* opinion is correct in its recognition that a change in name is the least compelling factor to support a substantial transformation finding.  190 F. Supp. 3d at 1318. Indeed, a name change "is the least persuasive factor and is insufficient by itself to support a holding that there is a substantial transformation."  *Superior Wire v. United States*, 867 F.2d 1409, 1414 (Fed. Cir. 1989).

2. The character factor

With respect to "character," *Energizer* provides a definition: "'[c]haracter' is defined as the 'mark, sign [or] distinctive quality' of a thing."  190 F. Supp. 3d at 1318 (citing Webster's Third New Int'l Dictionary of the English Language Unabridged (2002) at 376).  Similarly, *National Hand Tool* defines "character" as "'one of the essentials of structure, form, materials, or function that together make up and usu[ally] distinguish the individual.'"  16 CIT at 311 (citing Webster's Third New International Dictionary (1981)).  In arguing that our cross-motion should be abandoned, plaintiff claims that we have no authority for a critical component or essence theory, and that *Ferrostal Metals v. United States*, 11 CIT 400, 474 (1984), does not adopt this "theory."  Pl. Response at 14.  Plaintiff is wrong.  The *Ferrostal* case simply states that there is no "essence" test for substantial transformation and the "name, character and use" test controls. The decision does not state that, in construing the character of an item, one cannot consider whether a component is critical to, or gives the essence of, an item.  Moreover, *Energizer* and

*National Hand Tool* recognize that the "character" is the distinctive or distinguishing essence of something. Thus, an analysis of the character factor properly includes considering what gives an article its essence.

The distinctive or essential structure of each of the imported articles is the PCBAs manufactured in China.[4] Further, the bulk of the components that comprise each device is associated with the PCBAs. Compare Pl. Exs. 11, 21, 30, 39, 48, and 57 with Pl. Exs. 12, 22, 31, 39, 40, 49, 58, respectively.

     a.   Model No. CBN50U48A-1

For Model No. CBN50U48A-1, there are 202 lines of individual parts listed in the bill of materials. Pl. Ex. 21. Of these, 161 lines of parts are used in the manufacture of the Main PCBA in China. Pl. Ex. 22. The manufacture of the PCBA is complex, using assembly and wave soldering machines necessary for mounting and incorporating the various components into or onto the bare printed board. *See* Def. Ex. 15; Def. Ex. 1 at pages 20-22/52 (describing surface mount technology process and dual in-line package process). The remaining 51 parts are associated with the assembly and packaging in the Philippines. *See* Pl. Ex. 21. Of these, 12 are labels and 3 are zip lock bags. The assembly in the Philippines is not complex and consists of encasing the PCBA with various covers, adding a battery, attaching a power cord, and then testing and packaging the device. Pl. Ex. 23. All of the remaining 51 parts are manufactured in China. Pl. Ex. 21.

---

[4] Model No. CBN50U48A has a single PCBA, Model No. CST135XLU has five PCBAs, Model No. OR500LCDRM1U has two PCBAs, Model No. HTC1206UC2RC1 has five PCBAs, and Model No. SX650U has three PCBAs. Plaintiffs concedes that the PCBAs for each model are of Chinese origin. Def. Ex. 1

b.   Model No. OR500LCDRM1U

For Model No. OR500LCDRM1U, there are 226 lines of individual parts listed in the bill of materials.  Pl. Ex. 39.  Of these, 124 lines of parts are used in the manufacture of the Main PCBA in China, and 6 lines of parts are used in the manufacture of a Switch Board in China.  Pl. Ex. 40, 41.  The manufacture of the PCBA is complex, using assembly and wave soldering machines necessary for mounting and incorporating the various components into or onto the bare printed board.  *See* Def. Ex. 15; Def. Ex. 1 at pages 20-22/52 (describing surface mount technology process and dual in-line package process); Pl. Ex. 42.  The remaining 96 parts are associated with the assembly and packaging in the Philippines.  *See* Pl. Ex. 39.  Of these, the bulk are screws, wires and bushings.  The assembly in the Philippines is not complex and consists of attaching/connecting wires, attaching the LCD module, installing a transformer, encasing the PCBA with various covers, adding a battery, attaching a power cord, and then testing and packaging the device.  Pl. Ex. 41, 43, 44.  All of the remaining 96 parts are manufactured in China, except for a schematic and connector from Taiwan.  Pl. Ex. 39.

c.   Model No. SX650U

For Model No. SX650U, there are 206 lines of individual parts listed in the bill of materials.  Pl. Ex. 48.  Of these, 133 lines of parts are used in the manufacture of the Main PCBA in China, 18 lines of parts are used in the manufacture of the USB board in China, and 32 lines of parts are used in the manufacture of the USB Charger Board in China.  Pl. Exs. 49, 50.  The manufacture of the PCBAs is complex, using assembly and wave soldering machines necessary for mounting and incorporating the various components into or onto the bare printed board.  *See* Def. Ex. 15; Def. Ex. 1 at pages 20-22/52 (describing surface mount technology process and dual

11

in-line package process); Pl. Ex. 51.  The remaining 23 parts are associated with the assembly

and packaging in the Philippines.  *See* Pl. Exs. 48, 50.  Of these, the bulk are wires, screws,

labels and packing materials.  Pl. Ex. 48.  The assembly in the Philippines is not complex and

consists of attaching/connecting wires, connecting the USB cable, encasing the PCBAs with

various covers, adding a battery, attaching a power cord, and then testing and packaging the

device.  Pl. Ex. 50, 51, 52.  All of the remaining 23 parts are manufactured in China, except for

the battery, which could be from Vietnam or China, and the power cord, which has a 63% chance

of being from China.  Pl. Ex. 48.

    d.  <u>Model No. CST135XLU</u>

For Model No. CST135XLU, there are 284 lines of individual parts listed in the bill of

materials.  Pl. Ex. 30.  Of these, 123 lines of parts are used in the manufacture of the Main PCBA

in China, 43 lines of parts are used in the manufacture of the control board in China, 49 lines of

parts are used in the manufacture of the USB charger board in China, 9 lines of parts are used in

the manufacture of the TV coax board in China, and 6 lines of parts are used in the manufacture

of the NTVS-1Gb board in China.  Pl. Exs. 31, 32.  The manufacture of the PCBAs is complex,

using assembly and wave soldering machines necessary for mounting and incorporating the

various components into or onto the bare printed board.  *See* Def. Ex. 15; Def. Ex. 1 at pages 20-

22/52 (describing surface mount technology process and dual in-line package process); Pl. Ex.

33.  The remaining 54 parts are associated with the assembly and packaging in the Philippines.

*See* Pl. Exs. 30, 34.  Of these, the bulk are wires, screws, labels and packing materials.  Pl. Ex.

30.  The assembly in the Philippines is not complex and consists of attaching/connecting wires,

encasing the PCBAs with various covers, adding a battery, inserting a transformer, inserting a

circuit breaker, attaching an LCD module, attaching a power cord, and then testing and

packaging the device.  Pl. Ex. 32, 34, 35.  All of the remaining 54 parts are manufactured in

China, except for the transformer, which is manufactured in the Philippines.  Pl. Ex. 30.

      e.  Model No. HT1206UC2RC1

For Model No. HT1206UC2RC1, there are 112 lines of individual parts listed in the bill

of materials.  Pl. Ex. 57.  Of these, 11 lines of parts are used in the manufacture of the Surge

Board in China, 38 lines of parts are used in the manufacture of the charger board in China, 5

lines of parts are used in the manufacture of the USB CONN. board in China, 6 lines of parts are

used in the manufacture of the COAX board in China, and 5 lines of parts are used in the

manufacture of the RJ45 board in China.  Pl. Exs. 58, 59.  The manufacture of the PCBAs is

complex, using assembly and wave soldering machines necessary for mounting and

incorporating the various components into or onto the bare printed board.  *See* Def. Ex. 15; Def.

Ex. 1 at pages 20-22/52 (describing surface mount technology process and dual in-line package

process); Pl. Ex. 60.  The remaining 47 parts are associated with the assembly and packaging in

the Philippines.  *See* Pl. Exs. 57, 61.  Of these, the bulk are wires, screws, labels and packing

materials.  Pl. Ex. 57.  The assembly in the Philippines is not complex and consists of

attaching/connecting wires, encasing the PCBAs with various covers, attaching a power cord,

attaching an extension cord, and then testing and packaging the device.  Pl. Ex. 59, 61, 62.  All of

the remaining 47 parts are manufactured in China, except for a label made in the United States,

and a power cord with a 63% chance of being manufactured in China.  Pl. Ex. 57.

f.   Model No. CP600LCDa

For Model No. CP600LCDa, there are 173 lines of individual parts listed in the bill of materials.  Pl. Ex. 11.  Of these, 128 lines of parts are used in the manufacture of the Main PCBA.  Pl. Ex. 12.  The remaining 45 parts are associated with the assembly and packaging at CPSMI.  Pl. Ex. 11.  Of these, the bulk are wires, screws, labels and packing materials.  The assembly at CPSM is not complex and consists of attaching/connecting wires, attaching the LCD module, inserting the transformer, installing a circuit breaker, inserting a battery, and then testing and packaging the device.  Pl. Ex. 13, 14.  All of the remaining 45 parts are manufactured in China.  Pl. Ex. 11.  For the reasons discussed below in Part II.B., plaintiff has not established through sufficient documentation that the Main PCBA is manufactured at Phisonic in the Philippines.  Therefore, the Main PCBA should be considered a product of China because virtually all of the parts that comprise it are from China and no substantial transformation of these parts anywhere but in China has been established.  *See* Pl. Ex. 12.

For all of these models, the assembly, testing, and packing that occurs in the Philippines does not cause the main board PCBA or the Surge Board PCBA in Model No. HT1206UC2RC1 to lose its identity as the provider of the function and purpose of the device: to convert and supply power, or provide surge protection.  Nor does the Philippines assembly, testing, and packing alter the function of any of the other PCBAs manufactured in China.  If the main board PCBA were imported into the United States, it would be classified under subheading 8504.40.95, Harmonized Tariff Schedule of the United States, the same subheading under which the finished article is imported.  *See Belcrest*, 741 F.2d at 1372 (although not dispositive, whether manufacturing has caused a shift in tariff is among the totality of factors for consideration).

14

Plaintiff points to certain of our material facts and complains that we did not develop a theory as to counting components as part of a substantial transformation test.  Pl. Resp. at 16-18. Plaintiff misses the point.  The facts showing that the bulk of the parts, including the main PCBAs and the other PCBAs, is manufactured in China falls within the "totality of the evidence" aspect of substantial transformation that all courts consider.  *See National Hand Tool*, 16 CIT at 312.  It further highlights that the Philippines conducts minor, non-complex assembly operations on parts that have been fabricated in China, rather than manufacturing these parts itself.

Thus, the work done in the Philippines such as the attachment of a power cord, insertion of a transformer, insertion of PCBAs, or insertion of a battery is not sufficiently complex to establish the existence of a substantial transformation of the main PCBA.  The application of firmware, which simply serves the purpose for which the main PCBA is designed, likewise does not result in a substantial transformation of the main PCBA.

3.  The use factor

*Energizer's* summary of cases addressing the "use" factor establishes that courts find a change in use where the end-use of an imported article is not interchangeable with the end-use of the article after post-importation processing.  190 F. Supp. 3d at 1319.  In *National Hand Tool*, the court did not find a change in use where the use of the imported article was predetermined at the time of importation.  16 CIT at 311-12.  *Cf. Belcrest*, 741 F.2d at 1373 (finding a change in use where the post-importation processing of fabric produced pillowcases).

Here, the PCBAs imported into the Philippines were designed be used in uninterruptible power supplies or surge voltage protectors.  The assembly that occurred in the Philippines did not change the end use of these products.

Taking all of the evidence into consideration, the character and use of the subject imported merchandise establishes that the goods are properly considered and should be marked as products of China, not the Philippines.

**B.  Import Specialist Linda Horacek's Declaration Is Accurate**

In an effort to refute our evidence that plaintiff failed to show that Model No. CP600LCDa's PCBA was manufactured in the Philippines, plaintiff argues that Ms. Horacek's declaration in support of our cross-motion contains speculative and unsupported statements.  Pl. Resp. at 21.  Plaintiff contends that Ms. Horacek is not a fact witness and has not observed operations in the Philippines.  *Id.*  Plaintiff designated Ms. Horacek as a fact witness in its Rule 26 disclosures.  Def. Ex. 3.  Thus, plaintiff's own disclosures contravene its claims that she is not a fact witness.  Further, it is strange that plaintiff complains that Ms. Horacek never observed the operations in the Philippines when it saw no problem with tendering affirmations of Mr. Brent Lovett, Docket Nos. 21-3 and 48-4 at 6-9, notwithstanding that he has never been to the Philippines.  Def. Ex. 2 at 24:1-6.

Plaintiff contends that if Ms. Horacek is being offered as an expert witness, we have not identified her as such.  Ms. Horacek is not tenderd as an expert.  Rather, she is offered as a fact witness with knowledge of the deficiencies involving the documents provided by plaintiff in this case.  Plaintiff responded to Ms. Horacek's declaration with an affirmation from Mr. Chi-Ting (Tim) Huang.  Docket No. 67-2.

A review of Mr. Huang's affirmation in response to Ms. Horacek's declaration, Docket No. 67-2, reveals deficiencies in his statements.  In paragraphs 4-6, Mr. Huang claims that the documents identified with Bates numbers 02217-02220 and 02221-02225 apply to both the inspection of finished goods and raw materials.  Yet, in its discovery responses, plaintiff makes a

16

distinction between outgoing and incoming inspections and states that these documents are for

incoming inspection.  Def. Ex. 1 at Response to Request No. 9.  Indeed, Def. Ex. 22 reflects the

Incoming Quality Inspection Procedure whose purpose is for the incoming inspection to ensure

all the raw materials/components conform to quality requirements *before* the manufacturing

process.  Further, Def. Ex. 23 reflects the final quality inspection procedure to ensure CPSMI

products meet customer requirements.

With respect to Model No. CP600LCDa discussed in paragraphs 11-15 in Mr. Huang's

affirmation, during discovery we sought "actual, not representative, copies of purchase orders

and records, including proof of payment, for the raw materials imported into the Philippines for

the assembly of each of the models comprising the imported merchandise."  Def. Ex. 1 at

Request 15.  As reflected in Ms. Horacek's declaration, import invoices or purchase orders into

the Philippines that were requested during discovery were not produced.  Instead, plaintiff

belatedly offers these purported documents as attachments to Mr. Huang's declaration.

However, these documents are not *Philippines* import invoices or *Philippines* purchase orders

that were requested during discovery.  The absence of such documents suggests they do not

exists.

Mr. Huang claims that Exhibit D to his affirmation reflects the Chinese export declaration

for the components (CPU wafer A12-0000036-00 and optical parametric amplifiers (OPA))

identified by Ms. Horacek.  However, a review of line 16 of Ex. D to does not reflect these

components but, instead, cites part no. D35-0000004-00, which is a photo coupler made in

Taiwan.  The photo coupler with part no. D35-0000004-00 is not limited to Model No.

CP600LCDa and is used in Model Nos. CST135XLU (Pl. Ex. 31 at Bates No. 00984, line 4),

17

OR500LCDRM1Ua (Pl. Ex. 40 at Bates No. 00988, line 29) and SX650U (Pl. Ex. 49 at Bates No. 00994, line 67).

In response to paragraph 12(c) of Ms. Horacek's Declaration, Mr. Huang identifies Exhibit E to his affirmation as an invoice from Cyber Power China to Phisonic for the manufacture of PCBAs for the subject CP600LCDa devices.[5]  However, this invoice is not identifiable as relating to the Model No. CP600LCDa devices at issue in this litigation, and does not identify any of the shipments, models, or invoices with which the items listed are associated. Moreover, the packing number for Exhibit E is CU006-190900103 with a date of 2019/9/19, an ETD of 2019/9/22, and an ETA of 2019/9/24, does not comport with information produced by plaintiff in discovery.  Specifically, Defendant's Exhibit 25 reflects that invoices CU006-190800005, CU006-190800110, 190900028, CU006-190800028, and CU006-190800030 are for "raw material," in other words for the PCBA and have dates of 2019/8/11, 2019/9/3, 2019/9/10 and 2019/9/10.  None of these dates or numbers matches Mr. Huang's Exhibit E.

As to the stock in/pack out dates, Mr. Huang claims that assembling 360 units of the CP600LCDa was "eminently doable."  However, although providing a timeline and production record list for this model, *see* Def. Ex. 24, plaintiff's document production does not provide the production records referenced in this exhibit.  Mr. Huang's affirmation does not address this

---

[5] Documentation concerning the manufacture of PCBAs at Phisonic has been a repeated source of confusion from plaintiff.  For example, Docket No. 20-1 at page 90 of 219 claims that Exhibits J-1 through J-9 (165-219, Docket No. 20-2, 20-3, 20-4 at 1-36/94) reflect proof of importation of circuit boards onto which population and wave-soldering is performed for Model Nos. OR500LCDRM1U and SX650OU in the Philippines at Phisonic.  However, plaintiff admits that the PCBAs for these models were populated and wave-soldered in China, not the Philippines.  *See* Def. Ex. 1 at 12-13.

absence of CPSMI documents reflecting the receipt of 538 units from Phisonic and the assembly, testing, and packaging of 360 units of CP600LCDa at CPSMI.

Accordingly, plaintiff has failed to establish that the Main PCBA contained in Model No. CP600LCDa was manufactured in or is a product of the Philippines.

## <u>CONCLUSION</u>

For the foregoing reasons, defendant respectfully requests that an order be entered

denying plaintiff's motion for summary judgment, granting defendant's cross-motion for

summary judgment and dismissing this action in its entirety, and granting defendant such other

and further relief as may be just and appropriate.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

By:     /s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-in-Charge
International Trade Field Office

/s/ Beverly A. Farrell
*Of Counsel*:                          BEVERLY A. FARRELL
Yelena Slepak                          Senior Trial Attorney
Office of Assistant Chief Counsel      BRANDON A. KENNEDY
International Trade Litigation          Trial Attorney
U.S. Customs and Border Protection     Civil Division, U.S. Dept. of Justice
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
Tel.: (212) 264-9230
Attorneys for Defendant

Dated: April 14, 2021

20

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. LEO M. GORDON, *SENIOR JUDGE*

| | | |
|---|---|---|
| CYBER POWER SYSTEMS (USA) INC., | : | |
| | : | |
| Plaintiff, | : | Court No. 20-00124 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant, | : | |

## <u>CERTIFICATE OF COMPLIANCE</u>

I, BEVERLY A. FARRELL, a senior trial attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is the attorney responsible for Defendant's Revised Reply Memorandum of Law in Opposition To Plaintiff's Motion for Summary Judgment And In Further Support Of Defendant's Cross-Motion for Summary Judgment, relying upon the word count feature of the word processing program used to prepare the response, certify that this memorandum complies with the Court's February 2, 2021 Order permitting a 7,200 word count limitation and contains 5,521 words.

<u>/s/ Beverly A. Farrell</u>
Beverly A. Farrell

ATTACHMENT

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. LEO M. GORDON, *SENIOR JUDGE*

_____

|  |  |  |
|---|---|---|
| CYBER POWER SYSTEMS (USA) INC., | : | |
| | : | |
| Plaintiff, | : | Court No. 20-00124 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

_____ :

### DEFENDANT'S REVISED RESPONSE TO PLAINTIFF'S
### RULE 56.3 STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

In light of the Court's April 8, 2021 Order denying defendant's motion to strike, and without prejudice to any objections asserted herein, defendant United States (the Government), respectfully submits this revised response to plaintiff's, Cyber Power Systems (USA) Inc. (Cyber Power), Rule 56.3 Statement of Material Facts Not in Dispute (Pl. SOF) filed in conjunction with its Motion for Summary Judgment to address those responses that rest only on objections.  The additional responses are distinguished by bold font.

