**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. LEO M. GORDON, SENIOR JUDGE**
-------------------------------------------------------------------- X

**CYBER POWER SYSTEMS (USA) INC.**                        :
                                                          :
            **Plaintiff,**                                :
                                                          :
        *v.*                                              :        **No. 20-cv-00124**
                                                          :
**THE UNITED STATES,**                                    :
                                                          :
            **Defendant.**                                :
-------------------------------------------------------------------- X


John M. Peterson            for the Plaintiff.
Richard F. O'Neill
Patrick B. Klein


Beverly A. Farrell          for the Defendant.
Luke Mathers
Yelena Slepak
Mathias Rabinovitch

**PRETRIAL ORDER**

At the pretrial conference held on July 27, 2022, before the Hon. Leo M. Gordon, Senior

Judge, and attended by counsel, the following matters were discussed and agreed to, and are hereby

ORDERED:

1.  General. The parties recognize that this joint pretrial order controls the subsequent course

of the action unless the order is modified by consent of the parties and the Court, or by order of

the Court to prevent manifest injustice. The attached schedules, each on a separate sheet, are part

of this order.

2.  Parties and Counsel. Schedule A sets forth the names of all parties; the names, addresses,

email addresses, and telephone numbers of their respective attorneys, and the names of trial

counsel for each party.

3. <u>Jurisdiction</u>. Schedule B-1 sets forth the statutes, legal doctrines, and facts on which Plaintiff claims jurisdiction. Schedule B-2 indicates which of these, if any, are contested.

4. <u>Uncontested Facts</u>. All material facts that are without substantial controversy are set forth in Schedule C. Material facts that are actually and in good faith controverted, and which a party intends to establish at trial, are separately listed in Schedules C-1, C-2, etc. Facts not included in these schedules may be established at trial, provided prompt notice is given to all parties and to the Court, and on showing of good cause.

5. <u>Claims and Defenses</u>. The parties' claims and defenses are separately listed in Schedules D-1, D-2, etc.

6. <u>Damages and Other Relief.</u> Claims with respect to damages and other relief sought by each party are detailed in Schedules E-1, E-2, etc.

7. <u>Waiver of Claims</u>. The parties waive all claims with respect to liability, damages, and other relief and all affirmative defenses which are not set forth in Schedules D and E.

8. <u>Triable Issues</u>. Schedule F sets forth and separately numbers the issues of the case, without simply restating the disputed facts. All legal issues are to be addressed prior to the commencement of the trial. If the parties cannot agree as to the issues, then their separate statement of the issues must be set forth as Schedules F-1, F-2, etc.

9. <u>Witnesses</u>. Schedules G-1, G-2, etc. list for the respective parties the witnesses they will or will probably call to testify at the trial, setting forth for each witness (a) name, (b) address, (c) a summary of expected testimony, and, for expert witnesses, (d) a curriculum vitae, and (e) the area of expertise. Any objection to a witness, and the grounds therefor, must be separately stated as Objections to Schedule G-1, G-2, etc.

10. <u>Deposition Testimony</u>. Any party proposing to use deposition testimony as evidence must, at least three weeks prior to the trial date, notify all the adversaries of the testimony proposed to be read. Objections to any proposed deposition testimony must be made in writing no later than two weeks prior to trial. The parties must file with the Court copies of the depositions, indicating the portions to be read and the relative objections. The Court will rule on all such objections prior to commencement of the trial.

11. <u>Exhibits</u>. Schedules H-1, H-2, etc. list for the respective parties the exhibits to be offered in evidence by that party. Each list must identify and describe each exhibit. Except for exhibits a party intends to use during cross-examination, or rebuttal, the parties recognize that they will not be allowed to use at trial any exhibits or witnesses not identified in this pretrial order except on prompt notice to all parties and to the Court, and on a showing of good cause.

12. <u>Objections to Exhibits</u>. Schedules I-1, I-2, etc. list for the respective parties each adversary's exhibits whose authenticity or admissibility are contested. The parties must state the specific ground for objection to each contested exhibit listed therein.

13. <u>Discovery</u>. All discovery is complete. Undisclosed discovery which surfaces during trial will be deemed untimely and subject to the sanction of exclusion.

14. <u>Jury Trial</u>. The parties must indicate whether the trial is a jury or non-jury trial. If it is a jury trial, the parties must state whether the jury trial is applicable to all aspects of the case or only to certain issues, which must be specified.

<u>Additional Filing Prior to Trial in Jury Cases</u>. In jury cases, unless otherwise ordered by the Court, each party must file, at a date to be determined at the pretrial conference, requests to charge and proposed voir dire questions. This paragraph does not preclude supplemental requests for additional instructions during the course of trial or at the conclusion of the evidence on matters

that cannot reasonably be anticipated unless the Court has directed otherwise, and provided that no request to charge must be accepted unless made and submitted to the Court twenty-four (24) hours in advance of the time that summation commences, unless good cause is shown for submission at a later time.

15. Pretrial Summary Memoranda: No later than August 1, 2022 [1 week before trial], each counsel may provide the Court with memoranda of law containing (1) a statement of the material facts the party intends to establish at trial, (2) a description of the evidence the party intends to introduce at trial supporting those material facts, and (3) a discussion addressing the material facts, evidentiary issues, and legal issues that remain in dispute.

16. Trial Time. The trial will take approximately  4  days.


Dated:  August 1, 2022
      New York, New York


Approved and Consented to:

   /s/ John M. Peterson
   Attorney for Plaintiff.

   /s/ Beverly A. Farrell
   Attorney for Defendant.

Approved: /s/ Leo M. Gordon
          Judge

 Dated: August 8, 2022
New York, New York

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. LEO M. GORDON, SENIOR JUDGE**
-------------------------------------------------------------------- X
**CYBER POWER SYSTEMS (USA) INC.**                         :
                                                           :
                          **Plaintiff,**                    :
                                                           :
                          *v.*                               :          **No. 20-cv-00124**
                                                           :
**UNITED STATES,**                                          :
                                                           :
                          **Defendant.**                    :
-------------------------------------------------------------------- X

**JOINT SCHEDULE A**
**Parties' Attorneys and Trial Counsel**

**Plaintiff:**                          Cyber Power Systems (USA) Inc.

<u>Attorneys and Trial Counsel</u>:       John M. Peterson, Esq.
                                     Patrick B. Klein, Esq.
                                     Neville Peterson LLP
                                     55 Broadway Suite 2602
                                     New York, NY 10006
                                     212-635-2730
                                     jpeterson@npwny.com
                                     pklein@npwny.com

                                     Richard F. O'Neill, Esq.
                                     Neville Peterson LLP
                                     701 Fifth Ave Suite 4200-2159
                                     Seattle, WA 98104
                                     206-905-3648
                                     roneill@npwny.com

**Defendant**:                          United States of America

<u>Attorneys and Trial Counsel</u>:     Beverly A. Farrell, Esq.
                                        beverly.a.farrell@usdoj.gov

                                        Luke Mathers, Esq.
                                        luke.mathers@usdoj.gov

                                        U.S. Department of Justice, Civil Division
                                        Commercial Litigation Branch
                                        International Trade Field Office
                                        26 Federal Plaza, Suite 346
                                        New York, NY 10278
                                        Tel. No. 212-264-9232

<u>Of Counsel</u>:                      Yelena Slepak, Esq.
                                        Mathias Rabinovitch, Esq.
                                        Office of Assistant Chief Counsel
                                        U.S. Customs and Border Protection

## **SCHEDULE B**

1. This Court's jurisdiction arises under 28 U.S.C. § 1581(a) because the action contests the denial of a protest filed by the Plaintiff through U.S. Customs and Border Protection's ACE Protest Module concerning the exclusion of certain merchandise covered by a single entry submitted to the Port of Minneapolis, Minnesota.

2. This action was filed within the time limits prescribed in 28 U.S.C. § 2636(a)(1).

**SCHEDULE C**
**UNCONTESTED FACTS[1]**

1.  Plaintiff, Cyber Power Systems (USA) Inc.'s ("Cyber Power"), Entry No. 791-2578496-2, made at the Port of Minneapolis, Minnesota, covers the articles at issue in this action. ECF 20-1, at 1.

2.  The articles at issue in this action are model numbers CBN50U48A-1, CST135XLU, OR500LCDRM1U, SX650U, CP600LCDa, and HT1206UC2RC1. Pl.'s Compl., ¶ 3 (ECF 13); Def.'s Ans. ¶3 (ECF 26).

3.  Model numbers CBN50U48A-1, CST135XLU, OR500LCDRM1U, SX650U, and CP600LCDa are uninterruptible power supplies ("UPS"). ECF 20-1, at 7.

4.  Model No. HT1206UC2RC1 is a surge voltage protector ("SVP"). Pl.'s Trial Ex. 56.

5.  The subject merchandise was packaged into retail boxes marked "Made in Philippines." Pl.'s R. 56.3 Statement, ¶ 16 (ECF 48-5); Def. Resp. to Pl.'s R. 56.3 Statement, ¶ 16 (ECF 60-1).

6.  U.S. Customs and Border Protection ("CBP") at the Port of Minneapolis, Minnesota, detained the merchandise for inspection pursuant to 19 U.S.C. § 1499(c)(2). ECF 13-1 at 2.

7.  CBP issued to Cyber Power a CBP Form ("CF") 4647, Notice to Mark and/or Redeliver. ECF 13-1, at 4-5.

8.  The Notice to Mark and/or Redeliver states in pertinent part: "Cyber Power is required to claim country of origin China on all Uninterruptible power supplies (UPS) and surge

---

[1] Any reference in this document to a plaintiff's trial exhibit (PTX) currently subject to a Government objection as support for a fact should not be construed as the Government agreeing that any such exhibit has been properly authenticated or is otherwise admissible.

protectors and no exemption was given for marking purposes. All UPS and surge protectors must be entered as Chinese goods and marked made in China." ECF 13-1, at 4-5.

9.   Cyber Power declined to change the "Made in Philippines" marking on the goods and their packages. Pl.'s R. 56.3 Statement, ¶ 18 (ECF 48-5); Def. Resp. to Pl.'s R. 56.3 Statement, ¶ 18 (ECF 60-1).

10.  The deemed exclusion of merchandise covered by Entry No. 791-2578496-2 occurred on April 3, 2020. ECF 20-1, at 1-3; ECF 13-1, at 2, 4-5.

11.  Cyber Power protested the exclusion of the subject merchandise on May 21, 2020 by filing Minneapolis Port Protest No. 3501-20-101425. ECF 20-1, at 1-3.

12.  CBP denied Plaintiff's protest in full on June 19, 2020. ECF 20-1 at 1-3.

13.  Cyber Power commenced this action on June 22, 2020, contending that all imported goods are products of the Philippines and should be marked as such. Pl.'s Summons (ECF 1).

## The Merchandise at Issue.

## UPS Model No. OR500LCDRM1U

14.  UPS Model No. OR500LCDRM1U is a 500VA/300W UPS which is used as a backup battery source for various electrical appliances. Def.'s Mot. Summary Judgment ("MSJ"), Ex. 1, at 7 (ECF 61).

15.  UPS Model No. OR500LCDRM1U provides battery backup (using simulated sine wave output) and surge protection for department servers, workgroup servers, workstations, network devices, and telecom installations without active PFC power supplies. Def.'s MSJ, Ex. 1, at 7 (ECF 61).

16. UPS Model No. OR500LCDRM1U uses Automatic Voltage Regulation to correct minor power fluctuations without switching to battery power, which extends battery life. Def.'s MSJ, Ex. 1, at 7 (ECF 61).

17. If power to a connected device is lost, UPS Model No. OR500LCDRM1U activates a lead acid battery, which provides emergency power to the connected device until power is restored, or another source of power (*e.g.*, emergency generator) can be collected. Def.'s MSJ, Ex. 1, at 7 (ECF 61).

18. The main board printed circuit board assembly ("PCBA") incorporated into UPS Model No. OR500LCDRM1U is manufactured in China. Def.'s MSJ, Ex. 1, at 12-13 (ECF 61-1).

19. The schematic and firmware for UPS Model No. OR500LCDRM1U have no associated unit price and are not part of the total material cost for this device as shown on Bills of Materials. PTX39, PTX40.

20. Of the 226 lines in the bill of materials reflecting all components comprising UPS Model No. OR500LCDRM1U, 216 lines reflect components from China and one line reflects that 78% of the components on that line are from China. PTX39.

21. Of the 716 unique components comprising UPS Model No. OR500LCDRM1U, 700 or 97.7% are from China. PTX40.

22. Of 124 lines in the bill of materials reflecting all components for the main board of UPS Model No. OR500LCDRM1U, 116 lines reflect components from China and one line reflects that 78% of the components on that line are from China. PTX40.

23. Of the 413 unique components comprising the main board of UPS Model No. OR500LCDRM1U, 399 or 96.6% are from China. PTX39.

### UPS Model No. SX650U

24. UPS Model No. SX650U is a 650V/360W battery backup power supply which provides surge protection for lightning-induced surges and other power events that can damage electronic equipment. Def.'s MSJ, Ex. 1, at 7 (ECF 61).

25. UPS Model No. SX650U delivers enough battery backup to connected electronics during a utility power failure, so that the user can perform a graceful shutdown to protect against the loss of data and damage to valuable electronics including computers, gaming consoles, and broadband routers. Def.'s MSJ, Ex. 1, at 7-8 (ECF 61).

26. The main board PCBA incorporated into this device is manufactured in China.  Def. MSJ Ex. 1 at p. 12-13 (ECF 61).

27. The schematics and firmware for UPS Model No. SX650U have no associated unit price and are not part of the total material cost for this device on the Bill of Materials. PTX48, PTX49 .

28. Of 206 lines in the bill of materials reflecting all components comprising UPS Model No. SX650U, 185 lines reflect components from China, 8 lines reflect that 78% of the components on that line are from China, 1 line reflects that 63% of the components on that line are from China, and 1 line reflects that the components on that line are from either Vietnam or China. PTX48.

29. Of the 419 unique components comprising UPS Model No. SX650U, 402 or 95.9% are from China. PTX48.

30. Of 133 lines in the bill of materials reflecting all components for the main board of UPS Model No. SX650U, 120 lines reflect components from China and 5 lines reflect that 78% of the components on that line are from China. PTX49.

4

31. Of the 308 unique components comprising the main board of UPS Model No. SX650U, 293 or 95.1% are from China. PTX49.

### UPS Model No. CBN50U48A-1

32. UPS Model No. CBN50U48A-1 is an uninterruptible power supply which provides cable telephony, wireless local loop and fiber to the premise suppliers with a local battery backup and power supply for home and office networking equipment. Def.'s MSJ, Ex. 1, at 8 (ECF 61).

33. UPS Model No. CBN50U48A-1 supplies surge protection and continuous 48Vdc during power surges and outages, keeping local power network interface units up and running. Def.'s MSJ, Ex. 1, at 8 (ECF 61).

34. The printed circuit board assembly incorporated in UPS Model No. CBN50U48A-1 is manufactured in China.  Def.'s MSJ, Ex. 1, at 12-13 (ECF 61).

35. The schematics and central processing unit code for UPS Model No. CBN50U48A have no associated unit price as shown on the Bill of Materials. PTX21, PTX22.

36. Of 202 lines in the bill of materials reflecting all components comprising UPS Model No. CBN50U48A, 178 lines reflect components from China and 1 line reflects that the components on that line are from either Morocco or China. PTX21.

37. Of the 431 unique components comprising UPS Model No. CBN50U48A, 389 or 90.2% are from China. PTX21.

38. Of 161 lines in the bill of materials reflecting all components for the main board of UPS Model No. CBN50U48A, 137 lines reflect components from China and 1 line reflects that the components on that line are from Morocco or China. PTX22 .

