**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. LEO M. GORDON, SENIOR JUDGE**
-------------------------------------------------------------------- X
CYBER POWER SYSTEMS (USA) INC.      :
                                     :

              **Plaintiff,**        :
                                     :

         *v.*                  :      **No. 20-cv-00124**
                                     :

**UNITED STATES,**                 :
                                     :

            **Defendant.**       :
-------------------------------------------------------------------- X

## PLAINTIFF'S MOTION FOR PARTIAL RECONSIDERATION OR RETRIAL

NEVILLE PETERSON LLP
*Counsel for Plaintiff Cyber Power Systems (USA) Inc.*

John M. Peterson
Richard F. O'Neill
Patrick B. Klein
One Exchange Plaza
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

Dated:  March 30, 2023

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ........................................................................................................ 3

STANDARD OF REVIEW .......................................................................................... 4

APPLICABLE PRESUMPTIONS, BURDENS OF PROOF AND REMEDIES ........................... 5

ARGUMENT ............................................................................................................. 10

I.   The Court Misapplied the Statutory Presumption of Correctness, 28 U.S.C. § 2639(a)(1). ...................................................................................................... 10

    A.   Cyber Power Put Forth a *Prima Facie* Case as to the Five Products at Issue. ...... 10

        1.   CBN504U48-A1 ................................................................................. 12

        2.   CPS135XLU ...................................................................................... 13

        3.   OR500LCDRM1U ............................................................................. 14

        4.   SX650U .............................................................................................. 15

        5.   HT1206UC2RC1 ............................................................................... 16

    B.   Mr. Huang Was Not Required to Have Personally Observed the Manufacture of the Subject Merchandise. ...................................................................... 17

    C.   The Government Offered No Evidence at Trial Supporting CBP's Chinese-Origin Determination. ............................................................................. 20

    D.   The Court Failed to Discharge its *Jarvis Clark* Obligation. ................................. 21

II.  Alternatively, the Court Should Hold Additional Adjudicative Proceedings Pursuant to 28 U.S.C. § 2643(b) ....................................................................... 26

CONCLUSION .......................................................................................................... 27

## TABLE OF AUTHORITIES

**Cases**

*ABN Amro Mortgage Group, Inc. v. Maximum Mortgage, Inc.*, 2006 U.S. Dist. LEXIS
   64455 (N.D. Ind. Sept. 8, 2006)............................................................................... 19

*Aluminum Co. of America v. United States*, 60 C.C.P.A. 148 (1973) ...................................... 6, 11

*Am. Sporting Goods v. United States*, 27 C.I.T. 450 (2003)................................................... 6, 11, 20

*Anhydrides & Chems., Inc. v. United States*, 130 F.3d 1481 (Fed. Cir. 1997) ....................... 5, 10

*Ashland Chemical Co. v. United States*, 7 C.I.T. 362  (1984) ...................................... 24

*Ashland Chemical v. United States*, 7 C.I.T. 362 (1984)............................................................ 23

*Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999 (9th Cir. 1990) ....................................... 18

*Bell v. Par Pharmaceutical Cos*., 2013 U.S. Dist LEXIS 71624 (S.D. In. 2013) ....................... 17

*Catawba Indian Tribe of South Carolina v. State of South Carolina,* 978 F.2d 1334 (4th
   Cir. 1992)................................................................................................................................ 18

*Concrete Pipe & Prods. v. Construction Laborers Pension Trust*, 508 U.S. 602 (1993) ............. 6

*Consolidated Cork Co. v. United States*, 54 Cust. Ct. 83 (1965) ............................................. 6

*Cummins Inc. v. United States*, 29 C.I.T. 525 (2005) ............................................................... 25

*Cyber Power Sys. (USA) Inc. v. United States*, 586 F. Supp. 3d 1325 (Ct. Int'l Tr. 2022) .......... 24

*Cyber Power Systems (USA) Inc., v. United States,* Court No. 20-124, Slip Op. 23-24
   (Feb. 27, 2023)................................................................................................................. passim

*Desert Place Inc. v. Costa*, 539 U.S. 90 (2003)....................................................................... 6

*Ford Motor Co. v. United States*, 34 C.I.T. 1342 (2010)............................................................ 4

*Hale v. Dep't of Transportation*, 772 F.2d 882 (Fed. Cir. 1985)................................................ 6

*Hartog Foods Int'l, Inc. v. United States,* 291 F.3d 789 (Fed. Cir. 2002).................................. 21

*Innotech Aviation v. United States*, 21 C.I.T. 1392 (1997)...................................................... 24

*Jarvis Clark Co. v. United States*, 733 F.2d 873 (Fed. Cir. 1984)........................................ passim

*Jazz Photo Corp. v. United States*, 439 F.3d 1344 (Fed. Cir. 2006)............................................ 6

*Lermer N.Y., Inc. v. United States*, 37 C.I.T. 604 (2013) ...................................................... 21

*M.B.I. Merchandise Indus. v. United States*, 16 C.I.T. 495 (1992) ...................................... 21, 25

*NSK Corp. v. United States*, 593 F. Supp. 2d 1355 (Ct. Int'l Trade 2008)................................ 4

*Peerless Clothing Int'l, Inc. v. United States*, 602 F. Supp. 2d 1309  (Ct. Int'l Tr. 2009) .......... 24

*Peerless Clothing Int'l, Inc. v. United States*, 637 F. Supp. 2d 1253 (Ct. Int'l Tr. 2009) ............. 4

*Pillsbury Co. v. United States*, 27 C.I.T. 1627 (2003) ............................................................ 10

*Precision Specialty Metals v. United States*, 24 C.I.T. 1016 (2000) ......................................... 24

*R.J.F. Fabrics, Inc. v. United States,* 11 C.I.T. 185 (1987) ........................................................ 20

*Rheem Metalurgica S/A v. United States*, 20 C.I.T. 1450 (1996)............................................... 6

*Second Nature Designs, Ltd. v. United States*, 586 F. Supp. 3d 1334 (Ct. Int'l Tr. 2022).......... 24

*Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 206 F.3d 1322
   (9th Cir. 2000)............................................................................................................... 18

*Specialty Commodities, Inc. v. United States*, 190 F. Supp. 3d 1277 (Ct. Int'l Tr. 2016)........... 21

*St. Paul Fire & Marine Ins. Co. v. United States*, 6 F.3d 763  (Fed. Cir. 1993) ........................ 6

*Target Stores v. United States*, 31 C.I.T. 154 (2007)............................................................... 4

*Tianjin Magnesium Int'l Co. v. United States*, 36 C.I.T. 1698 (2012) ......................................... 4

*United States v Ignaz Strauss & Co.*, 37 C.C.P.A. 48 (1949)................................................. 5

*United States v. Gibson-Thomsen Co. Inc*., 27 C.C.P.A. 267 (1940) ...................................... 7, 11

*United States v. Magnus, Mabee & Reynard Inc.*, 39 C.C.P.A. 1 (1951)................................. 6

*United States v. UPS Customhouse Brokerage, Inc.*, 34 C.I.T. 96 (2010) .................................. 24
*Universal Elecs. Inc. v. United States*, 112 F.3d 488 (Fed. Cir. 1997)................................. 5, 10
*Warner-Lambert Co. v. United States*, 28 C.I.T. 939 (2004) ....................................... 6

**Statutes**
19 U.S.C. §1304.................................................................................................... 3, 7, 25
28 U.S.C. § 1581 ................................................................................................... 21, 24
28 U.S.C. § 2639 ....................................................................................................... passim
28 U.S.C. § 2643 ....................................................................................................... passim

