UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. LEO M. GORDON, *SENIOR JUDGE*

|  |  |
|---|---|
| CYBER POWER SYSTEMS (USA) INC., : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> UNITED STATES, : <br> : <br> Defendant. : | Court No. 20-00124 |

## **ORDER**

Upon consideration of plaintiff's motion for partial reconsideration or retrial, and upon consideration of other papers and proceedings had herein, it is hereby

**ORDERED** that plaintiff's motion be, and hereby is, denied.

_____
JUDGE

Dated: _____
New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. LEO M. GORDON, *SENIOR JUDGE*

| | |
|---|---|
| CYBER POWER SYSTEMS (USA) INC., | : |
| Plaintiff, | : |
| v. | : Court No. 20-00124 |
| UNITED STATES, | : |
| Defendant. | : |

**DEFENDANT'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL RECONSIDERATION OR RETRIAL**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

AIMEE LEE
Assistant Director

BEVERLY A. FARRELL
Senior Trial Attorney
LUKE MATHERS
Trial Attorney
Civil Division, Department of Justice
Commercial Litigation Branch
26 Federal Plaza – Suite 346
New York, NY 10278
Tel. (212) 264-9230 or 0483
*Attorneys for Defendant*

Dated: April 20, 2023

## **TABLE OF CONTENTS**

BACKGROUND .................................................................................................................... 1

ARGUMENT .......................................................................................................................... 4

    I.    To Be Disturbed On A Motion For Reconsideration, A Post-Trial Decision Must Be Manifestly Erroneous ................................................................................................... 4

    II.    Cyber Power Fails To Meet The Standard For Reconsideration .................................... 5

        A.    Cyber Power Cannot Seek Partial Retrial To Present Testimony That It Could Have Presented At Trial .................................................................................................. 5

        B.    Cyber Power Relitigates The Facts Instead Of Identifying Any Manifest Error Or Fundamental Flaw In The Court's Thorough Decision ........................................... 6

        C.    *Jarvis Clark* Does Not Save Cyber Power From Its Evidentiary Failings ................. 10

CONCLUSION ..................................................................................................................... 13

# **TABLE OF AUTHORITIES**

**Cases**

*Ashland Chemical v. United States*,
  7 C.I.T. 362 (1984) ............................................................................................................. 11

*FMD Restoration, Inc. v. Baistar Mech., Inc.*,
  320 F.R.D. 320 (D.D.C. 2017) ..................................................................................... 4, 5, 6

*Former Employees of Quality Fabricating, Inc. v. U.S. Dep't of Labor*,
  343 F. Supp. 2d 1272 (Ct. Int'l Trade 2004) ...................................................................... 4

*Jarvis Clark v. United States*,
  733 F.2d 873 (Fed. Cir. 1984) ........................................................................................... 10

*Jarvis Clark v. United States*,
  739 F.2d 628 (Fed. Cir. 1984) ........................................................................................... 11

*Jedwards Int'l Inc. v. United States*,
  161 F. Supp. 1350 (Ct. Int'l Trade 2016) ......................................................................... 11

*Key Pharms. v. Hercon Labs. Corp.*,
  161 F.3d 709 (Fed. Cir. 1998) ............................................................................................. 6

*Myles v. United States*,
  416 F.3d 551 (7th Cir. 2005) ............................................................................................. 12

*Olaplex, Inc. v. L'Oreal USA*, Inc.,
  855 F. App'x 701 (Fed. Cir. 2021) ................................................................................... 10

*R.J.F. Fabrics, Inc. v. United States*,
  657 F. Supp. 1291 (Ct. Int'l Trade 1987) ....................................................................... 7, 9

*Since Hardware (Guangzhou) Co. v. United States*,
  37 F. Supp. 3d 1354 (Ct. Int'l Trade 2014) ................................................................ 1, 4, 6

*United States v. Sineneng-Smith*,
  140 S. Ct. 1575 (2020) ......................................................................................... 10, 11, 12

