UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. LEO M. GORDON, SENIOR JUDGE
------------------------------------------------------------------- X
CYBER POWER SYSTEMS (USA) INC,          :
                                        :
      **Plaintiff,**               :
                                        :
      *v.*                            :          No. 20-cv-124
                                        :
UNITED STATES,                          :
                                        :
      **Defendant.**              :
------------------------------------------------------------------- X

# REPLY IN SUPPORT OF PARTIAL MOTION FOR RECONSIDERATION OR RETRIAL

NEVILLE PETERSON LLP

John M. Peterson
Richard F. O'Neill
Patrick B. Klein
One Exchange Plaza
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com
*Counsel for Plaintiff*

Dated: May 11, 2023

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................................... ii

ARGUMENT .................................................................................................................................. 1

    I.    The Court Failed to Discharge its *Jarvis Clark* Obligations ............................................... 1

    II.   The Court's Finding that all of the Products Underwent a Change in Name by Reason of Operations Performed in the Philippines Mandates Judgment for Plaintiff. .................... 7

    III.  Significant Flaws in the Original Proceeding Mandate Reconsideration. ......................... 12

# TABLE OF AUTHORITIES

**Cases**

*Acetris Health LLC v. United States*, 979 F.3d 719 (Fed. Cir. 2020) ......................................... 10
*Anheuser Busch Brewing Assn. v. United States*, 207 U.S. 556 (1908)................................ 7, 8, 10
*Belcrest Linens Inc. v. United States*, 741 F.2d 1368 (Fed Cir. 1984) ............................................ 8
*Coats & Clark Inc. v. United States*, 74 Cust. Ct. 13 (1975). .......................................................... 6
*Cummins Engine Co. v. United States*, 23 C.I.T. 1019 (1999). ....................................................... 4
*Cyber Power Sys. (USA) Inc. v. United States*, 560 F. Supp. 3d 1347 (Ct. Intl. Trade
   2022). ......................................................................................................................................... 4, 10
*Cyber Power Systems (USA) Inc. v. United States*, Court No. 20-124, Slip Op. 23-24
   (Feb. 27, 2023)...................................................................................................................... 2, 5, 6, 11
*Haggar Apparel Inc. v. United States*, 526 U.S. 380 (1999). .................................................. 11, 13
*Hartranft v. Weigmann,* 121 U.S. 609 (1887)................................................................................. 7
*Ishimitsu v. United States*, 11 Ct. Cust. Appls. 186 (1921). ........................................................... 8
*Jarvis Clark Co. v. United States*, 733 F.2d 873 (Fed. Cir. 1984)......................................... passim
*Jedwards Int'l Inc. v. United States*, 161 F. Supp. 3d. 1350 (Ct. Int'l Tr. 2016) .......................... 3
*Konishi Kotadudo Inc. v. United States*, 17 C.C.P.A. 355 (1929).................................................. 8
*Koru North America v. United States*, 12 C.I.T. 1120 (1988) ....................................................... 9
*Marubeni America Corp. v. United States*, 20 C.I.T. 178 (1996)................................................. 7
*Peerless Clothing Int'l Inc. v. United States*, 602 F. Supp. 2d 1309 (Ct. Int'l Tr. 2009) ............... 5
*Potts v. Astrue*, 2009 U.S. Dist. LEXIS 61222 (M.D. Tenn. 2009).............................................. 12
*Reyes v. Netdeposit LLC*, 802 F.3d 469 (3d Cir. 2015) ................................................................... 6
*Roche Vitamins Inc. v. United States*, 35 C.I.T. 1070 (2011). ........................................................ 6
*Semperit Industrial Products Inc.*, 18 C.I.T. 578 (1994).................................................................. 7
*Simod America Corp. v. United States*, 872 F.2d 1572 (Fed. Cir. 1989)................................... 3, 4
*Student Public Interest Research Group v. Hercules, Inc.,* 1986 U.S. Dist. LEXIS 28723
   (D.N.J. 2015) .................................................................................................................................. 6
*Target Stores v. United States*, 31 C.I.T. 154 (2007)...................................................................... 4
*Texas Instruments Inc. v. United States*, 681 F.2d 778 (Fed. Cir, 1982) ....................................... 8
*Torrington Co. v. United States*, 764 F.2d 1563 (Fed Cir 1985) .................................................... 8
*United States v. Gibson-Thomsen Co., Inc.*, 27 C.C.P.A. 267 (1940). ....................................... 5, 8
*United States v. International Paint Co.*, 35 C.C.P.A. 87 (1948)................................................... 9
*United States v. Mead Corp.*, 533 U.S. 218 (2001) ..................................................................... 13
*United States v. Mersky*, 361 U.S. 431 (1960).............................................................................. 11
*V.G. Nahrgang Co. v. United States*, 741 F.2d 1363 (Fed. Cir. 1984) ....................................... 12