### PRELIMINARY STATEMENT AND OBJECTIONS

As a preliminary matter, Cyber Power's submission fails to comply with Rule 56.3 of the Rules of the U.S. Court of International Trade (USCIT) which provides that "[o]n any motion for summary judgment filed pursuant to Rule 56, the factual positions described in Rule 56(c)(1)(A) must be annexed to the motion in a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  USCIT Rule 56(c)(1)(A).  Further, such statements must be "followed by citation to evidence which would be admissible."  USCIT Rule 56.3(c).  Rather than provide "separate,"

"short," and "concise" statements of "material" "fact," supported by "evidence that would be admissible," Pl.'s SOF is replete with paragraphs that violate the rules in the following ways:

1.  They contain statements of opinion and not fact.  *See* ¶¶ 4, 5, 8, 23, 104.

2.  They contain statements constituting legal argument, conclusions of law or commentary and not fact.  *See* ¶¶ 16, 23, 26, 28, 33, 36, 43, 46, 53, 56, 63, 66, 73, 84, 89, 94, 101.

3.  They incorporate multiple issues and/or multiple sentences and, thus, are not short and concise.  *See* ¶¶ 1, 5-7, 9, 12-14, 16-17, 20, 24, 26, 36-37, 46-47, 56-57, 64, 66-67, 74-81, 84-85, 93, 95, 97, 99-100, 103, 106-08.

4.  They do not accurately reflect the source cited, and/or are inconsistent with documents or testimony gathered as part of the discovery phase of this litigation.  *See* ¶¶ 4, 8, 10, 11, 26, 36, 46, 84, 106-107.

5.  They use imprecise or ambiguous language which renders all or part of the statement incomprehensible and unanswerable.  *See* ¶¶ 5-6, 23-24, 26, 32, 42, 52, 62, 64, 72, 101, 104-05, 108.

6.  They rely on statements contained in other statements and, thus, are not "separate." *See* ¶¶ 74, 76, 108.

7.  They fail to cite any admissible evidence and, therefore, do not comply with Rule 56.3(c), which provides:  "[s]ubject to any Rule 56(c)(2) objection, each statement by the movant or opponent pursuant to Rule 56.3(a) and (b), including each statement controverting any statement of material fact, will be followed by citation to evidence which would be admissible." *See* ¶¶ 1-3, 7, 9-14, 18, 23, 26-29, 31, 34, 36-39, 41, 44, 46-49, 51, 56-59, 61, 64, 66-69, 71, 74-82, 84-87, 89-93, 96-102, 105, 106.

8.  They cite documents identified by bates number, rather than submitted as an exhibit, because, according to plaintiff (Docket No. 53), these reference "materials of lesser importance to the Court's understanding of the case, such as voluminous training manuals distributed to workers at Cyber Power's Philippines plant and plant safety standards."  *See* ¶¶ 5, 6, 30, 40, 50, 60, 70, 88, 93, 95.  The standard for a Rule 56.3 Statement is that the proposed facts be material. Based on its position at Docket No. 53, it appears plaintiff does not view these statements to be material to its case.  Moreover, because the Court "shall make its determinations upon the basis of the record made before the Court," 28 U.S.C. § 2640(a), plaintiff's initial decision not to provide the Court with these documents is further evidence that these statements are not material. Accordingly, the Court should ignore these statements when considering plaintiff's motion for summary judgment.  Notwithstanding the apparent immateriality of these statements, and out of an abundance of caution, the Government has provided responses to them.

9.  They rely on affirmations that are not made based on personal knowledge.  USCIT Rule 56(c)(4) requires that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Similarly, Rule 602 of the Federal Rules of Evidence provides that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."  *See* ¶¶ 10-13, 16, 31, 32, 41, 42, 52, 61, 62, 71, 72, 76, 77, 93, 96-101.

10.  They rely on affirmations that do not comply with 28 U.S.C. § 1746.  Section 1746 provides:

> (1) If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date).
> (Signature)".

(2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)".

Specifically, the affirmations of Mr. Paulo Kint Cendana and Mr. Chi-Ting Huang ("Tim Huang") were executed outside of the United States and do not state that the statements made therein are true and correct and made under penalty of perjury under the laws of the United States of America.  Similarly, the affirmations of Mr. Brent Lovett and Mr. Thomas Fuehrer do not state that the statements made therein are true and correct.  Likewise, the Affirmation of Mr. Patrick B. Klein, Esq., fails to state that the statements made therein are true and correct as required by section 1746.  Indeed, paragraphs 9, 13, and 17 of the Klein Affirmation state that "[t]o the best of my knowledge, the FRE 1006 Summary of Invoices, Shipping, and Philippines Importation Documents Relating to [CPSMI Acquisition of Subject Merchandise Parts and Components] [CPSMI's Acquisition of Manufacturing] [Phisonic's Acquisition of PCBA Manufacturing Equipment] is an accurate representation of the underlying documents."  Missing from this affirmation are statements based on personal knowledge declared as true and correct. *See* ¶¶ 10-13, 16, 31, 32, 41, 42, 51, 52, 61, 62, 71, 72, 76-81, 93, 96-101, 104, 105.

11.  They rely on the Affirmation of Mr. Patrick B. Klein, Esq., for authentication and admissibility of certain documents.  This affirmation improperly attempts to certify that the documents purportedly supporting plaintiff's Fed. R. Evid. 1006 Summaries are business records and self-authenticating.  However, these documents are not business records of plaintiff or plaintiff's counsel and neither entity is qualified to certify CPSMI's documents, Phisonic's documents, or official Philippine records.  Nor are any of these documents self-authenticating under Fed. R. Evid. 902.  Foreign public records may be proven through a certificate made by

"the custodian or other person authorized to make the certification" and a "final certification" made by a diplomatic or consular officer.  Fed. R. Evid. 902(3), (4).  Whether any of CPSMI's or Phisonic's documents could be authenticated and be admissible as business records sufficient to overcome hearsay objections requires testimony or a written declaration by its custodian or other qualified person certifying that the record (a) was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters; (b) was kept in the course of the regularly conducted activity; and (c) was made by the regularly conducted activity as a regular practice.  Fed. R. Evid. 902(12).  Nothing in the Affirmation of Mr. Klein satisfies or could satisfy these requirements.  *See* ¶¶ 7, 11, 13.

We also note that the bold headings in Cyber Power's Rule 56.3 Statement do not constitute statements of fact to which any response is required.  Therefore, we will not discuss those headings, and no inference should be made as to the Government's position regarding those headings.  Instead, we repeat them here for ease of reference.

Further, although the bulk of documents cited by plaintiff are defective, *see* Attachment (Evidentiary Defects), by producing them to defendant in response to our discovery requests, *see* Def. Ex. 1, and by using these documents in support of its motion for summary judgment, plaintiff has adopted them and the statements within them, thereby rendering them party admissions by plaintiff under Rule 801(d)(2)(B) of the Federal Rules of Evidence.  *See Penguin Book U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.*, 262 F. Supp. 2d 251, 258-59 (S.D.N.Y. 2003) (using a document supplied by another in response to a request for information constitutes evidence of an adoptive admission).  To the extent that we cite to these documents in our below responses, our citation is to plaintiff's admission through adoption and is not, and should not be construed as an agreement to the admissibility of these documents.

Finally, we respectfully submit that, although we deny or object to some of the statements in Cyber Power's submission, none of our responses give rise to a genuine issue of material fact that would preclude the Court from considering or granting the Government's cross-motion for summary judgment.

## CORPORATE STRUCTURE OF PLAINTIFF, CYBER POWER SYSTEMS (USA), INC.

**Statement:**

1.  Plaintiff, Cyber Power Systems (USA), Inc. ("CPSUSA" or "Cyber Power USA"), is a corporation organized and existing under the laws of the State of Delaware. The company, headquartered in Shakopee, Minnesota, is engaged in the importation, wholesaling, and distribution of power management solutions.

**Response:**

1.  Objection.  This statement incorporates multiple issues and/or multiple sentences and, thus, is not short and concise.  Further, this statement does not cite to admissible evidence as required by Rule 56.3.  Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record.  **Notwithstanding, and without waiving our objections, admits that Cyber Power USA is a Delaware corporation, is headquartered in Minnesota, is engaged in the importation and sale of the imported merchandise at issue in this action.  Otherwise, denies the remainder of the second sentence for lack of knowledge or information sufficient to either admit or deny.**

**Statement:**

2.  CPSUSA is a wholly owned subsidiary of Cyber Power Systems Inc. ("CPSI" or "Cyber Power Taiwan"), a Taipei City, Taiwan, based company whose shares are publicly traded on the Taiwan Stock Exchange.

**Response:**

2.  Objection.  This statement does not cite to admissible evidence as required by Rule 56.3. Notwithstanding, and without waiving our objection, admits that CPSUSA is a subsidiary of Cyber Power Systems Inc., based in Taipei, Taiwan.  Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record. **Notwithstanding, and without waiving our objections, admits.**

**Statement:**

3.  Before 2018, CPSI manufactured uninterruptible power supplies ("UPS"), surge voltage protectors ("SVP") and other power solution products at its manufacturing facility in China,

Cyber Power Systems (Shen Zhen) Inc. ("CPSSZI" or "Cyber Power China"), with an address of No. 2 Bud. Side Yangyong River Development Area Tangxiayong Songgang Town, Bao'an District, Shenzhen City.

**Response:**

3.  Objection.  This statement does not cite to admissible evidence as required by Rule 56.3.  Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record. **Notwithstanding, and without waiving our objections, admits that CPSI manufactured UPS and SVP in China before and after 2018.  Otherwise, denies for lack of knowledge or information sufficient to either admit or deny whether CPSI manufactured other power solutions.**

**Statement:**

4.  For various reasons, including but not limited to U.S. trade policies directed at goods imported from China, CPSI determined to open manufacturing facilities in the Philippines under the name of its subsidiary, Cyber Power Systems Manufacturing Inc. ("CPSMI" or "Cyber Power Philippines"), at Units A & B, Block 1, Lot 6, Phase 2 Golden Gate Business Park, Barangay Buenavista, General Trias City, Cavite, Philippines, and to obtain all required governmental and other permits to operate the factory. *See* Exhibit 6 (CPSMI Philippines Certificates).

**Response:**

4.  Objection.  This statement incorporates multiple issues and/or multiple sentences and, thus, is not short and concise.  Further, admits that CPSMI is located at Units A & B, Block 1, Lot 6, Phase 2 Golden Gate Business Park, Barangay Buenavista, General Trias City, Cavite, Philippines, and that Pl. Ex. 6 includes permits and certificates of registration and incorporation for CPSMI.  Objects to the remainder of this statement because its use of "for various reasons," constitutes opinion, not fact, and no response is required.  To the extent a response is required, denies that the cited exhibit either sets forth this opinion or provides factual support for this opinion.  *See* Pl. Ex. 6.

**Statement:**

5.  CPSMI developed lengthy quality control procedures and flow charts. *See* Bates 2191-2298.  These quality control documents address *inter alia* control plans, incoming quality inspection procedures, in-process quality inspection procedures, final quality inspections, general outgoing inspection procedures, incoming inspections, outgoing quality assurance inspection procedures, finished product inspection work instructions, guidelines for outgoing quality inspections, visual inspection standard specifications for PCBs, guidelines for surge protection inspections, and more. *Id.*

**Response:**

5. Objection.  This statement incorporates multiple issues and/or multiple sentences and, thus, is not short and concise.  Further, the documents identified as Bates 2191-2298 have not been authenticated and also constitute inadmissible hearsay.  Further, the terms "*inter alia*" and "and more" are objectionable because they are vague and ambiguous.  Further, "lengthy," is objectionable because it constitutes opinion, not fact, and no response is required.  Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record.  Notwithstanding, and without waiving our objections, admits that the documents with the cited bates numbers include what appear to be CPSMI's quality control procedures and flow charts," but denies their admissibility and denies any inference as to the suitability of purpose as to any of the listed documents.  *See* Docket No. 53-3.

**Statement:**

6. CPSMI developed various employee training documents and presentations, including *inter alia* those relating to chemical safety handling, environmental health and safety training, emergency preparedness, ESD awareness, hand soldering training course, master training plans, and more. *See* Bates 1263-1618. CPSMI has a documented record of training and safety programs. *See* Bates 1237-1261.

**Response:**

6. Objection.  This statement incorporates multiple issues and/or multiple sentences and, thus, is not short and concise.  Further, the documents identified as Bates 1263-1618 and 1237-1261 have not been authenticated and also constitute inadmissible hearsay.  Further, the terms "various," "*inter alia*," and "and more" in the first sentence are objectionable because they are vague and ambiguous.  Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record.  Notwithstanding, and without waiving our objections, admits that the documents with the cited bates numbers include CPSMI documents, but denies their admissibility and denies any inference as to the suitability of purpose of any of the listed documents.  *See* Docket No. 53-1 at 75-100; Docket No. 53-2 at 1-357.

## SETUP OF CYBER POWER PHILIPPINES FACILITIES AND INITIAL MANUFACTURING OPERATIONS PERFORMED

## I. SETUP OF CPSMI FACILITIES AND IMPORTATION OF EQUIPMENT

**Statement:**

7. On September 1, 2018, CPSI began preparing the CPSMI facilities for the arrival of capital equipment necessary for the Philippines manufacture of UPS and SVP devices. Between August and September 2018 the first of many shipments of production equipment was exported from China to the Philippines to be installed in the new CPSMI factory. *See* Exhibit 4 (FRE 1006 Summary of Invoices, Shipping, and Philippines Importation Documents Relating to CPSMI's Acquisition of Manufacturing Equipment); *see also*, Affirmation of Patrick B. Klein in Support

of Plaintiff's Motion for Summary Judgment. The CPSMI Philippines manufacturing facilities began receiving equipment required for the manufacture of finished products from CPSSZI in October 2018. *Id.*

**Response:**

7.  Objection.  This statement incorporates multiple issues and/or multiple sentences and, thus, is not short and concise.  Further, the first sentence does not cite to any evidence as required by Rule 56.3.  The second and third sentences do not cite to admissible evidence as there is no accompanying translation of all foreign language words included in the cited summary exhibit, and thus the exhibit is not fully comprehensible, and fails to comply with Rule 56.3(c).  "It is a 'well-established rule that a document in a foreign language is generally inadmissible unless accompanied by a certified English translation.'"  *Heredia v. Americare, Inc.*, 2020 U.S. Dist. LEXIS 122880, *11-*12 (S.D.N.Y. July 13, 2020) (citations omitted).  Further, plaintiff failed to establish that the documents underlying these summary exhibits are themselves authentic and admissible.  Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record.  **Notwithstanding, and without waiving our objections, admits that CPSMI began obtaining equipment for its facility in the Philippines.  Denies that it CPSMI received equipment to manufacture the PCBAs needed for the six articles at issue here to be considered finished products.  Pl. Ex. 4.**

**Statement:**

8.  By September and October, 2018, CPSMI had successfully obtained all governmentally-mandated documentation, certificates and registrations necessary to operate a production facility in the Philippines, including those mentioned in ¶ 4, *supra*. *See* Exhibit 6.

**Response:**

8.  Objection.  The phrases "successfully obtained" and "all governmentally-mandated" constitute opinion and/or conclusions of law, not fact, and no response is required.  Further, the documents referenced have not been properly authenticated and also constitute inadmissible hearsay.  Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record.  Notwithstanding, and without waiving our objections, admits that Pl. Ex. 6 includes copies of permits and certificates of registration and incorporation for CPSMI, but denies that each of these documents were obtained by September and October, 2018, because some are dated November of 2018.  Pl. Ex. 6.  Further, denies the admissibility of the cited documents.

**Statement:**

9.  CPSMI's manufacturing operations began producing finished products at the end of October 2018. The first finished products manufactured at the CPSMI Manila factory were UPS Model No. CP550SLG (a model not at issue in this case).

**Response:**

9.  Objection.  This statement incorporates multiple issues and/or multiple sentences and, thus, is not short and concise.  Further, this statement does not cite to admissible evidence and thus fails to comply with Rule 56.3(c).  Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record.  **Notwithstanding, and without waiving our objections, denies the first sentence because CPSMI did not receive equipment to manufacture the PCBAs needed for the six articles at issue here to be considered finished products.  Pl. Ex. 4.  Denies for lack of knowledge or information sufficient to either admit or deny whether the first finished products manufactured at the CPSMI Manila factory were UPS Model No. CP550SLG.**

**Statement:**

10.  The manufacturing operations performed by CPSMI that began in late October 2018 included assembly operations, which joined various parts, components and materials to produce UPS and SVP devices, the downloading of firmware into the UPS units, and testing, and packaging of both UPS and SVP devices. *See e.g.,* Affirmation of Brent Lovett in Support of Plaintiff's Motion for Summary Judgment.

**Response:**

10.  Objection.  This statement does not cite to admissible evidence.  Instead, it includes a "*See e.g.*" cite to the Affirmation of Brent Lovett, which improperly calls for an inferential step to be made between the statement and this affirmation.  The "*e.g.*" suggests other documents support this statement but, contrary to Rule 56.3(c), plaintiff fails to cite any of these documents.  Further, Mr. Lovett is not an employee of, nor has he witnessed any manufacturing or assembly work at CPSMI.  Def. Ex. 2 (September 11, 2020 Rule 30(b)(6) Deposition of Plaintiff) at 9:12-24; 24:1-6.  Likewise, Mr. Lovett's Affirmation is not made on personal knowledge and does not satisfy 28 U.S.C § 1746.  Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record.  **Notwithstanding, and without waiving our objections, denies that the Lovett Affirmation so states.  *See*  Docket No. 48-4 at 6-9.**

**Statement:**

11.  In the months following October 2018, CPSMI continued to expand its manufacturing operations so that it could produce additional UPS and SVP models at CPSMI's facilities in the Philippines. *See* Exhibit 4 (FRE 1006 Summary of Invoices, Shipping, and Philippines Importation Documents Relating to CPSMI's Acquisition of Manufacturing Equipment); *see also*, Affirmation of Patrick B. Klein in Support of Plaintiff's Motion for Summary Judgment.

**Response:**

11.  Objection.  The statement does not cite to admissible evidence as there is no accompanying translation of all foreign language words included in cited summary Pl. Ex. 4, and thus the

exhibit is not fully comprehensible, and fails to comply with Rule 56.3(c). "It is a 'well-established rule that a document in a foreign language is generally inadmissible unless accompanied by a certified English translation.'" *Heredia v. Americare, Inc.*, 2020 U.S. Dist. LEXIS 122880, *11-*12 (S.D.N.Y. July 13, 2020) (citations omitted). Further, as discussed above in paragraph 11 of our Preliminary Statement and Objections, plaintiff failed to establish that the documents underlying these summary exhibits are themselves authentic and admissible. Further, the Klein Affirmation does not state that it is made based on personal knowledge, and fails also to comply with 28 U.S.C. § 1746. Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record. **Notwithstanding, and without waiving our objections, admits that CPSMI expanded its operations after October 2018.**

## II. CYBER POWER TAIWAN CREATES PHISONIC, INC. AND PURCHASES/IMPORTS NECESSARY EQUIPMENT TO MANUFACTURE PCBAs IN THE PHILIPPINES.