39. Of the 362 unique components comprising the main board of UPS Model No. CBN50U48A, 294 or 81.2% are from China. PTX22.

**UPS Model No. CP600LCDa**

40. UPS Model No. CP600LCDa is a 600VA/340W power supply which provides battery backup (using simulated sine wave output) and surge protection for desktop computers, workstations, networking devices, and home entertainment systems. Def.'s MSJ, Ex. 1, at 8 (ECF 61).

41. UPS Model No. CP600LCDa delivers enough battery backup power to perform a graceful shutdown to protect against the loss of data and damage to valuable electronics during longer power outages. Def.'s MSJ, Ex. 1, at 8 (ECF 61).

42. UPS Model No. CP600LCDa is able to provide real time status and alerts of potential problems. Def.'s MSJ, Ex. 1, at 8 (ECF 61).

43. The schematic and firmware for UPS Model No. CP600LCDa have no associated unit price on the Bill of Materials and are not part of the total material cost for this device. PTX11, PTX12.

44. Of 173 lines in the bill of materials reflecting all components comprising UPS Model No. CP600LCDa, 161 lines reflect components from China and 1 line reflects that 63% of the components on that line are from China. PTX11.

45. Of the 440 unique components comprising UPS Model No. CP600LCDa, 406 or 92.2% are from China. PTX11.

46. Of 128 lines in the bill of materials reflecting all components for the main board of UPS Model No. CP600LCDa, 117 lines reflect components from China and 1 line reflects that 63% of the components on that line are from China. PTX12.

47. Of the 370 unique components comprising the main board of UPS Model No. CP600LCDa, 335 or 90.5% are from China. PTX12.

## UPS Model No. CST135XLU

48. UPS Model No. CST135XLU is a 1350VA/810W battery backup designed to be used with automatic data processing equipment and other devices. Def.'s Trial Ex. 1, at 8.

49. UPS Model No. CST135XLU is a line interactive power supply using a simulated sine wave for control of battery functions. Def.'s Trial Ex. 1, at 8.

50. The printed circuit board assemblies incorporated into this device are manufactured in China. Def.'s Trial Ex. 1, at 12-13, PTX30.

51. The schematics and firmware for UPS Model No. CST135XLU have no associated unit price and are not part of the total material cost for this device. PTX30, PTX31.

52. Of 284 lines in the bill of materials reflecting all components comprising UPS Model No. CST135XLU, 261 lines reflect components from China and 2 lines reflect that 78% of the components on that line are from China. PTX30.

53. Of the 636 unique components comprising UPS Model No. CST135XLU, 595 or 93.5% are from China. PTX30.

54. Of 123 lines in the bill of materials reflecting all components for the main board of UPS Model No. CST135XLU, 114 lines reflect components from China and 1 line reflects that 78% of the components on that line are from China. PTX31.

55. Of the 319 unique components comprising the main board of UPS Model No. CST135XLU, 294 or 92.1% are from China. PTX31.

**SVP Model No. HT1206UC2RC1**

56. SVP Model No. HT1206UC2RC1 is a surge protector which uses metal oxide varistor technology to provide surge protection of up to 2880 joules to connected devices. Def.'s MSJ, Ex. 1, at 8 (ECF 61).

57. SVP Model No. HT1206UC2RC1 has 12 outlets, 6 of which are standard and 6 of which are transformer spaced. Def.'s MSJ, Ex. 1, at 8 (ECF 61).

58. The printed circuit board assemblies incorporated into this device are manufactured in China. Def.'s MSJ, Ex. 1, at 12-13; Pl. SOF.

59. The schematics for SVP Model No. HT1206UC2RC1 reflected on the bill of materials for the PCBAs have no associated unit price. PTX57, PTX58.

60. Of 112 lines in the bill of materials reflecting all components comprising SVP Model No. HT1206UC2RC1, 101 lines reflect components from China and 1 line reflects that 63% of the components on that line are from China. PTX57.

61. Of the 195 unique components comprising SVP Model No. HT1206UC2RC1, 184 or 94.3% are from China. PTX57.

62. Of 65 lines in the bill of materials reflecting all components for the main board of SVP Model No. HT1206UC2RC1, 55 lines reflect components from China. PTX58.

63. Of the 122 unique components comprising the main board of SVP Model No. HT1206UC2RC1, 112 or 91.8% are from China. PTX58.

64. Cyber Power Systems, Inc., a Taiwanese entity and parent of plaintiff, has an enterprise resource planning (ERP) system from which it generated the information in the bill of materials. Def.'s MSJ, Ex. 2, at 16-18, 42, 50-51, 54 (ECF 61).

65. Cyber Power Systems, Inc. is in charge of purchasing the components that comprise the

subject merchandise. Def.'s MSJ, Ex. 2, at 56-57 (ECF 61).

**SCHEDULE C-1**
**CYBERPOWER SYSTEM (USA), INC. STATEMENT OF**
**MATERIAL FACTS IN DISPUTE**

I.      **Set Up of Cyber Power Philippines Facilities and Initial Manufacturing**

1.  Between August and September 2018, production equipment was exported from China to the Philippines to be installed in the new CPSMI factory. *See* Plaintiff's Trial Exhibit ("PTX") 4 (FRE 1006 Summary of Invoices, Shipping, and Philippines Importation Documents Relating to CPSMI's Acquisition of Manufacturing Equipment).

2.  By October, 2018, CPSMI had obtained all governmentally mandated certificates and registrations necessary to operate a production facility in the Philippines. *See* PTX 6.

3.  CPSMI's began producing finished products at the end of October 2018. The first finished products manufactured at the CPSMI Manila factory were UPS Model No. CP550SLG (a model not at issue in this case).

4.  The manufacturing operations performed by CPSMI that began in late October 2018 included assembly operations, which joined various parts, components and materials to produce UPS and SVP devices, the downloading of firmware into the UPS units, and testing, and packaging of both UPS and SVP devices.

5.  On March 6, 2019, CPSI incorporated a new subsidiary in the Philippines, Phisonic, Inc. ("Phisonic"), to operate in the factory space immediately adjacent to CPSMI, at Unit A1, Block 1, Lot 6, Phase 2 Golden Gate Business Park, Barangay Buenavista, General Trias City, Cavite, Philippines.  *See* PTX 7.

6.  Phisonic thereafter obtained all required certifications and registrations necessary to commence production in the Philippines. *See* PTX 8.

7.  Phisonic and CPSMI operate in the same building. While they have separate exterior

entrances, workers can walk before the two companies, and materials can be shipped from Phisonic to CPSMI, without leaving the building. PTX 7.

8. Beginning in August 2019, CPSI arranged for the shipment of capital equipment, including but not limited to surface mount technology ("SMT") and dual in-line package ("DIP") production machines, from CPSSZI's Chinese factory to Phisonic's Philippines factory. *See* PTX 5. (FRE 1006 Summary of Invoices, Shipping, and Philippines Importation Documents Relating to Phisonic Inc.'s Acquisition of Printed Circuit Board Assembly Manufacturing Equipment).

9. The production equipment shipped to Phisonic included: PCB loader; Solder Paste Printing machine; High speed SMT placement machine; a reflow oven; PCB unloader; radial lead component insertion machine (Automatic component insert machine); numerous conveyor belts; stacks; unloading machines; component lead cutting machines (Part shearing machine); Electroformer molding machine; Resistor lead forming machine; Jumper wire insertion machine (Jumper machine); testing systems, and numerous production lines, trollys and anti-static carts. *Id.*

10. Beginning in September 2019, Phisonic began to manufacture PCBAs in the Philippines for use in CPSMI's UPS and SVP manufacturing operations. These operations included populating printed circuit boards with microcomponents, and soldering the microcomponents in place using specialized surface mount technology ("SMT") equipment.

11. All of the subject merchandise which is the subject of this action was produced in CPSMI's Philippines facility through processes of manufacture.

## II. UPS DEVICES AT ISSUE

### a. UPS Model No. CP600LCDa

12. The UPS Model No. CP600LCDa (a/k/a CP600LCD) is a 600VA/340W uninterruptible power supply which provides battery backup and whose specifications are found at PTX 9 (Product Spec Sheet). A sample of this product has been submitted to the Court. *See* PTX 91. The product is depicted below:



13. The printed circuit board assemblies ("PCBA") for the UPS Model No. CP600LCDa were manufactured by Phisonic in the Philippines. A sample of this product's PCBA assembly has been submitted to the Court. *See* PTX 92.

14. A timeline of the work performed on UPS Model no. CP600LCD is provided at PTX 13 (Production Timeline, UPS Model No. CP600LCDa). This Production timeline shows that SMT and DIP assembly operations are performed on PCBs in the Philippines to produce PCBAs that are then assembled at CPSMI's Philippines facility with other components to create finished UPS devices. *Id.*

15. The bill of materials for UPS Model No. CP600LCDa shows that discrete components are assembled together in the Philippines to create a new and different article of commerce, *viz.* an uninterruptible power supply. *See* PTX 11 (Bill of Materials for All Components in UPS Model No. CP600LCDa); *see* PTX 12 (Bill of Materials for PCBA components in UPS Model

No. CP600LCDa). The internal components of UPS Model No. CP600LCDa, including those comprising the PCBAs, are products of *inter alia* China, Taiwan, Malaysia, Morocco, and Mexico. *Id.* As stated, all of the DIP and SMT processes to manufacture the PCBAs in UPS Model No. CP600LCDa occur in the Philippines and are performed by Phisonic. *Id.*

16. The assembly operations for UPS Model No. CP600LCDa that are performed by CPSMI in the Philippines are detailed at PTX 14 (Assembly Operations Flowchart, UPS Model No. CP600LCDa), PTX 15, and PTX 16 (Standard Operating Procedure, UPS Model No. CP600LCDa).

17. A depiction of the exploded view diagram for UPS Model No. CP600LCDa is included below:



18. The assembled UPS Model No. CP600LCDa is then programmed in the Philippines with

   firmware which is produced in Taiwan and which enables the electronic components of the

   UPS to function. *See e.g.,* Affirmation of Thomas Fuehrer in Support of Plaintiff's Motion

   for Summary Judgment.

19. None of the components which are assembled in the Philippines, taken individually, has the

   ability to detect power outages or serve as a backup power supply system using battery

   power. *See e.g.,* Affirmation of Brent Lovett in Support of Plaintiff's Motion for Summary

   Judgment.

- 

### B.    UPS Model CBN50U48A-1

20. UPS Model no. CBN50U48A-1 is an uninterruptible power supply which provides cable telephony, wireless local loop ("WLL") and fiber to the premise ("FTTx") suppliers with a local battery backup and power supply for home and office networking equipment. It supplies surge protection and continuous 48Vdc during power surges and outages, keeping local power network interface units up and running. PTX 18 (Spec Sheet, UPS Model No. CBN50U48A-1). A sample of this product has been submitted to the Court. *See* PTX 91. The Product is depicted below:



21. A user manual for UPS Model No. CBN50U48A-1 depicts its operation. *See* PTX 19 (User Manual, UPS Model No. CBN50U48A-1). Technical specifications for UPS Model No. CBN50U48A-1 are appended as PTX 20 (Technical Specs, UPS Model No. CBN50U48A-1).

22. A timeline of the work performed in the Philippines to create UPS Model No. CBN50U48A-1 is provided at PTX 23 (Philippines Production Timeline, UPS Model No. CBN50U48A-1). This timeline shows that SMT and DIP assembly operations are performed on PCBs in China to produce a PCBA, and that the PCBA is then imported into the Philippines for final UPS assembly operations by CPSMI into the UPS Model No. CBN50U48A-1. *Id.* Samples of this

products PCBA have been submitted to the Court. *See* PTX 92.

23. A step-by-step procedure of the SMT and DIP processes taking place in China according to Cyber Power's production standard operating procedures is depicted at PTX 24 (Standard Operating Procedures for Chinese Manufacture of PCBA, UPS Model No. CBN50U48A-1).

24. A step-by-step procedure of the Philippines-manufacture of UPS Model No. CBN50U48A-1 is provided at PTX 25 (Standard Operating Procedure for Philippines Manufacture of UPS Model No. CBN50U48A-1).

25. The assembly operations for UPS Model No. CBN50U48A-1 that are performed by CPSMI in the Philippines are also detailed in a flowchart at PTX 26 (Assembly Operations Flowchart, UPS Model no. CBN50U48A-1).

26. Depictions of the UPS Model No. CBN50U48A-1's Schematic of PCBA, Dimension Drawing, and Exploded View Diagram are appended as PTX 27 (Schematic of PCBA, Dimension Drawing, and Exploded View Diagram, UPS Model No. CBN50U48A-1). A depiction of the exploded view diagram for UPS Model No. CBN50U48A-1 is included below:



27. The assembled UPS Model No. CBN50U48A-1 is then programmed in the Philippines with

firmware which is produced in Taiwan and which enables the electronic components of the

UPS to function. *See e.g.,* Affirmation of Thomas Fuehrer in Support of Plaintiff's Motion

for Summary Judgment.

C.   **UPS Model No. CST135XLU**

28. UPS Model No. CST135XLU is a 1350VA/810W battery backup whose specifications are

found at *See* PTX 28 (Spec Sheet, UPS Model No. CST135XLU). A sample of this product

has been submitted to the Court. *See* PTX 91.  The Product is depicted below



29. A user manual for UPS Model No. CST135XLU is appended as PTX 29 (User Manual, UPS

Model No. CST135XLU).

30. The bill of materials for UPS Model No. CST135XLU shows that discrete components are

assembled together to create a new and different article of commerce, *viz.* an uninterruptible

power supply. *See* PTX 30 (Bill of Materials for All Components in UPS Model No.

CST135XLU); *see* PTX 31 (Bill of Materials for Components of PCBAs in UPS Model No.

CST135XLU). The internal components of UPS Model No. CST135XLU, including those

comprising the main board and control board PCBAs, are products of *inter alia* China,

Taiwan, Malaysia, Morocco, Mexico, the Philippines, and Vietnam. *Id.* The DIP and SMT

processes used to manufacture the main board and control board PCBAs for UPS Model

No. CST135XLU occur in China and are performed by Cyber Power China. *Id.*

31. A timeline of the work performed in the Philippines on UPS Model No. CST135XLU is

provided at PTX 32 (Philippines Production Timeline, UPS Model No. CST135XLU). This

timeline shows that SMT and DIP assembly operations are performed on PCBs in China to produce PCBAs, and that the PCBAs are then imported into the Philippines for final UPS assembly operations by CPSMI into the UPS Model No. CST135XLU. *Id.* A step-by-step procedure of the SMT and DIP processes taking place in China according to Cyber Power's production standard operating procedures is depicted at PTX 33 (Standard Operating Procedures for Chinese Manufacture of PCBA, UPS Model No. CST135XLU). A step-by-step procedure of the Philippines-manufacture of UPS Model No. CST135XLU is provided at PTX 34 (Standard Operating Procedure for Philippines Manufacture of UPS Model No. CST135XLU). A sample of this products PCBA assembly has been submitted to the Court. *See* PTX 92.

32. The assembly operations for UPS Model No. CST135XLU that are performed by CPSMI in the Philippines are also detailed in a flowchart at PTX 35 (Assembly Operations Flowchart, UPS Model No. CST135XLU). Depictions of the UPS Model No. CST135XLU's Schematic of PCBA, Dimension Drawing, and Exploded View Diagram are appended as PTX 36 (Schematic of PCBA, Dimension Drawing, and Exploded View Diagram, UPS Model No. CST135XLU). A depiction of the exploded view diagram for UPS Model No. CST135XLU is included below:



33. The assembled UPS Model No. CST135XLU is then programmed in the Philippines with firmware which is produced in Taiwan and which enables the electronic components of the UPS to function. *See e.g.,* Affirmation of Thomas Fuehrer in Support of Plaintiff's Motion for Summary Judgment.