**Other Authorities**
Customs Court Act of 1980, Pub. L. 96-417, 94 Stat. 1727 (96th Cong. 2d Sess. 1980)............. 22
H. Rep. 96-1235, 96th Cong., 2d. Sess. (1980) ........................................................... 22

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. LEO M. GORDON, SENIOR JUDGE
--------------------------------------------------------------------- X
CYBER POWER SYSTEMS (USA) INC.                          :
                                                        :
          **Plaintiff,**                                :
                                                        :
          *v.*                                          :          **No. 20-cv-00124**
                                                        :
**UNITED STATES,**                                      :
                                                        :
          **Defendant.**                                :
--------------------------------------------------------------------- X

### PLAINTIFF'S MOTION FOR PARTIAL RECONSIDERATION OR RETRIAL

In accordance with Rules 7 and 59 of the Rules of the United States Court of International Trade ("USCIT R."), plaintiff, Cyber Power Systems (USA) Inc. ("CPUSA"), moves for partial reconsideration or retrial with respect to the Court's February 27, 2023 decision in *Cyber Power Systems (USA) Inc., v. United States,* Court No. 20-124, Slip Op. 23-24 (Feb. 27, 2023), ECF 159, and the Court's corresponding judgment of February 28, 2023, ECF 160. Specifically, Plaintiff seeks partial reconsideration or retrial of the Court's decision to the extent it held that four (4) models of uninterruptable power supplies ("UPS") (*i.e.,* CBN50U48A-1, CST135XLU, OR500LCDRM1U, SX650U); and one (1) model of surge voltage protector ("SVP") (*i.e.,* HT1206UC2RC1), had not been shown to be substantially transformed products of the Philippines.

As discussed herein, Plaintiff did present a *prima facie* case at trial that these five products were produced in the Philippines. The statutory presumption of correctness, 28 U.S.C. § 2639(a)(1), was overcome, and the burden shifted to Defendant United States, to come forth with its own evidence to counter Plaintiff's. The government did not produce any evidence to supports its determination that the five products were of Chinese origin. As discussed herein, the Court failed to determine which side had put forth the preponderance of the evidence.

The Court also failed to discharge the obligation imposed by the U.S. Court of Appeals for the Federal Circuit in *Jarvis Clark Co. v. United States*, 733 F.2d 873 (Fed. Cir. 1984), to find the *correct* answer in all civil cases. At no point in Slip Op. 23-24 did the Court make any findings or conclusions that the subject goods were in fact the product of a "substantial transformation" occurring in China. The Court merely indicated that trial testimony, particularly that of Plaintiff's witness, Ti-Ching (Tim) Huang "did not provide answers" to certain questions, and that additional testimonial evidence was required to confirm the facts depicted in Plaintiff's documentary exhibits, which had been admitted into evidence. Slip Op. 23-24 at 28.

The Court's concerns may have resulted from the somewhat unique way in which trial was conducted. Plaintiff notes that at trial, the Court actively questioned witnesses from both sides. This is of course appropriate, since the *Jarvis Clark* obligation in some ways converts protest cases into proceedings more resembling civil law judicial inquisitions than English-style adversary trials, requiring the Court to find the correct answer in every case. After discussing the possibility of having Mr. Huang's direct testimony submitted in writing, the Court and the parties agreed to have the first day of Mr. Huang's direct testimony taken outside the presence of the Court, by deposition at the offices of Plaintiff's attorneys. The Court was therefore not present, and could not interject questions about testimony and exhibits the way it did so effectively in open court. Moreover, to Plaintiff's knowledge, the transcript of Mr. Huang's first day of testimony was not available to the Court while Mr. Huang was on the witness stand in the Courthouse. Hence, the Court feels it was left with unanswered questions.

Fortunately, 28 U.S.C. § 2643(b) provides a unique remedy in cases where, as here, the Court concludes that it is "unable to determine the correct decision on the basis of the evidence presented in any civil action." *Id.* The statute permits the Court to hold a retrial or rehearing for all

purposes, or order such other "adjudicative procedures" as may be necessary to reach the correct result. Taken together, the combination of 28 U.S.C. § 2643(b) and *Jarvis Clark* obligations effectively mandate that the Court use its power in cases such as this to ensure it has all available information so that it may arrive at the correct conclusion. Plaintiff submits that the Court's unanswered questions are easily resolvable by recalling Mr. Huang to the stand for further questioning by counsel and the Court.

## **INTRODUCTION**

In Slip Op. 23-24, this Court held that one of the six products at issue in this case (*i.e.,* UPS CP600LCDa) was properly marked "Made in the Philippines" under 19 U.S.C. § 1304. *See* Judgment of February 28, 2023, ECF 160. It also ruled that the process of assembling the CP600LCDa UPS unit in the Philippines from parts (mostly of Chinese-origin) constituted an origin-conferring "substantial transformation." The Court declined to set aside Customs' protest determination that the remaining five products be marked as Products of China under 19 U.S.C. § 1304 (a), finding that Plaintiff failed to demonstrate by a preponderance of the evidence that they were substantially transformed in the Philippines. *See* Slip Op. 23-24 at 27.

Plaintiff now moves, pursuant to USCIT R. 7 and 59, and 28 U.S.C. § 2643(b), for partial reconsideration or retrial of this Court's decision and judgment on the origin and required marking of the five products for which the Court held Plaintiff had failed to carry its burden of proof. As discussed herein, Plaintiff did make a *prima facie* case for Philippine-origin concerning those products—a showing which was not rebutted by the Defendant. The Court failed to weigh the considerable evidence introduced by Plaintiff, instead improperly attributing evidentiary weight to the statutory presumption of correctness.

The Court held that it was "unable to determine whether the devices were substantially transformed in the Philippines." Slip Op. 23-24 at p. 28. But under *Jarvis Clark*, this is insufficient. The Court had a duty to determine whether the machines in question were in fact produced in China, as the Government alleged.

## STANDARD OF REVIEW

The Court has broad discretion in deciding a Rule 59 motion for reconsideration or retrial. *Tianjin Magnesium Int'l Co. v. United States*, 36 C.I.T. 1698, 1699 (2012); *Ford Motor Co. v. United States*, 34 C.I.T. 1342, 1343 (2010). The circumstances in which a motion for reconsideration will be granted are limited, including for "an error or irregularity," "a serious evidentiary flaw," "the discovery of new evidence which even a diligent party could not have discovered in time," or "an accident, unpredictable surprise or unavoidable mistake which impaired a party's ability to adequately present its case." *Tianjin Magnesium Int'l, supra; Target Stores v. United States*, 31 C.I.T. 154, 156 (2007). Similarly, "an intervening change in the controlling law, the availability of new evidence, the need to correct a clear factual or legal error, or the need to prevent manifest injustice," will support a USCIT R. 59 reconsideration. *Ford Motor*, 34 C.I.T. at 1343; *NSK Corp. v. United States*, 593 F. Supp. 2d 1355, 1361 (Ct. Int'l Trade 2008). "A motion for reconsideration is thus a mechanism to correct a significant flaw in the original judgment, but is not a mechanism to 'allow a losing party the chance to repeat arguments or to relitigate issues previously before the court.'" *Ford Motor*, 34 C.I.T. at 1343 (quoting *Peerless Clothing Int'l, Inc. v. United States*, 637 F. Supp. 2d 1253, 1256 (Ct. Int'l Tr. 2009)).