*Universal Elecs. Inc. v. United States*,
  112 F.3d 488 (Fed. Cir. 1997) ............................................................................................. 7

**Statutes**

28 U.S.C. § 2643(b) ................................................................................................... 10, 11, 12

**Rules**

United States Court of International Trade Rule 1 ......................................................................... 4

United States Court of International Trade Rule 59 ....................................................................... 4

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. LEO M. GORDON, *SENIOR JUDGE*

| | |
|---|---|
| CYBER POWER SYSTEMS (USA) INC., | |
| Plaintiff, | |
| v. | Court No. 20-00124 |
| UNITED STATES, | |
| Defendant. | |

**DEFENDANT'S RESPONSE IN OPPOSITION TO**
**PLANTIFF'S MOTION FOR PARTIAL RECONSIDERATION OR RETRIAL**

Defendant, the United States (the Government) respectfully opposes plaintiff Cyber Power Systems (USA) Inc.'s (Cyber Power's) motion for partial reconsideration or retrial. ECF No. 161 ("Mot."). In a thorough post-trial opinion, this Court found that Cyber Power "failed to carry its burden of producing evidence to show that five of the six models of subject merchandise," which were comprised of mostly Chinese components, "were substantially transformed in the Philippines." *Cyber Power Systems (USA) Inc. v. United States*, Slip Op. 23-24 at 8, 23. Contrary to its obligations under USCIT Rule 59, Cyber Power does not identify any "fundamental or significant flaw" in the Court's decision but rather seeks to "re-litigate" this case. *Since Hardware (Guangzhou) Co. v. United States*, 37 F. Supp. 3d 1354, 1359 (Ct. Int'l Trade 2014) (quotation omitted) (USCIT Rule 59 motions are not intended for unsuccessful parties to re-litigate cases). Its motion should be denied.

**BACKGROUND**

This Court is familiar with the background of this case. To briefly summarize, Cyber Power imports uninterruptable power supply (UPS) and surge voltage protector (SVP) devices.

Its parent company has a factory in Shenzhen in the People's Republic of China that manufactures all six of the products at issue. Trial Vol. III at 518, 528–30. After national security duties were imposed under Section 301 of the Trade Act of 1974 on Chinese-origin products like Cyber Power's, Cyber Power's parent company began cultivating certain assembly, testing, and packaging operations in the Philippines. The subject merchandise is more expensive to make at the Philippine facility than at the Shenzhen factory, but the products could escape Section 301 duties if made in the Philippines. *See id.*

In this action, Cyber Power challenged U.S. Customs and Border Protection's (CBP's) exclusion of six product models from entry—five UPSs and one SVP—that were manufactured no later than early 2020 and marked "Made in the Philippines." CBP determined that these specific products' country of origin was China, rather than the Philippines. After all, "the majority of their components, including the main printed circuit board assemblies …, were manufactured in China." Slip Op. 23-24 at 8. At the protest stage, CBP ultimately concluded that Cyber Power provided "[i]nsufficient documentation … to change the country of origin from China to the Philippines for marking and classification purposes. All information, both verbal and written, was considered by this office. The country of origin marking for this shipment should remain 'made in China.'" ECF No. 20-1 at 2.

After holding a bench trial, this Court found that Cyber Power proved by a preponderance of the evidence that only one product, the UPS Model No. CP600LCDa, was made—substantially transformed—in the Philippines. Slip Op. 23-24 at 24–27. The Court based its finding on Cyber Power's "documentary evidence contain[ing] consistent references to the Philippine production of the main [printed circuit board assembly] for the CP600LCDa, quantity-specific work orders and set lists showing dates corresponding with the approximate

2

timeframe during which the subject merchandise was manufactured," as well as the testimony of Cyber Power's Philippine facility manager, Mr. Chi-Ting Huang,[1] "as to his personal knowledge of operations occurring" there in early 2020, when the subject merchandise was made. *Id.* at 18. Accordingly, in its judgment, the Court ordered that that product was appropriately marked "Made in the Philippines." Judgment, ECF No. 160.