**Statutes**

19 U.S.C. §1304................................................................................................................... 4, 13
28 U.S.C. § 2640 ....................................................................................................................... 5
28 U.S.C. § 2643 .................................................................................................................... 2, 3

**Other Authorities**

H.R. Rep. 96-1235, 96th Cong. 2d. Sess. (1980)....................................................................... 2

**Regulations**

19 C.F.R. § 134.35 ............................................................................................................ 11, 13

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. LEO M. GORDON, SENIOR JUDGE

----------------------------------------------------------------- X
CYBER POWER SYSTEMS (USA) INC,

      **Plaintiff,**

      *v.*                                      No. 20-cv-124

UNITED STATES,

      **Defendant.**
----------------------------------------------------------------- X

### REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL RECONSIDERATION OR RETRIAL

In accordance with United States Court of International Trade Rules ("USCIT R.") 7 and 59, Plaintiff Cyber Power Systems (USA) Inc. ("CPUSA"), submits this reply brief in support of its Motion for Partial Reconsideration or Retrial of this Court's decision of February 27, 2023 (ECF 161). For the reasons set forth herein, Plaintiff submits that (1) the evidence demonstrates that all of the merchandise at bar is "substantially transformed" in the Philippines and is a product of the Philippines for marking purposes; (2) the evidence of record establishes, *prima facie,* that all of these articles are products of the Philippines; and (3) this Court erred, as a matter of law, when it ruled the products to be of Chinese origin, without explanation, in contravention of its obligation under *Jarvis Clark Co. v. United States*, 733 F.2d 873 (Fed. Cir. 1984).

### ARGUMENT

**I.**    **The Court Failed to Discharge its *Jarvis Clark* Obligations.**

Defendant argues that "Federal judges are not inquisitors," citing cases that are inapposite because they do not arise in this Circuit and do not involve judicial consideration of denied protests and other Customs decisions. *See* Defendant's Response in Opposition to Plaintiff's Motion for

Partial Reconsideration or Retrial, ECF 162 ("Def.'s Br."), at 10. However, the Federal Circuit's decision in *Jarvis Clark Co. v. United States*, 733 F.2d 873 (Fed. Cir. 1984), established a different role for this Court when considering protest (and other) cases. In such circumstances, the Court may not uphold an unexamined Customs determination simply because it finds the plaintiff's evidence insufficient to conclusively prove its claim, or because the decisions of U.S. Customs and Border Protection ("Customs" or "CBP") enjoy a presumption of correctness. Where, as here, the Court claims that Plaintiff's proofs leave it "unable to reach the correct decision on the basis of the evidence in any civil action,"[1] 28 U.S.C. §2643(b) provides a path forward:

> (b) If the Court of International Trade is unable to determine the correct decision on the basis of the evidence presented in any civil action, the court may order a retrial or rehearing for all purposes, or may order such further administrative or adjudicative procedures as the court considers necessary to enable it to reach the correct decision.

This section is a grant of statutory authority unique to this Court. It was originally designed to give the CIT remand powers equal to that of a Federal District Court,[2] but empowering it to conduct additional judicial inquiries as well.

---

[1] This is precisely the situation the Court claimed to find itself in:

Plaintiff's evidence does not establish what operations occurred in the Philippines to produce these subject devices to permit the court to conduct a substantial transformation analysis.

*Cyber Power Systems (USA) Inc. v. United States*, Court No. 20-124, Slip Op. 23-24 (Feb. 27, 2023) at 23

[2] Initially, 28 U.S.C. § 2643(b) would have allowed this Court to issue orders of remand only in cases brought under Section 515 and 516 of the Tariff Act. However, the Justice Department, the Chief Judges of the Customs Court, and the Court of Customs and Patent Appeals, and the Administrative Conference of the United States all recommended that this Court's jurisdiction be expanded to include all civil actions within the Court's jurisdiction. The Administrative Conference commented that its primary:

… focus with respect to remand authority was that it be available in proceedings commenced pursuant to section 515 and 516 where it is currently available [in draft legislation]. Since H.R. 6394 would give the court exclusive jurisdiction over other types of cases, it would seem logical to permit the court to remand other actions as well.