**Statement:**

12. On March 6, 2019, CPSI incorporated a new subsidiary in the Philippines, Phisonic, Inc. ("Phisonic"), to operate in the factory space immediately adjacent to CPSMI, at Unit A1, Block 1, Lot 6, Phase 2 Golden Gate Business Park, Barangay Buenavista, General Trias City, Cavite, Philippines. *See* Exhibit 7 (CPSMI and Phisonic Floorplan at Units A & B, Block 1, Lot 6, Phase 2 Golden Gate Business Park, Barangay Buenavista, General Trias City, Cavite, Philippines). Phisonic thereafter obtained all required certifications and registrations necessary to commence production in the Philippines. *See* Exhibit 8 (Phisonic Philippines Certificates). As indicated in Exhibit 7, Phisonic and CPSMI operate under the same building and are accessible under the same roof. Though they have separate exterior entrances, workers can walk between the two companies without exiting the building. *Id.*; *see also* Manual Exhibits 1 and 2; *see also*, Affirmation of Chi-Ting Huang (a/k/a Tim Huang) in Support of Plaintiff's Motion for Summary Judgment; Affirmation of Paolo Kint Cendana in Support of Plaintiff's Motion for Summary Judgment.

**Response:**

12. Objection. This statement incorporates multiple issues and/or multiple sentences and, thus, is not short and concise. Further, the first sentence does not cite to admissible evidence, as Pl. Ex. 7 purports to be a floor plan but has not been authenticated and also constitutes inadmissible hearsay. Further, at 100% zoom (and even at 200% zoom), many of the PDF's words in the exhibit are illegible, and thus the exhibit is not fully comprehensible and fails to comply with the admissibility requirements of Rule 56.3(c). Further, the documents comprising Exhibit 8 have not be authenticated, and also constitute inadmissible hearsay. Further, the third sentence cites to the affirmations of Chi-Tin Huang and Paolo Kint Cendana. The Cendana affirmation is inadmissible because (i) this witness was not disclosed in plaintiff's Rule 26 disclosures, and (ii) his foreign affirmation fails to comply with 28 U.S.C. § 1746. The Huang affirmation is a foreign affirmation that does not comply with 28 U.S.C. § 1746 and, therefore, is inadmissible. Further, the video and the statements made on the video, designated as Manual Exhibit 1, do not

constitute admissible evidence because they are statements from Mr. Huang, whose affirmation is inadmissible. Moreover, Mr. Huang admits that the video does not depict the subject merchandise. Thus, Pl. Manual Exhibit 1 is irrelevant as to the disputed issues involving the subject merchandise. Further, Mr. Huang claims that this exhibit is "offered as a demonstrative or pedagogical exhibit, in accordance with Rule 611 of the Federal Rules of Evidence," but does not state how he has personal knowledge of these rules. Similarly, Pl. Manual Exhibit 2 does not depict the subject merchandise and is irrelevant. Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record. Notwithstanding, and without waiving our objections, defendant admits that CPSMI and Phisonic are located at Block 1, Lot 6, Phase 2 Golden Gate Business Park, Barangay Buenavista, General Trias City, Cavite, Philippines. **Further, admits Phisonic is a Philippine corporation and subsidiary of CPSI.**

**Statement:**

13.  Beginning in August 2019, CPSI arranged for the shipment of capital equipment, including but not limited to surface mount technology ("SMT") and dual in-line package ("DIP") production machines, from CPSSZI's Chinese factory to Phisonic's Philippines factory. *See* Exhibit 5 (FRE 1006 Summary of Invoices, Shipping, and Philippines Importation Documents Relating to Phisonic Inc.'s Acquisition of Printed Circuit Board Assembly Manufacturing Equipment); *see also*, Affirmation of Patrick B. Klein in Support of Plaintiff's Motion for Summary Judgment. This equipment was used to manufacture printed circuit board assemblies ("PCBA"), which are components of UPS and SVP devices. The shipment of board population equipment included the following: PCB loader; Solder Paste Printing machine; High speed SMT placement machine; a reflow oven; PCB unloader; radial lead component insertion machine (Automatic component insert machine); numerous conveyor belts; stacks; unloading machines; component lead cutting machines (Part shearing machine); Electroformer molding machine; Resistor lead forming machine; Jumper wire insertion machine (Jumper machine); testing systems, and numerous production lines, trolleys, and anti-static carts. *Id.*

**Response:**

13.  Objection. This statement incorporates multiple issues and/or multiple sentences and, thus, is not short and concise. Further, the statement does not cite to admissible evidence as there is no accompanying translation of all foreign language words included in cited summary Pl. Ex. 5, and thus the exhibit is not fully comprehensible, and fails to comply with Rule 56.3(c). "It is a 'well-established rule that a document in a foreign language is generally inadmissible unless accompanied by a certified English translation.'" *Heredia v. Americare, Inc.*, 2020 U.S. Dist. LEXIS 122880, *11-*12 (S.D.N.Y. July 13, 2020) (citations omitted). Further, as discussed above in paragraph 11 of our Preliminary Statement and Objections, plaintiff failed to establish that the documents underlying Pl. Ex. 5 are themselves authentic and admissible. Further, the Klein Affirmation does not state that it is made based on personal knowledge, and fails also to comply with 28 U.S.C. § 1746. Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record. **Notwithstanding, and without waiving our objections, admits that after August 2019, equipment, including**

surface mount technology ("SMT") and dual in-line package ("DIP") production machines, was imported into the Philippines for use at the Phisonic factory.

**Statement:**

14.  Beginning in September 2019, Phisonic began to manufacture PCBAs in the Philippines for use in CPSMI's UPS and SVP manufacturing operations. These operations included populating printed circuit boards with microcomponents, and soldering the microcomponents in place using specialized surface mount technology ("SMT") equipment.

**Response:**

14.  Objection.  This statement incorporates multiple issues and/or multiple sentences and, thus, is not short and concise.  Further, this statement does not cite to admissible evidence and thus fails to comply with Rule 56.3(c).  Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record.  **Notwithstanding, and without waiving our objections, denies for lack of knowledge or information sufficient to either admit or deny whether Phisonic actually has manufactured PCBAs for use in CPSMI's UPS and SVP assembly operations.**

## CUSTOMS ENTRY AT ISSUE IN THIS CASE

**Statement:**

15.  CPSUSA imported the subject merchandise into the U.S. under cover of Minneapolis Consumption Entry No. 791-2578496-1, of March 27, 2020. *See e.g.,* ECF No. 20.

**Response:**

15.  Denies that the cited document fully supports this statement because the correct Entry No. is 791-2578496-2 and the correct entry date is April 3, 2020.  ECF Nos. 1, 20.  Admits the remainder of this statement.

**Statement:**

16.  All of the Subject Merchandise was produced, through manufacture, assembly, testing and other operations, at Cyber Power's manufacturing facility, CPSMI, located in the Philippines. *See e.g.,* Affirmation of Brent Lovett in Support of Plaintiff's Motion for Summary Judgment. All of the Subject Merchandise, in its condition as imported, was packaged into retail boxes bearing the permanent, legible and conspicuous annotation "Made in Philippines." *Id.*

**Response:**

16.  Objection.  This statement incorporates multiple issues and/or multiple sentences and, thus, is not short and concise.  Further, this statement relies on an affirmation that is inadmissible because it is not made with personal knowledge and fails to comply with 28 U.S.C. § 1746.  Further, the terms "produced, through manufacture," in the first sentence and "permanent, legible and conspicuous" in the second sentence constitute legal argument and/or conclusions of law, to which no response is required.  Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record.  Notwithstanding and without waiving our objections, denies that "[a]ll of the Subject Merchandise was produced, through manufacture," at CPSMI.  Def. Exs. 14, 15.  Admits that the subject merchandise was packaged into retail boxes marked "Made in Philippines."

**Statement:**

17.  CBP at the Port of Minneapolis, Minnesota, detained the merchandise for inspection pursuant to 19 U.S.C. § 1499(c)(2). *See e.g.,* ECF No. 20; Bates 96. CBP also issued to CPSUSA a Customs Form ("CF") 4647 Notice to Mark and/or Redeliver. *See e.g.,* ECF No. 20; Bates 97-98. The Notice to Mark or Redeliver states in pertinent part: "All UPS and surge protectors must be entered as Chinese goods and marked made in China." *Id.*

**Response:**

17.  Objection.  This statement incorporates multiple issues and/or multiple sentences and, thus, is not short and concise.  Notwithstanding, and without waiving our objection, admits that the cited evidence supports this statement.

**Statement:**

18.  Plaintiff declined to change the "Made in Philippines" marking on the goods and their packages.

**Response:**

18.  Objection.  This statement does not cite to admissible evidence and thus fails to comply with Rule 56.3(c).  Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record.  Notwithstanding, and without waiving our objection, and to the extent "goods" in this paragraph means the subject merchandise, admits.

**Statement:**

19.  On May 10, 2020, the Subject Merchandise was deemed excluded by operation of 19 U.S.C. § 1499(c)(5), which states in pertinent part:

(5) Effect of failure to make determination
     (A) The failure by the Customs Service to make a final determination with respect to the admissibility of detained merchandise within 30 days after the merchandise has been presented for customs examination, or such longer period if specifically authorized by law, shall be treated

14

as a decision of the Customs Service to exclude the merchandise for purposes of section 1514(a)(4) of this title.

**Response:**

19.  Admits that the subject merchandise was deemed excluded by operation of 19 U.S.C. § 1499(c)(5), and that 19 U.S.C. § 1499(c)(5)(A) is accurately quoted in this paragraph.  Denies that the date of the deemed exclusion was May 10, 2020 because the merchandise was deemed excluded on May 3, 2020, which was thirty days after its presentation for examination on April 3, 2020.  Docket No. 20.

**Statement:**

20.  Plaintiff timely protested the exclusion of the Subject Merchandise on May 21, 2020 by filing Minneapolis Port Protest No. 3501-20-101425. *See e.g., ECF No. 20*. The Protest, and supporting materials submitted therewith, contended that all of the imported goods were products of the Philippines, for marking and entry purposes, having been produced in the Philippines by a process of "substantial transformation," resulting in the creation of a new article of commerce, having a name, character or use different from those of its component parts or materials.

**Response:**

20.  Objection.  This statement incorporates multiple issues and/or multiple sentences and, thus, is not short and concise.  Notwithstanding, and without waiving our objection, admits the first sentence of this paragraph to the extent it refers to the deemed exclusion of the subject merchandise.  Otherwise denies.  *See* Docket No. 20-1.  Admits that the second sentence summarizes the claim made by plaintiff in Protest 3501-20-101425, but denies its validity.  *See* Def. Ex. 15.

**Statement:**

21.  CBP denied Plaintiff's protest in full on June 19, 2020. *See e.g.*, ECF No. 20.

**Response:**

22.  Admits.

**Statement:**

22.  Plaintiff timely filed this action on June 22, 2020, to challenge the denial of its protest. *See* ECF Nos. 1 (Summons); 3 (Complaint); 20 (Protest and Entries).

**Response:**

22.  Admits.

## SUBJECT MERCHANDISE AT ISSUE IN THIS CASE

**Statement:**

23.  At issue in the denied protest which led to the filing of this expedited case are six (6) different products produced by Cyber Power Philippines at its manufacturing plant in the Philippines, as follows:
a. Five (5) models of uninterruptible power supplies ("UPS"):
      i. Model No. CP600LCDa (a/k/a CP600LCD),
      ii. Model No. CBN50U48A-1,
      iii. Model No. CST135XLU,
      iv. Model No. OR500LCDRM1U, and
      v. Model No. SX650U.
b. One (1) model of surge voltage protector ("SVP"):
      i. Model No. HT1206UC2RC1.

**Response:**

23.  Objection.  The term "manufacturing" renders this a statement of opinion, not fact, and is also vague and ambiguous.  Further, the term "produced" renders this statement a legal argument and/or conclusion of law, to which no response is required.  Further, this statement does not cite to admissible evidence as required by Rule 56.3.  Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record. Notwithstanding, and without waiving our objections, admits that the six models listed and covered by Entry No. 791-2578496-2 are the subject of this action.

## I. UPS DEVICES AT ISSUE

### A. UPS Model No. CP600LCDa

**Statement:**

24.  The UPS Model No. CP600LCDa (a/k/a CP600LCD) is a 600VA/340W uninterruptible power supply which provides battery backup (using simulated sine wave output) and surge protection for desktop computers, workstations, networking devices, and home entertainment systems. During longer power outages, the CP600LCD delivers enough battery backup power to permit a device to continue operating until auxiliary power is connected or to perform a graceful shutdown to protect against the loss of data and damage to valuable electronics. The multifunction LCD display provides real time status and alerts of potential problems. *See* Exhibit 9 (Product Spec Sheet). The product is depicted below:



**Response:**

24.  Objection.  This statement incorporates multiple issues and/or multiple sentences and, thus, is not short and concise.  Notwithstanding, and without waiving our objection, admits this statement to the extent supported by the Product Spec Sheet set forth in Exhibit 9.  Otherwise, denies.  *See* Pl. Exhibit 9 (Product Spec Sheet).

**Statement:**

25.  A user manual for UPS Model No. CP600LCDa is appended as Exhibit 10 (User Manual, UPS Model No. CP600LCDa).

**Response:**

25.  Admits.

**Statement:**

26.  The facts regarding the Philippines-manufacture of UPS Model No. CP600LCDa are unique because the printed circuit board assemblies ("PCBA") for the UPS Model No. CP600LCDa were manufactured by Phisonic in the Philippines. The bill of materials for UPS Model No. CP600LCDa shows that discrete components are assembled together in the Philippines to create a new and different article of commerce, *viz.* an uninterruptible power supply. *See* Exhibit 11 (Bill of Materials for All Components in UPS Model No. CP600LCDa); *see* Exhibit 12 (Bill of Materials for PCBA components in UPS Model No. CP600LCDa). The internal components of UPS Model No. CP600LCDa, including those comprising the PCBAs, are products of *inter alia* China, Taiwan, Malaysia, Morocco, and Mexico. *Id.* As stated, all of the DIP and SMT processes to manufacture the PCBAs in UPS Model No. CP600LCDa occur in the Philippines and are performed by Phisonic. *Id.*

**Response:**

26.  Objection.  This statement incorporates multiple issues and/or multiple sentences and, thus, is not short and concise.  Further, the first sentence of this statement does not cite to admissible evidence as required by Rule 56.3.  Further, the statement does not cite to admissible evidence as there is no accompanying translation of all foreign language words included in cited Pl. Exs. 11 and 12, so the exhibits are not fully comprehensible, and thus fail to comply with Rule 56.3(c).  "It is a 'well-established rule that a document in a foreign language is generally inadmissible unless accompanied by a certified English translation.'"  *Heredia v. Americare, Inc.*, 2020 U.S. Dist. LEXIS 122880, *11-*12 (S.D.N.Y. July 13, 2020) (citations omitted).  Further, Pl. Exs. 11

and 12 have not been authenticated and also constitute inadmissible hearsay.  Further, the term
"unique" in the first sentence and the term "*inter alia*" in the third sentence are vague and
ambiguous.  Further, the term "manufactured" in the first sentence and the term "to create a new
and different article of commerce" in the second sentence constitute legal argument and/or
conclusions of law, to which no response is required.  Accordingly, and for the reasons shown in
our corresponding motion to strike, this statement should be stricken from the record.
Notwithstanding, and without waiving our objections, denies the first and second sentences.
Def. Ex. 14, Def. Ex. 15.  Admits the third sentence, but denies any inference that the
components proportionally originated in the stated countries, because approximately 92.2% of
the components originated in China.  Pl. Ex. 12.  As to the fourth sentence, denies that the cited
exhibit factually supports the statement.  Pl. Exs. 11, 12.

**Statement:**

27.  A timeline of the work performed on UPS Model no. CP600LCD is provided at Exhibit 13
(Production Timeline, UPS Model No. CP600LCDa). This Production timeline shows that SMT
and DIP assembly operations are performed on PCBs in the Philippines to produce PCBAs that
are then assembled at CPSMI's Philippines facility with other components to create finished
UPS devices. *Id.*

**Response:**

27.  Objection.  The statement does not cite to admissible evidence because Pl. Ex. 13 has not
been authenticated, and also constitutes inadmissible hearsay.  Accordingly, and for the reasons
shown in our corresponding motion to strike, this statement should be stricken from the record.
Notwithstanding, and without waiving our objection, admits that Pl. Ex. 13 purports to be a
production timeline for UPS Model No. CP600LCD, but denies its admissibility.  Denies that
SMT and DIP assembly operations were performed on PCBs in the Philippines to produce
PCBAs incorporated in UPS Model No. CP600LCD covered by this court action.  Def. Ex. 14.

**Statement:**

28.  The assembly operations for UPS Model No. CP600LCDa that are performed by CPSMI in
the Philippines are detailed at Exhibit 14 (Assembly Operations Flowchart, UPS Model No.
CP600LCDa). Additional details regarding the Philippines-manufacture of UPS Model No.
CP600LCDa, including the manufacture of internal PCBAs, are provided at Exhibit 15, and
Exhibit 16 (Standard Operating Procedure, UPS Model No. CP600LCDa).

**Response:**

28.  Objection.  The statement does not cite to admissible evidence because Pl. Exs. 14-16 have
not been authenticated and also constitute inadmissible hearsay.  Moreover, there is no
accompanying translation of all foreign language words included in Pl. Exs. 15 and 16, so the
exhibits are not fully comprehensible, and thus fail to comply with Rule 56.3(c).  "It is a 'well-
established rule that a document in a foreign language is generally inadmissible unless

accompanied by a certified English translation.'" *Heredia v. Americare, Inc.*, 2020 U.S. Dist. LEXIS 122880, *11-*12 (S.D.N.Y. July 13, 2020) (citations omitted).  Further, the term manufacture in the second sentence constitutes legal argument and/or conclusions of law, to which no response is required.  Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record.  Notwithstanding, and without waiving our objections, denies that UPS Model No. CP600LCD covered by this action was manufactured in the Philippines.  Def. Ex. 14.  Further, denies that the cited exhibits factually support the statement.  Pl. Exs. 14-15.

**Statement:**

29.  Depictions of the UPS Model No. CP600LCDa's Schematic of PCBA, Dimension Drawing, and Exploded View Diagram are appended as Exhibit 17 (Schematic of PCBA, Dimension Drawing, and Exploded View Diagram, UPS Model No. CP600LCDa). A depiction of the exploded view diagram for UPS Model No. CP600LCDa is included below:



**Response:**

29.  Objection.  The statement does not cite to admissible evidence because Pl. Ex. 17 has not been authenticated and also constitutes inadmissible hearsay.  Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record. Notwithstanding, and without waiving our objections, admits that Pl. Ex. 17 purports to be a schematic of UPS Model No. CP600LCDa, but denies its admissibility.

**Statement:**

30.  Various certificates attaching to UPS Model No. CP600LCDa have been issued, including UL Energy Star: Energy Efficiency Certificate and Test Report; UL Certificate of Compliance; and FCC Certificate of Conformity. *See* Bates 2355-2483.

20

**Response:**

30.  Objection.  The documents with Bates numbers 2355-2483 are irrelevant and not material.  Notwithstanding, and without waiving our objection, denies that the certificates included under Bates 2355-2483 attach to UPS Model No. CP600LCDa imported under cover of the entry at issue in this action because the cited Bates-numbered documents reference testing and/or certification periods of May 2017 and August 2018, months before the subject merchandise was produced and before CPSMI is alleged to have gone online in October 2018.  Def. Ex.10 (Bates 2355, 2361).

**Statement:**

31.  The assembled UPS Model No. CP600LCDa is then programmed in the Philippines with firmware which is produced in Taiwan and which enables the electronic components of the UPS to function. *See e.g.,* Affirmation of Thomas Fuehrer in Support of Plaintiff's Motion for Summary Judgment.