34. None of the components which are assembled in the Philippines, taken individually, has the ability to detect power outages or serve as a backup power supply system using battery power. *See e.g.,* Affirmation of Brent Lovett in Support of Plaintiff's Motion for Summary Judgment.

### D.     UPS Model No. OR500LCDRM1U

35. UPS Model No. OR500LCDRM1U is a 500VA/300W UPS which is used as a backup battery source for various electrical appliances. The product provides battery backup (using simulated sine wave output) and surge protection for department servers,

workgroup servers, workstations, network devices, and telecom installations without active PFC power supplies. *See* PTX 37 (Spec Sheet, UPS Model No. OR500LCDRM1U). This product uses Automatic Voltage Regulation ("AVR") to correct minor power fluctuations without switching to battery power, which extends battery life. AVR is essential in areas where power fluctuations occur frequently. In the event power to a connected device is lost, the UPS activates a lead acid battery, which provides emergency power to the connected device until power is restored, or another source of power (*e.g.*, emergency generator) can be collected. A sample of this product has been submitted to the Court. *See* PTX91. The product is depicted below:



36. The bill of materials for UPS Model No. OR500LCDRM1U shows that discrete components are assembled together to create a new and different article of commerce, *viz.* an uninterruptible power supply. *See* PTX39 (Bill of Materials for All Components in UPS Model No. OR500LCDRM1U); *see* PTX40 (Bill of Materials for Components of PCBAs in UPS Model No. OR500LCDRM1U).

37. The DIP and SMT processes used to manufacture the main board and switch board PCBAs

for UPS Model No. OR500LCDRM1U occur in China and are performed by Cyber Power China. *Id.* A sample of this products PCBA assembly has been submitted to the Court. PTX92.

38. A timeline of the work performed in the Philippines on UPS Model No. OR500LCDRM1U is provided at PTX41 (Philippines Production Timeline, UPS Model No. OR500LCDRM1U). This timeline shows that SMT and DIP assembly operations are performed on PCBs in China to produce PCBAs, and that the PCBAs are then imported into the Philippines for final UPS assembly operations by CPSMI into the UPS Model No. OR500LCDRM1U. *Id.*

39. A step-by-step procedure of the SMT and DIP processes taking place in China according to Cyber Power's production standard operating procedures is depicted at PTX42 (Standard Operating Procedures for Chinese Manufacture of PCBA, UPS Model No. OR500LCDRM1U).

40. A step-by-step procedure of the Philippines-manufacture of UPS Model No. OR500LCDRM1U is provided at PTX43 (Standard    Operating Procedure for Philippines Manufacture of UPS Model No. OR500LCDRM1U).

41. The assembly operations for UPS Model No. OR500LCDRM1U that are performed by CPSMI in the Philippines are also detailed in a flowchart at PTX44 (Assembly Operations Flowchart, UPS Model No. OR500LCDRM1U).

42. Depictions of the UPS Model No. OR500LCDRM1U's Schematic of PCBA, Dimension Drawing, and Exploded View Diagram are appended as PTX45 (Schematic of PCBA, Dimension Drawing, and Exploded View Diagram, UPS Model No. OR500LCDRM1U). A depiction of the exploded view diagram for UPS Model No. OR500LCDRM1U is included

below:



43. The assembled UPS Model No. OR500LCDRM1U is then programmed in the Philippines with firmware which is produced in Taiwan and which enables the electronic components of the UPS to function. *See e.g.,* Affirmation of Thomas Fuehrer in Support of Plaintiff's Motion for Summary Judgment.

44. None of the components which are assembled in the Philippines, taken individually, has the ability to detect power outages or serve as a backup power supply system using battery power. *See e.g.,* Affirmation of Brent Lovett in Support of Plaintiff's Motion for Summary

Judgment.

### E.     UPS Model No. SX650U

45. UPS Model No. SX650U is a 650V/360W battery backup power supply which provides surge

protection for lightning-induced surges and other power events that can damage electronic

equipment. This unit delivers enough battery backup to connected electronics during a utility

power failure, so that the user can perform a graceful shutdown to protect against the loss of

data and damage to valuable electronics including computers, gaming consoles, and broadband

routers. *See* PTX46 (Spec Sheet, UPS Model No. SX650U). A sample of this product has

been submitted to the Court. *See* PTS 91. The product is depicted below:



46. The bill of materials for UPS Model No. SX650U shows that discrete components are

assembled together to create a new and different article of commerce, *viz.* an uninterruptible

power supply. *See* PTX48 (Bill of Materials for All Components in UPS Model No. SX650U);

*see* PTX49 (Bill of Materials for Components of PCBAs in UPS Model No. SX650U). The

internal components of UPS Model No. SX650U, including those comprising the main board,

USB board, and USB charger board PCBAs, are products of *inter alia* China, Taiwan,

Mexico, Malaysia, Morocco, Thailand, the Philippines, and Vietnam. *Id.* The DIP and SMT

processes used to manufacture the main board, USB board, and USB charger board PCBAs for UPS Model No. SX650U occur in China and are performed by Cyber Power China. *Id.*

47. A timeline of the work performed in the Philippines on UPS Model No. SX650U is provided at PTX50 (Philippines Production Timeline, UPS Model No. SX650U). This timeline shows that SMT and DIP assembly operations are performed on PCBs in China to produce PCBAs, and that the PCBAs are then imported into the Philippines for final UPS assembly operations by CPSMI into the UPS Model No. SX650U. *Id.*

48. A step-by-step procedure of the SMT and DIP processes taking place in China according to Cyber Power's production standard operating procedures is depicted at PTX51 (Standard Operating Procedures for Chinese Manufacture of PCBA, UPS Model No. SX650U). A step-by-step procedure of the Philippines-manufacture of UPS Model No. SX650U is provided at PTX52 (Standard Operating Procedure for Philippines Manufacture of UPS Model No. SX650U). Samples of this products PCBA assembly have been submitted to the Court. *See* PTX92.

49. The assembly operations for UPS Model No. SX650U that are performed by CPSMI in the Philippines are also detailed in a flowchart at PTX53 (Assembly Operations Flowchart, UPS Model No. SX650U).

50. Depictions of the UPS Model No. SX650U Schematic of PCBA, Dimension Drawing, and Exploded View Diagram are appended as PTX54 (Schematic of PCBA, Dimension Drawing, and Exploded View Diagram, UPS Model No. SX650U). A depiction of the exploded view diagram for UPS Model No. SX650U is included below:



51. The assembled UPS Model No. SX650U is then programmed in the Philippines with firmware which is produced in Taiwan and which enables the electronic components of the UPS to function. *See e.g.,* Affirmation of Thomas Fuehrer in Support of Plaintiff's Motion for Summary Judgment.

52. None of the components which are assembled in the Philippines, taken individually, has the ability to detect power outages or serve as a backup power supply system using battery power. *See e.g.,* Affirmation of Brent Lovett in Support of Plaintiff's Motion for Summary Judgment.

53. The assembly operations for UPS Model No. SX650U that are performed by CPSMI in the Philippines result in the creation of a new and different article of commerce with a new name, character, and use as compared to its Philippines-assembled components. *Id.*

## III.    DESIGN AND INSTALLATION OF FIRMWARE ON ALL SUBJECT UPS MODELS

54. Firmware is applied to the PCBAs in all the subject UPS models. This programming occurs at CPSMI's plant in the Philippines, using firmware code which was created by CPSI in Taiwan by Taiwanese firmware engineers. The UPS units which are the subject of this case each feature one or more printed circuit board assemblies ("PCBA"). PCBAs consist of a number of micro-components (*e.g.,* diodes, rectifiers, capacitors, etc.) which are mounted on a printed circuit board ("PCB") and wired together in a particular manner.

55. The PCBA assemblies for four of the UPS units at issue in this case were assembled in China (*i.e.,* UPS Model Nos. OR500LCDRM1U, SX650U, CBN50U48A-1 and CST135XLU), by a process involving dual in-line packaging ("DIP") machines, which populate PCBs with micro-components, and Surface Mount Technology ("SMT"), in which automated devices finalize the connections of the micro-components, typically through wave-soldering or another electronic soldering processes. For UPS Model No. CP600LCDa, the PCBAs are

18

populated and wave soldered through DIP and SMT processes at the Philippines-facility of CyberPower's affiliate, Phisonic. *See,* Affirmation of Thomas Fuehrer in Support of Plaintiff's Motion for Summary Judgment. PCBAs are useless and non-functional until and unless they have been programmed with firmware. "Firmware" is the term used to describe computer programing code which is downloaded into a device having no native intelligence, such as the PCBA boards incorporated in the subject UPS devices. "Firmware" is distinguishable from "software," a term that refers to computer programing code loaded into a machine with native intelligence, for example a computer having an operating system installed. *Id.*

56. All of the firmware used in the subject UPS devices which are the subject of this case was created in Taiwan by Taiwanese firmware engineers. The firmware is downloaded and programed into the subject UPS units in the Philippines. This programing occurs after the PCBAs have been assembled with other components to make the subject UPS devices. *Id.*

57. Firmware code is used to instruct the UPS devices performance of various functions. The specific firmware codes which are used in the subject UPS units are shown in the Affirmation of Thomas Fuehrer. *Id.*

58. By way of example, for the UPS Model No. CP600LCDa, there are a number of firmware programming lines which handle various functions. These include firmware code to allow initialization of the device (i/o, DMA, IRQ Priority, AD, Timer Functions and PWM ). *Id.* Additional firmware  code commands handle basic functions of the device such as RMS calculations, watt to volt ampere (W/VA) detection, runtime/capacity calculations, wave detection, frequency detection, battery testing, mode transferring logic, IAP (in-application program), UART communication, phase lock loop function, button detection function,

inverter regulation function, watchdog functions, EEPROM storage function, buzzer function, LED function, X-capacitor protection, temperature protection, output short protection and overload protection. *Id.* There are also codes handling various team-supporter function tests for the product. *Id.* These functions have 2,080 lines of unique code, which require 3,270 person hours to write. *Id.* Individual code lines, as shown in the exhibit, contain various commands containing some 36,867 lines of code. *Id.*

59. Until the PCBAs within the subject UPS devices are programmed with this firmware code and successfully tested, they have no functionality whatsoever. It is the programming of the PCBAs with the Taiwanese origin firmware code, which programming occurs in the Philippines, which enables the PCBAs in a UPS unit to function at all. Without the firmware, neither the PCBAs nor the UPS units have any functionality whatsoever. *Id.*

60. The 5 models of UPS articles at issue in this action possess firmware. All of the UPS units involved in this case require programing with firmware of like complexity in order to enable them to perform their functions. *Id.*

## IV.  SVP DEVICE AT ISSUE

### A.  SVP Model No. HT1206UC2RC1.

61. SVP Model No. HT1206UC2RC1 is a surge voltage protector which uses metal oxide varistor ("MOV") technology to provide surge protection of up to 2880 joules to connected devices. The product features 12 outlets: 6 standard and 6 transformer spaced. PTX 55 (Spec. Sheet, SVP Model No. HT1206UC2RC1). A sample of this product has been submitted to the Court. *See* PTX91. The product is depicted below:



62. The bill of materials for SVP Model No. HT1206UC2RC1 shows that discrete components are assembled together to create a new and different article of commerce, *viz*. a surge voltage protector. *See* PTX57 (Bill of Materials for All Components in SVP Model No. HT1206UC2RC1); *see* PTX58 (Bill of Materials for Components of PCBAs in SVP Model No. HT1206UC2RC1).

63. The internal components of SVP Model No. HT1206UC2RC1, including those comprising the surge board, charger board, USB connector board, coax board, and RJ45 board PCBAs, are products of *inter alia* China, Taiwan, United States, Malaysia, and Thailand. *Id.* The DIP and SMT processes used to manufacture the surge board, charger board, USB connector board, coax board, and RJ45 board PCBAs for SVP Model No. HT1206UC2RC1 occur in China and are performed by Cyber Power China. *Id.* Sample of this products PCBA assembly has been submitted to the Court. *See* PTX92.

64. A timeline of the work performed in the Philippines on SVP Model No. HT1206UC2RC1is provided at PTX59 (Philippines Production Timeline, SVP Model No. HT1206UC2RC1). This timeline shows that SMT and DIP assembly operations are performed on PCBs in China to produce PCBAs, and that the PCBAs are then imported into the Philippines for final SVP assembly operations by CPSMI into the SVP Model No. HT1206UC2RC1. *Id.* A step-by-

21

step procedure of the SMT and DIP processes taking place in China according to Cyber Power's production standard operating procedures is depicted at PTX60 (Standard Operating Procedures for Chinese Manufacture of PCBA, SVP Model No. HT1206UC2RC1). A step-by-step procedure of the Philippines-manufacture of SVP Model No. HT1206UC2RC1is provided at PTX61 (Standard Operating Procedure for Philippines Manufacture of SVP Model No. HT1206UC2RC1). The assembly operations for SVP Model No. HT1206UC2RC1that are performed by CPSMI in the Philippines are also detailed in a flowchart at PTX62 (Assembly Operations Flowchart, SVP Model No. HT1206UC2RC1).

65. Depictions of the SVP Model No. HT1206UC2RC1's Schematic of PCBA, Dimension Drawing, and Exploded View Diagram are appended as PTX63 (Schematic of PCBA, Dimension Drawing, and Exploded View Diagram, SVP Model No. HT1206UC2RC1). A  depiction of the exploded view diagram for SVP Model No. HT1206UC2RC1 is included below:



**B.      ADDITIONAL CPSMI OPERATIONS PERFORMED IN THE PHILIPPINES.**

66. In addition to the foregoing assembly operations, and UPS firmware design and installation, which created the individual models of subject merchandise described above, CPSMI performed the following quality control and product testing operations in the Philippines on all subject UPS and SVP devices:

    a.   UPS parameter calibration, using auto test equipment to check input and output voltage, output voltage and frequency;

    b.   Hi-Pot electrical testing and full function testing, such as input tests, output tests, backup tests, software communication tests, overload tests;

    c.   USB communications tests, for devices featuring USB ports.

*See e.g.,* PTX14, PTX26, PTX35, PTX44, PTX53, PTX62.

67. For UPS units, CPSMI also performs a cold start test to ensure that the device cannot be

turned on while in battery mode, and a waveform test to ensure the electrical circuit can carry the specified current.

68. CPSMI performs the following labeling and packaging operations in the Philippines on all subject UPS and SVP devices: product labeling; product packaging; insertion of user manuals within the product packaging; preparation for shipment; palletizing.

69. Mr. Huang subsequently caused the video records to be edited together to show chronologically the operations performed at CPSMI's Philippines plant on the dates the recordings were made. This video record has been submitted to the Court as PTX1. The video record does not purport to depict the manufacture of the specific goods which are the subject of this action, but is proffered as a demonstrative or pedagogical exhibit, in accordance with Rule 611 of the Federal Rules of Evidence.