Plaintiff would go further and suggest that this Court's discretion in considering a Rule 59 motion is informed by 28 U.S.C. § 2643(b), which applies in cases where the Court proclaims itself "unable" to find the correct decision. Slip Op. 23-24 at p.28. That statute empowers the Court

4

to undertake such further adjudicative procedures to enable it to reach the correct result, and the *Jarvis Clark* direction effectively mandates its use.

### APPLICABLE PRESUMPTIONS, BURDENS OF PROOF AND REMEDIES

In protest cases, Customs' protest determination is by law presumed to be correct. 28 U.S.C. § 2639(a)(1).[1] As this Court noted in its February 27, 2023 Opinion, Slip Op. 23-24 at 2-3, this is not a true presumption of the kind governed by Federal Rule of Evidence 301, but merely a device for allocating to plaintiff the initial burden of proof on contested factual issues that arise from the protested decision.[2] Customs is presumed to have found all facts necessary to make its decision. Where there are no contested issues of fact, the presumption disappears.[3]

The presumption of correctness carries no independent evidentiary weight. Indeed, as noted in *United States v Ignaz Strauss & Co.*, 37 C.C.P.A. 48, 51-52 (1949):

> The trial court properly held that the presumption of correctness attaching to the collector's classification of merchandise is not to be regarded as having evidentiary value so that the presumption may be weighed against the evidence of the party challenging the validity of the classification.

The presumption "does not add evidentiary weight; it simply places the burden of proof on the challenger." *Anhydrides & Chems., Inc. v. United States*, 130 F.3d 1481, 1486 (Fed. Cir. 1997). "If a *prima facie* case is made out, the presumption is destroyed, and the Government has the

---

[1] The statute provides, in relevant part:

28 U.S.C § 2639 - Burden of proof; evidence of value

    (a)

    (1) Except as provided in paragraph (2) of this subsection, in any civil action commenced in the Court of International Trade under section 515, 516, or 516A of the Tariff Act of 1930, the decision of the Secretary of the Treasury, the administering authority, or the International Trade Commission is presumed to be correct. The burden of proving otherwise shall rest upon the party challenging such decision.

[2] Slip Op. 23-24 at p.2-3.

[3] *Universal Elecs. Inc. v. United States*, 112 F.3d 488, 492 (Fed. Cir. 1997).

burden of going forward with the evidence." *Aluminum Co. of America v. United States,* 60 C.C.P.A. 148, 151 (1973) (quoting with approval *Consolidated Cork Co. v. United States*, 54 Cust. Ct. 83, 85 (1965) (citations omitted)).[4]  A *prima facie* ("at first sight") case is established when the plaintiff introduces sufficient evidence to support the claim on its face. Thereafter, the presumption of correctness is overcome, and the burden shifts to the Government to overcome such *prima facie* showing.[5]

After the parties have come forward with their evidence, the trier of fact must fairly weigh the evidence and decide the case in favor of the party which has presented the preponderance of the evidence. A preponderance of the evidence has been defined as "the greater weight of evidence, evidence which is more convincing than the evidence which is offered in opposition to it." *St. Paul Fire & Marine Ins. Co. v. United States*, 6 F.3d 763, 769 (Fed. Cir. 1993) (quoting *Hale v. Dep't of Transportation*, 772 F.2d 882, 885 (Fed. Cir. 1985)).[6] The preponderance of the evidence standard is the usual standard of evidence in civil litigation. As the Supreme Court has noted, no special showing is required. A plaintiff may make its showing through direct or circumstantial evidence.[7] The standard and its application are not affected where, as here, the plaintiff seeks judicial review of a decision to which a statutory presumption of correctness attaches.[8]

Thus, it is appropriate to inquire as to what facts Customs is presumed to have found pursuant to 28 U.S.C. § 2639(a)(1), and that Plaintiff was required to present evidence to refute.

---

[4] This time-honored formulation continues to apply under the Customs Courts Act of 1980. *See e.g*., *Am. Sporting Goods v. United States*, 27 C.I.T. 450, 456 (2003).

[5] *See e.g., United States v. Magnus, Mabee & Reynard Inc.*, 39 C.C.P.A. 1 (1951).

[6] The standard remains viable under the Customs Courts Act of 1980. *See Warner-Lambert Co. v. United States*, 28 C.I.T. 939, 948 (2004).

[7] *Desert Place Inc. v. Costa*, 539 U.S. 90, 99-100 (2003) (noting that circumstantial evidence is not only sufficient, but in some cases may be more certain, satisfying and persuasive than direct evidence. *See also e.g., Jazz Photo Corp. v. United States*, 439 F.3d 1344, 1351 (Fed. Cir. 2006).

[8] *Concrete Pipe & Prods. v. Construction Laborers Pension Trust*, 508 U.S. 602 (1993).

This protest case arises under the country of origin marking statute, Section 304(a) of the Tariff Act of 1930, *as amended*, 19 U.S.C. § 1304(a). Customs excluded Plaintiff's goods from entry on the ground that they were not marked to show the English name of their country of origin, which Customs determined to be the People's Republic of China. It is undisputed that the goods were not wholly obtained or produced in China. Slip. Op. 23-24 at 6-7 (noting previous Court decision finding a change in name in the Philippines). The standard for ascribing a country of origin to imported goods for marking purposes was set out by the Court of Appeals in *United States v. Gibson-Thomsen Co. Inc*., 27 C.C.P.A. 267 (1940); a product is deemed to be the product of the last country where it undergoes a "substantial transformation" prior to entering the United States. A "substantial transformation," in turn, is defined as a working or processing which results in the creation of a new article of commerce, having a name, character or use different than its materials or components. *Id*. Thus, Customs must have been presumed to have found the following facts:

- Cyber Power's imported products are new articles of commerce;

- Cyber Power's products were created in China; and

- Cyber Power's products acquired a new name, character or use by reason of working or processing performed in China.

It is undisputed that a new article of commerce emerges from a substantial transformation of hundreds of components into a working UPS or SVP device. The Court repeatedly found that the devices had acquired a new name by virtue of the operations performed to assemble them. *See* Slip Op. 23-24 at 5 ("a finding of substantial transformation frequently rests on multiple factors because a change in character often results in a change in use, and a change in character or use generally necessitates a change in name.").[9]

---

[9] Further, the Court had already concluded that the operations effected a change in name when deciding the parties' cross-motions for summary judgment. Slip Op. 23-24 at 6-7. Plaintiff further observes that, under the test set out in *United States v. Gibson-Thomsen Co., Inc*., 26 C.C.P.A. 267 (1940), a change in any one of the properties—

Indeed, the Court does not seem to doubt that converting discrete parts into UPS devices effects a "substantial transformation," having so ruled in the case of Plaintiff's UPS CP600LCDa. Rather, for the goods which are the subject of the instant motion for partial reconsideration or retrial, the Court did not make a finding that the products were "substantially transformed" in China; it merely claimed an inability to make a correct finding as to the goods' origin in the Philippines. *See* Slip Op. 23-24 at 28 ("Based on Mr. Huang's testimony and Plaintiff's admitted exhibits, the trial did not provide answers to these questions (of where certain operations occurred). ("No witness with personal knowledge confirmed that the assembly operations depicted in the documentary evidence fully reflected the manufacture of the subject merchandise").

The Court did not find that the goods were produced in the People's Republic of China; it simply indicated that based on the proceedings conducted to date, it could not establish the correct country of origin. Plaintiff having made out a *prima facie* case rebutting the presumption of correctness, the Court may not award judgment for Defendant based on the statutory presumption of correctness in 28 U.S.C. § 2639(a)(1). It is required to weigh the parties' evidence and to decide on preponderance of the evidence. If it needs additional information to perform this task, 28 U.S.C. §2643(b) provides the means.