As for the remaining five products—four UPS models and one SVP model—Cyber Power "failed in its burden of proof from the outset." Slip Op. 23-24 at 29. The Court found that Cyber Power's evidence failed to answer basic questions like "how the production process in the Philippines evolved as more of Cyber Power's operations shifted there [from China]; when and where discrete steps of the so-called 'assembly' process, such as firmware burning, were taken; and whether [Cyber Power] could submit evidence of assembly procedures that depicted the manufacturing process of the subject merchandise."[2] *Id.* at 27–28. This was because Cyber Power "failed to present the specific testimony describing the assembly process of the subject devices for the relevant time period, and instead focused on a general overview of its product types and manufacturing operations." *Id.* at 28. Furthermore, the evidence that Cyber Power did present was inconsistent and incomplete: there were "discrepancies between the exhibits and Mr. Huang's testimony with respect to where and at what stage certain steps were performed," and no "dates, quantities, and other merchandise-specific information." *Id.* The Court thus ordered

---

[1] Cyber Power misidentifies its primary trial witness as "Ti-Ching (Tim) Huang." Mot. at 2. Unless Mr. Huang's many declarations and trial testimony were incorrect, his first name is Chi-Ting. Trial Vol. I at 44:24–25 ("Chi-Ting Huang. C-h-i T-i-n-g.").

[2] Contrary to Cyber Power's position, this passage makes clear that it was not "undisputed that the goods were not wholly obtained or produced in China" or that Philippine "operations effected a change in name." Mot. at 7 & n.9. The subject merchandise may have shipped from the Philippines, but the whole point of trial was to determine when, where, and how it became the subject merchandise.

that these five products must be re-marked "Made in China." Judgment, ECF No. 160.

Cyber Power now moves for partial reconsideration or retrial, arguing that the Court should reweigh the evidence that it already addressed in its opinion and give Cyber Power another opportunity at proving its case with the same witness who could not close evidentiary gaps at trial. Mot. at 10–26. For the reasons that follow, the Court should deny Cyber Power's motion.

## ARGUMENT

**I. To Be Disturbed On A Motion For Reconsideration, A Post-Trial Decision Must Be Manifestly Erroneous**

Motions for reconsideration or retrial under USCIT Rule 59 "do not permit an unsuccessful party to re-litigate a case, but are supposed to address a fundamental or significant flaw in the original proceeding. To that end, a court's previous decision will not be disturbed unless it is manifestly erroneous." *Since Hardware (Guangzhou) Co.*, 37 F. Supp. 3d at 1359 (quotations omitted); *accord FMD Restoration, Inc. v. Baistar Mech., Inc.*, 320 F.R.D. 320, 323 (D.D.C. 2017) (Federal Rule of Civil Procedure 59 "motions may not be used to religitate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment" (quotation omitted)).[3]

---

[3] "[W]hen this court or an appellate court have not discussed previously one of the rules of this court, which is identical to the Federal Rules of Civil Procedure, the court looks to the decisions of other courts which have dealt with the civil rule at issue." *Former Employees of Quality Fabricating, Inc. v. U.S. Dep't of Labor*, 343 F. Supp. 2d 1272, 1284 n.12 (Ct. Int'l Trade 2004); *see also* USCIT Rule 1 ("The court may refer for guidance to the rules of other courts.").

## II.     Cyber Power Fails To Meet The Standard For Reconsideration

### A. Cyber Power Cannot Seek Partial Retrial To Present Testimony That It Could Have Presented At Trial

We start with Cyber Power's last request: partial retrial to allow Mr. Huang to answer "follow-up questions." Mot. at 26. USCIT Rule 59 precludes this request. The Rule does not allow a losing party to relitigate a case, particularly with a previously available witness.[4] Cyber Power had Mr. Huang on the stand for two days and took his deposition just before trial. Whatever testimony that Cyber Power now seeks to elicit through retrial (it does not explain what it is that Mr. Huang would now say) is testimony that it could have elicited before. Having failed to do that without some compelling excuse, Rule 59 does not entitle Cyber Power to a do-over. *FMD Restoration, Inc.*, 320 F.R.D. at 323 ("Rule 59 is not to be used to introduce new evidence that was available at the time of trial.").