H.R. Rep. 96-1235, 96th Cong. 2d. Sess. (1980) at 40. Indeed, 28 U.S.C. § 2643(b) goes beyond granting the Court powers of remand, as it also directs that the Court conduct additional judicial proceedings to reach the correct result.

2

While the statute is couched in permissive language—*i.e.,* "may"—the Federal Circuit's *Jarvis Clark* decision **mandates** that the powers set out in § 2643(b) be used to "find the *correct* result by whatever procedure is best suited to the case at hand." 733 F.2d at 878 (emphasis in original). The definitive resolution of issues before this Court is of utmost important because decisions in protest cases are not *res judicata*, and the definitive resolution of issues posed by these cases ultimately conserves judicial resources.[3] Such is the mandate of USCIT R. 1.[4]

As noted in *Simod America Corp. v. United States*, 872 F.2d 1572 (Fed. Cir. 1989), where a trial record does not contain sufficient evidence to allow a determination of the true classification (or country of origin) of goods, the *Jarvis Clark* rule allows remand to the CIT or to Customs:

> The correctness of Customs classifications is too important a matter to be made the subject of word games any longer, and the courts are too burdened with cases for the same or similar entries to be litigated and relitigated over and over again.

*Simod America,* at 1579.

As a result of the *Jarvis Clark* ruling, Customs protest cases like this one are indeed more akin to a civil law judicial investigation than to a traditional English law adversary proceeding. The Court may not passively uphold a Customs determination simply because an importer's evidence was in its view insufficient to allow the Court to glean the "correct result." *See Simod America Corp., supra.*[5] If that is the case—as the Court suggests here—the Court must push farther

---

[3] Citing *Jedwards Int'l Inc. v. United States*, 161 F. Supp. 3d. 1350, 1354 (Ct. Int'l Tr. 2016), Defendant argues that the Court "need not boil the ocean" to reach the correct result, because the parties can relitigate lingering issues through subsequent entries of merchandise. Def.'s Br. at 11. However, as the Federal Circuit's decision in *Simod America, supra,* noted, the intent of *Jarvis Clark* was precisely to **avoid** such relitigation.

[4] USCIT R. 1 provides in relevant part that the scope and purpose of the CIT Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."

[5] The Federal Circuit in *Simod* noted:

> On the other hand, we are unable on the present record, and in the absence of findings by the Court of International Trade, to discern what the true classification should have been. This would formerly have required affirmance of the erroneous classification since under former law, the importer had a dual burden to establish the error of the Customs classification, and the correctness of a classification

and determine the correct result. The obligation of the Court is to develop the necessary factual evidence to allow it to reach the correct conclusion on a question of law.[6] This obligation attaches precisely when the Court finds the record as developed by the parties insufficient. Procedures available to the Court include remand, rehearing, or retrial.

This was noted in *Target Stores v. United States*, 31 C.I.T. 154, 160 (2007). In that protest case, which involved the determination of the correct dutiable value of certain imported merchandise, the Court noted that:

> [T]he proper appraisement value, or transaction value which must be used pursuant to the statute is a legal issue, as determined by § 1401a(b)(1), *Nissho Iwai*, and *E.C. McAfee Co. v. United States*, 842 F.2d 314 (Fed. Cir. 1988).

To reach the correct determination of this question of law, the court is obligated "to find the correct result by making the necessary findings of fact at a trial." *Id.* (citing *Jarvis Clark Co. v. United States*, 733 F.2d 873, 878 (Fed. Cir. 1984)).

Similarly, determining the correct country of origin of a good is a question of law,[7] which as this Court noted, is governed by the "substantial transformation" test of whether certain production events result in the creation of a new and different article of commerce, having a "name,

---

properly claimed by it. By *Jarvis Clark Co. v. United States*, 733 F.2d 873, 2 Fed. Cir. (T) 70 (1984), this unique rule has been held repealed by Congress.

*Simod America Corp.*, 872 F.2d at 1578-1579.

[6] This is not to suggest that a plaintiff in this Court has no obligation to come forward with evidence. It must put on *prima facie* evidence sufficient to undermine the statutory presumption that Customs found all facts necessary to sustain its protest decision – in this case, that the products at bar are products of China. To support that decision, Customs is presumed to have found that the products did not acquire a new name, character or use by reason of the operations performed in the Philippines. As noted in its previous brief, plaintiff believes it made a *prima facie* showing as to all of the products at bar. In its decision on summary judgment, the Court found upon a review of the evidence there that it was *undisputed* from the processes performed in the Philippines had a different name than their constituent materials or components. *Cyber Power Systems (USA) Inc. v. United States,* 560 F. Supp. 3d 1347, 1355-56 (Ct. Int'l Tr. 2022).