**Response:**

31.  Objection.  The purported support for this statement includes a "*See e.g.*" cite to the Affirmation of Thomas Fuehrer, which improperly calls for an inferential step to be made between the statement and this affirmation.  The "*e.g.*" suggests other documents support this statement but, contrary to Rule 56.3(c), plaintiff fails to cite any of these documents.  Further, this statement does not cite to admissible evidence because, as noted in paragraph 10 of our Preliminary Statement and Objections, the Affirmation of Thomas Fuehrer does not comply with 28 U.S.C. § 1746.  Moreover, although the Fuehrer Affirmation contains a statement that it is made upon personal knowledge, there is nothing in the affirmation to establish that Mr. Fuehrer has personal knowledge of events occurring in Taiwan.  Rather, his knowledge likely was obtained from another person through a communication or document and does not constitute personal knowledge.  Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record.  Notwithstanding, and without waiving our objections, admits that the Fuehrer Affirmation supports the statement in this paragraph, but denies its admissibility.

**Statement:**

32.  None of the components which are assembled in the Philippines, taken individually, has the ability to detect power outages or serve as a backup power supply system using battery power. *See e.g.,* Affirmation of Brent Lovett in Support of Plaintiff's Motion for Summary Judgment.

**Response:**

32.  Objection.  The use of the "*See e.g.*" cite improperly calls for an inferential step to be made between the statement and this affirmation.  The "*e.g.*" suggests other documents support this

statement but, contrary to Rule 56.3(c), plaintiff fails to cite any of these documents. Further, as noted in paragraph 10 of our Preliminary Statement and Objections, the Affirmation of Brent Lovett does not comply with 28 U.S.C. § 1746. Further, the Lovett Affirmation does not comply with Rule 56(c)(4) or Fed. Rule Evid. R. 602 because it does not state that it is made on personal knowledge. Further, the use of the term "components" renders the statement vague and ambiguous. Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record. Notwithstanding, and without waiving our objections, and to the extent the term "components" means a subset of the parts of each of the uninterruptible power supply models covered by the entry at issue here, admits the Lovett Affirmation states that "[n]one of these components have the ability to perform the function of an uninterruptible power supply," but denies any inference that such components undergo a substantial transformation as a result of assembly operations performed in the Philippines. Def. Ex. 15.

**Statement:**

33.  The assembly operations for UPS Model No. CP600LCDa that are performed by CPSMI in the Philippines result in the creation of a new and different article of commerce with a new and different name, character, and use as compared to its Philippines-assembled components. *Id.*

**Response:**

33.  Objection. The "*Id*." support to this stand-alone statement is vague and ambiguous. To the extent the "*Id*." refers to the Lovett Affirmation from Statement 32, we incorporate our objections to it by reference as though fully set forth here. Notwithstanding, and without waiving our objections, this statement constitutes legal argument and/or conclusions of law to which no response is required. **Notwithstanding, and without waiving our objections, to the extent a response is required, denies that the assembly operations performed by CPSMI for UPS Model No. CP600LCDa result in a substantial transformation.**

**B. UPS Model CBN50U48A-1**

**Statement:**

34.  UPS Model no. CBN50U48A-1 is an uninterruptible power supply which provides cable telephony, wireless local loop ("WLL") and fiber to the premise ("FTTx") suppliers with a local battery backup and power supply for home and office networking equipment. It supplies surge protection and continuous 48Vdc during power surges and outages, keeping local power network interface units up and running. *See* Exhibit 18 (Spec Sheet, UPS Model No. CBN50U48A-1). The product is depicted below:



**Response:**

34. Objection. This statement incorporates multiple issues and/or multiple sentences and, thus, is not short and concise. Further, the first sentence does not cite to any evidence as required by Rule 56.3. Accordingly, and for the reasons shown in our corresponding motion to strike, the first sentence should be stricken from the record. Notwithstanding, and without waiving our objection, admits the second sentence of this statement to the extent supported by the Product Spec Sheet set forth in Exhibit 18. Otherwise, denies. *See* Pl. Ex. 18.

**Statement:**

35. A user manual for UPS Model No. CBN50U48A-1 is appended as Exhibit 19 (User Manual, UPS Model No. CBN50U48A-1). Technical specifications for UPS Model No. CBN50U48A-1 are appended as Exhibit 20 (Technical Specs, UPS Model No. CBN50U48A-1).

**Response:**

35. Admits.

**Statement:**

36. The bill of materials for UPS Model No. CBN50U48A-1 shows that discrete components are assembled together to create a new and different article of commerce, *viz.* an uninterruptible power supply. *See* Exhibit 21 (Bill of Materials for All Components in UPS Model No. CBN50U48A-1); *see* Exhibit 22 (Bill of Materials for PCBA components in UPS Model No. CBN50U48A-1). The components of UPS Model No. CBN50U48A-1, including those comprising the main board PCBA, are products of *inter alia* China, Taiwan, Malaysia, Morocco, and Mexico. *Id.* The DIP and SMT processes used to manufacture the main board PCBA for UPS Model No. CBN50U48A-1 occur in China and are performed by Cyber Power China. *Id.*

**Response:**

36.  Objection.  This statement incorporates multiple issues and/or multiple sentences and, thus, is not short and concise.  Further, the statement does not cite to admissible evidence as Pl. Exs. 21 and 22 have not been authenticated and also constitute inadmissible hearsay.  Further, there is no accompanying translation of all foreign language words included in Pl. Exs. 21 and 22, thus, these exhibits are not fully comprehensible, and fail to comply with Rule 56.3(c).  "It is a 'well-established rule that a document in a foreign language is generally inadmissible unless accompanied by a certified English translation.'"  *Heredia v. Americare, Inc.*, 2020 U.S. Dist. LEXIS 122880, *11-*12 (S.D.N.Y. July 13, 2020) (citations omitted).  Further, the phrase "to create a new and different article of commerce" in the first sentence constitutes legal argument and/or conclusions of law to which no response is required.  Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record.  Notwithstanding, and without waiving our objections, admits that certain components are assembled in the Philippines to create UPS Model No. CBN50U48A-1, but denies any inference that the assembly of these components in the Philippines constitutes a substantial transformation of such components resulting in "a new and different article of commerce."  Def. Ex. 15.  Admits the second sentence, but denies any inference that the components proportionally originated in the stated countries, because approximately 90.2% of the components originated in China.  Pl. Exs. 21-22.  Admits the third sentence.

**Statement:**

37.  A timeline of the work performed in the Philippines on UPS Model No. CBN50U48A-1 is provided at Exhibit 23 (Philippines Production Timeline, UPS Model No. CBN50U48A-1). This timeline shows that SMT and DIP assembly operations are performed on PCBs in China to produce a PCBA, and that the PCBA is then imported into the Philippines for final UPS assembly operations by CPSMI into the UPS Model No. CBN50U48A-1. *Id.* A step-by-step procedure of the SMT and DIP processes taking place in China according to Cyber Power's production standard operating procedures is depicted at Exhibit 24 (Standard Operating Procedures for Chinese Manufacture of PCBA, UPS Model No. CBN50U48A-1). A step-by-step procedure of the Philippines-manufacture of UPS Model No. CBN50U48A-1 is provided at Exhibit 25 (Standard Operating Procedure for Philippines Manufacture of UPS Model No. CBN50U48A-1).

**Response:**

37.  Objection.  This statement incorporates multiple issues and/or multiple sentences and, thus, is not short and concise.  Further, the statement does not cite to admissible evidence as Pl. Exs. 23-25 have not been authenticated, and also constitute inadmissible hearsay.  Further, there is no accompanying translation of all foreign language words included in Pl. Exs. 24 and 25, thus, these exhibits are not fully comprehensible, and fail to comply with Rule 56.3(c).  "It is a 'well-established rule that a document in a foreign language is generally inadmissible unless accompanied by a certified English translation.'"  *Heredia v. Americare, Inc.*, 2020 U.S. Dist. LEXIS 122880, *11-*12 (S.D.N.Y. July 13, 2020) (citations omitted).  Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the

record.  Notwithstanding, and without waiving our objections, admits that SMT and DIP assembly operations are performed on PCBs in China to produce a PCBA, and that the PCBA is then imported into the Philippines; admits that Pl. Ex. 23 purports to be a production timeline for UPS Model No. CBN50U48A-1; Otherwise, denies.  *See* Pl. Exs. 23, 24, 25.

**Statement:**

38.  The assembly operations for UPS Model No. CBN50U48A-1 that are performed by CPSMI in the Philippines are also detailed in a flowchart at Exhibit 26 (Assembly Operations Flowchart, UPS Model no. CBN50U48A-1).

**Response:**

38.  Objection.  This statement does not cite to admissible evidence as Pl. Ex. 26 has not been authenticated, and also constitutes inadmissible hearsay.  Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record.  Notwithstanding, and without waiving our objections, admits that Pl. Ex. 26 purports to be a flowchart for UPS Model No. CBN50U48A-1.  Otherwise, denies.  *See* Pl. Ex. 26.

**Statement:**

39.  Depictions of the UPS Model No. CBN50U48A-1's Schematic of PCBA, Dimension Drawing, and Exploded View Diagram are appended as Exhibit 27 (Schematic of PCBA, Dimension Drawing, and Exploded View Diagram, UPS Model No. CBN50U48A-1). A depiction of the exploded view diagram for UPS Model No. CBN50U48A-1 is included below:



**Response:**

39.  Objection.  This statement does not cite to admissible evidence because Pl. Ex. 27 has not been authenticated, and also constitutes inadmissible hearsay.  Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record. Notwithstanding, and without waiving our objection, admits that Pl. Ex. 27 purports to be a schematic of UPS Model No. CBN50U48A-1.

**Statement:**

40.  Various certificates attaching to UPS Model No. CBN50U48A-1 have been issued, including UL Certificate of Compliance; and FCC Certificate of Conformity. Bates 2351; Bates 4258-4302.

**Response:**

40.  Admits.

**Statement:**

41.  The assembled UPS Model No. CBN50U48A-1 is then programmed in the Philippines with firmware which is produced in Taiwan and which enables the electronic components of the UPS to function. *See e.g.,* Affirmation of Thomas Fuehrer in Support of Plaintiff's Motion for Summary Judgment.

**Response:**

41.  Objection.  The purported support for this statement includes a "*See e.g.*" cite to the Affirmation of Thomas Fuehrer, which improperly calls for an inferential step to be made between the statement and this affirmation.  The "*e.g.*" suggests other documents support this statement but, contrary to Rule 56.3(c), plaintiff fails to cite any of these documents.  Further, this statement does not cite to admissible evidence because, as noted in paragraph 10 of our Preliminary Statement and Objections, the Affirmation of Thomas Fuehrer does not comply with 28 U.S.C. § 1746.  Moreover, although the Fuehrer Affirmation contains a statement that it is made upon personal knowledge, there is nothing in the affirmation to establish that Mr. Fuehrer has personal knowledge of events occurring in Taiwan.  *See* USCIT Rule 56(c)(4); Fed. R. Evid. 602.  Rather, his knowledge likely was obtained from another person through a communication or document and does not constitute personal knowledge.  Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record. Notwithstanding, and without waiving our objections, admits that the Fuehrer Affirmation supports the statement in this paragraph, but denies its admissibility.

**Statement:**

42.  None of the components which are assembled in the Philippines, taken individually, has the ability to detect power outages or serve as a backup power supply system using battery power. *See e.g.,* Affirmation of Brent Lovett in Support of Plaintiff's Motion for Summary Judgment.

**Response:**

42.  Objection.  The use of the "*See e.g.*" cite improperly calls for an inferential step to be made between the statement and this affirmation.  The "*e.g.*" suggests other documents support this statement but, contrary to Rule 56.3(c), plaintiff fails to cite any of these documents.  Further, as noted in paragraph 10 of our Preliminary Statement and Objections, the Affirmation of Brent Lovett does not comply with 28 U.S.C. § 1746.  Further, the Lovett Affirmation does not comply with Rule 56(c)(4) or Fed. Rule Evid. R. 602 because it does not state that it is made on personal knowledge.  Further, the use of the term "components" renders the statement vague and ambiguous.  Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record.  Notwithstanding, and without waiving our objections, and to the extent the term "components" means a subset of the parts of each of the uninterruptible power supply models covered by the entry at issue here, admits the Lovett Affirmation states that "[n]one of these components have the ability to perform the function of an uninterruptible power supply," but denies its admissibility.  Denies any inference that such

components undergo a substantial transformation as a result of assembly operations performed in the Philippines.  Def. Ex. 15.

**Statement:**

43.  The assembly operations for UPS Model No. CBN50U48A-1 that are performed by CPSMI in the Philippines result in the creation of a new and different article of commerce with a new name, character, and use as compared to its Philippines-assembled components. *Id.*

**Response:**

43.  Objection.  The "*Id*." support to this stand-alone statement is vague and ambiguous.  To the extent the "*Id*." refers to the Lovett Affirmation from Statement 42, we incorporate our objections to it by reference as though fully set forth here.  Notwithstanding, and without waiving our objections, this statement constitutes legal argument and/or conclusions of law to which no response is required.  **Notwithstanding, and without waiving our objections, to the extent a response is required, denies that the assembly operations performed by CPSMI for UPS Model No. CBN50U48A result in a substantial transformation.**

## C. UPS Model No. CST135XLU

**Statement:**

44.  UPS Model No. CST135XLU is a 1350VA/810W battery backup designed to be used with automatic data processing equipment and other devices. It is a line interactive power supply using a simulated sine wave for control of battery functions. *See* Exhibit 28 (Spec Sheet, UPS Model No. CST135XLU). The product is depicted below:



**Response:**

44.  Objection.  This statement incorporates multiple issues and/or multiple sentences and, thus, is not short and concise.  Further, the first sentence does not cite to any evidence as required by Rule 56.3.  Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record.  Notwithstanding, and without waiving our objections, admits sentences two and three of this statement to the extent supported by the Product Spec Sheet set forth in Pl. Ex. 28.  Otherwise, denies. *See* Pl. Ex. 28.

**Statement:**

45.  A user manual for UPS Model No. CST135XLU is appended as Exhibit 29 (User Manual, UPS Model No. CST135XLU).

**Response:**

45.  Admits.

**Statement:**

46.  The bill of materials for UPS Model No. CST135XLU shows that discrete components are assembled together to create a new and different article of commerce, *viz.* an uninterruptible power supply.  *See* Exhibit 30 (Bill of Materials for All Components in UPS Model No. CST135XLU); *see* Exhibit 31 (Bill of Materials for Components of PCBAs in UPS Model No. CST135XLU).  The internal components of UPS Model No. CST135XLU, including those comprising the main board and control board PCBAs, are products of *inter alia* China, Taiwan, Malaysia, Morocco, Mexico, the Philippines, and Vietnam. *Id.*  The DIP and SMT processes used to manufacture the main board and control board PCBAs for UPS Model No. CST135XLU occur in China and are performed by Cyber Power China. *Id.*

**Response:**

46.  Objection.  This statement incorporates multiple issues and/or multiple sentences and, thus, is not short and concise.  Further, the statement does not cite to admissible evidence as Pl. Exs. 30 and 31 have not been authenticated, and also constitute inadmissible hearsay.  Further, there is no accompanying translation of all foreign language words included in Pl. Exs. 30 and 31, thus, these exhibits are not fully comprehensible, and fail to comply with Rule 56.3(c).  "It is a 'well-established rule that a document in a foreign language is generally inadmissible unless accompanied by a certified English translation.'"  *Heredia v. Americare, Inc.*, 2020 U.S. Dist. LEXIS 122880, *11-*12 (S.D.N.Y. July 13, 2020) (citations omitted).  Further, the phrase "to create a new and different article of commerce" in the first sentence constitutes legal argument and/or conclusions of law, to which no response is required.  Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record. Notwithstanding, and without waiving our objections, admits that certain components are assembled in the Philippines to create UPS Model No. CST135XLU, but denies any inference that the assembly of these components in the Philippines constitutes a substantial transformation of such components resulting in "a new and different article of commerce."  Def. Ex. 15.  Admits the second sentence, but denies any inference that the components proportionally originated in the stated countries, because approximately 93.5% of the components originated in China.  Pl. Exs. 30, 31.  Admits the third sentence.

**Statement:**

47.  A timeline of the work performed in the Philippines on UPS Model No. CST135XLU is provided at Exhibit 32 (Philippines Production Timeline, UPS Model No. CST135XLU). This timeline shows that SMT and DIP assembly operations are performed on PCBs in China to produce PCBAs, and that the PCBAs are then imported into the Philippines for final UPS assembly operations by CPSMI into the UPS Model No. CST135XLU. *Id.* A step-by-step procedure of the SMT and DIP processes taking place in China according to Cyber Power's production standard operating procedures is depicted at Exhibit 33 (Standard Operating Procedures for Chinese Manufacture of PCBA, UPS Model No. CST135XLU). A step-by-step procedure of the Philippines-manufacture of UPS Model No. CST135XLU is provided at Exhibit 34 (Standard Operating Procedure for Philippines Manufacture of UPS Model No. CST135XLU).

**Response:**

47.  Objection.  This statement incorporates multiple issues and/or multiple sentences and, thus, is not short and concise.  Further, the statement does not cite to admissible evidence as Pl. Exs. 32-34 have not been authenticated and also constitute inadmissible hearsay.  Further, there is no accompanying translation of all foreign language words included in Pl. Exs. 33 and 34, thus, these exhibits are not fully comprehensible, and fail to comply with Rule 56.3(c).  "It is a 'well-established rule that a document in a foreign language is generally inadmissible unless accompanied by a certified English translation.'"  *Heredia v. Americare, Inc.*, 2020 U.S. Dist. LEXIS 122880, *11-*12 (S.D.N.Y. July 13, 2020) (citations omitted).  Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record.  Notwithstanding, and without waiving our objections, admits that SMT and DIP assembly operations are performed on PCBs in China to produce a PCBA, and that the PCBA is then imported into the Philippines; admits that Pl. Ex. 32 purports to be a production timeline for UPS Model No. CBN50U48A-1.  Otherwise, denies.  *See* Pl. Exs. 32, 33, 34.

**Statement:**

48.  The assembly operations for UPS Model No. CST135XLU that are performed by CPSMI in the Philippines are also detailed in a flowchart at Exhibit 35 (Assembly Operations Flowchart, UPS Model No. CST135XLU).

**Response:**

48.  Objection.  This statement does not cite to admissible evidence, as Pl. Ex. 35 has not been authenticated, and also constitutes inadmissible hearsay.  Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record.  Notwithstanding, and without waiving our objections, admits that Pl. Ex. 35 purports to be a flowchart for UPS Model No. CBN50U48A-1. Otherwise, denies.  *See* Pl. Ex. 35.

**Statement:**

49.  Depictions of the UPS Model No. CST135XLU's Schematic of PCBA, Dimension Drawing, and Exploded View Diagram are appended as Exhibit 36 (Schematic of PCBA, Dimension Drawing, and Exploded View Diagram, UPS Model No. CST135XLU). A depiction of the exploded view diagram for UPS Model No. CST135XLU is included below:



**Response:**

49.  Objection.  This statement does not cite to admissible evidence because Pl. Ex. 36 has not been authenticated, and also constitutes inadmissible hearsay.  Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record. Notwithstanding, and without waiving our objection, admits that Pl. Ex. 36 purports to be a schematic of UPS Model No. CST135XLU.

**Statement:**

50.  Various certificates attaching to UPS Model No. CST135XLU have been issued, including UL Energy Star: Energy Efficiency Certificate and Test Report; UL Certificate of Compliance; and FCC Certificate of Conformity. *See* Bates 2486-2555.

**Response:**

50.  Objection.  The documents with Bates numbers 2486-2555 are irrelevant and not material. Notwithstanding, and without waiving our objection, denies that the certificates included under Bates 2486-2555 attach to UPS Model No. CST135XLU covered by the entry at issue in this

action because the cited Bates-numbered documents reference testing and/or certification periods of June and September 2018, months before the subject merchandise was produced and before CPSMI is alleged to have gone online in October 2018.  Def. Ex. 11.