70. The video recording is the best evidence of its contents. For the convenience of the Court, Mr. Huang has provided a tabular description of the activities being depicted in the video Exhibit:

| Video Time | Activities or things depicted |
|---|---|
| 0:00 - 01:42 | Exterior of CPSMI and Phisonic plant. Entrance to plant at Phisonic loading dock entrance. |
| 1:43 - 03:04 | Passage through inventory area and arrival at Phisonic Surface Mount Technology ("SMT") facility. |
| 03:05 - 05:20 | Phisonic SMT room and dual-inline processing ("DIP") and SMT machines installed therein. Printed Circuit Board Assemblies ("PCBA") in racks on a cart, being removed from SMT room by CPSMI Technician |
| 05:21 – 05:54 | Transport of PCBAs from Phisonic SMT room to assembly line in Phisonic plant. |
| 05:55 - 08:05 | Dual Inline Processing ("DIP") Line 2 in Phisonic facility, showing assembly of additional components to printed circuit board assemblies. |
| 08:06 - 10:02 | DIP component insertion and wave soldering preparation in Phisonic plant. |

| | |
|---|---|
| 10:03 – 13:10 | Delivery of finished PCBAs from Phisonic plant to CPSMI Assembly area, using hand-powered forklift. |
| 13:11 - 13:20 | CPSMI assembly plant personnel accept and "stock in" PCBAs received from Phisonic. |
| 13:21 – 15:42 | CPSMI staff issue PCBAs to production line for manufacture of UPS units. Placard on pallet carrying PCBAs identifies UPS model for which they are intended. |
| 15:43 – 20:05 | Assembly of surge voltage protectors ("SVPs"). Operation begins with wiring anodes and cathodes into printed circuit board ("PCB"), creating subassembly for electrical sockets. Soldering of electrical wires into anode and cathode PCBA. Welding of electrical cords into SVPs, assembly of switches and signal panels to devices and insertion of same into front cover. Installation of protected, grounded nameplates, and assembly of rear covers. |
| 20:06 – 21:00 | Performance of high voltage and grounding tests with hi-pot testing device; performance of L/N reverse and function testing |
| 21:01 - 21:19 | Performance of burn-in (ageing) tests by burn-in (ageing) testing machine (2 hours) |
| 21:20 – 21:55 | UPS pre-assembly. Assembly of anodes and cathodes to produce outlets. |
| 21:56 - 22:37 | Welding of power cord to anode/cathode assemblies. |
| 22:38 – 24:36 | UPS rear panel pre-assembly (3 phases). Installation of terminals into rear panel of UPS, attachment of power cord, installation of components into rear cover. |
| 24:37 – 26:25 | Fixing of rear terminal cover with screws (2 phases) |
| 26:26 – 26:45 | Rear panel quality and visual test |
| 26:46 - 28:00 | Issuance of components to assembly line for manufacture of UPS. |
| 28:01 – 28:20 | Installation of main board. |
| 28:21 – 28:34 | Installation of transformer. |
| 28:35 - 28:46 | Install USB charger board to front panel of UPS device. |
| 28:47 – 29:13 | Connect rear panel to main board by installation of wires. |
| 29:14 – 30:04 | Dip yellow glue adhesive to allow for connection of components. |
| 30:05 – 30:30 | Installation of side cover. |
| 30:31 – 30:57 | Installation of front panel of UPS device and fix side cover with screws. |
| 30:58 – 31:38 | Overview of UPS assembly area. |
| 31:39 – 32:35 | Checking battery voltage and installation of battery in UPS unit. |
| 32:36 – 33:04 | DC Power boot test. |
| 33:05 – 33:36 | Connect battery cables and insert batter(ies) in battery compartment. |

| 33:37 – 34:16 | UPS testing and packing. Perform hi-pot test and affix labels. |
| 34:17 - 35:07 | Firmware burn-in and ATE test. |
| 35:08 - 35:53 | USB charger test, and communications test. Affix label and country of origin label; scan barcode. |
| 35:53 – 36:05 | Cold start test. |
| 36:06 – 36:47 | RJ45 and TV coaxial connector tests. |
| 36:48 - 37:38 | Visual and tactile inspection and cleaning of assembled UPS unit. |
| 37:39 - 37:47 | Affix labels to retail box. |
| 37:48 – 38:34 | Packing of UPS units and accessory bag in color box. |
| 38:35 – 40:42 | Building exterior. |

### III.    U.S. DEPARTMENT OF HOMELAND SECURITY VISIT TO PHILIPPINES FACILITIES OF CPSMI AND PHISONIC

71. On July 23, 2020, U.S. Department of Homeland Security ("DHS"), Homeland Security Investigations ("HSI") Investigator, Denver B. Langaman, and Assistant Attache Jim Anglemeyer (the "HSI Agents"), with office addresses at the U.S. Embassy in Manila Philippines, arrived for an unannounced visit to the Philippines facilities of CPSMI and Phisonic, at Units A & B Lot 6, Block 1, Phase 2 Buenavista I General Trias Cavite, Philippines.

72. During their visit on July 23, 2020, the HSI Agents toured the Cyber Power facilities, observing the assembly and other activities in the CPSMI area of the facility.

73. The HSI Agents' visit was documented by video. PTX2.

74. In addition, HSI Agent Langaman took photographs during the July 2020 site visit. PTX65.

75. HSI Agent Langaman also photographed a worker placing PCBAs in a Jutze Automated Optical Inspection Machine, *see* PTX65, which inspects PCBAs for manufacturing defects, and a photograph of a JT Co. LLC-produced reflow soldering machine, *id.*, which is used to solder microcomponents onto PCBAs.

76. On or about July 26, 2020, HSI Agent Denver Langaman, one of the HSI Agents who visited the plant on July 23, 2020, prepared a report about the visit.  PTX66.

## SCHEDULE C-2
## DEFENDANT'S STATEMENT OF MATERIAL FACTS IN DISPUTE

1.  Before Entry No. 791-2578496-2  was detained and deemed excluded, there had been other exchanges between Cyber Power and Customs, including a verbal prior disclosure in the summer of 2019 arising from a consumer affairs journalist in North Carolina reporting about an over-label on packaging of imported Cyber Power surge voltage protectors and uninterruptible power supplies.  Docket No. 20-1 at 5, n.1.

2.  The over-label stated that the good was "Made in Philippines" but, when the reporter removed the label, the printing on the packaging stated "Made in China."  Docket No. 20-1 at 5, n.1.

3.  On July 23, 2020, U.S. Department of Homeland Security ("DHS"), Homeland Security Investigations ("HSI") Investigator, Denver B. Langaman, and Assistant Attache Jim Anglemeyer (the "HSI Agents"), with office addresses at the U.S. Embassy in Manila Philippines, arrived for an unannounced visit to the Philippines facilities of CPSMI and Phisonic, at Units A & B Lot 6, Block 1, Phase 2 Buenavista I General Trias Cavite, Philippines.  Deposition Designations from the Depositions of Mr. Langaman and Mr. Anglemyer.

4.  During their visit on July 23, 2020, the HSI Agents toured the Cyber Power facilities, observing the assembly of products and other activities in the CPSMI area of the facility. Deposition Designations from the Depositions of Mr. Langaman and Mr. Anglemyer.

5.  HSI Agents Anglemyer and Langaman were unable to enter the Phisonic portion of the facility because it was closed and no one was there at that time.  Deposition Designations from the Depositions of Mr. Langaman and Mr. Anglemyer.

6. HSI Agent Langaman took photographs during the July 2020 site visit.  Deposition
   Designations from the Deposition of Mr. Langaman.

**Schedule D-1**
**CyberPower Systems (USA), Inc. Claims and Defenses**

1.        Section 304(a) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1304(a), which is the best evidence of its contents, requires that all merchandise imported into the U.S. be marked permanently, legibly and in a conspicuous place, to indicate to an "ultimate purchaser" in the U.S. the English name of the product's country of origin.

2.        The Congressional purpose in enacting 19 U.S.C. § 1304(a) is to ensure "that at the time of purchase the ultimate purchaser may, by knowing where the goods were produced, be able to buy or refuse to buy them, if such marking should influence his will." *See United States v. Friedlaender & Co.*, 27 C.C.P.A. 297, 302 (1940).

3.        Where goods are not properly marked to show their country of origin, they are considered "restricted" merchandise, which CBP may exclude from entry into the U.S. *See* 19 C.F.R. § 134.3(a).

4.        Where goods, or their component materials are produced in two or more countries, the country of origin for marking purposes, is the country where they last underwent a "substantial transformation" prior to entering the U.S. *See e.g., Ferrostaal Metals Inc. v. United States*, 644 F. Supp. 535, 541 (1987) ("Substantial transformation is a concept of major importance in administering the customs and trade laws. In addition to its role in identifying the country of origin of imported merchandise for purposes of determining dutiable status, or, as in this case, the applicability of a bilateral trade agreement, substantial transformation is the focus of many cases involving country of origin markings, *see, e.g., National Juice Products Ass'n v. United States*, 10 C.I.T. 48, 628 F. Supp. 978 (1986) … "); *see also e.g., Superior Wire v. United States*, 11 C.I.T. 608 (1987).

5.      "[S]ubstantial transformation occurs when an article emerges from a manufacturing process with a name, character, or use which differs from those of the original material subjected to the process." *Torrington v. United States*, 764 F. 2d 1563, 1568 (Fed. Cir. 1985) (citation omitted). However, because "[t]he article need not experience a change in name, character, and use to be substantially transformed," all three of these elements need not be met before a court may find substantial transformation. *Koru North America v. United States*, 701 F. Supp. 229, 234 (Ct. Int'l Tr. 1988) (emphasis added).

6.      The test of substantial transformation was initially adopted by the U.S. Supreme Court in the case of *Anheuser-Busch Brewing Assn. v. United States*, 207 U.S. 556, 562 (1908), in which the Court stated that "There must be transformation; a new and different article must emerge, "having a distinctive name, character or use."

7.      The UPS products which are the subject of this action are the product of a "substantial transformation" in the Philippines. The various components used to manufacture the product, shown by their names in the various bills of material, undergo a change in name as a result of manufacturing done in the Philippines, becoming a new and different article of commerce— *i.e.,* an uninterruptible power supply.

8.      The UPS products which are the subject of this action further undergo a change in character as a result of the manufacturing operations performed in the Philippines. They change from discrete, mostly generalized electronic components, which do not have a predetermined use and can be used in a variety of applications, to become a finished consumer-ready article of commerce, to wit, an uninterruptible power supply.

9.      The UPS products which are the subject of this action undergo a change in use as a result of manufacturing operations performed in the Philippines. As a result of the manufacturing

operations, the components become a new article of commerce—*i.e.,* an uninterruptible power supply—capable of monitoring electrical current flows and activating backup battery power when needed; a use of which none of the components, taken individually, could perform.

10.    The SVP models which are the subject of this action are the product of a "substantial transformation" in the Philippines. The various components used to manufacture the product, shown by their names in the relevant bill of materials undergo a change in name as a result of manufacturing done in the Philippines, becoming a new and different article of commerce—*i.e.,* a surge voltage protector.

11.    The SVP models which are the subject of this action further undergo a change in character as a result of the manufacturing operations performed in the Philippines. They change from discrete, mostly generalized electronic components, which do not have a predetermined use and can be used in a variety of applications, to become a finished consumer-ready article of commerce, to wit, a surge voltage protector.

12.    The SVP models which are the subject of this action undergo a change in use as a result of manufacturing operations performed in the Philippines. As a result of the manufacturing operations, the components become a new article of commerce—*i.e.,* a surge voltage protector—capable of monitoring electrical current flows and using metal oxide varistor technology to protect connected devices from power spikes; a use of which  none of the components, taken individually, could perform.

13.    The UPS models which are the subject of this action are products of the Philippines for purposes of 19 U.S.C. § 1304(a) and were correctly marked as such at the time of entry.

14.    The SVPs which are the subject of this action are products of the Philippines for purposes of 19 U.S.C. § 1304(a) and were correctly marked as such at the time of entry.

15.     Defendant erred in excluding the subject merchandise from entry, erred in demanding that the goods be marked "Made in China," and erred in denying Plaintiff's protest against the exclusion.

**Schedule D-2**
**Defendant's Claims and Defenses**

1.        Section 304(a) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1304(a), requires that all merchandise imported into the United States be marked permanently, legibly, indelibly, and in a conspicuous place, to indicate the English name of the product's country of origin. *Cyber Power*, 471 F. Supp. 3d at 1375.

2.        19 C.F.R. § 134.1(b) defines the term "country of origin" as "the country of manufacture, production, or growth of any article of foreign origin entering the United States." *Id.* Section 134.1(b) explains that "[f]urther work or material added to an article in another country must effect a substantial transformation in order to render such other country the 'country of origin' within the meaning of this part." *Id.* Where goods are not properly marked to show their country of origin, they are considered "restricted" merchandise, which CBP may exclude from entry into the United States. *Id.* (citing 19 U.S.C. § 1304(j) and 19 C.F.R. § 134.3(a)).

3.        For country of origin marking purposes, the courts apply the judicially-developed test of "substantial transformation." *See United States v. Gibson-Thomsen Co., Inc.*, 27 C.C.P.A. 267, C.A.D. 98 (1940). A substantial transformation occurs "when an article emerges from a manufacturing process with a name, character, or use which differs from those of the original material subjected to the process." *Id.*; *see also Torrington, Co. v. United States*, 764 F.2d 1563, 1568 (Fed. Cir. 1985) (citing *Texas Instruments Inc. v. United States*, 681 F.2d 778 (1982)); *Anheuser Busch Brewing Ass'n v. United States*, 207 U.S. 556, 562 (1908).

4.     As to name, character, or use, the importance of each criteria is determined in each case, but a change in name is generally considered the weakest indicator. *Sassy, Inc. v. United States*, 24 CIT 700, 704 (2000) (citing *SDI Technologies, Inc. v. United States*, 21 CIT 895 (1997)); *Ferrostaal Metals Corp. v. United States*, 664 F. Supp. 535, 541 (Ct. Int'l Trade 1987) ("The name criterion is generally considered the least compelling of the factors which will support a finding of substantial transformation.").

5.     Courts focus on changes in character or use. *Precision Specialty Metals, Inc. v. United States*, 116 F. Supp. 2d 1350, 1364 (Ct. Int'l Trade 2000). "[T]o find a change in character, there often needs to be a substantial alteration in the characteristics of the article or components." *Energizer Battery, Inc. v. United States*, 190 F. Supp. 3d 1308, 1318 (Ct. Int'l Trade 2016) (Trade Agreements Act case, construing the meaning of "substantial transformation" by reviewing cases involving, among other things, country-of-origin marking).

6.     Cosmetic changes to an article or components will not support a finding of a substantial transformation. *Energizer*, 190 F. Supp. 3d at 1318. Some courts will consider "the 'essence' of a completed article to determine whether an imported article has undergone a change in character as a result of post-importation processing." *Id.* If post-importation processing consists of assembly, courts are unlikely to find a change in character if the imported articles do not undergo a physical change. *Id.*

7.      In considering whether a change in use has occurred, courts will find such a change "when the end-use of imported product [is] no longer interchangeable with the end-use of the product after post-importation processing." *Energizer*, 190 F. Supp. 3d at 1319.  However, if post-importation processing consists primarily of an assembly process with an end use that is pre-determined at the time of importation, "courts have generally not found a change in use." *Id.*

8.      In addition to the name, character, or use criteria for substantial transformation, courts also consider other factors including "the extent and nature of operations performed, value added during post-importation processing, a change from producer to consumer goods, or a shift in tariff provisions." *Energizer*, 190 F. Supp. 3d at 1319.  However, consideration of these other factors has not been consistent or uniform.  *Id.* Such a lack of uniformity is not surprising given that the substantial transformation analysis is conducted on a case by case basis and is fact-specific. *Id.* at 1317.

9.      "Federal Circuit case law also discusses the fact-specific nature of substantial transformation cases, noting that 'courts have been reluctant to lay down specific definitions in this area of the law other than to discuss the particular facts of cases.'"  *Energizer*, 190 F. Supp. 3d at 1317-18 (quoting *Belcrest Linens v. United States*, 741 F.2d 1368, 1372 (Fed. Cir. 1984)).

10.     The substantial transformation analysis is one that "must be based on a totality of factors," *Energizer*, 190 F. Supp. 3d at 1318, and "each case must be decided on its own particular facts."  *Nat'l Hand Tool Corp. v. United States*, 16 C.I.T. 308, 311 (1992).