Specifically, 28 U.S.C. §2643(b) (emphasis added), provides:

(b) If the Court of International Trade is <u>unable to determine the correct decision</u> on the basis of the evidence presented in any civil action, the court may order a retrial or rehearing for all purposes, or may order such further administrative or ad/judicative procedures as the court considers necessary to enable it to reach the correct decision.

---

name, character or use—is sufficient to confer origin. Thus, to the extent that this Court found that the articles emerging from plaintiff's Philippines plant had acquired a new name, different from those of its components—which is clearly supported by the trial record—it should have awarded judgment to Plaintiff on all six products. While courts note that a change in name is the "weakest" indicator of a substantial transformation, it is nonetheless, under governing appellate precedent, sufficient to establish one. *Id.*

In *Jarvis Clark Co. v. United States,* 733 F.2d 873 (Fed. Cir. 1984), the Court of Appeals ruled that this statute eliminated the "dual burden of proof" previously imposed on plaintiffs in Customs cases and required this Court to conduct such further and additional proceedings as may be required to discern the correct answer in every case. This Court, at the conclusion of a lengthy trial, professes not to have sufficient information to determine whether the subject goods are the product of a "substantial transformation" conducted in the Philippines. Yet it did not find that the goods were the product of a "substantial transformation" performed in China. The law, as interpreted by *Jarvis Clark*, does not permit this Court to conclude a protest action on that basis. If the Court is unable to determine the correct decision on the basis of the evidence presented in a protest action, it must order a retrial or rehearing for all purposes, or may order such further administrative or adjudicative purposes as it considers necessary to enable it to reach the right decision. This may entail nothing more than recalling Plaintiff's witness, Mr. Huang, to allow him offer clarifying testimony on those questions for which the Court has remaining doubt.[10]

---

[10] We observed at trial that the Court actively questioned the witnesses of both parties to elicit the information which it deemed material to its decision. This is consistent with the burden imposed by *Jarvis Clark*, which in some ways converts protest cases into actions more akin to civil law judicial investigations rather than English law adversary proceedings.

However, by agreement of the parties and the Court, the first day of Mr. Huang's direct testimony, in which he described the products and the processes and place of their manufacture, was conducted by deposition at the offices of plaintiff's counsel, without the Court present. It does not appear that the Court had the transcript of that testimony, or an opportunity to review same, before Mr. Huang took the stand live in the Courtroom. Thus, the Court did not have the same opportunity to question this witness on the matters raised in his first day of testimony. This may expose an infirmity in the manner in which the Court and the parties elected to proceed. However, if this is so, 28 U.S.C. § 2643(b) provides a vehicle to correct the flaws, and *Jarvis Clark* directs that vehicle be used.

9

## ARGUMENT

**I.     The Court Misapplied the Statutory Presumption of Correctness, 28 U.S.C. § 2639(a)(1).**

The Court improperly imposed a higher burden on Plaintiff than is required for establishing a *prima facie* case, and the Court erred in not requiring the Government to come forward with any evidence which would tend to support CBP's conclusion.

The Court correctly noted that the presumption of correctness is not an evidentiary presumption but a means of allocating burdens of proof.  The question is whether Plaintiff introduced evidence which, *prima facie*, rebutted the presumption and the facts which CBP is presumed to have found. A review of the trial record indicates that Plaintiff made out a *prima facie* case as to every one of the five products which are the subject of this rehearing motion.

In *Universal Electronics Inc. v. United States*, 112 F.3d 488, 492 (Fed. Cir. 1997), the Federal Circuit clarified that the challenging party, in order to rebut the presumption of correctness, must make a *prima facie* showing that the government's classification decision is incorrect. The Court stated that "the importer bears the burden of establishing, *prima facie*, that the government's classification is incorrect." Notably, introducing evidence contrary to the CBP decision defeats the presumption, and it then carries no additional evidentiary weight.

**A.     Cyber Power Put Forth a *Prima Facie* Case as to the Five Products at Issue.**

During the August 2022 bench trial, Cyber Power put forth a *prima facie* case, overcoming the statutory presumption of correctness. "The presumption of correctness 'does not add any evidentiary weight; it simply places the burden of proof on the challenger.'" *Pillsbury Co. v. United States*, 27 C.I.T. 1628, 1631 (2003) (citing *Anhydrides & Chems.*, Inc. 130 F.3d 1481, 1486 (Fed. Cir. 1997)).

> Thus, although the methods … used by Customs officers and the results obtained are presumed to be, correct, … this presumption may be rebutted by showing that such methods or results are erroneous. Furthermore the presumption … may not be weighted against relevant and material proof offered by the plaintiffs. If a *prima facie* case is made out, the presumption is destroyed, and the Government has the burden of going forward with the evidence.

*Am. Sporting Goods v. United States*, 27 C.I.T. 450, 456 (2003) (citing *Aluminum Co. of America v. United States*, 60 C.C.P.A. 148, 151 (1973)

Establishing a *prima facie* case that its products originate in the Philippines did not require Plaintiff to present an exhaustive, chronologically documented account of every detail of the manufacturing process. Instead, the Plaintiff must present sufficient evidence to put in issue the origin of the products (*i.e.,* whether they are products of the Philippines under the "substantial transformation" test). The *prima facie* showing need not be conclusive; the plaintiff may be permitted or required to present a rebuttal case.

With respect to each of the goods at issue here, Plaintiff introduced both testimonial and documentary evidence establishing:

- The bills of materials[11] for each model at issue, identifying by name the component parts used to produce them;

- A manufacturing process flowchart for each model at issue, showing each step in the assembly of each of the devices;

---

[11] The Court's Opinion takes issue with the Bills of Materials for the merchandise which is the subject of this motion, noting that the BOMs "do not describe the manufacture of the subject merchandise but rather list the types of components that are part of each device or PCBA". Slip Op. 23-24 at 19. But the function of a BOM is not to describe the manufacture of the goods, but only to list the parts used to make it. The Court also lamented that the BOMs [l]ack any information that links them to the subject merchandise specifically, id., and that the BOMs are "undated and do not indicate a total quantity of order of finished merchandise". *Id.*

However, these comments misapprehend the nature of a BOM. A BOM is not intended to be shipment-specific. It is the "recipe" for producing all machines of a given model. The model numbers are shown on the BOMs. BOMs do not describe the manufacture of the product – that was established using the manufacturing process flow charts that were introduced separately into evidence. They are generic. However, in this case, they are probative, because they list the names of the components used to make the devices, and allow the Court to evaluate the *Gibson-Thomsen* factor of "change in name."

- Standard operating procedures for each model at issue for Philippine factory workers to following in assembling the imported merchandise; and

- Explosion diagrams for each model at issue depicting the parts assembled together in the Philippines plant.

Moreover, as detailed below, Mr. Huang testified that these were the procedures used to make the subject devices in the Philippines plant in early 2020, when the subject goods were made. The Court found Mr. Huang a credible witness and admitted his testimony. Slip Op. 23-24 at p.10. The documentary evidence, combined with the testimony of Mr. Huang, made out a *prima facie* case that these goods were produced in the Philippines. Even if some testimony is found to be circumstantial, rather than direct, it is a sufficient *prima facie* showing to overcome the presumption of correctness and require the Government to come forward with its own evidence (which the Government failed to do).

Mr. Huang testified that the subject merchandise was produced in Cyber Power's Philippines facility through processes of manufacture at the times relevant in this case. Mr. Huang identified the products at issue; identified dates they were manufactured in the Philippines; identified the products' BOMs; identified process chart for the products' manufacturing and the standard operating procedures used for their manufacture. Plaintiff breaks down this evidence product-by-product below.