The revisionist explanation that Cyber Power does provide—that there was some "infirmity" in the procedure used to present Mr. Huang's direct testimony—falls short. *See* Mot. at 9 n.10, 26 & n.16. After Cyber Power moved *in limine* to present Mr. Huang's direct testimony in written form, the parties agreed that Cyber Power would depose Mr. Huang on the Friday before trial with counsel for both parties present and designate the transcript as his direct testimony. *See id.* at 9 n.10. The rough-draft transcript was available the same day, and a draft transcript was available by noon the next day. August 5 and 6, 2022 Emails from Court Reporter, Ex. 1. The Court therefore had the "opportunity to review" Mr. Huang's deposition transcript during trial, *contra* Mot. at 9 n.10, though Cyber Power apparently decided the Court did not need it at the start of trial. But Cyber Power "cannot now seek to utilize Rule 59 to save

---

[4] Mr. Huang also submitted numerous declarations during the pre-trial phase in this action. Yet, Cyber Power failed to elicit the evidence necessary to meet its burden.

itself from litigation decisions it has since reconsidered." *FMD Restoration, Inc.*, 320 F.R.D. at 323. By agreeing to this written-direct-testimony procedure and not providing the Court with Mr. Huang's deposition transcript from the start, Cyber Power has waived its right to complain about any resulting "infirmity." *See, e.g.*, *Key Pharms. v. Hercon Labs. Corp.*, 161 F.3d 709, 715 & n.1 (Fed. Cir. 1998) (under "doctrines of estoppel, waiver, invited error, or the like," a party cannot assert one position at trial just to assert another afterwards for a "proverbial 'second-bite,' possibly necessitating a retrial").

In any event, the procedure to which the parties agreed caused no problem, let alone "a fundamental or significant" one warranting retrial. *Since Hardware (Guangzhou) Co.*, 37 F. Supp. 3d at 1359 (quotation omitted). Cyber Power had a deposition and two days of trial to draw out whatever helpful testimony it could from the one witness it disclosed and presented at trial who had been to the Philippines.[5] The Court should therefore deny Cyber Power's request for a "second-bite" to allow Mr. Huang to testify again, now with the benefit of the Court's opinion. *Key Pharms.*, 161 F.3d at 715.

### B. Cyber Power Relitigates The Facts Instead Of Identifying Any Manifest Error Or Fundamental Flaw In The Court's Thorough Decision

As for the evidence that was submitted at trial, Cyber Power fails to identify any manifest error or fundamental flaw in the Court's fact-finding, but rather seeks to relitigate this case with evidence that the Court already considered and rejected.

First, a word on burden. As the Court correctly noted, Cyber Power bore the burden at trial of producing evidence that showed, by a preponderance of the evidence, that CBP's origin determination was incorrect. Slip Op. 23-24 at 3. As the Federal Circuit has explained, "the

---

[5] Cyber Power chose not to present testimony from the manager in charge of the Philippines Cyber Power factory's daily operations for the relevant time period.

6

importer must produce evidence (the burden of production portion of the burden of proof) that demonstrates by a preponderance (the burden of persuasion portion of the burden of proof) that Customs' classification decision is incorrect. The presumption of correctness certainly carries force on any factual components of a classification decision, such as whether the subject imports fall within the scope of the tariff provision, because *facts* must be proven via *evidence*." *Universal Elecs. Inc. v. United States*, 112 F.3d 488, 492 (Fed. Cir. 1997) (emphasis in original). Here, the presumption of correctness carried force because Cyber Power, having "failed in its burden of proof from the outset," could not prove the fact of five products' assembly in the Philippines with evidence. Slip Op. 23-24 at 29.