[7] The determination of country of origin for purposes of the marking statute, 19 U.S.C. §1304(a), is a matter of law. *Cummins Engine Co. v. United States*, 23 C.I.T. 1019, 1036 (1999).

4

character or use" different from its component materials. *United States v. Gibson-Thomsen Co., Inc.*, 27 C.C.P.A. 267 (1940).

In its post-trial opinion in this case, the Court acknowledges the *Gibson-Thomsen* governing standard, in the process rejecting Government-proffered alternatives, such as the "essence" or "essential component" tests. Slip Op. 23-24 at p. 25. The Court's opinion expresses frustration and doubt over whether Plaintiff's trial evidence showed the goods to have undergone a "substantial transformation" in the Philippines. But frustration or doubt with plaintiff's evidentiary showing is not sufficient under the law of this Circuit to rule in favor of Customs' asserted origin. Rather, to uphold the Government's determination, the Court must determine whether evidence shows that the goods underwent a "substantial transformation" in China. Absent such a showing, grounded in evidence, the Court may not conclude, as it did in its Judgment Order of February 28, 2023 (ECF 160), that China is the "correct" country of origin of the goods.[8]

It cannot seriously be argued that the trial record contained evidence sufficient to allow this Court to render a "correct" determination that, as a matter of fact and law,[9] the goods at bar are products of China. The Court made no findings of fact regarding manufacture in China, other than that the PCBAs for the instant devices were made there,[10] and surely did not make any

---

[8] The Government's claimed "evidence" of Chinese-origin falls far short of the mark in this regard. The Government notes that Plaintiff's witness Brent Lovett testified that Plaintiff's Chinese factory *could* make all of the products in question, more cheaply than in the Philippines, but this does not demonstrate, or even suggest that the goods were made in China. Defendant's witness Linda Horacek testified that there were inconsistencies in the documents reviewed during administrative protest proceedings. But Ms. Horacek admittedly is not a percipient witness, had no information about the *situs* of the products' manufacture, and did not offer any evidence for consideration on the record d*e novo*, which is required in this case. Def.'s Br. at 9.

[9] The Court's *Jarvis Clark* obligation extends to both questions of *fact* and conclusion of *law*. *See Peerless Clothing Int'l Inc. v. United States*, 602 F. Supp. 2d 1309, 1315 (Ct. Int'l Tr. 2009) (citing 28 U.S.C. §2640(a), which requires that decisions in protest cases be made on the basis of the record before the court).

[10] Slip Op. 23-24 at 8. The Court expressly rejected the notion that the origin of the subject goods was driven by the country where the PCBAs were made. *Id* at 24- 25. Ironically, the result reached in this case is precisely the same as it would have been had the Court adopted the Government's position that the PCBAs were the "critical component" which should drive the origin of the imported goods.

findings that the products at bar acquired a new and different "name, character or use" in China. The only evidence received regarding manufacture in China is that certain printed circuit board assemblies ("PCBAs") were produced in China (as were many of the other parts incorporated in the UPS and SVP units). The Court in its decision noted that the origin of a product's components, even "essential" components was not dispositive. Slip Op. 23-24 at 24-25. At trial, the Government offered no evidence in support of its liquidation finding that the merchandise at bar underwent a "substantial transformation" in China. Not a scintilla of trial evidence suggests that the UPS and SVP units at bar were produced in China.

A good's country of origin is a legal determination, which cannot be left to be determined by the quality of a party's advocacy or weaknesses in its evidence.[11] This point was driven home in *Roche Vitamins Inc. v. United States*, 35 C.I.T. 1070, 1074 (2011). In that case, the plaintiff demanded judgment in its favor based on defendant's failure to cite specific evidence in its opposition to a summary judgment motion. The Court rejected this entreaty, noting:

> With respect to paragraphs 22, 23, and 28, although Defendant acknowledges its failure to provide specific citations in each particular statement, Defendant's Opposition at 8; *see id.* at 8, 9, 11, Federal Circuit precedent precludes the court from granting the remedy that Plaintiff seeks. In customs classification cases, the court must reach the "correct result." *Jarvis Clark*, 733 F.2d at 878*; see also Universal Elecs. v. United States,* 112 F.3d 488, 492 n.3 (Fed. Cir. 1997) (rejecting an approach under which "the meaning of tariff terms could depend on the quality of the importer's advocacy and could shift from case to case based on the showing made by the particular importer"); *Simod America Corp. v. United States*, 872 F.2d 1572, 1579 (Fed. Cir. 1989) ("[T]he courts are too burdened with cases for the same or similar entries to be litigated and relitigated over and over again."). This obligation extends to both "findings of fact and conclusions of law." *Peerless Clothing Int'l, Inc. v. United States*, 602 F. Supp. 2d 1309, 1315 (CIT 2009) (citing

---

[11] The standard for decision in this case is a preponderance of the evidence, which requires a party to demonstrate that a proposition is more likely than not. The standard does not call for perfect evidence. *See, e.g., Reyes v. Netdeposit LLC*, 802 F.3d 469, 485 (3d Cir. 2015); *Student Public Interest Research Group v. Hercules, Inc.,* 1986 U.S. Dist. LEXIS 28723 at *26-27 (D.N.J. 2015); *Coats & Clark Inc. v. United States*, 74 Cust. Ct. 13, 16 (1975). The Court did not mention or discuss the preponderance standard in its decision, even though significant evidence was introduced of the products' manufacture in the Philippines and none was introduced of the products' alleged manufacture in China.

28 U.S.C. § 2640(a); *Jarvis Clark*, 733 F.2d at 878). If the court were to deem paragraphs 22, 23, and 28 admitted on the basis of Defendant's failure to properly cite evidence, it would risk ultimately classifying the merchandise at issue according to facts that, while "true" in the courtroom, may be demonstrably false in the world in which Defendant, Plaintiff, and any other importer must operate. **Because the Federal Circuit has rejected that course**, *see, e.g.*, *Jarvis Clark*, **733 F.2d at 878, so too must this court.**

(Emphasis added).

The days when a plaintiff's claimed deficiencies of trial proof allowed this Court to summarily render judgment for the Government based on the statutory presumption of correctness are over. The Court must conduct whatever proceedings are required to determine the *correct* country of origin of the goods at bar. Plaintiff suggests that a partial retrial or rehearing is required to do so in this case.[12]

## II. The Court's Finding that all of the Products Underwent a Change in Name by Reason of Operations Performed in the Philippines Mandates Judgment for Plaintiff.

Binding precedent handed down from our Appellate Court sets out the test of "substantial transformation" for purposes of determining when an article has acquired a new country of origin. The "substantial transformation" test traces its origins to the United States Supreme Court decisions in *Anheuser Busch Brewing Assn. v. United States*, 207 U.S. 556 (1908) and *Hartranft v. Weigmann,* 121 U.S. 609 (1887). Under that test, a substantial transformation occurs when working

---

[12] This was driven home in *Semperit Industrial Products Inc.*, 18 C.I.T. 578, 586-587 (1994), where the Court noted:

> The Court also rejects defendant's argument that the Court should uphold Customs' classification because the agency based its classification on a reasonable interpretation of subheading 4010.91.15 [footnote omitted]. * * * Defendant's argument is meritless because it misconstrues the Court's role in Customs classification cases. In such cases, the court conducts a trial de novo. [citation omitted.] **Although Customs' decisions enjoy a presumption of correctness, the Court's duty in reviewing classification determinations 'is to find the correct result … "** *Jarvis Clark*,**, 2 Fed. Cir. (T) at 75, 733 F.2d at 878** (emphasis in original) (footnote omitted). Implicit in this function is the Court's responsibility in classification cases not to exercise a deferential standard, but to exercise its own judgment as to what is the proper classification of the merchandise under review.

*See also Marubeni America Corp. v. United States*, 20 C.I.T. 178, 183-184 (1996).

7

or processing in a country results in the creation of a new article of commerce having a name, character or use different from its component materials. The Supreme Court stated in *Anheuser-Busch*:

> Manufacture implies a change, but every change is not manufacture, and yet every change in an article is the result of treatment, labor and manipulation. But something more is necessary, as set forth and illustrated in *Hartranft v. Wiegmann*, 121 U.S. 609. There must be transformation; a new and different article must emerge, "having a distinctive name, character or use." This cannot be said of the corks in question. A cork put through the claimant's process is still a cork.

*Anheuser-Busch Brewing Ass'n v. United States*, 207 U.S. 556, 562 (1908).