**Statement:**

51.  The assembled UPS Model No. CST135XLU is then programmed in the Philippines with firmware which is produced in Taiwan and which enables the electronic components of the UPS to function. *See e.g.,* Affirmation of Thomas Fuehrer in Support of Plaintiff's Motion for Summary Judgment.

**Response:**

51.  Objection.  The purported support for this statement includes a "*See e.g.*" cite to the Affirmation of Thomas Fuehrer, which improperly calls for an inferential step to be made between the statement and this affirmation.  The "*e.g.*" suggests other documents support this statement but, contrary to Rule 56.3(c), plaintiff fails to cite any of these documents.  Further, this statement does not cite to admissible evidence because, as noted in paragraph 10 of our Preliminary Statement and Objections, the Affirmation of Thomas Fuehrer does not comply with 28 U.S.C. § 1746.  Moreover, although the Fuehrer Affirmation contains a statement that it is made upon personal knowledge, there is nothing in the affirmation to establish that Mr. Fuehrer has personal knowledge of events occurring in Taiwan.  *See* USCIT Rule 56(c)(4); Fed. R. Evid. 602.  Rather, his knowledge likely was obtained from another person through a communication or document and does not constitute personal knowledge.  Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record.  Notwithstanding, and without waiving our objections, admits that the Fuehrer Affirmation supports the statement in this paragraph, but denies its admissibility.

**Statement:**

52.  None of the components which are assembled in the Philippines, taken individually, has the ability to detect power outages or serve as a backup power supply system using battery power. *See e.g.,* Affirmation of Brent Lovett in Support of Plaintiff's Motion for Summary Judgment.

**Response:**

52.  Objection.  The use of the "*See e.g.*" cite improperly calls for an inferential step to be made between the statement and this affirmation.  The "*e.g.*" suggests other documents support this statement but, contrary to Rule 56.3(c), plaintiff fails to cite any of these documents.  Further, as noted in paragraph 10 of our Preliminary Statement and Objections, the Affirmation of Brent Lovett does not comply with 28 U.S.C. § 1746.  Further, the Lovett Affirmation does not comply with Rule 56(c)(4) or Fed. Rule Evid. R. 602 because it does not state that it is made on personal knowledge.  Further, the use of the term "components" renders the statement vague and ambiguous.  Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record.  Notwithstanding, and without waiving our objections, and to the extent the term "components" means a subset of the parts of each of the

uninterruptible power supply models covered by the entry at issue here, admits the Lovett
Affirmation states that "[n]one of these components have the ability to perform the function of
an uninterruptible power supply," but denies its admissibility. Denies any inference that such
components undergo a substantial transformation as a result of assembly operations performed in
the Philippines. Def. Ex. 15.

**Statement:**

53. The assembly operations for UPS Model No. CST135XLU that are performed by CPSMI in
the Philippines result in the creation of a new and different article of commerce with a new
name, character, and use as compared to its Philippines-assembled components. *Id.*

**Response:**

53. Objection. The "*Id*." support to this stand-alone statement is vague and ambiguous. To the
extent the "*Id*." refers to the Lovett Affirmation from Statement 52, we incorporate our
objections to it by reference as though fully set forth here. Notwithstanding, and without
waiving our objections, this statement constitutes legal argument and/or conclusions of law to
which no response is required. **Notwithstanding, and without waiving our objections, to the
extent a response is required, denies that the assembly operations performed by CPSMI for
UPS Model No. CST135XLU result in a substantial transformation.**

**D. UPS Model No. OR500LCDRM1U**

**Statement:**

54. UPS Model No. OR500LCDRM1U is a 500VA/300W UPS which is used as a backup
battery source for various electrical appliances. The product provides battery backup (using
simulated sine wave output) and surge protection for department servers, workgroup servers,
workstations, network devices, and telecom installations without active PFC power supplies. *See*
Exhibit 37 (Spec Sheet, UPS Model No. OR500LCDRM1U). This product uses Automatic
Voltage Regulation ("AVR") to correct minor power fluctuations without switching to battery
power, which extends battery life. AVR is essential in areas where power fluctuations occur
frequently. In the event power to a connected device is lost, the UPS activates a lead acid battery,
which provides emergency power to the connected device until power is restored, or another
source of power (*e.g.*, emergency generator) can be collected. The product is depicted below:





**Response:**

54.  Objection.  This statement incorporates multiple issues and/or multiple sentences and, thus, is not short and concise.  Further, the first, third, and fourth sentences do not cite to any evidence as required by Rule 56.3.  Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record.  Notwithstanding, and without waiving our objection, admits sentences two and five of this statement to the extent supported by the Product Spec Sheet set forth in Pl. Ex. 37.  Otherwise, denies.  *See* Pl. Ex. 37.

**Statement:**

55.  A user manual for UPS Model No. OR500LCDRM1U is appended as Exhibit 38 (User Manual, UPS Model No. OR500LCDRM1U).

**Response:**

55.  Admits.

**Statement:**

56.  The bill of materials for UPS Model No. OR500LCDRM1U shows that discrete components are assembled together to create a new and different article of commerce, *viz.* an uninterruptible power supply.  *See* Exhibit 39 (Bill of Materials for All Components in UPS Model No. OR500LCDRM1U); *see* Exhibit 40 (Bill of Materials for Components of PCBAs in UPS Model No. OR500LCDRM1U).  The internal components of UPS Model No. OR500LCDRM1U, including those comprising the main board and switch board PCBAs, are products of *inter alia* China, Taiwan, and Mexico. *Id.* The DIP and SMT processes used to manufacture the main board and switch board PCBAs for UPS Model No. OR500LCDRM1U occur in China and are performed by Cyber Power China. *Id.*

**Response:**

56.  Objection.  This statement incorporates multiple issues and/or multiple sentences and, thus, is not short and concise.  Further, the statement does not cite to admissible evidence as Pl. Exs. 39 and 40 have not been authenticated and also constitute inadmissible hearsay.  Further, there is no accompanying translation of all foreign language words included in Pl. Exs. 30 and 31, thus, these exhibits are not fully comprehensible, and fail to comply with Rule 56.3(c).  "It is a 'well-established rule that a document in a foreign language is generally inadmissible unless accompanied by a certified English translation.'"  *Heredia v. Americare, Inc.*, 2020 U.S. Dist. LEXIS 122880, *11-*12 (S.D.N.Y. July 13, 2020) (citations omitted).  Further, the phrase "to

create a new and different article of commerce" in the first sentence constitutes legal argument and/or conclusions of law, to which no response is required. Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record. Notwithstanding, and without waiving our objections, admits that certain components are assembled in the Philippines to create UPS Model No. OR500LCDRM1U, but denies any inference that the assembly of these components in the Philippines constitutes a substantial transformation of such components resulting in "a new and different article of commerce." Def. Ex. 15. Admits the second sentence, but denies any inference that the components proportionally originated in the stated countries, because approximately 97.7% of the components originated in China. Pl. Exs. 39, 40. Admits the third sentence.

**Statement:**

57. A timeline of the work performed in the Philippines on UPS Model No. OR500LCDRM1U is provided at Exhibit 41 (Philippines Production Timeline, UPS Model No. OR500LCDRM1U). This timeline shows that SMT and DIP assembly operations are performed on PCBs in China to produce PCBAs, and that the PCBAs are then imported into the Philippines for final UPS assembly operations by CPSMI into the UPS Model No. OR500LCDRM1U. *Id.* A step-by-step procedure of the SMT and DIP processes taking place in China according to Cyber Power's production standard operating procedures is depicted at Exhibit 42 (Standard Operating Procedures for Chinese Manufacture of PCBA, UPS Model No. OR500LCDRM1U). A step-by-step procedure of the Philippines-manufacture of UPS Model No. OR500LCDRM1U is provided at Exhibit 43 (Standard Operating Procedure for Philippines Manufacture of UPS Model No. OR500LCDRM1U).

**Response:**

57. Objection. This statement incorporates multiple issues and/or multiple sentences and, thus, is not short and concise. Further, the statement does not cite to admissible evidence as Pl. Exs. 41-43 have not been authenticated, and also constitute inadmissible hearsay. Further, there is no accompanying translation of all foreign language words included in Pl. Exs. 42 and 43, thus, these exhibits are not fully comprehensible, and fail to comply with Rule 56.3(c). "It is a 'well-established rule that a document in a foreign language is generally inadmissible unless accompanied by a certified English translation.'" *Heredia v. Americare, Inc.*, 2020 U.S. Dist. LEXIS 122880, *11-*12 (S.D.N.Y. July 13, 2020) (citations omitted). Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record. Notwithstanding, and without waiving our objections, admits that SMT and DIP assembly operations are performed on PCBs in China to produce a PCBA, and that the PCBA is then imported into the Philippines; admits that Pl. Ex. 41 purports to be a production timeline for UPS Model No. OR500LCDRM1U. Otherwise, denies. *See* Pl. Exs. 41, 42, 43.

**Statement:**

58. The assembly operations for UPS Model No. OR500LCDRM1U that are performed by CPSMI in the Philippines are also detailed in a flowchart at Exhibit 44 (Assembly Operations Flowchart, UPS Model No. OR500LCDRM1U).

**Response:**

58.  Objection.  This statement does not cite to admissible evidence, as Pl. Ex. 44 has not been authenticated, and also constitutes inadmissible hearsay.  Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record. Notwithstanding, and without waiving our objections, admits that Pl. Ex. 44 purports to be a flowchart for UPS Model No. OR500LCDRM1U. Otherwise, denies.  *See* Pl. Ex. 44.

**Statement:**

59.  Depictions of the UPS Model No. OR500LCDRM1U's Schematic of PCBA, Dimension Drawing, and Exploded View Diagram are appended as Exhibit 45 (Schematic of PCBA, Dimension Drawing, and Exploded View Diagram, UPS Model No. OR500LCDRM1U). A depiction of the exploded view diagram for UPS Model No. OR500LCDRM1U is included below:



**Response:**

59. Objection. This statement does not cite to admissible evidence because Pl. Ex. 45 has not been authenticated, and also constitutes inadmissible hearsay. Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record. Notwithstanding, and without waiving our objections, admits that Pl. Ex. 45 purports to be a schematic of UPS Model No. OR500LCDRM1U.

**Statement:**

60. Various certificates attaching to UPS Model No. OR500LCDRM1U have been issued, including UL Certificate of Compliance; and FCC Certificate of Conformity. *See* Bates 2607-2650.

**Response:**

60. Objection. The documents with Bates numbers 2607-2650 are irrelevant and not material. Notwithstanding, and without waiving our objection, denies that the certificates included under Bates 2607-2650 attach to UPS Model No. OR500LCDRM1U covered by the entry at issue in this action because the cited Bates-numbered documents reference testing and/or certification periods of September 2014 and October 2016, years before the subject merchandise is alleged to have been produced and before CPSMI is alleged to have gone online in October 2018. Def. Ex. 12.

**Statement:**

61. The assembled UPS Model No. OR500LCDRM1U is then programmed in the Philippines with firmware which is produced in Taiwan and which enables the electronic components of the UPS to function. *See e.g.,* Affirmation of Thomas Fuehrer in Support of Plaintiff's Motion for Summary Judgment.

**Response:**

61. Objection. The purported support for this statement includes a "*See e.g.*" cite to the Affirmation of Thomas Fuehrer, which improperly calls for an inferential step to be made between the statement and this affirmation. The "*e.g.*" suggests other documents support this statement but, contrary to Rule 56.3(c), plaintiff fails to cite any of these documents. Further, this statement does not cite to admissible evidence because, as noted in paragraph 10 of our Preliminary Statement and Objections, the Affirmation of Thomas Fuehrer does not comply with 28 U.S.C. § 1746. Moreover, although the Fuehrer Affirmation contains a statement that it is made upon personal knowledge, there is nothing in the affirmation to establish that Mr. Fuehrer has personal knowledge of events occurring in Taiwan. *See* USCIT Rule 56(c)(4); Fed. R. Evid. 602. Rather, his knowledge likely was obtained from another person through a communication or document and does not constitute personal knowledge. Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record.

Notwithstanding, and without waiving our objections, admits that the Fuehrer Affirmation supports the statement in this paragraph, but denies its admissibility.

**Statement:**

62.  None of the components which are assembled in the Philippines, taken individually, has the ability to detect power outages or serve as a backup power supply system using battery power. *See e.g.,* Affirmation of Brent Lovett in Support of Plaintiff's Motion for Summary Judgment.

**Response:**

62.  Objection.  The use of the "*See e.g.*" cite improperly calls for an inferential step to be made between the statement and this affirmation.  The "*e.g.*" suggests other documents support this statement but, contrary to Rule 56.3(c), plaintiff fails to cite any of these documents.  Further, as noted in paragraph 10 of our Preliminary Statement and Objections, the Affirmation of Brent Lovett does not comply with 28 U.S.C. § 1746.  Further, the Lovett Affirmation does not comply with Rule 56(c)(4) or Fed. Rule Evid. R. 602 because it does not state that it is made on personal knowledge.  Further, the use of the term "components" renders the statement vague and ambiguous.  Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record.  Notwithstanding, and without waiving our objections, and to the extent the term "components" means a subset of the parts of each of the uninterruptible power supply models covered by the entry at issue here, admits the Lovett Affirmation states that "[n]one of these components have the ability to perform the function of an uninterruptible power supply," but denies its admissibility.  Denies any inference that such components undergo a substantial transformation as a result of assembly operations performed in the Philippines.  Def. Ex. 15.

**Statement:**

63.  The assembly operations for UPS Model No. OR500LCDRM1U that are performed by CPSMI in the Philippines result in the creation of a new and different article of commerce with a new name, character, and use as compared to its Philippines-assembled components. *Id.*

**Response:**

63.  Objection.  The "*Id.*" support to this stand-alone statement is vague and ambiguous.  To the extent the "*Id.*" refers to the Lovett Affirmation from Statement 62, we incorporate our objections to it by reference as though fully set forth here.  Notwithstanding, and without waiving our objections, this statement constitutes legal argument and/or conclusions of law to which no response is required.

**E. UPS Model No. SX650U**

**Statement:**

64.  UPS Model No. SX650U is a 650V/360W battery backup power supply which provides surge protection for lightning-induced surges and other power events that can damage electronic equipment. This unit delivers enough battery backup to connected electronics during a utility power failure, so that the user can perform a graceful shutdown to protect against the loss of data and damage to valuable electronics including computers, gaming consoles, and broadband routers. *See* Exhibit 46 (Spec Sheet, UPS Model No. SX650U). The product is depicted below:



**Response:**

64.  Objection.  This statement incorporates multiple issues and/or multiple sentences and, thus, is not short and concise.  Further, the first sentence does not cite to any evidence as required by Rule 56.3.  Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record.  Notwithstanding, and without waiving our objection, admits this statement to the extent supported by the Product Spec Sheet set forth in Pl. Ex. 46.  Otherwise, denies. *See* Pl. Ex. 46.

**Statement:**

65.  A user manual for UPS Model No. SX650U is appended as Exhibit 47 (User Manual, UPS Model No. SX650U).

**Response:**

65.  Admits.

**Statement:**

66.  The bill of materials for UPS Model No. SX650U shows that discrete components are assembled together to create a new and different article of commerce, *viz.* an uninterruptible power supply. *See* Exhibit 48 (Bill of Materials for All Components in UPS Model No. SX650U); *see* Exhibit 49 (Bill of Materials for Components of PCBAs in UPS Model No. SX650U). The internal components of UPS Model No. SX650U, including those comprising the main board, USB board, and USB charger board PCBAs, are products of *inter alia* China, Taiwan, Mexico, Malaysia, Morocco, Thailand, the Philippines, and Vietnam. *Id.* The DIP and SMT processes used to manufacture the main board, USB board, and USB charger board PCBAs for UPS Model No. SX650U occur in China and are performed by Cyber Power China. *Id.*

**Response:**

66.  Objection.  This statement incorporates multiple issues and/or multiple sentences and, thus, is not short and concise.  Further, the statement does not cite to admissible evidence as Pl. Exs. 48 and 49 have not been authenticated, and also constitute inadmissible hearsay.  Further, there is no accompanying translation of all foreign language words included in Pl. Ex. 49, and thus, this exhibit is not fully comprehensible, and fail to comply with Rule 56.3(c).  "It is a 'well-established rule that a document in a foreign language is generally inadmissible unless accompanied by a certified English translation.'"  *Heredia v. Americare, Inc.*, 2020 U.S. Dist. LEXIS 122880, *11-*12 (S.D.N.Y. July 13, 2020) (citations omitted).  Further, the phrase "to create a new and different article of commerce" in the first sentence constitutes legal argument and/or conclusions of law, to which no response is required.  Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record. Notwithstanding, and without waiving our objections, admits that certain components are assembled in the Philippines to create UPS Model No. SX650U, but denies any inference that the assembly of these components in the Philippines constitutes a substantial transformation of such components resulting in "a new and different article of commerce."  Def. Ex. 15.  Admits the second sentence, but denies any inference that the components proportionally originated in the stated countries, because approximately 95.9% of the components originated in China.  Pl. Exs. 48, 49.  Admits the third sentence.

**Statement:**

67.  A timeline of the work performed in the Philippines on UPS Model No. SX650U is provided at Exhibit 50 (Philippines Production Timeline, UPS Model No. SX650U). This timeline shows that SMT and DIP assembly operations are performed on PCBs in China to produce PCBAs, and that the PCBAs are then imported into the Philippines for final UPS assembly operations by CPSMI into the UPS Model No. SX650U. *Id.* A step-by-step procedure of the SMT and DIP processes taking place in China according to Cyber Power's production standard operating procedures is depicted at Exhibit 51 (Standard Operating Procedures for Chinese Manufacture of PCBA, UPS Model No. SX650U). A step-by-step procedure of the Philippines-manufacture of UPS Model No. SX650U is provided at Exhibit 52 (Standard Operating Procedure for Philippines Manufacture of UPS Model No. SX650U).

**Response:**

67. Objection. This statement incorporates multiple issues and/or multiple sentences and, thus, is not short and concise. Further, the statement does not cite to admissible evidence as Pl. Exs. 50-52 have not been authenticated, and also constitute inadmissible hearsay. Further, there is no accompanying translation of all foreign language words included in Pl. Exs. 51 and 52, thus, these exhibits are not fully comprehensible, and fail to comply with Rule 56.3(c). "It is a 'well-established rule that a document in a foreign language is generally inadmissible unless accompanied by a certified English translation.'" *Heredia v. Americare, Inc.*, 2020 U.S. Dist. LEXIS 122880, *11-*12 (S.D.N.Y. July 13, 2020) (citations omitted). Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record. Notwithstanding, and without waiving our objections, admits that SMT and DIP assembly operations are performed on PCBs in China to produce a PCBA, and that the PCBA is then imported into the Philippines; admits that Pl. Ex. 50 purports to be a production timeline for UPS Model No. SX650U. Otherwise, denies. *See* Pl. Exs. 50, 51, 52.

**Statement:**

68. The assembly operations for UPS Model No. SX650U that are performed by CPSMI in the Philippines are also detailed in a flowchart at Exhibit 53 (Assembly Operations Flowchart, UPS Model No. SX650U).

**Response:**

68. Objection. This statement does not cite to admissible evidence, as Pl. Ex. 53 has not been authenticated, and also constitutes inadmissible hearsay. Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record. Notwithstanding, and without waiving our objections, admits that Pl. Ex. 53 purports to be a flowchart for UPS Model No. SX650U. Otherwise, denies. *See* Pl. Ex. 53.