11.    When operations on components reflect simple assembly, courts have held that this does not constitute a substantial transformation. *See Uniroyal Inc. v. United States*, 3 C.I.T. 220, 542 F. Supp. 1026 (1982), *aff'd*, 702 F.2d 1022 (Fed. Cir. 1983) (the attachment of a footwear upper to an outsole did not result in a substantial transformation because the identity of the upper, which was the essence of the completed shoe, was left intact); *see also Nat'l Hand Tool Corp. v. United States*, 16 C.I.T. 308 (1992), *aff'd, per curiam*, 989 F.2d 1201 (Fed. Cir. 1993); *Energizer*, 190 F. Supp. 3d 1308 (assembly of fifty components of Chinese origin through simple insertions, attaching and fastening did not constitute a substantial transformation). Instead, the nature of the assembly and the name, character, or use test are used together to determine whether a substantial transformation has occurred. *Energizer*, 190 F. Supp. 3d at 1320.

12.    The UPS models which are the subject of this action did not undergo a substantial transformation in the Philippines.

13.    The UPS models which are the subject of this action are products of China for purposes of 19 U.S.C. § 1304(a) and were not correctly marked as such at the time of entry.

14.    The SVP model which is the subject of this action did not undergo a substantial transformation in the Philippines.

15.    The SVP model which is the subject of this action is a product of China for purposes of 19 U.S.C. § 1304(a) and were not correctly marked as such at the time of entry.

### SCHEDULE E-1
### CyberPower Systems (USA), Inc. Damages and Relief Sought

1.      Plaintiff seeks from this Court an order directing the appropriate customs officers at the Port of Entry to:

      a.   Direct Defendant to allow the entry of the subject merchandise as products of the Philippines;

      b.   Award Plaintiff costs of suit plus attorneys' fees;

      c.   Provide Plaintiff with such other and further relief as this Court may deem just.

## SCHEDULE E-2
## Defendant's Relief Sought

1.      Dismiss plaintiff's action for failure to establish through admissible and credible evidence that the country of origin for the subject merchandise with Model Nos. CBN50U48A-1, OR500LCDRM1U, SX650U, CST135XLU, HT1206UC2RC1, and CP600LCDa is the Philippines.

2.      Dismiss plaintiff's action because the subject merchandise with Model Nos. CBN50U48A-1, OR500LCDRM1U, SX650U, CST135XLU, HT1206UC2RC1, and CP600LCDa, which are comprised almost entirely of Chinese components, did not undergo a substantial transformation in the Philippines.

3.      Provide defendant with such other and further relief as may be just and appropriate.

## SCHEDULE F-1
## CyberPower Systems (USA), Inc. Triable Issues

1.    Whether the merchandise at issue in this action is properly marked under 19 U.S.C.

§ 1304 as "Made in Philippines" or "Made in China."

## **SCHEDULE F-2**
### **Defendant's Triable Issues**

1.      Whether the country of origin of the subject merchandise is the Philippines.

2.      Whether the subject merchandise should be marked as a product of China.

**SCHEDULE G-1**
**CyberPower Systems (USA), Inc. Trial Witnesses**

1.  Brent Lovett
    General Manager
    Cyber Power Systems (USA) Inc.,
    4241 12th Avenue East, Suite 400
    Shakopee, MN 55379

    Mr. Lovett will testify concerning the nature of the products sold by plaintiff

    Cyber Power Systems (USA) Inc., their commercial identities and acceptance,

    and their names, characters and uses. He will discuss the functional and

    commercial features of these goods, their markets in the United States and

    customer expectations regarding these goods.

2.  Thomas Fuehrer
    Electrical Project Manager
    Cyber Power Systems (USA) Inc.,
    4241 12th Avenue East, Suite 400
    Shakopee, MN 55379

    Mr. Fuehrer will testify as the functions performed by the merchandise at bar, the

    functions performed by individual components of the subject merchandise, and

    the methods by which these goods are manufactured.

3.  Chi-Ting Huang
    General Manager
    Cyber Power Systems Manufacturing Inc.
    Block 1, Lot 6, Phase 2, Golden Gate Business Park, Brgy
    Buenavista, General Trias City, Cavite, Philippines

    Mr. Huang will authenticate business records of Cyber Power Systems

    Manufacturing Inc., to the extent those records may need further authentication.

    He will also testify as to the manufacturing operations performed at the CPSMI

    factory in the Philippines.

Plaintiff reserves the right to offer in evidence ("read in") deposition testimony of any deposed witnesses, should those witnesses be unavailable to testify at trial.

Plaintiff designates the deposition transcripts of Homeland Security Investigation Agents James Anglemeyer and Denver Langaman in their entirety for potential use at trial.

## SCHEDULE G-2
## Defendant's Trial Witnesses

1.    <u>Linda Horacek,</u> located at National Commodity Specialist Division U.S. Customs and Border Protection, 6747 Engle Road, Middleburg Heights, OH 44130, is an Import Specialist with the Electronics Center of Excellence and Expertise – Enforcement Division, U.S. Customs and Border Protection (CBP).  Her responsibilities include enforcement, performing validation and compliance as well as other enforcement-related tasks along with verifying country of origin and reviewing production records of merchandise imported into the United States.  As part of her responsibilities, she was assigned to work on Protest No. 3501-20-101425, the protest at issue in this action. Ms. Horacek will testify as to her assignment to plaintiff's protest matter, her review of the documents provided by plaintiff during the administrative phase, the types of documents CBP expects to receive in a country of origin case, the discrepancies in plaintiff's documents, and the reasons for denying plaintiff's protests.

2.    <u>Karl Moosbrugger</u>, located at National Commodity Specialist Division U.S. Customs and Border Protection, 6747 Engle Road, Middleburg Heights, OH 44130, is a National Import Specialist (NIS) with the National Commodity Specialist Division, CBP.  His responsibilities include issuing prospective binding rulings regarding tariff classification; country of origin determination; and application of special trade provisions.  His additional duties include advising Customs field personnel on import related issues, providing training to the importing community on specific commodity classification, advising on proposed Harmonized Tariff Schedule and Explanatory Note changes, miscellaneous tariff bill and product exclusion language, etc.  He is currently the NIS responsible for the tariff headings covering automatic data processing machines (and units thereof), electric motors and generators, power supplies, and electrical switching and distribution apparatus.  As a part of his responsibilities, he consulted

with Ms. Horacek regarding the issue of country of origin.  In connection with the merchandise at issue in this action, he reviewed documents provided by Cyber Power and samples of the merchandise. He will testify as to his responsibilities generally and as they apply to this matter. He will testify as to his physical review of the six models of uninterruptible power supplies and surge voltage protectors at issue in this action. He will also testify as to his communications with Ms. Horacek during the administrative phase of this litigation.

We reserve the right to call as a witness any witness identified on plaintiff's Schedule G-1.

We have designated portions from the depositions of plaintiff, Mr. Langaman, and Mr. Anglemyer for potential use at trial.  These designations were shared with plaintiff and no objections to these designations were raised.

## SCHEDULE H-1
## CyberPower Systems (USA), Inc. Trial Exhibits

| EXHIBIT LIST | |
|---|---|
| **Exhibit** | **Description** |
| 1 | [CONFIDENTIAL] Video Recording of Cyber Power Systems Manufacturing Inc. and Phisonic, Inc. Philippines Factory, Recorded on July 14, 2020, as a demonstrative exhibit. |
| | |
| ~~3~~ | ~~[CONFIDENTIAL] FRE 1006 Summary of Invoices Relating to CPSMI Acquisition of Subject Merchandise Parts and Components~~ |
| ~~4~~ | ~~[CONFIDENTIAL] FRE 1006 Summary of Invoices, Shipping, and Philippines Importation Documents Relating to CPSMI's Acquisition of Manufacturing Equipment~~ |
| ~~5~~ | ~~[CONFIDENTIAL] FRE 1006 Summary of Invoices, Shipping, and Philippines Importation Documents Relating to Phisonic Inc.'s Acquisition of Printed Circuit Board Assembly ("PCBA") Manufacturing Equipment~~ |
| 6 | [CONFIDENTIAL] CPSMI Philippines Certificates (Bates 1619-1644) |
| 7 | [CONFIDENTIAL] CPSMI and Phisonic Floorplan at Units A & B, Block 1, Lot 6, Phase 2 Golden Gate Business Park, Barangay Buenavista, General Trias City, Cavite, Philippines |
| 8 | Phisonic Philippines Certificates (Bates 1658-1683) |
| 9 | UPS Model No. CP600LCDa (a/k/a CP600LCD): Spec Sheet (Bates 51-53) |
| 10 | [CONFIDENTIAL] UPS Model No. CP600LCDa: User Manual (Bates 4225-26) |
| 11 | [CONFIDENTIAL] UPS Model No. CP600LCDa: Bill of Materials for All Components in UPS Model No. CP600LCDa (Bates 23-28) |
| 12 | [CONFIDENTIAL] UPS Model No. CP600LCDa: Bill of Materials for PCBA Components in UPS Model No. CP600LCDa (Bates 974-77) |
| 13 | [CONFIDENTIAL] UPS Model No. CP600LCDa: Production Timeline (Bates 1065) |
| 14 | [CONFIDENTIAL] UPS Model No. CP600LCDa: Assembly Operations Flowchart (Bates 65-66) |
| 15 | [CONFIDENTIAL] UPS Model No. CP600LCDa: Standard Operating Procedure |
| 16 | [CONFIDENTIAL] UPS Model No. CP600LCDa: Additional Documentation Regarding PCBA Manufacturing Process (Bates 4188-4220) |
| 17 | [CONFIDENTIAL] UPS Model No. CP600LCDa: Schematic of PCBA, Dimension Drawing, and Exploded View Diagram (Bates 2165-70) |
| 18 | UPS Model No. CBN50U48A-1: Spec Sheet (Bates 49-50) |
| 19 | UPS Model No. CBN50U48A-1: User Manual (Bates 4223-24) |
| 20 | [CONFIDENTIAL] UPS Model No. CBN50U48A-1: Technical Specifications (Bates 2337-50) |
| 21 | [CONFIDENTIAL] UPS Model No. CBN50U48A-1: Bill of Materials for All Components in UPS Model No. CBN50U48A-1 (Bates 14-22) |
| 22 | [CONFIDENTIAL] UPS Model No. CBN50U48A-1: Bill of Materials for PCBA Components in UPS Model No. CBN50U48A-1 (Bates 968-73) |
| 23 | [CONFIDENTIAL] UPS Model No. CBN50U48A-1: Philippines Production Timeline (Bates 1027) |

LMG (against row 3)

LMG (against row 4)

LMG (against row 5)

| 24 | [CONFIDENTIAL] UPS Model No. CBN50U48A-1: Standard Operating Procedures for Chinese Manufacture of PCBA (Bates 1028-38) |
| 25 | [CONFIDENTIAL] UPS Model No. CBN50U48A-1: Standard Operating Procedure for Philippines Manufacture of UPS Model No. CBN50U48A-1 (Bates 1039-64) |
| 26 | [CONFIDENTIAL] UPS Model No. CBN50U48A-1: Assembly Operations Flowchart (Bates 62-63) |
| 27 | [CONFIDENTIAL] UPS Model No. CBN50U48A-1: Schematic of PCBA, Dimension Drawing, and Exploded View Diagram, UPS Model No. CBN50U48A-1 (Bates 2160-64) |
| 28 | UPS Model No. CST135XLU: Spec Sheet (Bates 55) |
| 29 | UPS Model No. CST135XLU: User Manual (Bates 4227-28) |
| 30 | [CONFIDENTIAL] UPS Model No. CST135XLU: Bill of Materials for All Components in UPS Model No. CST135XLU |
| 31 | [CONFIDENTIAL] UPS Model No. CST135XLU: Bill of Materials for Components of PCBAs in UPS Model No. CST135XLU |
| 32 | [CONFIDENTIAL] UPS Model No. CST135XLU: Philippines Production Timeline |
| 33 | [CONFIDENTIAL] UPS Model No. CST135XLU: Standard Operating Procedures for Chinese Manufacture of PCBA, UPS Model No. CST135XLU (Bates 1118-31) |
| 34 | [CONFIDENTIAL] UPS Model No. CST135XLU: Standard Operating Procedure for Philippines Manufacture of UPS Model No. CST135XLU (Bates 1132-64) |
| 35 | [CONFIDENTIAL] UPS Model No. CST135XLU: Assembly Operations Flowchart (Bates 69-70) |
| 36 | [CONFIDENTIAL] UPS Model No. CST135XLU: Schematic of PCBA, Dimension Drawing, and Exploded View Diagram |
| 37 | UPS Model No. OR500LCDRM1U: Spec Sheet (Bates 43-44) Y |
| 38 | UPS Model No. OR500LCDRM1U: User Manual (Bates 4229-30) |
| 39 | [CONFIDENTIAL] UPS Model No. OR500LCDRM1U: Bill of Materials for All Components in UPS Model No. OR500LCDRM1U (Bates 1-7) |
| 40 | [CONFIDENTIAL] UPS Model No. OR500LCDRM1U: Bill of Materials for Components of PCBAs in UPS Model No. OR500LCDRM1U (Bates 988-992) |
| 41 | [CONFIDENTIAL] UPS Model No. OR500LCDRM1U: Philippines Production Timeline (Bates 1165) |
| 42 | [CONFIDENTIAL] UPS Model No. OR500LCDRM1U: Standard Operating Procedures for Chinese Manufacture of PCBA, UPS Model No. OR500LCDRM1U (Bates 1166-77) |
| 43 | [CONFIDENTIAL] UPS Model No. OR500LCDRM1U: Standard Operating Procedure for Philippines Manufacture of UPS Model No. OR500LCDRM1U (Bates 1178-1203) |
| 44 | [CONFIDENTIAL] UPS Model No. OR500LCDRM1U: Assembly Operations Flowchart (Bates 1000) |
| 45 | [CONFIDENTIAL] UPS Model No. OR500LCDRM1U: Schematic of PCBA, Dimension Drawing, and Exploded View Diagram (Bates 2177-83) |
| 46 | UPS Model No. SX650U: Spec Sheet (Bates 46-47) |
| 47 | UPS Model No. SX650U: User Manual (Bates 4231-32) |
| 48 | [CONFIDENTIAL] UPS Model No. SX650U: Bill of Materials for All Components in UPS Model No. SX650U (Bates 8-13) |