### 1.   CBN504U48-A1

Mr. Huang identified and testified about the use of the CBN504U48-A. Huang Deposition at 62:6-18, ECF 153. Mr. Huang testified that this product has been produced in the Philippines at the CPSMI factory since 2019. *Id.* at 63:20-23. Mr. Huang identified the product's bill of materials (PTX 21), and that the CBN504U48-AI consisted of more than 200 parts. *Id.* at 66:3-10, 66:23-67:6. Mr. Huang identified the product's manufacturing timeline (*id. at* 68:21-69:2) (PTX 23),

which identified the PCBA made in China (*id.* at 69:11-70:15), **and that assembly, testing, and packaging occurred in the Philippines** (*id.* at 70:16-71:5). Mr. Huang identified the manufacturing SOP for the device's PCBA manufacture. *Id.* at 71:6-12 (PTX 24). Mr. Huang identified the manufacturing SOP for the rest of the assembly operations (PTX 25), and testified as to its accuracy. *Id.* at 75:10-16. Mr. Huang identified the devices manufacturing flow chart and its accuracy. *Id.* at 75:19-76:2 (PX 26). Mr. Huang identified the devices circuit and exploded view diagrams. *Id.* at 76:6-77:11 (PTX 27).

Mr. Huang testified that the CBN50U48A-1 was manufactured in the Philippines factory in early 2020.[12] Mr. Huang testified that the CBN50U48A-1's PCBA was manufactured in China, in early 2020, but that they were currently being manufactured in the Philippines. *Id.* at 68:7-12-16; 68:17-20; 77:12-15. Mr. Huang testified that the battery was installed into the device in the Philippines. *Id.* at 75:7-13. Mr. Huang testified that the device underwent testing in the Philippines. *Id. at* 78:10-16. Mr. Huang testified that the parts labeled in the exploded view diagram in PTX 27 were assembled in the Philippines. *Id.* at 77:12-23. Mr. Huang testified that none of these components would be able to perform the function of the finished product. *Id.* at 82:9-13.

All of the above testimony and evidence are more than enough to establish a *prima facie* case that the CBN50U48A-1's country of origin is the Philippines.

### 2. CPS135XLU

Mr. Huang identified and testified about the use of the CPS135XLU. *Id.* at 82:19-84:12. Mr. Huang identified the product's BOM (PTX 30), and that the product consisted of 284 discrete parts. *Id.* at 85:17-19; 86:9-19. Mr. Huang identified the products five PCBAs (COAX, and NTVS) (*id.* at 87:5-11; 88:9-89:17; 89:18-92:6; 92:10-93:7; 93:8-94:4), and that in early 2020 they were

---

[12] The Court identified that the parties agree this is the time period at issue. *See* Slip Op. 23-24 at 12.

made in China (*id.* at 87:12-19; 88:21-89:3; 89:24-90:4; 92:15-19; 93:17-22). Mr. Huang identified the PCBA's manufacturing SOP's (*id.* at 98:21-102:2) (PTX 33), which also identified the PCBAs made in China (*id.* at 102:3-102:13). Mr. Huang identified the SOP for assembly that occurred in the Philippines (*id.* at 102:21-103:6, 103:14-17) (PTX 34). He testified that he was familiar with this manufacturing process (*id.* at 103:18-22), **and that it was an accurate representation of what occurred in the Philippines to make the CPS135XLU.** *Id.* Mr. Huang identified the circuit diagrams of the CPS135XLU (*id.* at 105:4-106:12) (PTX 36). Mr. Huang identified the products exploded view diagram and testified that it **depicted the components assembled in the Philippines**. *Id.* at 106:20-107:4.

The above testimony and evidence are more than enough to establish a *prima facie* case that the CPS135XLU's country of origin is the Philippines.

### 3.    OR500LCDRM1U

Mr. Huang identified and testified about the use of the OR500LCDRM1U. Deposition at 108:25-110:13. Mr. Huang testified that this product had been produced in the Philippines in the first half of 2020. (110:11-17). Mr. Huang testified that the product's two PCBAs were manufactured in China in early 2020 for this product. *Id.* at 111:7-14; 112:24-113:3; 113:7-17. Mr. Huang identified the product's BOM (*id.* at 111:15-21) (PTX 39), and that the product consisted of 226 discrete parts. *Id.* at 112:5-11. Mr. Huang identified the device's manufacturing timeline. *Id.* at 113:23-114:2 (PTX 41). Mr. Huang identified the PCBA's manufacturing SOP's (*id.* at 116:5-116:15) (PTX 42), which also identified the PCBAs made in China. *Id.* at 102:3-102:13. Mr. Huang identified the SOP for assembly that occurred in the Philippines. *Id.* at 117:2-119:8 (PTX 43)). **He testified that he was familiar with this manufacturing process** (*id.* at 119:5-8), **and that it was an accurate representation of what occurred in the Philippines to make the**

**OR500LCDRM1U.** *Id.* at 119:9-15. Mr. Huang also testified that the devices underwent Hi-pot, ATE, and USB testing in the Philippines. *Id.* at 119:16-120:14. Mr. Huang identified the products manufacturing flow charts. *Id.* at 123:3-11 (PTX 44). Mr. Huang testified that a transformer, which allows "the transfer of different voltages and also the conversion between AC and DC" was required to operate an UPS and was installed in the Philippines. *Id.* at 124:8-125:6. Mr. Huang identified the circuit diagrams of the OR500LCDRM1U. *Id.* at 125:8-125:15 (PTX 45). Mr. Huang identified the products exploded view diagram **and testified that it depicted the components assembled in the Philippines**. *Id.* at 127:8-128:7.

All of the above testimony and evidence are more than enough to establish a *prima facie* case that the OR500LCDRM1U's country of origin is the Philippines.

### 4.   SX650U

Mr. Huang identified and testified about the use of the SX650U. Deposition at 128:8-129:2. Mr. Huang identified the product's BOM (*id.* at 131:9-15) (PTX 48), and that the product consisted of 206 discrete parts. *Id.* at 132:11-17. Mr. Huang testified that this product had been produced in the Philippines. *Id.* at 110:11-17. Mr. Huang testified that the product's three PCBAs were manufactured in China in early 2020 for this product. *Id.* at 131:20-132:3; 133:15-20; 137:10-13. Mr. Huang identified the device's manufacturing timeline (*id.* at 136:25-137:7) (PTX 50), and testified that the products PCBAs were made in China (*id.* at 137:14-138:5) **and that assembly, testing and packaging occurred in the Philippines.** *Id.* at 138:6-11. Mr. Huang identified the PCBAs' manufacturing SOP's (*id.* at 138:20-24) (PTX 51), which also identified the PCBAs made in China. *Id.* at 140:18-21. Mr. Huang identified the SOP for assembly that occurred in the Philippines. *Id.* at 140:24-141:11 (PTX 52). He testified that **he was familiar with this manufacturing process** (*id.* at 141:16-19), **and that it was an accurate representation of what**

15

**occurred in the Philippines to make the SX650U.** (*id.* at 141:20-25).  Mr. Huang identified the circuit diagrams of the SX650U (*id.* at 143:23-144:6) (PTX 54). Mr. Huang identified the products exploded view diagram and that it depicted the component assembled in the Philippines. *Id.* at 144:13-144:20. Mr. Huang also testified that none of the components, or the main board by themselves perform the same function as the SX650U. *Id.* at 147:10-19.