Cyber Power tries to lighten its burden, relying on *R.J.F. Fabrics, Inc. v. United States*, 657 F. Supp. 1291 (Ct. Int'l Trade 1987). Mot. at 10–12, 20–21. But *R.J.F. Fabrics* reinforces that the Court correctly held Cyber Power to its burden. In that country-of-origin case, the importer contended that it had to prevail because "the entry papers, authenticated by its witnesses, [were] sufficient to establish a *prima facie* case" and because the Government "presented no evidence supporting its contention that the goods originated in Korea." *R.J.F. Fabrics*, 657 F. Supp. at 1295. The Court rejected that argument. An importer "may not point to what it views as an absence of evidence on [the Government's] part to substitute for its failure to produce credible evidence from those with direct knowledge as to the source of the goods." *Id.* at 1296. And documents lacking in "probative value" together with "the testimony of a witness who [knew] little or nothing about [the] particular importation" at issue were not credible evidence sufficient to upset the presumption of correctness. *Id.* at 1295–96 (quoting *United States v. Hercules Antiques*, 44 C.C.P.A. 209, 214 (1957)).

It is thus Cyber Power—with its "undated," "'guidelines'-type" flowcharts and testimony

7

not specific to the subject merchandise, Slip Op. 23-24 at 21—who plays the role of the *R.J.F. Fabrics* importer, not the Government. And like in *R.J.F. Fabrics*, here the Court concluded, without manifest error or any fundamental flaw, that Cyber Power's generalized documents and witness testimony failed to show that it was more likely than not that five of the six models of the subject merchandise were made in the Philippines.

Cyber Power points to some of Mr. Huang's deposition testimony and argues that the Court somehow overlooked a *prima facie* case. Mot. at 12–17. The Court overlooked nothing. The deposition testimony that Cyber Power cites is, as the Court explained in its opinion, too generalized. For example, Cyber Power emphasizes that Mr. Huang testified that UPS Model No. CBN504U48-A1's "assembly, testing, and packaging occurred in the Philippines." Mot. at 13 (emphasis omitted) (citing Huang Dep. at 70:16–71:5). But Mr. Huang was explaining a generic "manufacturing timeline" for that model and testified that such operations "are … performed at CPSMI in the Philippines"—no date, no specific entry, no specific merchandise. Huang Dep. at 68:21–69:2, 70:16–24. The same is true for the other testimony that Cyber Power highlights in its motion regarding the other models. Mot. at 14–17 (citing Huang Dep. at 103:18–22, 106:20–107:4, 119:9–15, 127:8–128:7, 138:6–11, 141:20–25, 160:21–166:17, 168:8–15). The Court explicitly considered all this testimony. Slip Op. 23-24 at 21 (citing Huang Dep. at 69–82, 95–107, 114–28, 137–44, 150–65). Yet neither this testimony nor Cyber Power's documents were tied to the "necessary timeframe" of "early 2020" or to "the manufacture of the subject merchandise."[6] *Id.* In short, Cyber Power failed to produce credible

---

[6] Cyber Power's exposition on Mr. Huang's competence to testify is beside the point. Mot. at 17–20. The Court never questioned Mr. Huang's competence. But the trial was not about general practices. That Mr. Huang, the manager of the Philippine facility, could not explain how, where, and when the *subject merchandise* was manufactured was fatal to Cyber Power's case, given that Cyber Power failed to submit production records tied to the subject merchandise.

8

evidence about the origin of the "particular importation" at issue, *R.J.F. Fabrics*, 657 F. Supp. at 1296 (quoting *Hercules Antiques*, 44 C.C.P.A. at 214), and cannot now try to relitigate this case on a motion for reconsideration.