The *Anheuser-Busch* test of substantial transformation was adopted as the rule for determining the country of origin of an article for purposes of the marking statute. *See United States v. Gibson-Thomsen Co.* 27 C.C.P.A. 267 (1940). While the *Gibson-Thomsen* court expressed the test in the conjunctive—referring to a change in name, character, *and* use, the Court of Appeals and this Court have repeatedly indicated that the test is a disjunctive one where a change in **any of the three criteria—name, character or use**—will result in a change in country of origin. *See e.g., Torrington Co. v. United States*, 764 F.2d 1563 (Fed Cir 1985); *Belcrest Linens Inc. v. United States*, 741 F.2d 1368 (Fed Cir. 1984); *Texas Instruments Inc. v. United States*, 681 F.2d 778, 782 (Fed. Cir, 1982); *Konishi Kotadudo Inc. v. United States*, 17 C.C.P.A. 355 (1929); *Ishimitsu v. United States*, 11 Ct. Cust. Appls. 186 (1921).

While a "change of name" has been stated to be the "weakest" indicator of a "substantial transformation," such a change is nonetheless sufficient to confer origin. We have found no case where a product emerged from a process of manufacture or production with a new name and the product at issue has not been deemed to be "substantially transformed." Because the "substantial transformation" test is applied on a case-by-case basis, a change in name may or may not be the

8

dispositive factor. Stated another way, a change is name is not a necessary requirement, but it is a sufficient one. Thus, for example, in *United States v. International Paint Co.*, 35 C.C.P.A. 87, 93-94 (1948), the Government argued that a product which had been transformed by a process of production from ordinary paint to "antifouling paint" was substantially transformed notwithstanding that it retained the name of "paint." The Court of Appeals held:

> We do not think the fact that there has been no change of name is of material consequence here. As a matter of fact, a change of name alone would not necessarily result in a product being regarded as "manufactured or produced." Under some circumstances a change in name would be wholly unimportant, and equally so is a lack of change in name under circumstances such as exist here.

In that case, a change in "character" or "use" was held sufficient to effect the required transformation, even though the product's name did not change.

On the other hand, a change in name will suffice to effect a substantial transformation. Thus, in *Koru North America v. United States*, 12 C.I.T. 1120, 1126-1127 (1988) this Court noted:

> A processor who converts an imported article into a different article having a new name, character or use has substantially transformed the imported article, thereby requiring the markings on the product to reflect this change. *Id*. The article need not experience a change in name, character *and* use to be substantially transformed. *United States* v. *International Paint Co*., 35 CCPA 87, C.A.D. 376 (1948). Only one of the three prongs needs to be satisfied for a product to achieve substantial transformation. The name element, however, has received less weight and is considered "the weakest evidence of substantial transformation." *National Juice Products*, 10 CIT at 59, 628 F. Supp. at 989; *cf. Superior Products Co.* v. *United States*, 11 CIT at 614, 669 [**235] F. Supp. at 478 (changes in use or character were the predominant elements).
>
> In the present action, the criteria for substantial transformation have been satisfied. **The fish's <u>name</u> has been changed as the result of the processing method which occurred in Korea.** When the fish arrive in Korea they are known as "headed and gutted" Hoki, as they have been beheaded, de-tailed and enviscerated.

9

Conversely, in *Anheuser-Busch, supra*, the fact that there was no change in name was held to be dispositive. 227 U.S. 562 ("A cork put through the claimant's process is still a cork.").[13]

In its decision disposing of the parties' summary judgment motions in this case, this Court found as to all of the products at bar, that it was unquestioned that a change in name resulted from operations performed in the Philippines:

> **With respect to the "name" criterion, there does not appear to be any dispute that all of the subject merchandise at issue undergoes a change in "name" as none of the components share a name with the finished subject merchandise.** *See* Pl.'s Reply at 11 (citing Def.'s XMSJ at 26). There is also no dispute that under the "name, character, and use" analysis, a change in name is generally considered to be the least compelling factor in support of a finding of substantial transformation. *See* Def.'s XMSJ at 20 (citing *Sassy, Inc. v. United States*, 24 CIT 700, 704, SLIP OP. 2000-93 (2000), and *Ferrostaal Metals Corp.*, 11 CIT at 478, 664 F. Supp. at 541 ("The name criterion is generally considered the least compelling of the factors which will support a finding of substantial transformation.")). **While the satisfaction of the name criterion in this matter lends some support to Plaintiff's claim**, this change in name alone does not appear sufficient to constitute a "substantial transformation" of the subject merchandise. The court must therefore consider whether changes in the "character" and/or "use" of the merchandise as part of Plaintiff's Philippine operations have effected a "substantial transformation" of the subject merchandise. *See Precision Specialty Metals, Inc. v. United States*, 24 CIT 1016, 1029-30, 116 F. Supp. 2d 1350, 1364, SLIP OP. 2000-121 (2000) (noting that courts generally focus on character and use criteria in assessing whether substantial transformation has occurred).