**Statement:**

69. Depictions of the UPS Model No. SX650U Schematic of PCBA, Dimension Drawing, and Exploded View Diagram are appended as Exhibit 54 (Schematic of PCBA, Dimension Drawing, and Exploded View Diagram, UPS Model No. SX650U). A depiction of the exploded view diagram for UPS Model No. SX650U is included below:



**Response:**

69.  Objection.  This statement does not cite to admissible evidence because Pl. Ex. 54 has not been authenticated, and also constitutes inadmissible hearsay.  Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record.  Notwithstanding, and without waiving our objection, admits that Pl. Ex. 54 purports to be a schematic of UPS Model No. SX650U.

**Statement:**

70.  Various certificates attaching to UPS Model No. SX650U have been issued, including UL Energy Star: Energy Efficiency Certificate and Test Report; UL Certificate of Compliance; and FCC Certificate of Conformity. *See* Bates 2654-2821.

**Response:**

70.  Objection.  The documents with Bates numbers 2654-2821 are irrelevant and not material.  Notwithstanding, and without waiving our objection, denies that the certificates included under Bates 2654-2821 attach to UPS Model No. SX650U covered by the entry at issue in this action because the cited Bates-numbered documents reference testing and/or certification periods of January, March, and April 2018, months before the subject merchandise is alleged to have been produced and before CPSMI is alleged to have gone online in October 2018.  Def. Ex. 13.

**Statement:**

71.  The assembled UPS Model No. SX650U is then programmed in the Philippines with firmware which is produced in Taiwan and which enables the electronic components of the UPS to function. *See e.g.,* Affirmation of Thomas Fuehrer in Support of Plaintiff's Motion for Summary Judgment.

**Response:**

71.  Objection.  The purported support for this statement includes a "*See e.g.*" cite to the Affirmation of Thomas Fuehrer, which improperly calls for an inferential step to be made between the statement and this affirmation.  The "*e.g.*" suggests other documents support this statement but, contrary to Rule 56.3(c), plaintiff fails to cite any of these documents.  Further, this statement does not cite to admissible evidence because, as noted in paragraph 10 of our Preliminary Statement and Objections, the Affirmation of Thomas Fuehrer does not comply with 28 U.S.C. § 1746.  Moreover, although the Fuehrer Affirmation contains a statement that it is made upon personal knowledge, there is nothing in the affirmation to establish that Mr. Fuehrer has personal knowledge of events occurring in Taiwan.  *See* USCIT Rule 56(c)(4); Fed. R. Evid. 602.  Rather, his knowledge likely was obtained from another person through a communication or document and does not constitute personal knowledge.  Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record.  Notwithstanding, and without waiving our objections, admits that the Fuehrer Affirmation supports the statement in this paragraph, but denies its admissibility.

**Statement:**

72.  None of the components which are assembled in the Philippines, taken individually, has the ability to detect power outages or serve as a backup power supply system using battery power. *See e.g.,* Affirmation of Brent Lovett in Support of Plaintiff's Motion for Summary Judgment.

**Response:**

72. Objection. The use of the "*See e.g.*" cite improperly calls for an inferential step to be made between the statement and this affirmation. The "*e.g.*" suggests other documents support this statement but, contrary to Rule 56.3(c), plaintiff fails to cite any of these documents. Further, as noted in paragraph 10 of our Preliminary Statement and Objections, the Affirmation of Brent Lovett does not comply with 28 U.S.C. § 1746. Further, the Lovett Affirmation does not comply with Rule 56(c)(4) or Fed. Rule Evid. R. 602 because it does not state that it is made on personal knowledge. Further, the use of the term "components" renders the statement vague and ambiguous. Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record. Notwithstanding, and without waiving our objections, and to the extent the term "components" means a subset of the parts of each of the uninterruptible power supply models covered by the entry at issue here, admits the Lovett Affirmation states that "[n]one of these components have the ability to perform the function of an uninterruptible power supply," but denies its admissibility. Denies any inference that such components undergo a substantial transformation as a result of assembly operations performed in the Philippines. Def. Ex. 15.

**Statement:**

73. The assembly operations for UPS Model No. SX650U that are performed by CPSMI in the Philippines result in the creation of a new and different article of commerce with a new name, character, and use as compared to its Philippines-assembled components. *Id.*

**Response:**

73. Objection. The "*Id.*" support to this stand-alone statement is vague and ambiguous. To the extent the "*Id.*" refers to the Lovett Affirmation from Statement 72, we incorporate our objections to it by reference as though fully set forth here. Notwithstanding, and without waiving our objections, this statement constitutes legal argument and/or conclusions of law to which no response is required. **Notwithstanding, and without waiving our objections, to the extent a response is required, denies that the assembly operations performed by CPSMI for UPS Model No. SX650U result in a substantial transformation.**

**F. DESIGN AND INSTALLATION OF FIRMWARE ON ALL SUBJECT UPS MODELS**

**Statement:**

74. In addition to the physical manufacturing and assembly operations described in the foregoing parts of this statement, the UPS units which are the subject of this case must all be programmed with firmware code in order to impart functionality to the devices. This programming occurs at CPSMI's plant in the Philippines, using firmware code which was created by CPSI in Taiwan by Taiwanese firmware engineers.

**Response:**

74. Objection. This statement incorporates multiple issues and/or multiple sentences and, thus, is not short and concise. Further, this statement does not cite to admissible evidence and thus fails to comply with Rule 56.3(c). Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record. Further, the phrase "described in the foregoing parts of this statement" is vague and ambiguous as nothing is described in the foregoing part of Statement 74. To the extent this phrase refers to Statements 1-73, denies that all these statements describe manufacturing and assembly operations. *See* Statements 1-73. Notwithstanding, and without waiving our objections, as to the first sentence admits that firmware is applied to the PCBAs in these devices, but denies that firmware imparts functionality to the devices. Def. Ex. 15. Denies the second sentence. Def. Ex. 14

**Statement:**

75. The UPS units which are the subject of this case each feature one or more printed circuit board assemblies ("PCBA"). PCBAs consist of a number of micro-components (*e.g.,* diodes, rectifiers, capacitors, etc.) which are mounted on a printed circuit board ("PCB") and wired together in a particular manner.

**Response:**

75. Objection. This statement incorporates multiple issues and/or multiple sentences and, thus, is not short and concise. Further, this statement does not cite to admissible evidence and thus fails to comply with Rule 56.3(c). Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record. Notwithstanding, and without waiving our objections, admits.

**Statement:**

76. As described above, the PCBA assemblies for four of the UPS units at issue in this case were assembled in China (*i.e.,* UPS Model Nos. OR500LCDRM1U, SX650U, CBN50U48A-1 and CST135XLU), by a process involving dual in-line packaging ("DIP") machines, which populate PCBs with micro-components, and Surface Mount Technology ("SMT"), in which automated devices finalize the connections of the micro-components, typically through wave-soldering or another electronic soldering processes. For UPS Model No. CP600LCDa, the PCBAs are populated and wave soldered through DIP and SMT processes at the Philippines-facility of CyberPower's affiliate, Phisonic. *See,* Affirmation of Thomas Fuehrer in Support of Plaintiff's Motion for Summary Judgment. PCBAs are useless and non-functional until and unless they have been programmed with firmware. "Firmware" is the term used to describe computer programing code which is downloaded into a device having no native intelligence, such as the PCBA boards incorporated in the subject UPS devices. "Firmware" is distinguishable from "software," a term that refers to computer programing code loaded into a machine with native intelligence, for example a computer having an operating system installed. *Id.*

**Response:**

76.  Objection.  This statement incorporates multiple issues and/or multiple sentences and, thus, is not short and concise.  Further, the phrase "As described above," is vague and ambiguous because it does not reference a specific paragraph of plaintiff's Statement of Facts to which it is referring.  If such paragraphs had been listed, we would incorporate our responses to them by reference as though fully set forth here.  Further, this statement does not cite to admissible evidence because, as noted in paragraph 10 of our Preliminary Statement and Objections, the Affirmation of Thomas Fuehrer does not comply with 28 U.S.C. § 1746.  Moreover, although the Fuehrer Affirmation contains a statement that it is made upon personal knowledge, there is nothing in the affirmation to establish that Mr. Fuehrer has personal knowledge of events occurring in Taiwan or the Philippines.  *See* USCIT Rule 56(c)(4); Fed. R. Evid. 602.  Rather, his knowledge likely was obtained from another person through a communication or document and does not constitute personal knowledge.  Further, the Fuehrer Affirmation is limited by Mr. Fuehrer's statement that he "provide[s] this affirmation to discuss the role played by firmware in the operation of CyberPower's Uninterruptible Power Supplies, which are the subject of this action."  Docket No. 48-4 at p. 10 of 45, ¶ 2.  Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record.  Notwithstanding, and without waiving our objections, admits the first sentence to the extent supported by the Affirmation of Thomas Fuehrer.  Otherwise, denies.  *See* Affirmation of Thomas Fuehrer.  Denies the second sentence.  Def. Exs. 14, 15.  Denies the third sentence.  Def. Ex. 15.  Admits the fourth and fifth sentences to the extent supported by the Fuehrer Affirmation.  Otherwise, denies these sentences.

**Statement:**

77.  All of the firmware used in the subject UPS devices which are the subject of this case was created in Taiwan by Taiwanese firmware engineers. The firmware is downloaded and programed into the subject UPS units in the Philippines. This programing occurs after the PCBAs have been assembled with other components to make the subject UPS devices. *Id.*

**Response:**

77.  Objection.  This statement incorporates multiple issues and/or multiple sentences and, thus, is not short and concise.  Further, the first and second sentences do not cite to any evidence as required by Rule 56.3.  Further, the "*Id.*" support to this stand-alone statement is vague and ambiguous.  Further, to the extent the "*Id.*" refers to the Fuehrer Affirmation, this statement does not cite to admissible evidence because, as noted in paragraph 10 of our Preliminary Statement and Objections, the Affirmation of Thomas Fuehrer does not comply with 28 U.S.C. § 1746.  Moreover, although the Fuehrer Affirmation contains a statement that it is made upon personal knowledge, there is nothing in the affirmation to establish that Mr. Fuehrer has personal knowledge of events occurring in Taiwan.  *See* USCIT Rule 56(c)(4); Fed. R. Evid. 602.  Rather, his knowledge likely was obtained from another person through a communication or document and does not constitute personal knowledge.  Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record.

Notwithstanding, and without waiving our objections, admits that the Fuehrer Affirmation supports the first sentence in this paragraph. Denies the second and third sentences. Def. Ex. 14.

**Statement:**

78. Firmware code is used to instruct the UPS devices performance of various functions. The specific firmware codes which are used in the subject UPS units are shown in the Affirmation of Thomas Fuehrer. *Id.*

**Response:**

78. Objection. This statement incorporates multiple issues and/or multiple sentences and, thus, is not short and concise. Further, the first sentence does not cite to any evidence as required by Rule 56.3. Further, the "*Id.*" support to this stand-alone statement is vague and ambiguous. Further, to the extent the "*Id.*" refers to the Fuehrer Affirmation, this statement does not cite to admissible evidence because, as noted in paragraph 10 of our Preliminary Statement and Objections, the Affirmation of Thomas Fuehrer does not comply with 28 U.S.C. § 1746. Further, Attachment A to the Fuehrer Affirmation is inadmissible because it was not disclosed during the discovery phase of this action, it has not been authenticated, and it constitutes hearsay. Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record. Notwithstanding, and without waiving our objections, admits the first sentence to the extent supported by the Fuehrer Affirmation. As to the second sentence, denies that the Fuehrer Affirmation supports that "[t]he **specific** firmware codes which are used in the subject UPS units are shown." *See* Affirmation of Thomas Fuehrer (emphasis added).

**Statement:**

79. By way of example, for the UPS Model No. CP600LCDa, there are a number of firmware programming lines which handle various functions. These include firmware code to allow initialization of the device (i/o, DMA, IRQ Priority, AD, Timer Functions and PWM ). *Id.* Additional firmware code commands handle basic functions of the device such as RMS calculations, watt to volt ampere (W/VA) detection, runtime/capacity calculations, wave detection, frequency detection, battery testing, mode transferring logic, IAP (in-application program), UART communication, phase lock loop function, button detection function, inverter regulation function, watchdog functions, EEPROM storage function, buzzer function, LED function, X-capacitor protection, temperature protection, output short protection and overload protection. *Id.* There are also codes handling various team-supporter function tests for the product. *Id.* These functions have 2,080 lines of unique code, which require 3,270 person hours to write. *Id.* Individual code lines, as shown in the exhibit, contain various commands containing some 36,867 lines of code. *Id.*

**Response:**

79. Objection. This statement incorporates multiple issues and/or multiple sentences and, thus, is not short and concise. Further, the first sentence does not cite to any evidence as required by Rule 56.3. Further, the "*Id.*" support to this stand-alone statement is vague and ambiguous.

Further, to the extent the "*Id.*" refers to the Fuehrer Affirmation, this statement does not cite to admissible evidence because, as noted in paragraph 10 of our Preliminary Statement and Objections, the Affirmation of Thomas Fuehrer does not comply with 28 U.S.C. § 1746. Further, Attachment A to the Fuehrer Affirmation is inadmissible because it was not disclosed during the discovery phase of this action, it has not been authenticated, and it constitutes hearsay. Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record. **Notwithstanding, and without waiving our objections, admits to the extent supported by Attachment A to the Fuehrer Affirmation, otherwise denies.**

**Statement:**

80.  Until the PCBAs within the subject UPS devices are programmed with this firmware code and successfully tested, they have no functionality whatsoever. The devices are, in effect, merely paperweights without the firmware code. It is the programming of the PCBAs with the Taiwanese-origin firmware code, which programming occurs in the Philippines, which enables the PCBAs in a UPS unit to function at all. Without the firmware, neither the PCBAs nor the UPS units have any functionality whatsoever. They certainly could not perform the function of detecting current interruptions and activating battery power which is then supplied to connected/protected devices. *Id.*

**Response:**

80.  Objection.  This statement incorporates multiple issues and/or multiple sentences and, thus, is not short and concise.  Further, the first four sentences of this statement do not cite to any admissible evidence as required by Rule 56.3.  Further, the "*Id.*" support to the last sentence of this statement is vague and ambiguous, as is the sentence itself with its use of the non-specific "they".  Further, to the extent the "*Id.*" refers to the Fuehrer Affirmation, this statement does not cite to admissible evidence because, as noted in paragraph 10 of our Preliminary Statement and Objections, the Affirmation of Thomas Fuehrer does not comply with 28 U.S.C. § 1746. Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record. **Notwithstanding, and without waiving our objections, denies.** *See* **Def. Exs. 14, 15,**

**Statement:**

81.  All of the UPS units involved in this case require programing with firmware of like complexity in order to enable them to perform their functions. *Id.*

**Response:**

81.  Objection.  The "*Id.*" support to the last sentence of this statement is vague and ambiguous. Further, to the extent the "*Id.*" refers to the Fuehrer Affirmation, this statement does not cite to admissible evidence because, as noted in paragraph 10 of our Preliminary Statement and Objections, the Affirmation of Thomas Fuehrer does not comply with 28 U.S.C. § 1746.

Further, the phrases "of like complexity" and "their functions" are vague and ambiguous. Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record.  Notwithstanding, and without waiving our objections, admits that the 5 models of UPS articles at issue possess firmware, otherwise, denies.  Def. Ex. 15.

## II. SVP DEVICE AT ISSUE

### A.  SVP Model No. HT1206UC2RC1.

**Statement:**

82.  SVP Model No. HT1206UC2RC1 is a surge voltage protector which uses metal oxide varistor ("MOV") technology to provide surge protection of up to 2880 joules to connected devices. The product features 12 outlets: 6 standard and 6 transformer spaced. *See* Exhibit 55 (Spec Sheet, SVP Model No. HT1206UC2RC1). The product is depicted below:



**Response:**

82.  Objection.  This statement incorporates multiple issues and/or multiple sentences and, thus, is not short and concise.  Further, the first sentence does not cite to any evidence as required by Rule 56.3.  Notwithstanding, and without waiving our objection, admits this statement to the extent supported by the Product Spec Sheet set forth in Pl. Ex. 55.  Otherwise, denies.  *See* Pl. Ex. 55.

**Statement:**

83.  A user manual for SVP Model No. HT1206UC2RC1 is appended as Exhibit 56 (User Manual, SVP Model No. HT1206UC2RC1).

**Response:**

83.  Admits.

**Statement:**

84.  The bill of materials for SVP Model No. HT1206UC2RC1 shows that discrete components are assembled together to create a new and different article of commerce, *viz.* a surge voltage protector. *See* Exhibit 57 (Bill of Materials for All Components in SVP Model No. HT1206UC2RC1); *see* Exhibit 58 (Bill of Materials for Components of PCBAs in SVP Model No. HT1206UC2RC1). The internal components of SVP Model No. HT1206UC2RC1, including those comprising the surge board, charger board, USB connector board, coax board, and RJ45 board PCBAs, are products of *inter alia* China, Taiwan, United States, Malaysia, and Thailand. *Id.* The DIP and SMT processes used to manufacture the surge board, charger board, USB connector board, coax board, and RJ45 board PCBAs for SVP Model No. HT1206UC2RC1 occur in China and are performed by Cyber Power China. *Id.*

**Response:**

84.  Objection.  This statement incorporates multiple issues and/or multiple sentences and, thus, is not short and concise.  Further, the statement does not cite to admissible evidence as Pl. Exs. 57 and 58 have not been authenticated, and also constitute inadmissible hearsay.  Further, there is no accompanying translation of all foreign language words included in Pl. Exs. 57 and 58, and thus, these exhibits are not fully comprehensible, and fail to comply with Rule 56.3(c).  "It is a 'well-established rule that a document in a foreign language is generally inadmissible unless accompanied by a certified English translation.'"  *Heredia v. Americare, Inc.*, 2020 U.S. Dist. LEXIS 122880, *11-*12 (S.D.N.Y. July 13, 2020) (citations omitted).  Further, the phrase "to create a new and different article of commerce" in the first sentence constitutes legal argument and/or conclusions of law, to which no response is required.  Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record.  Notwithstanding, and without waiving our objections, admits that certain components are assembled in the Philippines to create SVP Model No. HT1206UC2RC1, but denies any inference that the assembly of these components in the Philippines constitutes a substantial transformation of such components resulting in "a new and different article of commerce."  Def. Ex. 15.  Admits the second sentence, but denies any inference that the components proportionally originated in the stated countries because approximately 94.3% of the components originated in China.  Pl. Exs. 57, 58.  Admits the third sentence.

**Statement:**

85.  A timeline of the work performed in the Philippines on SVP Model No. HT1206UC2RC1is provided at Exhibit 59 (Philippines Production Timeline, SVP Model No. HT1206UC2RC1). This timeline shows that SMT and DIP assembly operations are performed on PCBs in China to produce PCBAs, and that the PCBAs are then imported into the Philippines for final SVP assembly operations by CPSMI into the SVP Model No. HT1206UC2RC1. *Id.* A step-by-step procedure of the SMT and DIP processes taking place in China according to Cyber Power's production standard operating procedures is depicted at Exhibit 60 (Standard Operating Procedures for Chinese Manufacture of PCBA, SVP Model No. HT1206UC2RC1). A step-by-step procedure of the Philippines-manufacture of SVP Model No. HT1206UC2RC1is provided at

Exhibit 61 (Standard Operating Procedure for Philippines Manufacture of SVP Model No. HT1206UC2RC1).