| 49 | [CONFIDENTIAL] UPS Model No. SX650U: Bill of Materials for Components of PCBAs in UPS Model No. SX650U (Bates 993-99) |
| 50 | [CONFIDENTIAL] UPS Model No. SX650U: Philippines Production Timeline (Bates 1204) |
| 51 | [CONFIDENTIAL] UPS Model No. SX650U: Standard Operating Procedures for Chinese Manufacture of PCBAs in UPS Model No. SX650U (Bates 1205-17) |
| 52 | [CONFIDENTIAL] UPS Model No. SX650U: Standard Operating Procedure for Philippines Manufacture of UPS Model No. SX650U (Bates 1218- 36) |
| 53 | [CONFIDENTIAL] UPS Model No. SX650U: Assembly Operations Flowchart (Bates 1001) |
| 54 | [CONFIDENTIAL] UPS Model No. SX650U: Schematic of PCBA, Dimension Drawing, and Exploded View Diagram (Bates 2184-90) |
| 55 | SVP Model No. HT1206UC2RC1: Spec Sheet (Bates 57) |
| 56 | SVP Model No. HT1206UC2RC1: User Manual (Bates 4221-22) |
| 57 | [CONFIDENTIAL] SVP Model No. HT1206UC2RC1: Bill of Materials for All Components in SVP Model No. HT1206UC2RC1 (Bates 37-41) |
| 58 | [CONFIDENTIAL] SVP Model No. HT1206UC2RC1: Bill of Materials for Components of PCBAs in SVP Model No. HT1206UC2RC1 (Bates (962.2-967) |
| 59 | [CONFIDENTIAL] SVP Model No. HT1206UC2RC1: Philippines Production Timeline (Bates 1003) |
| 60 | [CONFIDENTIAL] SVP Model No. HT1206UC2RC1: Standard Operating Procedures for Chinese Manufacture of PCBAs (Bates 1004-10) |
| 61 | [CONFIDENTIAL] SVP Model No. HT1206UC2RC1: Standard Operating Procedure for Philippines Manufacture of SVP Model No. HT1206UC2RC1 (Bates 1011-26) |
| 62 | [CONFIDENTIAL] SVP Model No. HT1206UC2RC1: Assembly Operations Flowchart (Bates 72) |
| 63 | [CONFIDENTIAL] SVP Model No. HT1206UC2RC1: Schematic of PCBA, Dimension Drawing, and Exploded View Diagram (Bates 2152-59) |
| 64 | [CONFIDENTIAL] Email of July 20, 2020 from Linda Horacek to David Hudgens ("Re: Cyber in Manilla") |
| 65 | [CONFIDENTIAL] DHS HSI Agent Photos of July 23, 2020, at Phisonic and CPSMI |
| 66 | [CONFIDENTIAL] DHS HSI Report of Investigation (Approval Date July 26, 2020) |
| 67 | [CONFIDENTIAL] Firmware Code for Subject Units |
| 68 | [CONFIDENTIAL] CBP Email of February 7, 2020, at Bates USCBP 1345 |
| 69 | [CONFIDENTIAL] QUICS Message No. 45537 (October 10, 2019), at Bates USCBP 1033. |
| 70 | [CONFIDENTIAL] CBP Email of June 2, 2020, at Bates USCBP 0045 |
| 71 | [CONFIDENTIAL] Purchase of HT1206UC2RC1 Components |
| 72 | [CONFIDENTIAL] Purchase of CBN50U48A Components |
| 73 | [CONFIDENTIAL] Purchase of CP600LCDa Components |
| 74 | [CONFIDENTIAL] Purchase of CST135XLU Components |
| 75 | [CONFIDENTIAL] Purchase of OR500LCDRMU1 Components |
| 76 | [CONFIDENTIAL] Purchase of SX650U Components |
| 77 | [CONFIDENTIAL] Philippines Import Summary |

| | 78 | [CONFIDENTIAL] Invoices, Shipping, and Philippines Importation Documents Relating to CPSMI's Acquisition of Manufacturing Equipment |
|---|---|---|
| | 79 | [CONFIDENTIAL] Invoices, Shipping, and Philippines Importation Documents Relating to Phisonic Inc.'s Acquisition of Printed Circuit Board Assembly Manufacturing Equipment (SMT) |
| | 80 | [CONFIDENTIAL] Invoices, Shipping, and Philippines Importation Documents Relating to Phisonic Inc.'s Acquisition of Printed Circuit Board Assembly Manufacturing Equipment (DIP) |
| LMG | ~~81~~ | ~~Affirmation of Patrick D. Klein, Esq. (ECF 48-4)~~ |
| | 82 | Dropped |
| | 83 | Dropped |
| | 84 | Dropped |
| | 85 | Dropped |
| | 86 | Dropped |
| | 87 | Dropped |
| | 88 | Dropped |
| | 89 | Dropped |
| | 90 | Dropped |
| LMG | ~~91~~ | ~~Models of the 5 UPS and 1 SVP from entry at issue, physically filed by defendant, ECF 64 Form 23~~ |
| | 92 | Models of PCBA physically filed by plaintiff, ECF 74 Form 23, ECF 73 Cover Letter |

Joint Exhibit 1    Models of the 5 UPS and 1 SVP from entry at issue, physically filed by defendant, ECF 64 Form 23

### SCHEDULE H-2
### Defendant's Trial Exhibits

| Exhibit No. | Bates No. | Description |
|---|---|---|
| 1 | 02217-02220 | Cyber Power Work Instruction dated 7/16/2019 |
| 2 | 02221-02225 | Cyber Power Work Instruction dated 01/02/2020 |
| 3 | | Cyber Power Invoice No. A5901-18100032-Shipment from the Philippines to Minneapolis |
| 4 | 00974-00977 | Cyber Power list of all components of CP600LCDa for main board (2PD-0000367-A0GS) |
| 5 | 03080 | Yosun Industrial Corp. Invoice No. D319062109 dated 06/27/2019 |
| 6 | 03081 | Yosun Industrial Corp. Invoice No. D319070293 dated 07/03/2019 |
| 7 | | Phisonic WO Completion Notes (06/16/2020) with email thread regarding protest No. 3501-20-101425 |
| 8 | 02917 | Cyber Power Systems, Inc. packing list-Packing No. A5901-200200033 |
| 9 | 02053-02056 | SGS Management System Certification-Stage 1 Audit Report |
| 10 | | Cyber Power Systems Manufacturing, INC. Work Instruction dated November 12, 2019 |
| 11 | | Protest Information for protest # 350120101425 |
| 12 | | • Notice of Detention for entry No. 791-25784962-Port Code/Name 3501/Minneapolis-Date of Detention 04/10/2020) <br> • Notice to Mark and/or Notice to Redeliver for entry No. 791-25784962 dated 03/27/2020 |
| 13 | | Memorandum of points and authorities in support of protest submitted on May 20, 2020 by Cyber Power System's counsel |
| 14 | | Plaintiff's Responses to Defendant's Interrogatories and requests for production of documents and things directed to plaintiff |
| 15 | | • June 16, 2020 letter to Import Specialist Linda Horacek regarding Cyberpower Systems Protest Number 3501-20-101425/Minneapolis Entry 791-2578496-2: Response to Supplemental Questions. <br> • Exhibit A- list of all components of CBN50U48A-1 <br> • Exhibit B- list of all components of CP600LCDa <br> • Exhibit C- list of all components of CST135XLU <br> • Exhibit D- list of all components of HT1206UC2RC1 <br> • Exhibit E- list of all components of OR500LCDRM1Ua <br> • Exhibit G- OR500LCDRM1Ua manufacturing process flow chart and list of micro components for main board |

| | | |
|---|---|---|
| | | • Exhibit H- SX65OU manufacturing process flow chart and list of micro components for main board<br>• Exhibit I- charts labeled SMT/DIP production line and wave soldering machine/ Per-Dip production/ AC UPS ATE |
| 15A | | • Exhibit J-1: Phisonic BOC Single document- Invoice No. CU006-190900149-date 10/5/2019<br>• Exhibit J-2: Phisonic BOC Single document-invoice No. CU191100099- date 12/7/2019 |
| 15B | | • Continuation of exhibit J-2-Document titled Insurance Company, INC-BOC PEZA Surety Bond; SICI Bond No. 02043<br>• Exhibit J-3: Phisonic BOC Single document-invoice No. CU006-191000004,05-date 10/17/2019<br>• Exhibit J-4- Phisonic BOC Single document- invoice no. CU006-190800110-date 9/7/2019<br>• Exhibit J-5- Phisonic BOC Single document- invoice no. CU006-190900142,144-date 10/05/2019<br>• Exhibit J-6- Phisonic BOC Single document- invoice no. CU006-191000033,34,CU006-191000035-date 10/25/2019 |
| 15C | | • Continuation of exhibit J-6<br>• Exhibit J-7- Phisonic BOC single administrative document-Invoice No. CU006-191000020,21, CU006-191000029-date-11/5/2019<br>• Exhibit J-8- Phisonic BOC single administrative document-Invoice No. CU006-19100073-date- 12/5/2019 |
| 15D | | • Continuation of Exhibit J-8<br>• Exhibit J-9- Phisonic BOC single administrative document-Invoice No. CU006-200100036-invoice No. 2/5/2019<br>• Exhibit J-10- Phisonic BOC single administrative document-Invoice No. CU006-190800002,5-invoice No. 8/17/2019<br>• Exhibit J-11-Cyber Power Purchase Order- Purchase Order No.A3207-1908-00347-purchase date- 8/16/2019<br>• Exhibit J-12- invoice in foreign language<br>• Exhibit J-13- Cyber Power purchase order-Purchase Order No. A3201-190500312-purchase date-5/17/2019<br>• Exhibit J-14- invoice in foreign language |
| 15E | | Exhibit K- Phisonic BOC single administrative document-Invoice No. CU006-190800023  (8/20/2019);  CU006-190800109  (12/9/2019); CU006-190800053  (9/4/2019);  CU006-190800061  (9/4/2019); CU006-1908-00027,28 & CU006-190800033 (8/24/2019) |
| 15F | | Continuation of Exhibit K- Phisonic BOC single administrative document-Invoice No. CU006-190800037,38 (8/24/2019); CU006-190800020 (8/20/2019); CU006-190800022 (8/20/2019); CU006-190800025,26 (8/20/2019) |

2

| 15G | | Continuation of exhibit K- Phisonic BOC single administrative document-Invoice No. CU006-190800062 (9/4/2019); CU006-190800072 (9/5/2019); CU006-190800065 (9/4/2019); CU006-190900062 (9/25/2019) |
|---|---|---|
| 16 | 01027-02975 | CBN50U48A-1 Production Time Line and Standard Operating Procedure |
| 17 | 01065-01116 | • CP600LCDa production time line and standard operating procedure |
| | 02170 | • Figure |
| | 02916 | |
| | 03058-03064 | • Invoice no. A5901-200200033 |
| | 03065 | • Invoice index of raw materials for CP600LCDa |
| | 03066 | • Invoice from Action electronics Co., LTD-invoice no. A108092329 |
| | 03067-03068 | • Invoice from Cambridge electronics LTD-invoice no. SA97290009-invoice date-8/25/2019 |
| | 03069-03070 | • Invoice No. A1909001001-shipping date 9/23/2019 |
| | 03071-03072 | • Invoice from Rong Feng Electrical international PTE-invoice No. CP20190701-invoice date-7/31/2019 |
| | 03073-03074 | • Invoice from Lision technology-invoice no. A1906250 |
| | 03075-03076 | • Invoice No. DPR09003-invoice date-9/20/2019 |
| | 03077-03079 | • Invoice in foreign language |
| | 03080-03081 | • Invoice from Tantron International Corp.-invoice no. I-190725001-invoice date-8/25/2019 |
| | 03082-03083 | • Invoice from Yosun industrial Corp.-invoice No. D319062109-invoice date-6/27/2019 |

3

| | | |
|---|---|---|
| | 03084-03153 | • Invoice from Unisonic technologies-invoice no. ST20190710-9417895 (7/10/2019); ST20190710-9417899 (07/10/2019) |
| | 03154-03155 | • Invoice from World Peace Industrial-invoice no. 0219093338 (9/11/2019); 0219067273 (6/26/2019); 0219070851 (7/3/2019); 0219077458 (7/23/2019); 0219070851 (7/3/2019) |
| | 03156-03166 | |
| | 03167-03169 | • Invoice from Dongguan Li Cheng electronics-invoice No. LCH1907001-620-invoice date-7/25/2019 |
| | 03170-03185 | • Invoice from Song Chuan Precision-invoice No. 80176392-invoice date-8/29/2019 |
| | 03186-03192 | • Invoice from Kingfa Sci. & Tech Co., Ltd.-invoice No. 201907001-invoice date-7/25/2019 |
| | 03193-03200 | • Invoice from Cosmo electronics Corp.-invoice No. TSB-806005-invoice date-06/20/2019 |
| | 03201-03210 | • Invoice from Handy Opto Electronics-invoice No. HG2019072401-invoice date-07/24/2019 |
| | 03211-03251 | • Invoice from Kang Yang Hardware Enterprises-invoice No. 19070141-invoice date-7/25/2019 |
| | 03252-03263 | • Invoice from Chyao Shiunn Electronics-invoice No. CS1907755001-invoice date- 7/25/2019 |
| | 03264-03285 | • Invoices with Waslin Technology Corp. stamp. |
| | 03286-03298 | • Invoices from Mass Harvest International-invoice No. ST20190220; ST20190420; ST20190520 |
| | 03299-03300 | • Invoices from Shen Zhen Ding Chen electronics-invoice No. 19072500020 (7/25/19); 19072500023 (07/25/2019); 19072500025 (7/25/2019) |
| | | • Invoices from Lin Chun Printing Enterprises-invoice date 11/30/2018 |
| | | • Invoice from Diamond Asset Limited-invoice No, DEUS1907027-invoice date-07/25/2019 |

4

| 18 | 01117-02915 | • CST135XLU Production time line and Standard Operating Procedure. |
| | 02916 | • Cyber Power Systems Invoice: Invoice No. A5901-200200033-Shipment date 02/13/2020 |
| | 03301-03303 | • Invoice Index of raw materials for CST135XLU |
| | 03304-03341 | • Invoice from Rong Feng Electrical International PTE LTD to Cyber Power Systems for Circuit Breaker-Invoice date 11/30/2019 |
| 18 (continued) | 03342 | • Invoice from Chuan Shun Electric Industrial Company Limited to Cyber Power-Invoice No. 20191128001; Invoice date 11/28/2019 |
| | 03343-03354 | • Invoice from Kang Yang Hardware Enterprises Co. : Invoice No. 19110141 Invoice date 11/25/2019 |
| | 03355-03363 | • Invoices from Mass Harvest International Limited-Invoice No. ST20191120 |
| | 03364 | • Invoice from Wan Yang Industrial limited-Invoice No. 201911002-Invoice date 10/25/2019-11/25/2019 |
| | 03365-03374 | • Invoices from Shen Ding Cheng Electronic-Invoice Nos. 19112500019,19112500001, 19112500002, and 19112500018-Invoice date 11/25/2019 |
| | 03375-03379 | • Invoices from Lin Chun printing enterprise-invoice date 11/28/2019 |
| | 03380-03383 | • Index of raw materials for OR500LCDRM1U |
| | 03384-03394 | • Invoice from Chuan Shun Electric Industrial Co. Limited-Invoice Nos. 201909250001(9/25/2019) and 201910300001(10/30/2019) |
| | 03395-03398 | |

5

| | | |
|---|---|---|
| | 03399-03467 | • Invoice from Rong Feng Electrical International for circuit breakers-Invoice No. CP20190901-Invoice date 9/30/2019 |
| | 03468-03475 | • Invoices from Yotronic Co., LTD-Invoice Nos. Y17170037 (10/31/2017); Y1710089 (11/13/2017); Y1710061 (11/6/2017) |
| | 03476-03480 | • Invoice from Kingfa Sci & Tech. Co. LTD-invoice No. 201909; invoice date 9/20/2019 |
| | 03481-03497 | • Invoice from Richain International Cp. LTD -Invoice Nos. RI-20190905001 (9/5/2019); RI20191031004 (10/31/2019); RI20191108003 (11/8/2019); RI20191108001 (11/8/2019); RI20190927001 (9/27/2017) |
| | 03498-03502 | • Invoice from Kang Yang Hardware Enterprises-Invoice Nos. 1909041 (9/25/2019); 190100141 (10/25/2019) |
| | 03503-03532 | •<br>• Invoice from Mass Harvest International-Invoice No. ST20191120 |
| | 03533-03535 | • Invoices from Shen Zhen Ding Cheng Electronic-Invoice Nos. 19102500015 (10/25/19/); 19102500010 (10/25/19); 19102500009 (10/25/19); 19102500008 (10/25/19); 19102500006 (10/25/19); 19102500005 (10/25/19); 19102500003 (10/25/19); 19102500004 (10/25/19); 19102500001 (10/25/19); 19102500003 (10/25/19); 19112500009 (11/25/19); 19112500019 (11/25/19); 19112500010 (11/25/19)<br><br>• Invoice from Diamond Asset Limited-Invoice No. DEUS1910032 (10/25/19) |
| 19 | 01000 | • OR500LCDRM1Ua Manufacturing Process Flow Chart |

6

| | 01001 | • SX650U Manufacturing Process Flow Chart |
|---|---|---|
| | 01880 | • 1PA-0000535-COGP Standard Operating Procedure |
| | 01204 | • SX65OU Production Time Line |
| | 01218-01236 | • 1PA-0000510-DOGP Standard Operating Procedure |
| 19 (continued) | 02183 & 02190 | • Figure of OR500LCDR1Ua |
| | 02917 | • Cyber Power Systems, INC-packing list-Packing No. A5901-200200033 |
| | 03536-03537 | • Invoice Index of raw materials for SX65OU |
| 20 | 01155 | • CST135XLU standard operating procedure |
| | 01165 | • OR500LCDRM1Ua production time line |
| | 01166-01168 | • 2PD-0000376-OOG/2PQ-0000301-OOG Standard Operating Procedure |
| | 01178-01203 | • 1PA-0000535-COGP Standard Operating Procedure |
| | 01024 | • SX65OU production time line |
| | 01205 | • SX65OU/XC625/ST625U Standard Operating Procedure |
| 21 | 01003 | • HT1206UC2RC1 production time line |
| | 01011-01026 | • HT1206UC2RC1 Standard operating procedure |

Defendant reserves the right to use any exhibit identified by plaintiff on its list of documents to be used at trial.