All of the above testimony and evidence are more than enough to establish a *prima facie* case that the SX650U's country of origin is the Philippines.

### 5.  HT1206UC2RC1

Mr. Huang identified and testified about the use of the HT1206UC2RC1 (Deposition at 148:7-149:16; 151:25-152:24). Mr. Huang testified that this product has been produced in the Philippines in 2020. *Id.* at 149:17-20; 151:16-21. Mr. Huang identified the products BOM (*id.* at 150:8-16) (PTX 57), and that the product consisted of 112 discrete parts. *Id.* at 150:24-151:6. Mr. Huang testified that the product's PCBAs was manufactured in China in early 2020 for this product. (*id.* at 153:10-19, 159:15-17). Mr. Huang identified the device's manufacturing timeline, PTX 59 (*id.* at 157:19), and the operations performed in the Philippines. *Id.* at 158:18-25. Mr. Huang identified the PCBA's manufacturing SOP's (159:9-17) (PTX 60), and that these operations occurred in China. Mr. Huang identified the SOP for assembly that occurred in the Philippines, (160:5-16) (PTX 61). **He testified that he was familiar with this manufacturing process (*id.* at 160:17-20), and that it was an accurate representation of what occurred in the Philippines to make the HT1206UC2RC1.** *Id.* at 160:21-161:2, 162:16-166:17. Mr. Huang identified the devices manufacturing flowchart (PTX 62), and testified that the operations were performed in the Philippines. *Id.* at 166:21-167:8. Mr. Huang identified the circuit diagrams of the HT1206UC2RC1. *Id.* at 167:13-22 (PTX 63). **Mr. Huang identified the product's exploded**

**view diagram and that it depicted the component assembled in the Philippines.** *Id.* at 168:8-15. Mr. Huang also testified that none of the components by themselves perform the same function as the HT1206UC2RC1. *Id.* at 168:8-21.

All of the above testimony and evidence are more than enough to establish *a prima facie* case that the country of origin of this product is the Philippines.

> **B.    Mr. Huang Was Not Required to Have Personally Observed the Manufacture of the Subject Merchandise.**

The Court criticized Mr. Huang's testimony because he had not personally observed the manufacture of the merchandise which is the subject of this motion. "[Mr. Huang] failed to testify, however, that he had personally observed the manufacture of the subject merchandise, or to point to any other evidence that would link the production to these summary "guidelines"-type exhibits, especially with reference to the necessary timeframe; early 2020." Slip Op. 23-24 at 21. While the Court's observation presumably goes to the weight of the testimony, not its admissibility, it is not necessary for Mr. Huang to have personally witnessed the manufacture of the subject merchandise for plaintiff to make out a *prima facie* case of Philippines manufacture.

Mr. Huang testified that since 2018 he has been General Manager of Cyber Power Systems Manufacturing Inc., the Philippine plant where the subject merchandise was produced (Huang Dep. at 5:24-6:19), and that he was familiar with the manufacturing operations performed there. Id. at 8. He also identified the various factory manufacturing records which were admitted into evidence and described during his testimony. This is more than sufficient to make him competent to testify concerning the operations performed at the Philippine plant.

In *Bell v. Par Pharmaceutical Cos*., 2013 U.S. Dist. LEXIS 71624 at *9-10 (S.D. In. 2013), plaintiff brought suit claiming that a particular pharmaceutical product she had purchased was contaminated with foreign matter. The plaintiff asked the court to exclude witness statements of

corporate employees on the ground that they had not personally observed the manufacture of the

allegedly defective product batch. The court declined to bar the testimony, noting:

> Federal Rule of Civil Procedure 56(c)(4) provides that affidavits or declarations used to support  or oppose a motion for summary judgment must be made on personal knowledge and set forth facts that would be admissible under the Federal Rules of Evidence. In addition, Federal Rule of Evidence 602 provides that declarants who are not expert witnesses are permitted to testify only from their personal knowledge. However, "there is a general presumption that an employee or corporate representative has personal knowledge, sufficient to attest to matters relating to the business entity." St. Paul Fire & Marine Ins. Co. v. Schilli Transp. Svcs., Inc., No. 2:08-cv-176, 2011 U.S. Dist. LEXIS 48712, 2011 WL 1743480, *4 (N.D. Ind. May 5, 2011), rev'd on other grounds, 672 F.3d 451 (7th Cir. 2012). **It is irrelevant as to whether this knowledge was gained from reviewing documents that the company had a business duty to record, or from the officer's or employee's personal observation**. 2011 U.S. Dist. LEXIS 48712, [WL] at *5. In addition, "Federal Rule of Evidence 803(6) exempts from the definition of hearsay statements contained in business documents made at or near the time of an event, recorded by someone with personal knowledge, kept in the regular course of business, and made by someone under a business duty to record."

(emphasis added).

It is well-settled that corporate officers may be deemed to have personal knowledge of the

acts of the corporation and need not expressly state that the allegations contained in his complaint

are based on his personal knowledge. *See e.g., Self-Realization Fellowship Church v. Ananda*

*Church of Self-Realization*, 206 F.3d 1322, 1330 (9th Cir. 2000) (stating that the court could

presume personal knowledge from the affiant's position as a corporate officer), *cert. denied*, 531

U.S. 1126 (2001); *Catawba Indian Tribe of South Carolina v. State of South Carolina,* 978 F.2d

1334 (4th Cir. 1992) (stating that corporate officers ordinarily have personal knowledge of the acts

of their corporation); *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990)

(inferring from affiant's position as CEO personal knowledge of various corporate activities).

Rather, there is a general presumption that an employee or corporate representative has personal

knowledge, sufficient to attest to matters relating to the business entity. *ABN Amro Mortgage*

*Group, Inc. v. Maximum Mortgage, Inc.*, 2006 U.S. Dist. LEXIS 64455,  at *5 (N.D. Ind. Sept. 8, 2006).

Thus, Mr. Huang's testimony was entitled to be weighed by this Court. He competently identified the bills of material, production diagrams, standard operating procedures and other documentary evidence and testified that these were used in the Philippines in early 2020, when the subject merchandise was manufactured. While the Court might have accorded greater weight to the testimony had Mr. Huang personally observed the subject goods being assembled in the Philippines, his testimony did indeed tie the documentary exhibits to the subject merchandise. It was more than sufficient to overcome the presumption of correctness, require the Defendant to come forth with its own evidence, and have the court weigh the evidence to determine what the preponderance of the evidence showed.

The Court's other observations about infirmities in Plaintiff's evidence go to its weight, not its credibility. While the Court noted minor inconsistencies in the location of firmware burning for certain products, Slip Op. 23-24 at 21-23, nowhere does the Court suggest that firmware burning is dispositive or even material to determining the origin of the subject products. While the Court noted the shift of PCBA manufacturing from China to the Phisonic plant in the Philippines was less than perfectly clear, the plaintiff *stipulated* that the PCBAs for all of the subject products at issue in this motion (*i.e.,* besides the CBP600LCDa) were made in China, and this Court noted that PCBA manufacture did not drive the origin determination. Slip Op. 23-24 at 25.[13] ("The court agrees with Plaintiff that Defendant's proposed focus on the PCBA and the application of an 'essence' or 'critical component' test here is without merit.").

---

[13] The Court observes that an electrolytic cap, valued at ¥ 0.0554 RMB (about $0.00078 USD) in the BOM for one of the devices showed multiple countries of origin, but at no point suggested this was material to the origin determination for the imported devices. Slip Op. 23-24 at 19.