      We note, however, that even if the Government were required to produce evidence (which it was not), Cyber Power's own witnesses, as well as those of the Government, supported CBP's conclusion that five of the six products were made in China. In addition to its ongoing operations in China, Cyber Power began cultivating some operations in the Philippines in 2018 to avoid Section 301 duties, as this Court recognized on summary judgment. ECF No. 90 at 9. But most of the subject products' components were made in China. Slip Op. 23-24 at 8. Cyber Power's General Manager Brent Lovett testified that the Shenzhen factory can make all six products more cheaply than the Philippine facility can, and that his customers cared about price. Trial Vol. III at 518, 528–30. Import Specialist Linda Horacek testified that Cyber Power could not, during administrative proceedings, consistently explain where critical components came from. *Id.* at 626, 648–52; Trial Vol. IV at 734–36, 755, 767–69. Furthermore, she testified that Cyber Power provided only representative, redacted, untranslated, generalized documents to support its Philippine origin claim—rather than true production records specific to the merchandise that an ISO-certified entity like Cyber Power should have been able to provide. Trial Vol. III at 617–25, 641–44. This testimony, combined with Cyber Power's inconsistent and generalized documentation, was sufficient to show that the five of the six models of subject merchandise were actually produced in China.

---

Indeed, although its demonstrative video reflects production data being recorded in writing, Cyber Power presented no such records or any witnesses who entered the information for the subject merchandise. *See, e.g.*, Trial Demonstrative Ex. 1 at 4:46.

9

Regardless, the Court was not obligated to declare that Cyber Power transshipped five of the six product models through the Philippines. It sufficed for the Court to hold, as it did, that Cyber Power failed to meet it burden to prove the Government's country-of-origin determination wrong. And no evidence to which Cyber Power now points—evidence that the Court already explicitly considered—shows that the Court committed some fundamental or manifest error. Cyber Power's request for partial rehearing should therefore be denied.

### C.  *Jarvis Clark* Does Not Save Cyber Power From Its Evidentiary Failings

Finally, *Jarvis Clark v. United States*, 733 F.2d 873 (Fed. Cir. 1984), and 28 U.S.C. § 2643(b)[7] do not save Cyber Power from its failure to meet its burdens of production and persuasion. Federal judges are not inquisitors. *Contra* Mot. at 9 n.10. They do not develop the record or "sift it" for evidence supporting one party over another. *Olaplex, Inc. v. L'Oreal USA, Inc.*, 855 F. App'x 701, 712 (Fed. Cir. 2021) (citing *Albrechtsen v. Bd. of Regents of Univ. of Wisconsin Sys.*, 309 F.3d 433, 436 (7th Cir. 2002) ("Judges are not like pigs, hunting for truffles buried in the record.")). Instead, our "adversarial system of adjudication" is "designed around the premise that [parties represented by competent counsel] know what is best for them, and are responsible for advancing the facts and argument entitling them to relief." *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (alteration in original) (quotation omitted).

*Jarvis Clark* does not change this system. It simply requires that the Court reach the "*correct* result," rather than uphold CBP's wrong decision because an importer failed to offer an acceptable alternative. 733 F.2d at 878 (explaining that 28 U.S.C. § 2643(b) abrogated

---

[7] 28 U.S.C. § 2643(b) provides that "[i]f the Court of International Trade is unable to determine the correct decision on the basis of the evidence presented in any civil action, the court may order a retrial or rehearing for all purposes, or may order such further administrative or adjudicative procedures as the court considers necessary to enable it to reach the correct decision."

importers' "dual burden of proof").  As this Court has put it, judges "need not boil the ocean" to reach the right outcome—or eschew "the role of neutral arbiter" for that of inquisitor, *Sineneng-Smith*, 140 S. Ct. at 1579—especially because the parties can relitigate lingering issues through "subsequent entries of merchandise." *Jedwards Int'l Inc. v. United States*, 161 F. Supp. 1350, 1354 (Ct. Int'l Trade 2016).  Neither *Jarvis Clark* nor § 2643(b) "in any way weaken[ed] the requirement that" importers must "overcome the presumption of correctness that attaches to a" protested decision. *Jarvis Clark v. United States*, 739 F.2d 628, 630 (Fed. Cir. 1984).  "The burden is still on the plaintiff to prove [CBP's decision] to be incorrect, and the court still decides this question on the basis of the evidence presented." *Id.*