*Cyber Power Sys. (USA) Inc. v. United States*, 560 F. Supp. 3d 1347, 1355-1356, (Ct. Intl. Trade 2022). While the Court was certainly free to conduct further inquiry into the factors of "character" and "use," its conclusion that the admitted change in name was insufficient to demonstrate a substantial transformation flies in the face of repeated and well-established binding appellate authority. Indeed, in its post-trial decision, the Court repeated its finding that the products

---

[13] The significance of a product's name was also deemed controlling in *Acetris Health LLC v. United States*, 979 F.3d 719, 730 (Fed. Cir. 2020), a case involving a country of origin determination in a government procurement context. There a government contract involved a procurement of certain pharmaceutical "pills." The Federal Circuit noted that while the active pharmaceutical ingredient ("API") was a product of India, the "pill" was made in Dayton, New Jersey.

10

underwent a change in name by reason of the operations performed in the Philippines, finding that a change in name is generally reflective of a change in character or use as well. Slip Op. 23-24 at 6-7.

This Court may not ignore binding appellate precedent. As the Court has found that all of the products which emerge from manufacture and production in the Philippines have a new "name," distinct from those of its components, the Court should have entered judgment for Plaintiff as a matter of law. The Court should rectify that clear legal error upon reconsideration.

We also note that the disjunctive test of a change in "name, character or use" has been adopted directly into the Customs Regulations. Indeed, Section 134.35 of the Customs Regulations, 19 C.F.R. §134.35, provides:

> **134.35 Articles substantially changed by manufacture.**
>
> **(a)** *Articles other than goods of a NAFTA or USMCA country.* An article used in the United States in manufacture which results in an article having a **name, character, or use** differing from that of the imported article, will be within the principle of the decision in the case of United States v. Gibson-Thomsen Co., Inc., 27 C.C.P.A. 267 (C.A.D. 98). Under this principle, the manufacturer or processor in the United States who converts or combines the imported article into the different article will be considered the "ultimate purchaser" of the imported article within the contemplation of section 304(a), Tariff Act of 1930, as amended (19 U.S.C. 1304(a)), and the article shall be excepted from marking. The outermost containers of the imported articles shall be marked in accord with this part.

The Supreme Court has indicated that Section 304 of the Tariff Act, the marking statute, is implemented through regulations. *United States v. Mersky*, 361 U.S. 431 (1960). The Supreme Court has also held that Customs regulations issued pursuant to statutory authority are entitled to binding deference from this Court. *Haggar Apparel Inc. v. United States*, 526 U.S. 380 (1999). The Court's finding that all of the merchandise at bar acquired new names by reason of operations performed in the Philippines is sufficient to establish origin under the binding regulatory

11

definition. The Court should reconsider its judgment and hold all of the products at bar to be products of the Philippines for marking purposes.

### III. Significant Flaws in the Original Proceeding Mandate Reconsideration.

Plaintiff Cyber Power agrees with the Defendant's observation that the purpose of Rule 59 Reconsideration is not to relitigate a case,[14] but to address a fundamental or significant flaw in the original proceeding. As noted herein, there are at least three such flaws.

First, the Court failed to discharge the obligation placed upon it by *Jarvis Clark* to reach the correct result in this case. A tribunal's failure to apply a governing standard is always a serious flaw which justifies rehearing and reconsideration. *Potts v. Astrue*, 2009 U.S. Dist. LEXIS 61222 at *18 (M.D. Tenn. 2009). As one appellate judge noted in dissent shortly after the *Jarvis Clark* decision was rendered:

> I respectfully dissent in view of *Jarvis Clark Co. v. United States*, 733 F.2d 873, 878 (Fed. Cir. 1984). As in *Jarvis Clark*, the trial court in this case failed to consider "whether the government's classification is correct, both independently and in comparison with the importer's alternative." *Id*. I do not agree with the majority that the trial court sustained the Customs Service classification but believe, instead, that the trial court held that the Customs Service classification was not precluded in view of the fact that appellant failed to establish its claimed classification. Accordingly, I would reverse the decision of the Court of International Trade and remand for further consideration in light of Jarvis Clark.