**Response:**

85. Objection. This statement incorporates multiple issues and/or multiple sentences and, thus, is not short and concise. Further, the statement does not cite to admissible evidence as Pl. Exs. 59-61 have not been authenticated, and also constitute inadmissible hearsay. Further, there is no accompanying translation of all foreign language words included in Pl. Exs. 60 and 61, thus, these exhibits are not fully comprehensible, and fail to comply with Rule 56.3(c). "It is a 'well-established rule that a document in a foreign language is generally inadmissible unless accompanied by a certified English translation.'" *Heredia v. Americare, Inc.*, 2020 U.S. Dist. LEXIS 122880, *11-*12 (S.D.N.Y. July 13, 2020) (citations omitted). Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record. Notwithstanding, and without waiving our objections, admits that SMT and DIP assembly operations are performed on PCBs in China to produce a PCBA, and that the PCBA is then imported into the Philippines; admits that Pl. Ex. 59 purports to be a production timeline for SVP Model No. HT1206UC2RC1. Otherwise, denies. *See* Pl. Exs. 59, 60, 61.

**Statement:**

86. The assembly operations for SVP Model No. HT1206UC2RC1that are performed by CPSMI in the Philippines are also detailed in a flowchart at Exhibit 62 (Assembly Operations Flowchart, SVP Model No. HT1206UC2RC1).

**Response:**

86. Objection. This statement does not cite to admissible evidence, as Pl. Ex. 53 has not been authenticated, and also constitutes inadmissible hearsay. Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record. Notwithstanding, and without waiving our objections, admits that Pl. Ex. 62 purports to be a flowchart for SVP Model No. HT1206UC2RC1.

**Statement:**

87. Depictions of the SVP Model No. HT1206UC2RC1's Schematic of PCBA, Dimension Drawing, and Exploded View Diagram are appended as Exhibit 63 (Schematic of PCBA, Dimension Drawing, and Exploded View Diagram, SVP Model No. HT1206UC2RC1). A depiction of the exploded view diagram for SVP Model No. HT1206UC2RC1is included below:



**Response:**

87.  Objection.  This statement does not cite to admissible evidence because Pl. Ex. 63 has not been authenticated, and also constitutes inadmissible hearsay.  Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record. Notwithstanding, and without waiving our objection, admits that Pl. Ex. 63 purports to be a schematic of UPS Model No. SX650U.

**Statement:**

88.  Various certificates attaching to SVP Model No. HT1206UC2RC1 have been issued, including Energy Efficiency Certificate and Test Report; UL Certificate of Compliance; and FCC Certificate of Conformity. *See* Bates 2306-2333; Bates 4233-57.

**Response:**

88.  Objection.  The documents with Bates numbers 2306-2333 are irrelevant and not material. Notwithstanding, and without waiving our objection, denies that the certificates included under Bates 2603-2333 attach to SVP Model No. HT1206UC2RC1 covered by the entry at issue in this action because the cited Bates-numbered documents reference testing and/or certification periods of August 2017 and March 2018, months before the subject merchandise is alleged to have been produced and before CPSMI is alleged to have gone online in October 2018.  Def. Ex. 16.

**Statement:**

89.  The assembly operations for SVP Model No. HT1206UC2RC1 that are performed by CPSMI in the Philippines result in the creation of a new and different article of commerce with a new name, character, and use as compared to its Philippines-assembled components.

**Response:**

89.  Objection.  This statement does not cite to any admissible evidence and thus fails to comply with Rule 56.3(c).  Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record.  Notwithstanding, and without waiving our objection, this statement constitutes legal argument and/or conclusions of law to which no response is required.  **Notwithstanding, and without waiving our objections, to the extent a response is required, denies that the assembly operations performed by CPSMI for SVP Model No. HT1206UC2RC1 result in a substantial transformation.**

**III. ADDITIONAL CPSMI OPERATIONS PERFORMED IN THE PHILIPPINES.**

**Statement:**

90.  In addition to the foregoing assembly operations, and UPS firmware design and installation, which created the individual models of subject merchandise described above, CPSMI performed the following quality control and product testing operations in the Philippines on all subject UPS and SVP devices:
      a. UPS parameter calibration, using auto test equipment to check input and output voltage, output voltage and frequency;
      b. Hi-Pot electrical testing and full function testing, such as input tests, output tests, backup tests, software communication tests, overload tests;
      c. USB communications tests, for devices featuring USB ports.
*See e.g.,* Exhibits 14, 26, 35, 44, 53, 62.

**Response:**

90.  Objection.  The use of the "*See e.g.*" cite improperly calls for an inferential step to be made between the statement and this affirmation.  The "*e.g.*" suggests other documents support this statement but, contrary to Rule 56.3(c), plaintiff fails to cite any of these documents.  Further, this statement does not cite to admissible evidence, as Pl. Exs. 14, 26, 35, 44, 53, and 62 have not been authenticated, and also constitute inadmissible hearsay.  Further, the phrases "foregoing assembly operations" is vague and ambiguous.  Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record.  Notwithstanding, and without waiving our objections, admits only to the extent supported by the cited exhibits.  Otherwise, denies.  *See* Pl. Exs. 14, 26, 35, 44, 53, and 62

**Statement:**

91.  For UPS units, CPSMI also performs a cold start test to ensure that the device cannot be turned on while in battery mode, and a waveform test to ensure the electrical circuit can carry the specified current.

**Response:**

91.  Objection.  This statement does not cite to any admissible evidence and thus fails to comply with Rule 56.3(c).  Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record.  **Notwithstanding, and without waiving our objections, denies for lack of knowledge or information sufficient to either admit or deny whether CPSMI performs a cold start test or a waveform test.  However, admits that CBN50U48A-1 possesses a cold start feature.**

**Statement:**

92.  CPSMI performs the following labeling and packaging operations in the Philippines on all subject UPS and SVP devices: product labeling; product packaging; insertion of user manuals within the product packaging; preparation for shipment; palletizing.

**Response:**

92.  Objection.  This statement does not cite to any admissible evidence and thus fails to comply with Rule 56.3(c).  Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record.  **Notwithstanding, and without waiving our objections, to the extent supported by Plaintiff's Exhibits 11, 21, 30, 39, 48, and 57 admits that CPSMI applied certain labels and inserted user manuals for the subject merchandise.  Further admits, to the extent supported by the relevant shipping documents, that CPSMI prepared the subject merchandise for shipment and palletized that same merchandise.  Otherwise, denies.**

## INDUSTRY CERTIFICATIONS APPLICABLE TO SUBJECT MERCHANDISE

**Statement:**

93.  All UPS and SVP devices which are the subject of this action were certified by Underwriter's Laboratories ("UL") as being in conformity with that organization's standards for finished UPS and SVP devices. *See* Affirmation of Brent Lovett in Support of Plaintiff's Motion for Summary Judgment, at ¶¶ 8, 19; *see also* Bates 760-823; *see also* Bates 2333; Bates 2351; Bates 2448; Bates 2535; Bates 2607; Bates 2792-93. UL representatives visit Cyber Power's Philippines facility on a quarterly basis and verify the manufacturing activities conducted there.

**Response:**

93.  Objection.  This statement incorporates multiple issues and/or multiple sentences and, thus, is not short and concise.  Further, as noted in paragraph 10 of our Preliminary Statement and Objections, the Affirmation of Brent Lovett does not comply with 28 U.S.C. § 1746.  Further, the Lovett Affirmation does not comply with Rule 56(c)(4) or Fed. Rule Evid. R. 602 because it does not state that it is made on personal knowledge.  Further, the second sentence does not cite to any admissible evidence, and thus fails to comply with Rule 56.3(c).  Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record.  Notwithstanding, and without waiving our objections, denies the first sentence, because the documents covered by the cited Bates numbers reference numerous testing and/or certification periods which precede by months or even years the dates when the subject merchandise is alleged to have been produced and before CPSMI is alleged to have gone online in October 2018.  Def. Exs. 10-13, 16.

**Statement:**

94.  Inspectors from Underwriters Laboratories ("UL") have observed the manufacturing operations at CPMSI's Philippines plant. *Id.*

**Response:**

94.  Objection.  The "*Id*." support to this stand-alone statement is vague and ambiguous.  To the extent the "*Id*." refers to the Affirmation of Brent Lovett, as noted in paragraph 10 of our Preliminary Statement and Objections, the Affirmation of Brent Lovett does not comply with 28 U.S.C. § 1746; and does not comply with Rule 56(c)(4) or Fed. Rule Evid. R. 602 because it does not state that it is made on personal knowledge.  Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record.  Further, this statement is vague and ambiguous because it does not specify the time period/s to which it is referring.  Further, the term "manufacturing operations" is vague and ambiguous and constitutes legal argument to which no response is necessary.  **Notwithstanding, and without waiving our objections, admits that UL have observed operations at CPSMI.**

**Statement:**

95.  Since May 21, 2019, Cyber Power's Philippines plant has held an ISO:14000:2015 quality certification, confirmed by Societe Generale de Surveillance. Since May 21, 2019, Cyber Power's Philippines plant has also held an ISO:9001:2015. Bates 824-27.

**Response:**

95.  Admits.

## CYBER POWER PRODUCTION VIDEO

**Statement:**

96.  In connection with this lawsuit, Mr. Chi-Ting ("Tim") Huang, General Manager of the CPSMI plant in the Philippines, was asked to prepare a demonstrative video, depicting manufacturing operations performed at Cyber Power's plant in Cavite, Metro Manila, the Philippines. *See* Affirmation of Chi-Ting Huang (a/k/a Tim Huang) in Support of Plaintiff's Motion for Summary Judgment at ¶ 1.

**Response:**

96.  Objection.  This statement does not cite to admissible evidence because, as discussed at paragraph 10 of our Preliminary Statement and Objections, the Huang affirmation is a foreign affidavit that does not comply with 28 U.S.C. § 1746 and, therefore, is inadmissible.  Further, the referenced video and the statements made on this video, designated as Pl. Manual Ex. 1, do not constitute admissible evidence because they are statements from Mr. Huang, whose affirmation is inadmissible.  Moreover, Mr. Huang admits that the video does not depict the subject merchandise.  Thus, Pl. Manual Ex. 1 is not probative for the subject merchandise.  Further, Mr. Huang claims that this exhibit is "offered as a demonstrative or pedagogical exhibit, in accordance with Rule 611 of the Federal Rules of Evidence," but does not state how he has personal knowledge of such rules.  Further, because plaintiff labels Pl. Manual Ex. 1 as a "demonstrative or pedagogical exhibit" it "is not itself evidence." *Baugh v. Cuprum S.A. de C.V.*, 730 F.3d 701, 706 (7th Cir. 2013).  Rather, demonstrative evidence is intended "to explain or clarify other previously introduced, relevant substantive evidence." *Id.* at 707 (internal citations and quotations omitted).  Because such demonstrative evidence is designed to "illustrate or clarify a party's position, and they are by definition less neutral in [their] presentation [they] are not properly considered evidence." *Id.* (first alteration in opinion, second alteration added).  Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record.  Notwithstanding, and without waiving our objections, admits to the extent supported by the Affirmation of Chi-Ting Huang.  Otherwise, denies. *See* Affirmation of Chi-Ting Huang.

**Statement:**

97.  On July 14, 2020, Mr. Huang personally filmed manufacturing operations being performed at CPSMI's Philippines plant. Huang Affirmation at ¶ 2. He was accompanied by Jennifer Ranosa, CPSMI's Plant director of Human Resources, and a Lic. Romer Rio R. Valdenarro, an attorney and Notary Public of the Valdenarro Law Offices in the Philippines. Huang Affirmation at ¶2.

**Response:**

97.  Objection.  This statement does not cite to admissible evidence because, as discussed at paragraph 10 of our Preliminary Statement and Objections, the Huang affirmation is a foreign affidavit that does not comply with 28 U.S.C. § 1746 and, therefore, is inadmissible.  Further, the

referenced video and the statements made on this video, designated as Pl. Manual Ex. 1, do not constitute admissible evidence because they are statements from Mr. Huang, whose affirmation is inadmissible.  Moreover, Mr. Huang admits that the video does not depict the subject merchandise.  Thus, Pl. Manual Ex. 1 is not probative for the subject merchandise.  Further, Mr. Huang claims that this exhibit is "offered as a demonstrative or pedagogical exhibit, in accordance with Rule 611 of the Federal Rules of Evidence," but does not state how he has personal knowledge of such rules.  Further, because plaintiff labels Pl. Manual Ex. 1 as a "demonstrative or pedagogical exhibit" it "is not itself evidence."  *Baugh v. Cuprum S.A. de C.V.*, 730 F.3d 701, 706 (7th Cir. 2013).  Rather, demonstrative evidence is intended "to explain or clarify other previously introduced, relevant substantive evidence."  *Id.* at 707 (internal citations and quotations omitted).  Because such demonstrative evidence is designed to "illustrate or clarify a party's position, and they are by definition less neutral in [their] presentation [they] are not properly considered evidence."  *Id.* (first alteration in opinion, second alteration added).  Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record.  **Notwithstanding, and without waiving our objections, admits to the extent supported by the Affirmation of Chi-Ting Huang.  Otherwise, denies. *See* Affirmation of Chi-Ting Huang.**

**Statement:**

98.  On July 20, 2020 Mr. Huang personally filmed three (3) video segments showing various manufacturing operations performed at the Cyber Power Philippines plant, again accompanied by Ms. Ranosa, and Mr. Valdenarro. Huang Affirmation at ¶3.

**Response:**

98.  Objection.  This statement does not cite to admissible evidence because, as discussed at paragraph 10 of our Preliminary Statement and Objections, the Huang affirmation is a foreign affidavit that does not comply with 28 U.S.C. § 1746 and, therefore, is inadmissible.  Further, the referenced video and the statements made on this video, designated as Pl. Manual Ex. 1, do not constitute admissible evidence because they are statements from Mr. Huang, whose affirmation is inadmissible.  Moreover, Mr. Huang admits that the video does not depict the subject merchandise.  Thus, Pl. Manual Ex. 1 is not probative for the subject merchandise.  Further, Mr. Huang claims that this exhibit is "offered as a demonstrative or pedagogical exhibit, in accordance with Rule 611 of the Federal Rules of Evidence," but does not state how he has personal knowledge of such rules.  Further, because plaintiff labels Pl. Manual Ex. 1 as a "demonstrative or pedagogical exhibit" it "is not itself evidence."  *Baugh v. Cuprum S.A. de C.V.*, 730 F.3d 701, 706 (7th Cir. 2013).  Rather, demonstrative evidence is intended "to explain or clarify other previously introduced, relevant substantive evidence."  *Id.* at 707 (internal citations and quotations omitted).  Because such demonstrative evidence is designed to "illustrate or clarify a party's position, and they are by definition less neutral in [their] presentation [they] are not properly considered evidence."  *Id.* (first alteration in opinion, second alteration added).  Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record.  Notwithstanding, and without waiving our objections, admits to the extent supported by the Affirmation of Chi-Ting Huang.  Otherwise, denies. *See* Affirmation of Chi-Ting Huang.

**Statement:**

99.  Mr. Huang subsequently caused the video records to be edited together to show chronologically the operations performed at CPSMI's Philippines plant on the dates the recordings were made. Huang Affirmation at ¶4. This video record has been submitted to the Court as Manual Exhibit 1. The video record does not purport to depict the manufacture of the specific goods which are the subject of this action, but is proffered as a demonstrative or pedagogical exhibit, in accordance with Rule 611 of the Federal Rules of Evidence.

**Response:**

99.  Objection.  This statement incorporates multiple issues and/or multiple sentences and, thus, is not short and concise.  Further, this statement does not cite to admissible evidence because, as discussed at paragraph 10 of our Preliminary Statement and Objections, the Huang affirmation is a foreign affidavit that does not comply with 28 U.S.C. § 1746 and, therefore, is inadmissible. Further, the referenced video and the statements made on this video, designated as Pl. Manual Ex. 1, do not constitute admissible evidence because they are statements from Mr. Huang, whose affirmation is inadmissible.  Moreover, Mr. Huang admits that the video does not depict the subject merchandise.  Thus, Pl. Manual Ex. 1 is not probative for the subject merchandise. Further, Mr. Huang claims that this exhibit is "offered as a demonstrative or pedagogical exhibit, in accordance with Rule 611 of the Federal Rules of Evidence," but does not state how he has personal knowledge of such rules.  Further, because plaintiff labels Pl. Manual Ex. 1 as a "demonstrative or pedagogical exhibit" it "is not itself evidence." *Baugh v. Cuprum S.A. de C.V.*, 730 F.3d 701, 706 (7th Cir. 2013).  Rather, demonstrative evidence is intended "to explain or clarify other previously introduced, relevant substantive evidence." *Id.* at 707 (internal citations and quotations omitted).  Because such demonstrative evidence is designed to "illustrate or clarify a party's position, and they are by definition less neutral in [their] presentation [they] are not properly considered evidence." *Id.* (first alteration in opinion, second alteration added). Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record.  Notwithstanding, and without waiving our objections, admits to the extent supported by the Affirmation of Chi-Ting Huang.  Otherwise, denies. *See* Affirmation of Chi-Ting Huang.

**Statement:**

100.  The video recording is the best evidence of its contents. *See* Huang Affirmation at ¶ 3. For the convenience of the Court, Mr. Huang has provided a tabular description of the activities being depicted in the video Exhibit:

| Video Time | Activities or things depicted |
|---|---|
| 0:00 - 01:42 | Exterior of CPSMI and Phisonic plant. Entrance to plant at Phisonic loading dock entrance. |

| | |
|---|---|
| 1:43 - 03:04 | Passage through inventory area and arrival at Phisonic Surface Mount Technology ("SMT") facility. |
| 03:05 - 05:20 | Phisonic SMT room and dual-inline processing ("DIP") and SMT machines installed therein. Printed Circuit Board Assemblies ("PCBA") in racks on a cart, being removed from SMT room by CPSMI Technician |
| 05:21 – 05:54 | Transport of PCBAs from Phisonic SMT room to assembly line in Phisonic plant. |
| 05:55 - 08:05 | Dual Inline Processing ("DIP") Line 2 in Phisonic facility, showing assembly of additional components to printed circuit board assemblies. |
| 08:06 - 10:02 | DIP component insertion and wave soldering preparation in Phisonic plant. |
| 10:03 – 13:10 | Delivery of finished PCBAs from Phisonic plant to CPSMI Assembly area, using hand-powered forklift. |
| 13:11 - 13:20 | CPSMI assembly plant personnel accept and "stock in" PCBAs received from Phisonic. |
| 13:21 – 15:42 | CPSMI staff issue PCBAs to production line for manufacture of UPS units. Placard on pallet carrying PCBAs identifies UPS model for which they are intended. |
| 15:43 – 20:05 | Assembly of surge voltage protectors ("SVPs"). Operation begins with wiring anodes and cathodes into printed circuit board ("PCB"), creating subassembly for electrical sockets. Soldering of electrical wires into anode and cathode PCBA. Welding of electrical cords into SVPs, assembly of switches and signal panels to devices and insertion of same into front cover. Installation of protected, grounded nameplates, and assembly of rear covers. |
| 20:06 – 21:00 | Performance of high voltage and grounding tests with hi-pot testing device; performance of L/N reverse and function testing |

| | |
|---|---|
| 21:01 - 21:19 | Performance of burn-in (ageing) tests by burn-in (ageing) testing machine (2 hours) |
| 21:20 – 21:55 | UPS pre-assembly. Assembly of anodes and cathodes to produce outlets. |
| 21:56 - 22:37 | Welding of power cord to anode/cathode assemblies. |
| 22:38 – 24:36 | UPS rear panel pre-assembly (3 phases). Installation of terminals into rear panel of UPS, attachment of power cord, installation of components into rear cover. |
| 24:37 – 26:25 | Fixing of rear terminal cover with screws (2 phases) |
| 26:26 – 26:45 | Rear panel quality and visual test |
| 26:46 - 28:00 | Issuance of components to assembly line for manufacture of UPS. |
| 28:01 – 28:20 | Installation of main board. |
| 28:21 – 28:34 | Installation of transformer. |
| 28:35 - 28:46 | Install USB charger board to front panel of UPS device. |
| 28:47 – 29:13 | Connect rear panel to main board by installation of wires. |
| 29:14 - 30:04 | Dip yellow glue adhesive to allow for connection of components. |
| 30:05 – 30:30 | Installation of side cover. |
| 30:31 – 30:57 | Installation of front panel of UPS device and fix side cover with screws. |
| 30:58 – 31:38 | Overview of UPS assembly area. |
| 31:39 – 32:35 | Checking battery voltage and installation of battery in UPS unit. |
| 32:36 – 33:04 | DC Power boot test. |
| 33:05 – 33:36 | Connect battery cables and insert batter(ies) in battery compartment. |
| 33:37 – 34:16 | UPS testing and packing. Perform hi-pot test and affix labels. |
| 34:17 - 35:07 | Firmware burn-in and ATE test. |
| 35:08 - 35:53 | USB charger test, and communications test. Affix label and country of origin label; scan barcode. |
| 35:53 – 36:05 | Cold start test. |
| 36:06 – 36:47 | RJ45 and TV coaxial connector tests. |
| 36:48 - 37:38 | Visual and tactile inspection and cleaning of assembled UPS unit. |
| 37:39 - 37:47 | Affix labels to retail box. |

| 37:48 – 38:34 | Packing of UPS units and accessory bag in color box. |
| 38:35 – 40:42 | Building exterior. |