## SCHEDULE I-1
## CyberPower Systems (USA), Inc. Objections to Defendant's Trial Exhibits and Witnesses

1. Plaintiff will move in limine to preclude or limit the testimony of defendant's witness Linda Horacek. There will be several bases for this motion: relevance, lack of testimonial capacity and lack of credibility.

   **Relevance:** This action is required to be determined on the basis of the record compiled *de novo.* See 28 U.S.C. §2640(a)(1). Customs' determination in liquidation and denial of plaintiff's protest is entitled to a statutory presumption of correctness, 28 U.S.C. § 2639(a)(1), which means that CBP is presumed to have found every fact necessary to support its determination, and the burden rests on plaintiff to overcome said presumption, on the basis of evidenced placed on the Court's de novo record. Any testimony by Ms. Horacek concerning the reasons for the agency's protest decision are irrelevant to the case.

   **Testimonial Capacity: (1) Fact Witness.** Ms. Horacek is not competent to testify as a fact witness in this case. She has never been to the CPSMI plant in the Philippines, has not observed operations there, and cannot testify to any matters regarding the production of the subject merchandise on personal knowledge. **(2) Expert Witness.** Ms. Horacek has not been identified by defendant as an expert witness. Her deposition testimony indicates she has a degree in International Business, no technical training in electronic or electrical apparatus, and no experience in manufacturing. She is not competent to offer opinions on trial evidence, and it would be error for the Court to allow her to do so. Furthermore she has no personal knowledge of Cyber Power operations, and does not qualify as a lay opinion witness under Federal Rule of Evidence 701.

**Credibility:**  It has been demonstrated that Ms. Horacek made patently untrue statements during her deposition in this action, and she lacks the credibility required of either a fact or expert witness.

2. Plaintiff will move in limine to preclude or limit the testimony of defendant's witness Karl Moosbrugger. The bases for this motion will be relevance and lack of testimonial capacity. and lack of credibility.

**Relevance:** This action is required to be determined on the basis of the record compiled *de novo.* See 28 U.S.C. §2640(a)(1). Customs' determination in liquidation and denial of plaintiff's protest is entitled to a statutory presumption of correctness, 28 U.S.C. §2639(a)(1), which means that CBP is presumed to have found every fact necessary to support its determination, and the burden rests on plaintiff to overcome said presumption, on the basis of evidenced placed on the Court's de novo record. Any testimony by Mr. Moosbrugger concerning the reasons for the agency's protest decision are irrelevant to the case.

Furthermore, information provided to the plaintiff indicates that Mr. Moosbrugger's administrative opinions were theoretical, rather than fact driven, as he labored under the assumption that the goods at bar were in fact assembled in China – a claim which the United States has retracted in this litigation. ["**Notwithstanding our suspicion that the power supplies are actually assembled in China, we are being asked to provide guidance and opinion on Chinese subsassemblies exported to the Philippines for assembly."] USCBP 0001321 (January 17, 2020). See also USCBP 0001320, also dated January 17, 2020, where Moosbrugger states "It just doesn't add up to me, unless they [Cyber Power or its attorneys] are trying to get away with it until the production can actually move to PH … "

Finally, it does not appear that Mr. Moosbrugger actually made the decision to deny plaintiff's protest. Rather, he provided observations to Monika Brenner, Esq., of Customs Headquarters (who has not been identified as a witness in this action), and she made the final determination on February 7, 2020, saying, "Yes I agree. If this is not China, nothing is!" USCBP 0001345.

**Testimonial Capacity: (1) Fact Witness.** Mr. Moosbrugger, who was not provided for deposition, is not competent to testify as a fact witness in this case. To plaintiff's knowledge, he has never been to the CPSMI plant in the Philippines, has not observed operations there, and cannot testify to any matters regarding the production of the subject merchandise on personal knowledge. **(2) Expert Witness.** Mr. Moosbrugger has not been identified by defendant as an expert witness. He is not competent to offer opinions on trial evidence, and it would be error for the Court to allow him to do so. Furthermore he has no personal knowledge of Cyber Power operations, and does not qualify as a lay opinion witness under Federal Rule of Evidence 701.

**Plaintiff's Objections to Defendant's Trial Exhibits:**

Plaintiff reserves all rights to object to introduction of defendant's trial exhibits on grounds of relevance, failure to lay foundation, and other objections permitted by the Federal Rules of Evidence.

Without prejudice to the above, plaintiff identifies the following specific objections to trial exhibits designated by defendant:

| Designated Exhibit | Description | Basis of Objection |
|---|---|---|
| 11 | Protest decision | Relevance. Administrative protest determination presumed to be correct, 28 U.S.C. § 2639(a)(1). Court required to determine case on basis of de novo record, 28 U.S.C. § 2640(a). |

| 12 | Detention notice | Relevance; Administrative protest determination presumed to be correct, 28 U.S.C. § 2639(a)(1). Court required to determine case on basis of de novo record, 28 U.S.C. § 2640(a). |
|---|---|---|
| 13 | Protest memorandum | Relevance; Administrative protest determination presumed to be correct, 28 U.S.C. § 2639(a)(1). Court required to determine case on basis of de novo record, 28 U.S.C. § 2640(a). |
| 15A-G | Correspondence with Import Specialist and exhibits thereto | Relevance; Administrative protest determination presumed to be correct, 28 U.S.C. § 2639(a)(1). Court required to determine case on basis of de novo record, 28 U.S.C. § 2640(a). |
| 17 | Composite document | Document appears to be a compilation or summary prepared by unidentified individual, presumably defendant's counsel. Compilation is not offered pursuant to FRE 1006, nor consistent with its requirements.  Use of attorney-created compilation document in examination of witness is "suggestive of litigation misconduct", *REXA Inc. v. Chester*, 2022 U.S. App. LEXIS 20893 (7th Cir., July 28, 2022) |
| 18 | Composite document | Document appears to be a compilation or summary prepared by unidentified individual, presumably defendant's counsel. Compilation is not offered pursuant to FRE 1006, nor consistent with its requirements.  Use of attorney-created compilation document in examination of witness is "suggestive of litigation misconduct", *REXA Inc. v. Chester*, 2022 U.S. App. LEXIS 20893 (7th Cir., July 28, 2022) |
| 19 | Composite document | Document appears to be a compilation or summary prepared by unidentified individual, presumably defendant's counsel. Compilation is not offered pursuant to FRE 1006, nor consistent with its requirements.  Use of attorney-created compilation document in examination of witness is "suggestive of litigation misconduct," *REXA Inc. v. Chester*, 2022 U.S. App. LEXIS 20893 (7th Cir., July 28, 2022) |
| 20 | Composite document | Document appears to be a compilation or summary prepared by unidentified individual, presumably defendant's counsel. Compilation is not offered pursuant to FRE 1006, nor consistent with its requirements.  Use of attorney-created compilation document in examination of witness is "suggestive of litigation misconduct," *REXA* |

| | | *Inc. v. Chester*, 2022 U.S. App. LEXIS 20893 (7th Cir., July 28, 2022) |
|---|---|---|
| 21 | Composite document | Document appears to be a compilation or summary prepared by unidentified individual, presumably defendant's counsel. Compilation is not offered pursuant to FRE 1006, nor consistent with its requirements.  Use of attorney-created compilation document in examination of witness is "suggestive of litigation misconduct", *REXA Inc. v. Chester*, 2022 U.S. App. LEXIS 20893 (7th Cir., July 28, 2022) |

## SCHEDULE I-2
## Defendant's Objections to Plaintiff's Trial Exhibits and Witnesses

**A.**     **Objections to Plaintiff's Trial Exhibits[2]**

Defendant reserves all rights to object to introduction of plaintiff's trial exhibits on grounds of relevance, failure to lay a proper foundation, the rule of completeness, and any other objection permitted by the Federal Rules of Evidence and the Rules of the U.S. Court of International Trade.

Without prejudice to the above, defendant identifies the following specific objections to trial exhibits designated by plaintiff:

| EXHIBIT LIST | | OBJECTIONS |
|---|---|---|
| Exhibit | Description | |
| 1 | [CONFIDENTIAL] Video Recording of Cyber Power Systems Manufacturing Inc. and Phisonic, Inc. Philippines Factory, Recorded on July 14, 2020 | Relevance, Hearsay, Prepared for Litigation, FRE 1002 (best evidence rule) (edited version, originals not produced); Will be the subject of a motion *in limine*. |
| 2 | [CONFIDENTIAL] Video Recording of Visit by U.S. Department of Homeland Security, Homeland Security Investigations, Agents at Cyber Power Systems Manufacturing Inc. | Relevance, Hearsay, Unauthenticated, Proponent not disclosed in accordance with Rule 26; Will be the subject of a motion *in limine*. |
| 3 | [CONFIDENTIAL] FRE 1006 Summary of Invoices Relating to CPSMI Acquisition of Subject Merchandise Parts and Components | Failure to comply with the requirements of FRE 1006; Will be the subject of a motion *in limine*. |
| | [CONFIDENTIAL] FRE 1006 Summary of Invoices, Shipping, and Philippines Importation Documents Relating to | Failure to comply with the requirements of FRE 1006; Will be the subject of a motion *in limine*. |

---

[2] We are maintaining the objections from our schedules and motions *in limine* as we await the Court's determinations.  With respect to plaintiff's proposed trial exhibits, although we remained open to considering a revised FRE 902 certification from plaintiff, it appears the parties disagree as to what constitutes an adequate certification and the parties will consult the Court as to this dispute.  Because plaintiff has withdrawn the affirmations (except for Mr. Klein's which remains before the Court for a ruling), we have deleted the objections in our exhibits list.  If plaintiff changes its position as to its exhibits 82-90, we would reassert our objection and await the Court's decision on the motion *in limine*.

|  | CPSMI's Acquisition of Manufacturing Equipment |  |
|---|---|---|
| 5 | [CONFIDENTIAL] FRE 1006 Summary of Invoices, Shipping, and Philippines Importation Documents Relating to Phisonic Inc.'s Acquisition of Printed Circuit Board Assembly ("PCBA") Manufacturing Equipment | Failure to comply with the requirements of FRE 1006; Will be the subject of a motion *in limine*. |
| 6 | [CONFIDENTIAL] CPSMI Philippines Certificates (Bates 1619-1644) | Unauthenticated; Hearsay; Will be the subject of a motion *in limine*. |
| 7 | [CONFIDENTIAL] CPSMI and Phisonic Floorplan at Units A & B, Block 1, Lot 6, Phase 2 Golden Gate Business Park, Barangay Buenavista, General Trias City, Cavite, Philippines | Unauthenticated; Hearsay; Will be the subject of a motion *in limine*. |
| 8 | Phisonic Philippines Certificates (Bates 1658-1683) | Unauthenticated; Hearsay; Will be the subject of a motion *in limine*. |
| 11 | [CONFIDENTIAL] UPS Model No. CP600LCDa: Bill of Materials for All Components in UPS Model No. CP600LCDa (Bates 23-28) | Unauthenticated; Hearsay; Improper FRE 1006 summary document; Will be the subject of a motion *in limine*. |
| 12 | [CONFIDENTIAL] UPS Model No. CP600LCDa: Bill of Materials for PCBA Components in UPS Model No. CP600LCDa (Bates 974-77) | Unauthenticated; Hearsay; Improper FRE 1006 summary document; Will be the subject of a motion *in limine*. |
| 13 | [CONFIDENTIAL] UPS Model No. CP600LCDa: Production Timeline (Bates 1065) | Unauthenticated; Hearsay; Will be the subject of a motion *in limine*. |
| 14 | [CONFIDENTIAL] UPS Model No. CP600LCDa: Assembly Operations Flowchart (Bates 65-66) | Unauthenticated; Hearsay; Will be the subject of a motion *in limine*. |
| 15 | [CONFIDENTIAL] UPS Model No. CP600LCDa: Standard Operating Procedure | Unauthenticated; Hearsay; Will be the subject of a motion *in limine*. |
| 16 | [CONFIDENTIAL] UPS Model No. CP600LCDa: Additional Documentation Regarding PCBA Manufacturing Process (Bates 4188-4220) | Unauthenticated; Hearsay; Will be the subject of a motion *in limine*. |
| 17 | [CONFIDENTIAL] UPS Model No. CP600LCDa: Schematic of PCBA, Dimension Drawing, and Exploded View Diagram (Bates 2165-70) | Unauthenticated; Hearsay; Will be the subject of a motion *in limine*. |
| 20 | [CONFIDENTIAL] UPS Model No. CBN50U48A-1: Technical Specifications (Bates 2337-50) | Unauthenticated; Hearsay; Will be the subject of a motion *in limine*. |

| 21 | [CONFIDENTIAL] UPS Model No. CBN50U48A-1: Bill of Materials for All Components in UPS Model No. CBN50U48A-1 (Bates 14-22) | Unauthenticated; Hearsay; Improper FRE 1006 summary document; Will be the subject of a motion *in limine*. |
|---|---|---|
| 22 | [CONFIDENTIAL] UPS Model No. CBN50U48A-1: Bill of Materials for PCBA Components in UPS Model No. CBN50U48A-1 (Bates 968-73) | Unauthenticated; Hearsay; Improper FRE 1006 summary document; Will be the subject of a motion *in limine*. |
| 23 | [CONFIDENTIAL] UPS Model No. CBN50U48A-1: Philippines Production Timeline (Bates 1027) | Unauthenticated; Hearsay; Will be the subject of a motion *in limine*. |
| 24 | [CONFIDENTIAL] UPS Model No. CBN50U48A-1: Standard Operating Procedures for Chinese Manufacture of PCBA (Bates 1028-38) | Unauthenticated; Hearsay; Will be the subject of a motion *in limine*. |
| 25 | [CONFIDENTIAL] UPS Model No. CBN50U48A-1: Standard Operating Procedure for Philippines Manufacture of UPS Model No. CBN50U48A-1 (Bates 1039-64) | Unauthenticated; Hearsay; Will be the subject of a motion *in limine*. |
| 26 | [CONFIDENTIAL] UPS Model No. CBN50U48A-1: Assembly Operations Flowchart (Bates 62-63) | Unauthenticated; Hearsay; Will be the subject of a motion *in limine*. |
| 27 | [CONFIDENTIAL] UPS Model No. CBN50U48A-1: Schematic of PCBA, Dimension Drawing, and Exploded View Diagram, UPS Model No. CBN50U48A-1 (Bates 2160-64) | Unauthenticated; Hearsay; Will be the subject of a motion *in limine*. |
| 30 | [CONFIDENTIAL] UPS Model No. CST135XLU: Bill of Materials for All Components in UPS Model No. CST135XLU | Unauthenticated; Hearsay; Improper FRE 1006 summary document; Will be the subject of a motion *in limine*. |
| 31 | [CONFIDENTIAL] UPS Model No. CST135XLU: Bill of Materials for Components of PCBAs in UPS Model No. CST135XLU | Unauthenticated; Hearsay; Improper FRE 1006 summary document; Will be the subject of a motion *in limine*. |
| 32 | [CONFIDENTIAL] UPS Model No. CST135XLU: Philippines Production Timeline | Unauthenticated; Hearsay; Will be the subject of a motion *in limine*. |
| 33 | [CONFIDENTIAL] UPS Model No. CST135XLU: Standard Operating Procedures for Chinese Manufacture of PCBA, UPS Model No. CST135XLU (Bates 1118-31) | Unauthenticated; Hearsay; Will be the subject of a motion *in limine*. |
| 34 | [CONFIDENTIAL] UPS Model No. CST135XLU: Standard Operating Procedure | Unauthenticated; Hearsay; Will be the subject of a motion *in limine*. |