Plaintiff made out a *prima facie* case, defeating the 28 U.S.C. § 2639(a) presumption of correctness, and shifted to Defendant the burden of coming forward with evidence. The Government failed to produce any.

### C.     The Government Offered No Evidence at Trial Supporting CBP's Chinese-Origin Determination.

After Plaintiff made its *prima facie* showing, "the question becomes … whether this evidence weighed against that produced by Customs, is such that the plaintiff has carried its burden by a preponderance of the evidence[.]" *Am. Sporting Goods v. United States*, 27 C.I.T. 450, 457 (2003). The Government introduced no percipient witnesses or relevant testimony, offering the Court nothing to support its conclusion that the goods are Chinese-originating.

The Court recognized this failure, noting how the Government's testimony largely focused on "Cyber Power's corporate structure and relationship with Phisonic," of which the Court recognized "the limited relevance of" this testimony "to the substantial transformation issue." Slip Op. 23-24 at 10. The Government's witnesses in its case in chief were "were Linda Horacek, an import specialist on Customs' electronic enforcement team, and Karl Moosbrugger, a national import specialist at Customs, who were involved in the administrative investigation and protest determination." Slip Op. 23-24 at 11. The Court noted correctly that (*id.*):

> [E]very witness other than Mr. Huang lacked personal knowledge as to the operations at the Cyber Power Philippines factory. Accordingly, the probative value of their respective testimony is minimal because it does not assist the court in resolving the central question—whether those operations, occurring in early 2020, constituted a substantial transformation of the subject merchandise.

The Government's case in chief in this bench trial was analogous to the case presented by plaintiff in *R.J.F. Fabrics, Inc. v. United States,* 11 C.I.T. 185 (1987)*,* an origin  case where the plaintiff only called to the stand Customs employee witnesses who failed to testify about relevant evidence. The Government's witnesses here only testified to their actions in denying Plaintiff's

protest. Such testimony is irrelevant to the issue before the court, *i.e*., the origin of the imported goods. The fair preponderance of the evidence indicates that the Court should have entered judgment for Plaintiff. *See M.B.I. Merchandise Industries Inc.* v. United States, 16 C.I.T. 495 (1992) (weighing the preponderance of the evidence in an origin case after the presumption of correctness was overcome).

### D.    The Court Failed to Discharge its *Jarvis Clark* Obligation.

The Court has an independent obligation to reach the *correct* decision in every case, as articulated in *United States v. Jarvis Clark Co*., 733 F.2d 873, 878 (Fed. Cir. 1984). Most fundamentally, in discharging this duty, the Court must base its decision on evidence.

The Court in this case did not fulfill its obligation under *Jarvis Clark Co. v. United States*, 733 F.2d 873 (Fed. Cir. 1984) and 28 U.S.C. § 2643(b), which requires that the Court reach the *correct* result in every action before it. At a minimum, this requires that the Court always base its decisions on evidence. Any other approach would completely disregard the Court's obligation to review the CBP decision *de novo* and independently evaluate the evidence and legal arguments presented by both parties without giving deference to the underlying CBP decision. "[I]t is the court's independent duty to arrive at 'the correct result, by whatever procedure is best suited to the case at hand.'" *Specialty Commodities, Inc. v. United States*, 190 F. Supp. 3d 1277, 1301 (Ct. Int'l Tr. 2016) (citing *Lerner N.Y., Inc. v. United States*, 37 C.I.T. 604, 607 (2013) (quoting *Jarvis Clark Co. v. United States*, 733 F.2d 873, 878 (Fed. Cir. 1984))). Where, as here, Customs has denied a protest without issuing an official ruling, the Court considers the parties' arguments without deference. *Hartog Foods Int'l, Inc. v. United States,* 291 F.3d 789, 791 (Fed. Cir. 2002).

The obligation to reach the correct result from *Jarvis Clark* and 28 U.S.C. § 2643(b) applies to "any civil action", including all litigation brought under this Court's 28 U.S.C. § 1581(a) protest

denial jurisdiction.[14] While the Court's February 27, 2023 Opinion concluded that "the country of origin for the remaining five models of subject merchandise is China," Slip Op. 23-24 at 29, the Court made no findings of fact with respect to manufacturing operations in China, and no conclusions of law. It did not find that the subject products were created in China by a process of "substantial transformation."

In effect, the Court awarded judgment to Defendant following trial based on the presumption of correctness, 28 U.S.C. § 2639(a)(1), without requiring the government to put on any evidence. This was clear legal error. Once evidence was placed on the record indicating these machines were assembled in the Philippines, the presumption was overcome.

One could argue that the Court's error essentially resuscitated the "dual burden of proof" which had been abolished in *Jarvis Clark*. If the Court finds that the evidence does not show the goods to be products of the Philippines, it must identify their actual, or *correct*, country of origin. The Court received a full week of evidence and testimony indicating that substantial processes are undertaken in the Philippines to create these goods. If there is insufficient evidence on which it can determine the goods are Philippine-originating, the Court should order a retrial pursuant to its *Jarvis Clark* obligation and 28 U.S.C. § 2643(b).

The *Jarvis Clark* Court held that Congress' grant of equitable powers to the CIT in the Customs Court Act of 1980, Pub. L. 96-417, 94 Stat. 1727 (96th Cong. 2d Sess. 1980), eliminated the "dual burden of proof".  Before *Jarvis Clark* was decided,[15] plaintiffs were required to prove

---

[14] Indeed, it has been noted that ""Subsection (b) [of 28 U.S.C. §2463] has particular impact on civil actions brought pursuant to section 515 or 516 of the Tariff Act of 1930". *Jarvis Clark Co. v. United States*, 739 F.2d 628, 629, (Fed. Cir. 1984) (citing H. Rep. 96-1235, 96th Cong., 2d. Sess. at p. 60-61 (1980)).

[15] Even before the *Jarvis Clark* decision was issued, this Court had exercised its power under 28 U.S.C. § 2643(b) to remand cases for further proceedings in an effort to reach the correct result. See *House of Adler Inc. v. United States*, 2 C.I.T. 274 (1981).

that their claim was correct and that the Government's determination was incorrect. In examining

28 U.S.C. § 2643(b) The Court noted:

> … the trial court cannot determine the correct result simply by dismissing the importer's alternative as incorrect. It must consider whether the government's [determination in liquidation] is correct, both independently and in comparison with the importer's alternative.

733 F.2d at 878.

The Court in *Ashland Chemical v. United States,* 7 C.I.T. 362 (1984) touches on the exact

point Plaintiff is arguing here:

> There is insufficient evidence before the Court to reach a final judgment. Even if it would be correct in a formal sense to say that plaintiff has a burden of proving its claimed appraised value, the consequence of a failure to do so should not automatically be a victory for the government. *Jarvis Clark Co. v. United States*, Appeal No. 83-1106, Slip Op. (C.A.F.C. May 2, 1984) and *House of Adler, Inc. v. United States*, 2 CIT 274, 277-78 (1981). This is a logical corollary of the general powers given to the Court under 28 U.S.C. § 2643(b), when the Court considers that further administrative or adjudicative procedures are needed to enable it to reach a correct decision. The Court is of the opinion that further proceedings are needed in this case in order to determine a proper appraised value.

*Id.* 367-68 (1984). Just as the Court in *Ashland Chemical* indicated, even if plaintiff cannot carry

its burden, "the consequence of a failure to do so should not automatically be a victory for the

government," because the Government also carries the burden of proving its claim correct to the

Court as well. The Court's analysis finding for the Government on these five devices is devoid of

any mention of the Government's evidence, because there is none.