Ignoring the Federal Circuit's "caution … not to read more into [*Jarvis Clark*] than is there," *id.* at 629–30, Cyber Power argues that by holding in the Government's favor, this Court "failed to discharge its *Jarvis Clark* obligation" to consider the "Government's determination that the goods were made in China 'both independently and in comparison with' Cyber Power's claim." Mot. at 23–24.  But this is not a situation where the importer has proven CBP's determination wrong yet failed to provide a good alternative.  There were only two possible countries of origin for the subject merchandise: the Philippines, where Cyber Power only recently built a facility; or China, where most of the subject merchandise's components were made and where Cyber Power could make all six products at issue at a cheaper cost.  In failing to produce evidence showing that it is more likely than not that the specific merchandise at issue was substantially transformed in the Philippines, Cyber Power failed "to prove [CBP's decision] to be incorrect." *Jarvis Clark*, 739 F.2d at 630.[8]

---

[8] *Ashland Chemical v. United States*, 7 C.I.T. 362 (1984), upon which Cyber Power relies, is inapposite.  There, the Court ordered further proceedings because the importer proved CBP's non-statutory valuation method wrong as a matter of law. *Id.* at 367.  Here, Cyber Power proved

11

Cyber Power makes much out of the Court's observations that Cyber Power's thin and inconsistent submissions at trial "did not provide answers" to basic questions and left the Court "unable to determine whether the devices were substantially transformed in the Philippines," Slip Op. 23-24 at 28.  Mot. at 8–9, 22.  But the Court did not confess that it felt obligated to reach the wrong result.  Rather, it rightly concluded, based on the evidence presented at trial (and lack thereof), that five of the six products must be marked "Made in China," just as CBP determined.

Simply put, Cyber Power's overreading of *Jarvis Clark* and § 2643(b) would entitle importers who fail to meet their evidentiary burden "from the outset"—or even at summary judgment—to perpetual retrial until they can proffer the minimum quantum of evidence needed to win.  That is not the law.  "Fomenting litigation is not part of the judicial function," especially when the party requesting a do-over is represented by competent counsel.  *Myles v. United States*, 416 F.3d 551, 552 (7th Cir. 2005) (judges are not lawyers not even for *pro se* litigants); *see Sineneng-Smith*, 140 S. Ct. at 1579.  Cyber Power failed to prove its case at trial, and neither USCIT Rule 59, nor *Jarvis Clark*, nor § 2643(b) can resuscitate it.

---

neither CBP's factual determination wrong nor an alternative right.

## **CONCLUSION**

For the reasons stated above, the Court should deny Cyber Power's motion.

          Respectfully submitted,

          BRIAN M. BOYNTON
          Principal Deputy Assistant Attorney General

          PATRICIA M. McCARTHY
          Director

          JUSTIN R. MILLER
          Attorney-In-Charge
          International Trade Field Office

By:    /s/ Aimee Lee
          AIMEE LEE
          Assistant Director

          /s/ Luke Mathers
          BEVERLY A. FARRELL
          Senior Trial Attorney
          LUKE MATHERS
          Trial Attorney
          Civil Division, Department of Justice
          Commercial Litigation Branch
          26 Federal Plaza – Suite 346
          New York, New York 10278
          Tel. (212) 264-9230 or 0483
          *Attorneys for Defendant*

Dated:  April 20, 2023

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. LEO M. GORDON, *SENIOR JUDGE*

| | |
|---|---|
| CYBER POWER SYSTEMS (USA) INC., : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Court No. 20-00124 |
| : | |
| UNITED STATES, : | |
| : | |
| Defendant. : | |

### CERTIFICATE OF COMPLIANCE

I, Luke Mathers, a trial attorney in the Department of Justice, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for the foregoing Memorandum in Support of Defendant's Response in Opposition to Plaintiff's Motion for Partial Reconsideration or Retrial, relying upon the word count feature of the word processing program used to prepare the memorandum, certify that this memorandum complies with the word count limitation under the Court's chambers procedures, and contains 3,777 words.

/s/ Luke Mathers
LUKE MATHERS