*V.G. Nahrgang Co. v. United States*, 741 F.2d 1363, 1368 (Fed. Cir. 1984) (Miller, J., dissenting). While uttered in dissent in the *Nahrgang* case, the statement fits precisely the posture of the instant case.

---

[14] To the extent this Court experienced frustration with the testimony of Tim Huang, the Government seeks to blame this on Plaintiff, asserting that while Plaintiff had the transcript of Mr. Huang's deposition, "Cyber Power apparently decided the Court did not need it at the start of trial. Def. Br. at 5. Cyber Power's counsel Richard O'Neill on August 7, 2022, purchased a thumb drive and loaded the (not yet certified) deposition transcript onto it. On the morning of Monday, August 8, 2022, prior to court being called into session, Mr. O'Neill approached Cynthia Love, the Courtroom Clerk for the trial, and asked whether he should give her the thumb drive with the uncertified transcript. She instructed him to "hold onto it."

Second, the Court made a significant error by failing to rule in Plaintiff's favor based on its previous finding, made during consideration of summary judgment motions that the evidence placed on record showed all the articles to have acquired a new name by reason of the work done in the Philippines. While the Court proceeded to trial to determine whether the articles had also undergone changes in character or use, the issue of change in name was not tried because it had already been decided in Plaintiff's favor. As noted *supra*, while a change in name has often been cited as the weakest indicator of a substantial transformation, no court has ever held that it is insufficient under the disjunctive "name, character or use" test. The trial court did not fit the governing disjunctive standard to its own findings. This is a significant legal error that mandates reconsideration under Rule 59.

Third, and somewhat relatedly, the Court failed to fit its finding that the operations in the Philippines produced articles having a new name, distinct from those of their components, to the Customs Regulation, 19 C.F.R. §134.35, which also provided a disjunctive definition of the governing "name, character or use" test specifically to determinations of country of origin under the marking statute, 19 U.S.C. §1304(a). The regulation has the force and effect of law, *see United States v. Mead Corp.*, 533 U.S. 218 (2001), and this Court is required to give it binding deference, *see Haggar Apparel Inc. v. United States*, 526 U.S. 380 (1999). This is clearly a major legal error justifying reconsideration under USCIT R. 59.

13

**CONCLUSION**

This action has significance beyond the merchandise at bar, as importers are being assessed with billions of dollars in China Section 301 duties annually. Additional origin disputes in this area are inevitable. One landed at this Court within the past week.[15] The Jarvis Clark rule anticipates giving the trade community clear and correct answers to guide future planning.[16]

Plaintiff respectfully moves that the Court grant the instant motion for partial retrial or rehearing and vacate its judgment as to the four UPS models and one SVP model in question.

Respectfully submitted,

NEVILLE PETERSON LLP

/s/ John M. Peterson
John M. Peterson
Richard F. O'Neill
Patrick B. Klein
One Exchange Plaza
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

Dated: May 11, 2023

---

[15] *See* Summons, *Powin Energy Corp. v. United States*, Court No. 23-00092 (Ct. Int'l Tr. May 5, 2023), ECF No. 1.

[16] ". . . the abolition of the dual burden will add a stability to the customs laws that has been lacking. A judicial decision will now represent a statement of correct law, useful to future importers, rather than simply a narrow ruling based on the particular circumstances in the case". *Jarvis Clark Co. v. United States*, 739 F.2d 628, 629 (Fed. Cir. 1984).

14

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. LEO M. GORDON, SENIOR JUDGE**

------------------------------------------------------------------ X
**CYBER POWER SYSTEMS (USA) INC,**          :
                                             :
      **Plaintiff,**                  :
                                             :
      *v.*                             :   No. 20-cv-124
                                             :
**UNITED STATES,**                           :
                                             :
      **Defendant.**                 :
------------------------------------------------------------------ X

# CERTIFICATE OF COMPLIANCE

I, Patrick B. Klein, of Neville Peterson LLP, who is responsible for the instant Brief, relying upon the word count feature of the word processing program used to prepare the Brief, certify that it complies with the word count limitation under the Court's Standard Chambers Procedures and contains 5,319 words.

                        Respectfully submitted,

                        /s/ Patrick B. Klein
                        Patrick B. Klein