**Response:**

100.  Objection.  This statement incorporates multiple issues and/or multiple sentences and, thus, is not short and concise.  Further, this statement does not cite to admissible evidence because, as discussed at paragraph 10 of our Preliminary Statement and Objections, the Huang affirmation is a foreign affidavit that does not comply with 28 U.S.C. § 1746 and, therefore, is inadmissible.  Further, the referenced video and the statements made on this video, designated as Pl. Manual Ex. 1, do not constitute admissible evidence because they are statements from Mr. Huang, whose affirmation is inadmissible.  Moreover, Mr. Huang admits that the video does not depict the subject merchandise.  Thus, Pl. Manual Ex. 1 is not probative for the subject merchandise.  Further, Mr. Huang claims that this exhibit is "offered as a demonstrative or pedagogical exhibit, in accordance with Rule 611 of the Federal Rules of Evidence," but does not state how he has personal knowledge of such rules.  Further, because plaintiff labels Pl. Manual Ex. 1 as a "demonstrative or pedagogical exhibit" it "is not itself evidence."  *Baugh v. Cuprum S.A. de C.V.*, 730 F.3d 701, 706 (7th Cir. 2013).  Rather, demonstrative evidence is intended "to explain or clarify other previously introduced, relevant substantive evidence."  *Id.* at 707 (internal citations and quotations omitted).  Because such demonstrative evidence is designed to "illustrate or clarify a party's position, and they are by definition less neutral in [their] presentation [they] are not properly considered evidence."  *Id.* (first alteration in opinion, second alteration added).  Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record.  Notwithstanding, and without waiving our objections, admits to the extent supported by the Affirmation of Chi-Ting Huang.  Otherwise, denies.  *See* Affirmation of Chi-Ting Huang.

**Statement:**

101.  The operations depicted in the video are substantially the same for all models of UPS and SVP which CPSMI manufactures at its Philippines plant. Huang Affirmation at ¶8.

**Response:**

101.  Objection.  This statement does not cite to admissible evidence because, as discussed at paragraph 10 of our Preliminary Statement and Objections, the Huang affirmation is a foreign affidavit that does not comply with 28 U.S.C. § 1746 and, therefore, is inadmissible.  Further, the referenced video and the statements made on this video, designated as Pl. Manual Ex. 1, do not constitute admissible evidence because they are statements from Mr. Huang, whose affirmation is inadmissible.  Moreover, Mr. Huang admits that the video does not depict the subject merchandise.  Thus, Pl. Manual Ex. 1 is not probative for the subject merchandise.  Further, Mr. Huang claims that this exhibit is "offered as a demonstrative or pedagogical exhibit, in accordance with Rule 611 of the Federal Rules of Evidence," but does not state how he has personal knowledge of such rules.  Further, because plaintiff labels Pl. Manual Ex. 1 as a "demonstrative or pedagogical exhibit" it "is not itself evidence."  *Baugh v. Cuprum S.A. de*

61

*C.V.*, 730 F.3d 701, 706 (7th Cir. 2013). Rather, demonstrative evidence is intended "to explain or clarify other previously introduced, relevant substantive evidence." *Id.* at 707 (internal citations and quotations omitted). Because such demonstrative evidence is designed to "illustrate or clarify a party's position, and they are by definition less neutral in [their] presentation [they] are not properly considered evidence." *Id.* (first alteration in opinion, second alteration added). Further, the term "manufactures" renders this statement legal argument, not fact, and is also vague and ambiguous. Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record. **Notwithstanding, and without waiving our objections, admits to the extent supported by the Affirmation of Chi-Ting Huang. Otherwise, denies.** *See* **Affirmation of Chi-Ting Huang.**

## U.S. DEPARTMENT OF HOMELAND SECURITY VISIT TO PHILIPPINES FACILITIES OF CPSMI AND PHISONIC

**Statement:**

102. On July 23, 2020, U.S. Department of Homeland Security ("DHS"), Homeland Security Investigations ("HSI") Investigator, Denver B. Langaman, and Assistant Attache Jim Anglemeyer (the "HSI Agents"), with office addresses at the U.S. Embassy in Manila Philippines, arrived for an unannounced visit to the Philippines facilities of CPSMI and Phisonic, at Units A & B Lot 6, Block 1, Phase 2 Buenavista I General Trias Cavite, Philippines.

**Response:**

102. Objection. This statement does not cite to any admissible evidence and, thus, fails to comply with Rule 56.3(c). Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record. Further, this document is not probative of the merits of this action, subject to *de novo* review, which turns on whether the components constituting the six articles at issue underwent a substantial transformation such that they are properly marked as products of the Philippines. Compl. at Count I; Pl. Br. at 3 ("The issue presented in this case is whether the manufacturing operations at CPSMI's Philippines facility result in the creation of new and different articles which are required to be marked "Made in Philippines" for purposes of the marking statute, 19 U.S.C. § 1304(a)."). Plaintiff concedes that it made UPSs and SVPs in China but over time has increased activity at facilities in the Philippines. Docket No. 20-1. Thus, what was occurring at the Philippine Cyber Power facilities in July 2020 is not probative of the activities occurring before March 2020 that concern the merits of this action, *i.e.,* whether the six articles are properly marked as products of the Philippines as a result of substantial transformation. Notwithstanding, and without waiving our objections, admits that HIS Agents Anglemyer and Langaman conducted a site visit of CPSMI, but denies any inference that the agents entered the Phisonic facility. *See* Def. Ex. 17; Def. Ex. 18.

**Statement:**

103.  On July 20, 2020, three days before the HSI Agents' visit to CPSMI and Phisonic, CBP Import Specialist Linda Horacek, the defendant's Rule 30(b)(6) witness in this action, wrote to HSI Special Agent David Hudgens, who made the referral for the plant visit, providing him with an update on the status of this litigation, stating:

Nothing new from the court case. We countered their complaint and created a list of items to be provided. The ball is back in their court so to speak"

*See Exhibit 64; and further stating:*

Fingers crossed that your PH agent can get us something useful.

**Response:**

103.  Objection.  This statement incorporates multiple issues and/or multiple sentences and, thus, is not short and concise.  Further, this document is not probative of the merits of this action, subject to *de novo* review, which turns on whether the components constituting the six articles at issue underwent a substantial transformation such that they are properly marked as products of the Philippines.  Compl. at Count I; Pl. Br. at 3 ("The issue presented in this case is whether the manufacturing operations at CPSMI's Philippines facility result in the creation of new and different articles which are required to be marked "Made in Philippines" for purposes of the marking statute, 19 U.S.C. § 1304(a).").  Plaintiff concedes that it made UPSs and SVPs in China but over time has increased activity at facilities in the Philippines.  Docket No. 20-1.  Thus, what was occurring at the Philippine Cyber Power facilities in July 2020 is not probative of the activities occurring before March 2020 that concern the merits of this action, *i.e.*, whether the six articles are properly marked as products of the Philippines as a result of substantial transformation.   Denies any inference that the HSI agents entered the Phisonic facility.  *See* Def. Ex. 17 at pages 51-53.  Denies any inference that CBP has the authority to direct HSI, a component of a separate and independent agency (U.S. Immigration and Customs Enforcement), to conduct an investigation, or that, here, Ms. Horacek did such thing.  Def. Exs. 17, 18.  Notwithstanding, and without waiving our objections, admits to the extent supported by the cited email dated July 20, 2020 from Ms. Horacek to Mr. Hudgens.  Otherwise, denies.  *See* email dated July 20, 2020 from Ms. Horacek to Mr. Hudgens.

**Statement:**

104.  During their visit on July 23, 2020, the HSI Agents toured the Phisonic and Cyber Power facilities, closely inspecting machinery in the Phisonic area of the plant, and observing the assembly, testing, firmware burning and other activities in the CPSMI area of the facility. *See e.g.,* Manual Exhibit 2; Affirmation of Paolo Kint Cendana in Support of Plaintiff's Motion for Summary Judgment.

**Response:**

104.   Objection.  This statement cites to inadmissible evidence because Mr. Paulo Kint Cendana was not disclosed as a potential witness in plaintiff's Rule 26 disclosures.  Further, as discussed in paragraph 10 of our Preliminary Statement and Objections, the Cendana affirmation is inadmissible for the further reason that it fails to comply with 28 U.S.C. § 1746.  Further, the phrase "closely inspecting" renders this statement opinion, not fact, and is also vague and ambiguous.  Further, the phrases "and other activities" and "CPSMI area of the facility" are vague and ambiguous.  Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be stricken from the record.  Further, this document is not probative of the merits of this action, subject to *de novo* review, which turns on whether the components constituting the six articles at issue underwent a substantial transformation such that they are properly marked as products of the Philippines.  Compl. at Count I; Pl. Br. at 3 ("The issue presented in this case is whether the manufacturing operations at CPSMI's Philippines facility result in the creation of new and different articles which are required to be marked "Made in Philippines" for purposes of the marking statute, 19 U.S.C. § 1304(a).").  Plaintiff concedes that it made UPSs and SVPs in China but over time has increased activity at facilities in the Philippines.  Docket No. 20-1.  Thus, what was occurring at the Philippine Cyber Power facilities in July 2020 is not probative of the activities occurring before March 2020 that concern the merits of this action, *i.e.*, whether the six articles are properly marked as products of the Philippines as a result of substantial transformation.  Notwithstanding, and without waiving our objections, admits that Manual Exhibit 2 reflects the site visit of CPSMI by HSI agents Jim Anglemyer and Denver Langaman.  However, denies that the HSI agents toured the Phisonic facility, closely inspecting machinery in the Phisonic area of the plant.  Def. Ex. 17 at 51-53; Def. Ex. 18 at 21-29.  Further, denies that the HSI agents were familiar with or confirmed what specific activities they witnessed CPSMI.  Def. Ex. 17 at 49-53; Def. Ex. 18 at 21-29.

**Statement:**

105.   Cyber Power employee Paulo Kint Cendana documented the HSI Agents' visit, and made ten (10) video recordings of same, which have been submitted to defendant in discovery, and to the Court in connection with discovery motions, and which are hereby designated as Manual Exhibit 2. *See e.g.,* Affirmation of Paolo Kint Cendana in Support of Plaintiff's Motion for Summary Judgment.

**Response:**

105.   Objection.  This statement does not cite to admissible evidence.  Instead, it includes a "*See e.g.*" cite to the Affirmation of Paolo Kint Cendana, which improperly calls for an inferential step to be made between the statement and this affirmation.  The "*e.g.*" suggests other documents support this statement but, contrary to Rule 56.3(c), plaintiff fails to cite any of these documents. Further, this statement cites to inadmissible evidence because Mr. Paulo Kint Cendana was not disclosed as a potential witness in plaintiff's Rule 26 disclosures.  Further, as discussed in paragraph 10 of our Preliminary Statement and Objections, the Cendana affirmation is inadmissible for the further reason that it fails to comply with 28 U.S.C. § 1746.  Accordingly, and for the reasons shown in our corresponding motion to strike, this statement should be

stricken from the record.  Further, this document is not probative of the merits of this action, subject to *de novo* review, which turns on whether the components constituting the six articles at issue underwent a substantial transformation such that they are properly marked as products of the Philippines.  Compl. at Count I; Pl. Br. at 3 ("The issue presented in this case is whether the manufacturing operations at CPSMI's Philippines facility result in the creation of new and different articles which are required to be marked "Made in Philippines" for purposes of the marking statute, 19 U.S.C. § 1304(a).").  Plaintiff concedes that it made UPSs and SVPs in China but over time has increased activity at facilities in the Philippines.  Docket No. 20-1.  Thus, what was occurring at the Philippines Cyber Power facilities in July 2020 is not probative of the activities occurring before March 2020 that concern the merits of this action, *i.e.*, whether the six articles are properly marked as products of the Philippines as a result of substantial transformation.  Notwithstanding, and without waiving our objections, admits that Pl. Manual Exhibit 2 reflects the site visit of CPSMI by HSI agents Jim Anglemyer and Denver Langaman.  However, denies that the HSI agents toured the Phisonic facility.  Def. Ex. 17 at 51-53; Def. Ex. 18 at 21-29.  Further denies that the HSI agents were familiar with or confirmed what specific activities they witnessed CPSMI.  Def. Ex. 17 at 49-53; Def. Ex. 18 at 21-29.  Notwithstanding, and without waiving our objections, admits to the extent that the frames of Pl. Manual Ex. 2 depict either Agent Langaman or Agent Anglemyer.  Otherwise, denies.  *See* Pl. Manual Ex. 2.

**Statement:**

106.  In addition, HSI Agent Langaman took photographs of the PCB production machinery located in the Phisonic portion of the facility. These included photographs of a worker loading a "Pick and Place" machine, which deposits microcomponents onto printed circuit boards. The microcomponents are contained in the tape which is on the white spools. *See* Exhibit 65.

**Response:**

106.  Objection.  This statement incorporates multiple issues and/or multiple sentences and, thus, is not short and concise.  Further, the first sentence does not cite to any evidence as required by Rule 56.3.  Further, this statement is vague and ambiguous because the citied exhibit contains multiple photographs, and it is unclear which specific photograph(s) plaintiff refers to in this statement.  Further, this document is not probative of the merits of this action, subject to *de novo* review, which turns on whether the components constituting the six articles at issue underwent a substantial transformation such that they are properly marked as products of the Philippines. Compl. at Count I; Pl. Br. at 3 ("The issue presented in this case is whether the manufacturing operations at CPSMI's Philippines facility result in the creation of new and different articles which are required to be marked "Made in Philippines" for purposes of the marking statute, 19 U.S.C. § 1304(a).").  Plaintiff concedes that it made UPSs and SVPs in China but over time has increased activity at facilities in the Philippines.  Docket No. 20-1.  Thus, what was occurring at the Philippines Cyber Power facilities in July 2020 is not probative of the activities occurring before March 2020 that concern the merits of this action, *i.e.*, whether the six articles are properly marked as products of the Philippines as a result of substantial transformation. Notwithstanding, and without waiving our objections, denies that the cited exhibit factually supports the statement and denies any inference that the HSI agents entered the Phisonic facility.

*See* Def. Ex. 17 at 51-53; Def. Ex. 18 at 21-29.  Admits that Pl. Ex. 65 includes photographs taken by Mr. Langaman during the July 23, 2020 site visit of CPSMI.

**Statement:**

107.  HSI Agent Langaman also photographed a worker placing PCBAs in a Jutze Automated Optical Inspection Machine, *see* Exhibit 65, which inspects PCBAs for manufacturing defects, and a photograph of a JT Co. LLC-produced reflow soldering machine, *id.*, which is used to solder microcomponents onto PCBAs.

**Response:**

107.  Objection.  This statement incorporates multiple issues and/or multiple sentences and, thus, is not short and concise.  Further, this statement is vague and ambiguous because the cited exhibit contains multiple photographs, and it is unclear which specific photograph(s) plaintiff refers to in this statement.  Further, this document is not probative of the merits of this action, subject to *de novo* review, which turns on whether the components constituting the six articles at issue underwent a substantial transformation such that they are properly marked as products of the Philippines.  Compl. at Count I; Pl. Br. at 3 ("The issue presented in this case is whether the manufacturing operations at CPSMI's Philippines facility result in the creation of new and different articles which are required to be marked "Made in Philippines" for purposes of the marking statute, 19 U.S.C. § 1304(a).").  Plaintiff concedes that it made UPSs and SVPs in China but over time has increased activity at facilities in the Philippines.  Docket No. 20-1.  Thus, what was occurring at the Philippines Cyber Power facilities in July 2020 is not probative of the activities occurring before March 2020 that concern the merits of this action, *i.e.*, whether the six articles are properly marked as products of the Philippines as a result of substantial transformation.  Notwithstanding, and without waiving our objections, denies that the cited exhibit factually supports the statement.  *See* Pl. Ex 65.  Admits that Pl. Ex. 65 includes photographs taken by Mr. Langaman during the July 23, 2020 site visit of CPSMI.

**Statement:**

108.  On or about July 26, 2020, HSI Agent Denver Langaman, one of the HSI Agents who visited the plant on July 23, 2020, prepared a report confirming and describing the operations being performed at the CPMSI plant in the Philippines. Exhibit 66. This report, and the video recordings, corroborate the other information set out in this Rule 56.3 Statement.

**Response:**

108.  Objection.  This statement incorporates multiple issues and/or multiple sentences and, thus, is not short and concise.  Further, the phrases "visited the plant," "confirming and describing the operations being performed," "the video recordings," and "the other information" are vague and ambiguous.  Further, this document is not probative of the merits of this action, subject to *de novo* review, which turns on whether the components constituting the six articles at issue underwent a substantial transformation such that they are properly marked as products of the Philippines.  Compl. at Count I; Pl. Br. at 3 ("The issue presented in this case is whether the

manufacturing operations at CPSMI's Philippines facility result in the creation of new and different articles which are required to be marked "Made in Philippines" for purposes of the marking statute, 19 U.S.C. § 1304(a)."). Plaintiff concedes that it made UPSs and SVPs in China but over time has increased activity at facilities in the Philippines. Docket No. 20-1. Thus, what was occurring at the Philippines Cyber Power facilities in July 2020 is not probative of the activities occurring before March 2020 that concern the merits of this action, *i.e.*, whether the six articles are properly marked as products of the Philippines as a result of substantial transformation. Notwithstanding, and without waiving our objections, admits that Pl. Ex. 66 contains a report prepared by Mr. Langaman. The second sentence in this paragraph consists of legal argument and/or conclusions of law to which no response is required. To the extent a response is required, denies. *Compare* Pl. Ex. 66 with statements 1-107.

*Defendant's Revised Response to Plaintiff's Rule 56.3 Statement*
*Of Material Facts Not In Dispute in Court No. 20-00124*

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

By:    /s/ Justin R. Miller
       JUSTIN R. MILLER
       Attorney-in-Charge
       International Trade Field Office

*Of Counsel*:                                    /s/ Beverly A. Farrell
Yelena Slepak                                    BEVERLY A. FARRELL
Senior Attorney                                  Senior Trial Attorney
Office of the Assistant Chief Counsel            BRANDON A. KENNEDY
International Trade Litigation                    Trial Attorney
U.S. Customs & Border Protection                 Department of Justice, Civil Division
New York, New York 10278                         Commercial Litigation Branch
                                                 26 Federal Plaza, Room 346
                                                 New York, New York 10278
                                                 Tel.: (212) 264-0483 or 9230
 Dated: April 14, 2021                           *Attorneys for Defendant*