| | | |
|---|---|---|
| | for Philippines Manufacture of UPS Model No. CST135XLU (Bates 1132-64) | |
| 35 | [CONFIDENTIAL] UPS Model No. CST135XLU: Assembly Operations Flowchart (Bates 69-70) | Unauthenticated; Hearsay; Will be the subject of a motion *in limine*. |
| 36 | [CONFIDENTIAL] UPS Model No. CST135XLU: Schematic of PCBA, Dimension Drawing, and Exploded View Diagram | Unauthenticated; Hearsay; Will be the subject of a motion *in limine*. |
| 39 | [CONFIDENTIAL] UPS Model No. OR500LCDRM1U: Bill of Materials for All Components in UPS Model No. OR500LCDRM1U (Bates 1-7) | Unauthenticated; Hearsay; Improper FRE 1006 summary document; Will be the subject of a motion *in limine*. |
| 40 | [CONFIDENTIAL] UPS Model No. OR500LCDRM1U: Bill of Materials for Components of PCBAs in UPS Model No. OR500LCDRM1U (Bates 988-992) | Unauthenticated; Hearsay; Improper FRE 1006 summary document; Will be the subject of a motion *in limine*. |
| 41 | [CONFIDENTIAL] UPS Model No. OR500LCDRM1U: Philippines Production Timeline (Bates 1165) | Unauthenticated; Hearsay; Will be the subject of a motion *in limine*. |
| 42 | [CONFIDENTIAL] UPS Model No. OR500LCDRM1U: Standard Operating Procedures for Chinese Manufacture of PCBA, UPS Model No. OR500LCDRM1U (Bates 1166-77) | Unauthenticated; Hearsay; Will be the subject of a motion *in limine*. |
| 43 | [CONFIDENTIAL] UPS Model No. OR500LCDRM1U: Standard Operating Procedure for Philippines Manufacture of UPS Model No. OR500LCDRM1U (Bates 1178-1203) | Unauthenticated; Hearsay; Will be the subject of a motion *in limine*. |
| 44 | [CONFIDENTIAL] UPS Model No. OR500LCDRM1U: Assembly Operations Flowchart (Bates 1000) | Unauthenticated; Hearsay; Will be the subject of a motion *in limine*. |
| 45 | [CONFIDENTIAL] UPS Model No. OR500LCDRM1U: Schematic of PCBA, Dimension Drawing, and Exploded View Diagram (Bates 2177-83) | Unauthenticated; Hearsay; Will be the subject of a motion *in limine*. |
| 48 | [CONFIDENTIAL] UPS Model No. SX650U: Bill of Materials for All Components in UPS Model No. SX650U (Bates 8-13) | Unauthenticated; Hearsay; Improper FRE 1006 summary document; Will be the subject of a motion *in limine*. |
| 49 | [CONFIDENTIAL] UPS Model No. SX650U: Bill of Materials for Components of PCBAs in UPS Model No. SX650U (Bates 993-99) | Unauthenticated; Hearsay; Improper FRE 1006 summary document; Will be the subject of a motion *in limine*. |

| 50 | [CONFIDENTIAL] UPS Model No. SX650U: Philippines Production Timeline (Bates 1204) | Unauthenticated; Hearsay; Will be the subject of a motion *in limine*. |
|---|---|---|
| 51 | [CONFIDENTIAL] UPS Model No. SX650U: Standard Operating Procedures for Chinese Manufacture of PCBAs in UPS Model No. SX650U (Bates 1205-17) | Unauthenticated; Hearsay; Will be the subject of a motion *in limine*. |
| 52 | [CONFIDENTIAL] UPS Model No. SX650U: Standard Operating Procedure for Philippines Manufacture of UPS Model No. SX650U (Bates 1218- 36) | Unauthenticated; Hearsay; Will be the subject of a motion *in limine*. |
| 53 | [CONFIDENTIAL] UPS Model No. SX650U: Assembly Operations Flowchart (Bates 1001) | Unauthenticated; Hearsay; Will be the subject of a motion *in limine*. |
| 54 | [CONFIDENTIAL] UPS Model No. SX650U: Schematic of PCBA, Dimension Drawing, and Exploded View Diagram (Bates 2184-90) | Unauthenticated; Hearsay; Will be the subject of a motion *in limine*. |
| 57 | [CONFIDENTIAL] SVP Model No. HT1206UC2RC1: Bill of Materials for All Components in SVP Model No. HT1206UC2RC1 (Bates 37-41) | Unauthenticated; Hearsay; Improper FRE 1006 summary document; Will be the subject of a motion *in limine*. |
| 58 | [CONFIDENTIAL] SVP Model No. HT1206UC2RC1: Bill of Materials for Components of PCBAs in SVP Model No. HT1206UC2RC1 (Bates 962.2-967) | Unauthenticated; Hearsay; Improper FRE 1006 summary document; Will be the subject of a motion *in limine*. |
| 59 | [CONFIDENTIAL] SVP Model No. HT1206UC2RC1: Philippines Production Timeline (Bates 1003) | Unauthenticated; Hearsay; Will be the subject of a motion *in limine*. |
| 60 | [CONFIDENTIAL] SVP Model No. HT1206UC2RC1: Standard Operating Procedures for Chinese Manufacture of PCBAs (Bates 1004-10) | Unauthenticated; Hearsay; Will be the subject of a motion *in limine*. |
| 61 | [CONFIDENTIAL] SVP Model No. HT1206UC2RC1: Standard Operating Procedure for Philippines Manufacture of SVP Model No. HT1206UC2RC1 (Bates 1011-26) | Unauthenticated; Hearsay; Will be the subject of a motion *in limine*. |
| 62 | [CONFIDENTIAL] SVP Model No. HT1206UC2RC1: Assembly Operations Flowchart (Bates 72) | Unauthenticated; Hearsay; Will be the subject of a motion *in limine*. |
| 63 | [CONFIDENTIAL] SVP Model No. HT1206UC2RC1: Schematic of PCBA, Dimension Drawing, and Exploded View Diagram (Bates 2152-59) | Unauthenticated; Hearsay; Will be the subject of a motion *in limine*. |

| 64 | [CONFIDENTIAL] Email of July 20, 2020 from Linda Horacek to David Hudgens ("Re: Cyber in Manilla") | Relevance; Hearsay; Will be the subject of a motion *in limine*. |
|----|----|----|
| 65 | [CONFIDENTIAL] DHS HSI Agent Photos of July 23, 2020, at Phisonic and CPSMI | Relevance; Will be the subject of a motion *in limine*. |
| 66 | [CONFIDENTIAL] DHS HSI Report of Investigation (Approval Date July 26, 2020) | Relevance; Hearsay; Will be the subject of a motion *in limine*. |
| 67 | [CONFIDENTIAL] Firmware Code for Subject Units | Hearsay; Unauthenticated; Relevance; Hearsay; Will be the subject of a motion *in limine*. |
| 68 | [CONFIDENTIAL] CBP Email of February 7, 2020, at Bates USCBP 1345 | Relevance; Hearsay; Will be the subject of a motion *in limine*. |
| 69 | [CONFIDENTIAL] QUICS Message No. 45537 (October 10, 2019), at Bates USCBP 1033. | Relevance; Hearsay; Will be the subject of a motion *in limine*. |
| 70 | [CONFIDENTIAL] CBP Email of June 2, 2020, at Bates USCBP 0045 | Relevance; Hearsay; Will be the subject of a motion *in limine*. |
| 71 | [CONFIDENTIAL] Purchase of HT1206UC2RC1 Components | Unauthenticated; Untranslated foreign language contained in documents; Will be the subject of a motion *in limine*. |
| 72 | [CONFIDENTIAL] Purchase of CBN50U48A Components | Unauthenticated; Untranslated foreign language contained in documents; Will be the subject of a motion *in limine*. |
| 73 | [CONFIDENTIAL] Purchase of CP600LCDa Components | Unauthenticated; Untranslated foreign language contained in documents; Will be the subject of a motion *in limine*. |
| 74 | [CONFIDENTIAL] Purchase of CST135XLU Components | Unauthenticated; Untranslated foreign language contained in documents; Will be the subject of a motion *in limine*. |
| 75 | [CONFIDENTIAL] Purchase of OR500LCDRMU1 Components | Unauthenticated; Untranslated foreign language contained in documents; Will be the subject of a motion *in limine*. |
| 76 | [CONFIDENTIAL] Purchase of SX650U Components | Unauthenticated; Untranslated foreign language contained in documents; Will be the subject of a motion *in limine*. |
| 77 | [CONFIDENTIAL] Philippines Import Summary | Unauthenticated; Relevance; Will be the subject of a motion *in limine*. |
| 78 | [CONFIDENTIAL] Invoices, Shipping, and Philippines Importation Documents Relating to CPSMI's Acquisition of Manufacturing Equipment | Unauthenticated; Will be the subject of a motion *in limine*. |
| 79 | [CONFIDENTIAL] Invoices, Shipping, and Philippines Importation Documents Relating to Phisonic Inc.'s Acquisition of Printed Circuit Board Assembly Manufacturing Equipment (SMT) | Unauthenticated; Will be the subject of a motion *in limine*. |

| 80 | [CONFIDENTIAL] Invoices, Shipping, and Philippines Importation Documents Relating to Phisonic Inc.'s Acquisition of Printed Circuit Board Assembly Manufacturing Equipment (DIP) | Unauthenticated; Will be the subject of a motion *in limine*. |
|---|---|---|
| 81 | Affirmation of Patrick B. Klein, Esq. (ECF 48-4) | Hearsay; Improper FRE 1006 Affirmation; Will be the subject of a motion *in limine*. |
|  | DROPPED |  |
|  | DROPPED |  |
|  | DROPPED |  |
|  | DROPPED |  |
|  | DROPPED |  |
|  | DROPPED |  |
|  | DROPPED |  |
|  | DROPPED |  |
|  | DROPPED |  |
| 92 | Models of PCBA physically filed by plaintiff, ECF 74 Form 23, ECF 73 Cover Letter | Relevance; Duplicative; Chain of custody; Will be the subject of a motion *in limine*. |

**B.      Objection to Plaintiff's Trial Witnesses[3]**

Defendant objects to the following witnesses proposed by plaintiff to provide testimony at trial:

1.      Attorney Romer Pio R. Valdenarro.  Mr. Valdenarro is offered as a witness to authenticate business records and government records of Cyber Power Systems Manufacturing Inc. (CPSMI).  Mr. Valdenarro is not an employee of CPSMI and no information disclosed by plaintiff indicates that Mr. Valdenarro is a government official who may authenticate official governmental records.  We intend to move *in limine* to exclude Mr. Valdenarro.

2.      Messrs. Anglemeyer and Langaman. These witnesses are irrelevant to this action because they visited the CPSMI facility in July 2020, after the initiation of this litigation. They

---

[3] We note that plaintiff informed the Court during the June 29, 2022 conference that it intended to call three witnesses. We further note that plaintiff's Schedule G-1 only lists three witnesses. However, given comments during the Court's July 27, 2022 conference that these witnesses might be called, we maintain these objections.

are unable to provide any testimony as to the CPSMI facility or any activity that may have occurred there that prior to the exportation of the subject merchandise. Further, to the extent plaintiff intends to elicit testimony from Messrs. Anglemeyer and Langaman that they visited CPSMI and observed activity occurring there, defendant has already stipulated to that fact. We intend to move *in limine* to exclude Messrs. Anglemeyer and Langaman.

3.      Paolo Kint Cendanda. Mr. Cendanda was not disclosed by plaintiff in its initial disclosures pursuant to Rule 26(a) of the U.S. Court of International Trade or in its supplemental Rule 26(a) disclosures. Further, the purpose for which plaintiff tenders this witness, authenticating video records of the visit by Messrs. Anglemeyer and Langaman in July 2020 to CPSMI, is irrelevant to the issues because the activity recorded concerns events occurring after this action was commenced. Moreover, these video records are not probative of the conditions of the facility at the time the merchandise at issue in this action was assembled. We intend to move *in limine* to exclude Mr. Cendanda.

4.      Michael Ho. Mr. Ho was not disclosed by plaintiff in its initial disclosures pursuant to Rule 26(a) of the U.S. Court of International Trade or in its supplemental Rule 26(a) disclosures. Further, the purpose for which plaintiff offers Ms. Ho was the subject matter of a Rule 30(b)(6) deposition of plaintiff.  Rather than provide a witness who was prepared to discuss the documents produced by plaintiff in response to defendant's discovery requests, plaintiff provided a witness wholly lacking in knowledge about those documents. We intend to move *in limine* to exclude Mr. Ho.

Notwithstanding our objections, defendant reserves its right to designate portions from depositions taken in this action and to read them into evidence.

**C.       Objection to Plaintiff's Late Objection to Certain of Defendant's Trial Exhibits**

In connection with the finalization of this set of Schedules to the Pretrial Order, plaintiff

raised objections to defendant's trial exhibits 17-21 for the first time on August 1, 2022.  Such

objections were to be addressed in motions *in limine*.  It is now too late, on the eve of trial, to

object to these exhibits.  This is particularly true when plaintiff responded in the negative to the

Court's inquiry at the July 27, 2022 pretrial conference as to whether plaintiff had any other

issues to be raised.

Notwithstanding its waiver to object to these exhibits, the objections articulated by

plaintiff in its Schedule I-1 are inapplicable to the documents comprising defendant's trial

exhibits 17-21.  Unlike the case cited by plaintiff in its objection, these exhibits are not

documents manufactured by the Government for production during the discovery phase of this

litigation in order to be used at a deposition in an effort to mislead a witness.  *See REXA Inc. v.

Chester*, 2022 U.S. App. LEXIS 20893 (7th Cir. July 28, 2022).  Instead, these are plaintiff's

own documents and the bates numbers reflect a non-contiguous set of pages that is not so

voluminous as to require a chart or summary.  As is obvious from the exhibits, these are not

compilation or summary documents.  Further, the best evidence rule is not applicable because

these exhibits are not summaries, charts, or demonstratives.  Instead, these exhibits contain the

actual documents produced by plaintiff and about which a government witness will testify.  To

the extent plaintiff believes that additional documents are needed under the rule of completeness,

plaintiff is more than capable of adding those documents or using them during cross-

examination.

Finally, to the extent the Court perceives defendant's trial exhibits 17-21 to potentially be

unwieldy, the Government can simply iterate each exhibit with a .1, .2, *etc.* (*e.g.* DTX17.1,

DTX17.2, *etc.*). We defer to the Court's discretion as to whether iterating the documents will help speed the trial along.