The Government's determination in this case cannot hold under this Court's *Jarvis Clark*

obligation because "the probative value of [the government's witnesses'] respective testimony is

minimal because it does not assist the court in resolving the central question—whether those

operations, occurring in early 2020, constituted a substantial transformation of the subject

merchandise." Slip Op. 23-24 at 11. It appears that the Court failed to discharge its *Jarvis Clark*

obligation by considering the Government's determination that the goods were made in China "both independently and in comparison with" Cyber Power's claim.

The *Jarvis Clark* obligation applies in all 28 U.S.C. § 1581(a) protest denial cases before the CIT, including the denial of an exclusion protest, under the marking statute, 19 U.S.C. § 1304. The *Jarvis Clark* Court's holding was based on interpreting 28 U.S.C. § 2643(b), which is applicable to "all civil actions" before the CIT. The *Jarvis Clark* Court notes that:

> As initially drafted, § 2643(b) applied *only* to such [classification and valuation] protests. The Subcommittee on Monopolies and Commercial Law of the House Judiciary Committee later expanded the statute to apply to "any civil action"

*Jarvis Clark* at 877. The Court finally notes that the rule applies to every case:

> The statute is more logically interpreted as **mandating that the court reach a correct decision in every case**; but the statute leaves to the court the discretion whether it should remand for further proceedings or should reach the correct decision on its own.

*Id.* at 878.

Traditionally, the *Jarvis Clark* obligation has been applied to classification and valuation protests. *See e.g. Cyber Power Sys. (USA) Inc. v. United States*, 586 F. Supp. 3d 1325, 1344 (Ct. Int'l Tr. 2022); *Second Nature Designs, Ltd. v. United States*, 586 F. Supp. 3d 1334, 1339 (Ct. Int'l Tr. 2022); *Ashland Chemical Co. v. United States*, 7 C.I.T. 362, 367-368 (1984); *Peerless Clothing Int'l, Inc. v. United States*, 602 F. Supp. 2d 1309, 1315-1316 (Ct. Int'l Tr. 2009). The *Jarvis Clark* obligation has been recognized in other protest cases including: duty drawback cases, *see Precision Specialty Metals v. United States*, 24 C.I.T. 1016, 1024 (2000); customs penalty cases, *see United States v. UPS Customhouse Brokerage, Inc.*, 34 C.I.T. 96, 128 (2010); Agreement on Trade in Civil Aircraft certification cases, *see Innotech Aviation v. United States*, 21 C.I.T. 1392, 1393 fn 1 (1997); liquidation date challenge cases, *see Rheem Metalurgica S/A v. United States*, 20 C.I.T. 1450, 1456 (1996); and in the origin sphere, NAFTA origin cases, *see Cummins Inc. v. United*

*States*, 29 C.I.T. 525, 541 (2005). Other parts of *Jarvis Clark*'s holdings regarding the CIT's

equitable powers have been held to apply in exclusion cases. *See e.g., M.B.I. Merchandise Indus.*

*v. United States*, 16 C.I.T. 495, 499 (1992). It should be without question that the *Jarvis Clark*

obligation applies to this protest case concerning a customs exclusion based on the marking statute,

19 U.S.C. § 1304.

> As was noted by the *Jarvis Clark* Court, on a motion for rehearing:

> The abolition of the dual burden will add stability to the customs laws that has been
> lacking. A judicial decision will now represent a statement of correct law, useful to
> future importers, rather than simply a narrow ruling based on the particular
> circumstances in the case.

739 F.2d at 629.

**In this case, the Court explicitly rejected as without merit the tests which Customs**

**applied to reach its findings of Chinese origin for these products, noting that "Defendant's**

**proposed focus on the PCBA and the application of an 'essence' or 'critical component' test**

**here is without merit," yet upheld their legally erroneous findings**. Slip Op 23-24 at p. 25. This

finding alone indicates that the presumption of correctness accorded the Government's protest

decision has been destroyed. The Court correctly held that the origin of these products should be

governed by the test of "substantial transformation", but never applied that test in ruling on the

origin of the products covered by this motion.

Plaintiff provided sufficient credible, probative, admissible evidence to overcome the

presumption of correctness, and establish a *prima facie* case supported by the preponderance of

the evidence. The Court should reconsider its prior decision, reverse the result, and enter judgment

for Plaintiff holding that the 4 UPS and 1 SVP product at issue here are products of the Philippines

and may be properly marked as such.

In the event the Court believes it requires more clarity before finally ruling, 28 U.S.C. § 2643(b) provides the vehicle for obtaining such additional clarity.

## II.    Alternatively, the Court Should Hold Additional Adjudicative Proceedings Pursuant to 28 U.S.C. § 2643(b)

As noted above, the Court expressed dissatisfaction with what it considered a lack of clarity in some of Mr. Huang's testimony. Should the Court believe it requires further proceedings to divine the correct answer as to the country of origin of the merchandise at issue, 28 U.S.C. § 2643(b) provides the power to do so, and *Jarvis Clark* provides the mandate to use that power.

As further noted above, the Court was an active questioner at trial, consistent with the exercise of its *Jarvis Clark* obligation. The frustration which the Court expressed all arises from the first day of Mr. Huang's testimony, which was done out of the Court's presence in the form of a deposition. To Plaintiff's knowledge, the Court read that testimony after the conclusion of trial and could not assess demeanor or ask follow-up questions.[16] The Court claims that those shortcomings prevent it from making a definitive determination of origin.

Fortunately, that matter can be addressed by using 28 U.S.C. § 2643(b) to recall Mr. Huang to the stand and allow counsel and the Court to elicit answers to the issues troubling the Court. If the Court is not inclined to reconsider and reverse its decision based on the record made to date, Plaintiff submits the Court may resolve this issue through further adjudicative proceedings, and better discharge its *Jarvis Clark* obligation.

---

[16] As the Court will recall, during the pretrial conference plaintiff proposed submitting Mr. Huang's testimony in written form. The Court indicated that it found merit in such a proposal, and would forward the proposal to the Court's Rules Committee. Ultimately, after Defendant's counsel objected to the use of written testimony it was determined to take Mr. Huang's direct testimony by deposition. In hindsight, when future situations like this arise, the presentation of direct testimony by writing or in open court may be the superior way to proceed. That would allow the Court to ask questions of the witness contemporaneously with his appearance and testimony in Court.

## <u>CONCLUSION</u>

Plaintiff respectfully moves that the Court grant the instant motion for partial retrial or rehearing and vacate its judgment as to the four UPS models and one SVP model in question.

Respectfully submitted,

NEVILLE PETERSON LLP
*Counsel for Plaintiff Cyber Power Systems (USA) Inc.*


<u>/s/ John M. Peterson</u>
John M. Peterson
Richard F. O'Neill
Patrick B. Klein
One Exchange Plaza
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

Dated:  March 30, 2023

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. LEO M. GORDON, SENIOR JUDGE**

```
-------------------------------------------------------------- X
CYBER POWER SYSTEMS (USA) INC.                    :
                                                  :
          Plaintiff,                              :
                                                  :
     v.                                           :          No. 20-cv-00124
                                                  :
UNITED STATES,                                    :
                                                  :
          Defendant.                              :
-------------------------------------------------------------- X
```

<u>**CERTIFICATE OF COMPLIANCE**</u>

I, Patrick B. Klein, of Neville Peterson LLP, who is responsible for the instant Brief, relying upon the word count feature of the word processing program used to prepare the Brief, certify that it complies with the word count limitation under the Court's Standard Chambers Procedures and contains 8,878 words.

Respectfully submitted,

/s/ Patrick B. Klein
Patrick B. Klein